## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

_____

|  |  |  |
|---|---|---|
| **JOANN HAYSBERT** | ) | |
| | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | Case No. 25-1332 |
| v. | ) | |
| | ) | |
| **OUTBACK STEAKHOUSE** | ) | |
| **OF FLORIDA, LLC** | ) | |
| | ) | |
| *Defendant-Appellee* | ) | |
| and | ) | |
| | ) | |
| **BLOOMIN' BRANDS, INC.** | ) | |
| | ) | |
| *Defendant* | ) | |

_____ )

## MOTION OF NAZARETH M. HAYSBERT
## FOR LEAVE TO INTERVENE AS APPELLANT

Nazareth M. Haysbert ("Mr. Haysbert") hereby moves pursuant to Local Rule 12(e) for leave to intervene as an appellant in the above-captioned appeal.

As explained below, all of the factors relevant to appellate intervention weigh in favor of permitting Mr. Haysbert to intervene, and the Court has jurisdiction to review the order revoking his *pro hac vice* status in this appeal.

Pursuant to Local Rule 27(a), the undersigned has informed counsel for Defendant-Appellee Outback Steakhouse of Florida, LLC ("Defendant") of the intended filing of this motion, who indicated that Defendant opposes the motion.

## PROCEDURAL HISTORY

On June 29, 2020, Plaintiff-Appellant JoAnn Wright Haysbert ("Plaintiff" or "Dr. Haysbert") filed an action for negligence in Virginia state court against Defendants Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., arising out of a slip-and-fall at an Outback Steakhouse restaurant in Chesapeake, Virginia in which Dr. Haysbert allegedly suffered a traumatic brain injury. *See* Declaration of Judah J. Ariel at Exhibit A, pp. 10-19.[1] On July 31, 2020, Defendants removed the case to the Eastern District of Virginia, as *Haysbert v. Bloomin' Brands, Inc.*, No. 4:20-cv-00121 (E.D. Va.) [hereinafter, "*Haysbert I*"]. *See id.* at 6-8.

On September 8, 2020, attorney Nazareth M. Haysbert submitted an application under Local Civil Rule 83.1(D) to be admitted *pro hac vice* as counsel for Dr. Haysbert, which was granted on September 10, 2020. *See* Exhibit B. Following various delays, a jury trial began on August 8, 2023. *See generally* Exhibit C, pp. 35-58; Exhibit D. On August 11, 2023, at the end of the fourth day of trial, Defendants' moved for a mistrial and to revoke Mr. Haysbert's *pro hac vice* admission. Exhibit D, p. 72. On August 14, 2023, the district court granted Defendants' motions from the bench. *Id.*, p. 73. The court memorialized its rulings in an opinion dated August 23, 2023. *See* Exhibit E.

---

[1] All cited exhibits are attached to the Ariel Declaration. Exhibit page numbers refer to the page number of the PDF, which is also Bates stamped in the lower righthand corner.

On September 1, 2023, Dr. Haysbert notified the district court of her request for a new trial. *See* Exhibit F. On October 30, 2023, the court set a new trial date for February 5, 2024 and directed Dr. Haysbert—now appearing *pro se* after the withdrawal of her remaining counsel, *see* Exhibit G—and Defendants to meet and confer regarding various pretrial issues. *See* Exhibit H.

On December 18, 2023, Dr. Haysbert filed a motion to voluntarily dismiss the case, or for a six month continuance, *see* Exhibit I, explaining that, she had been unable to find new counsel in part due to the limited amount of time before trial, but was "not in a position to effectively represent herself *pro se* at trial," as a result of her TBI symptoms. *Id.*, pp. 107-08. On January 11, 2024, the court granted Dr. Haysbert's motion in part, dismissing the case without prejudice subject to certain conditions, including that "[i]f the case is refiled, all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case." Exhibit J, pp. 115-16.[2]

On June 11, 2024, Dr. Haysbert, availing herself of the tolling provision of Virginia Code § 8.01-229(E)(3),[3] recommenced the action as *Haysbert v. Outback*

---

[2] By order dated April 19, 2024, the district court removed one of the conditions concerning expert witnesses. *See* Exhibit C, p. 65.

[3] Section 8.01-229(E)(3) provides:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, regardless of whether the

*Steakhouse of Fla., LLC*, No. 4:24-cv-00087 (E.D. Va.) [hereinafter, "*Haysbert II*"].

*See* Exhibit K. On January 24, 2025, the court granted Dr. Haysbert's oral motion to dismiss Defendant Bloomin' Brands. Exhibit L, p. 130.

A jury trial began on February 25, 2025, *see generally* Exhibit M, resulting in a verdict for Defendant Outback Steakhouse of Florida, *see* Exhibit N. On February 28, 2025, Dr. Haysbert and Mr. Haysbert jointly filed a notice of appeal from the final judgment in *Haysbert II*. *See* Exhibit O.

On May 1, 2025, Dr. Haysbert and Mr. Haysbert filed a motion in this Court to correct or amend the caption to identify both Dr. Haysbert and Mr. Haysbert as appellants, Dkt. 17,[4] which was denied without explanation on May 12, 2025, Dkt. No. 21.

On June 6, 2025, the parties filed a joint stipulation to correct the record on appeal, Dkt. 26, which was granted by order of the Court, Dkt. 27. That same day,

---

statute of limitations is statutory or contractual, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1, whichever period is longer. This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court and recommenced in any other court, and shall apply to all actions irrespective of whether they arise under common law or statute.

[4] Citations to "Dkt." refer to docket entries in this appeal.

June 6, 2025, Plaintiff filed a motion in the district court to correct, modify, or supplement the record on appeal. *See* Exhibit P.

**ARGUMENT**

I.      THE COURT SHOULD PERMIT MR. HAYSBERT TO INTERVENE AS AN APPELLANT

      **A.      The Legal Standard for Intervention on Appeal**

"No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276 (2022). This Court has therefore held that resolution of such a motion is committed to the Court's discretion. *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 88 F.4th 495, 498 (4th Cir. 2023) [hereinafter, "AEF"]. But that discretion is not unbounded, as the Supreme Court has directed appellate courts "to consult 'the policies underlying intervention in the district courts,'" *id.* (quoting *Cameron*, 595 U.S. at 276). Therefore, in *AEF*, the Court "considered a non-exhaustive list of factors—the timeliness of the [proposed intervenors'] request, the interests the [proposed intervenors] seek to represent, the extent to which the existing parties adequately represent those interests, and the effect on the [proposed intervenors] and the current parties of granting or denying intervention." *Id.* (citing *Cameron*, 595 U.S. at 276-82).

In exercising its discretion, the Court should also be guided by its recognition that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with

efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

It is unclear whether the distinction between intervention of right under Federal Rule of Civil Procedure 24(a) and permissive intervention under Rule 24(b) remains relevant to questions of appellate intervention after *Cameron*. While *Cameron* described the issue before the Court as the "[r]esolution of a motion for permissive intervention," *Cameron*, 595 U.S. at 278, and cited to Rule 24(b)(1)(a) concerning permissive intervention to support its statement that resolution is "committed to the discretion of the court before which intervention is sought", *id.* at 278-79, the specific factors considered in that case included factors relevant to both intervention of right, such as "the legal 'interest' that a party seeks to 'protect' through intervention on appeal," *id.* at 277 (quoting Fed. R. Civ. P. 24(a)(2)), and permissive intervention, such as prejudice, *see id.* at 281-82; *see also* Fed. R. Civ. P. 24(b)(3) (requiring a district court to consider delay and prejudice in connection with a motion for permissive intervention).

Post-*Cameron*, other circuit courts of appeals have continued to differentiate between permissive intervention and intervention of right on appeal. *See E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 20204) (citing *Cameron* and analyzing a motion to intervene on appeal as a motion "[t]o intervene as of right under Rule 24(a)(2)"); *Humane Society of the U.S. v. U.S. Dep't of Agr.*, 54 F.4th

833, 736 (D.C. Cir. 2022) (Rao, J. dissenting) (stating that the proposed intervenor on appeal "satisfies the requirements for intervention of right under Federal Rule of Civil Procedure 24(a)"). Here, however, the Court need not decide whether the distinction between intervention as a matter of right and permissive intervention remains relevant to questions of appellate intervention post-*Cameron* because all of the factors addressed in *Cameron* and *AEF* point in the direction of permitting Mr. Haysbert to intervene.

### B. All of the *Cameron* and *AEF* Factors Support Permitting Mr. Haysbert to Intervene

In *AEF*, like in *Cameron*, this Court considered four factors as relevant to a motion to intervene on appeal: "the interests the [proposed intervenors] seek to represent," "the extent to which the existing parties adequately represent those interests," "the effect on the [proposed intervenors] and the current parties of granting or denying intervention," and "the timeliness of the [proposed intervenors'] request." *AEF*, 88 F.4th at 499 (citing *Cameron*, 595 U.S. at 276-82). As explained below, all four factors support granting Mr. Haysbert's request to intervene.

#### 1. Mr. Haysbert has an significant interest in the subject matter of this appeal

Mr. Haysbert seeks to intervene as an appellant in order to challenge the district Court's order revoking his *pro hac vice* status (the "Revocation Order").

This is an appropriate basis for intervention, as the Revocation Order is already at issue in this appeal because Plaintiff intends to raise the question of "[w]hether the district court erred by revoking [Mr. Haysbert's] pro hac vice status without meaningful notice and the opportunity to be heard," *see* Docketing Statement at 3 (Dkt. 14), thereby depriving Plaintiff of her choice of counsel.

Provided that the Revocation Order is properly before the Court in this appeal,[5] Mr. Haysbert has clear professional, reputational, and financial interests in that order, which was directed at Mr. Haysbert and deprived him of the right to serve as counsel for Plaintiff. As this Court has recognized, an order revoking an attorney's *pro hac vice* admission can "damage[]" "the attorney's reputation and livelihood." *Belue v. Leventhal*, 640 F.3d 567, 578 (2011) (quoting *Johnson v. Trueblood*, 629 F.2d 302, 303 (3d Cir. 1980)); *see also id.* at 579 (noting that such a sanction "may cause severe harm to [an attorney's] professional reputation[]"); *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 434 (1985) (referring to "an attorney's personal and financial interest in the disqualification decision").

Accordingly, because Mr. Haysbert seeks to represent "a significantly protectable interest," *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)), the nature of his interest weighs in favor of intervention.

---

[5] As explained in Section II, below, it is.

2.    <u>Mr. Haysbert's interests are not adequately represented</u>

The burden on a proposed intervenor "of showing an inadequacy of representation is minimal," *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976), and the requirement is "satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) Here, even though Plaintiff and Mr. Haysbert have a shared objective of overturning the Revocation Order, Plaintiff is unable to adequately represent Mr. Haysbert's interests for the following reasons.

First, Plaintiff's objective is subordinate to, and conditioned upon, her primary objective of obtaining a new trial. This is because Plaintiff's objective rests on her interest in being represented by the counsel of her choice. *Cf. Richardson-Merrell*, 472 U.S. at 441 (Brennan, J., concurring) ("A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings."). But Plaintiff's interest is only implicated if there is another proceeding in which she could be represented by Mr. Haysbert. Therefore, if the Court sustains the judgment below in favor of Defendant, considerations of standing or mootness may bar Plaintiff from obtaining a decision with respect to the Revocation Order.

Second, because of the differences between the nature of Plaintiff's interest and Mr. Haysbert's, it is possible that the Court could conclude that any error was

harmless with respect to Plaintiff, even when it would reach the opposite conclusion with respect to Mr. Haysbert. For example, the Court could find that Plaintiff was not prejudiced by the Revocation Order because she obtained competent replacement counsel and is unable to prove how Mr. Haysbert would have litigated her case differently or that she would have obtained a different outcome at trial had she been represented by her first-choice counsel. In contrast, the Revocation Order's effect on Mr. Haysbert's professional, reputational, and financial interests makes it unlikely that the Court would find any error to have been harmless or, at a minimum, means that there are circumstances in which the Court could reach a different conclusion with respect to Mr. Haysbert's interests than it would with respect to Plaintiff's.

Accordingly, the fact that Mr. Haysbert's distinct interests would be inadequately represented by Plaintiff weighs in favor of intervention.

3.   <u>Mr. Haysbert would be prejudiced by the denial of this motion, whereas Defendant would not be unduly delayed or prejudiced if it were granted</u>

If Mr. Haysbert is not permitted to intervene,[6] it would significantly prejudice his ability to protect his professional, reputational, and financial interests because this appeal will determine whether the Revocation Order is subject to appellate review and, if so, whether it should be upheld. There is also no future opportunity

---

[6] Or otherwise granted the status of an appellant. *See infra* Section III.

for Mr. Haysbert (or anyone else) to obtain appellate review of the Revocation

Order. *Cf.* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1913 (3d ed.) ("if there is

another adequate remedy available to protect the intervenor's rights, this may

persuade the court to deny leave to intervene").[7]

   In contrast, the prejudice to Defendant from the granting of this motion, if

any, would be minimal, as this motion is being filed before either party has

submitted its appellate brief, and Mr. Haysbert is not seeking to file a separate brief

from Plaintiff. Mr. Haysbert also does not intend to raise new claims of error. And

finally, granting this motion would not delay the resolution of the appeal.[8]

Accordingly, Mr. Haysbert would suffer far greater prejudice if this motion is

denied than Defendant would if it is granted.

---

[7] Mr. Haysbert also did not have the right to appeal earlier, as contrary to Defendant's contention, *see* Dkt. 20 at 3, the voluntary dismissal of *Haysbert I* did not create a appealable final judgment, *see Microsoft Corp. v. Baker*, 582 U.S. 23, 41 (2017) (holding that "§ 1291's firm final-judgment rule is not satisfied whenever a litigant persuades the district court to issue an order purporting to end the litigation"); *Keena v. Groupon, Inc*., 886 F.3d 360, 365 (4th Cir. 2018) (referring to "the longstanding principle that a party is not entitled to appeal from a consensual dismissal of her claims"), nor was the revocation order appealable under the collateral order doctrine, *Richardson-Merrell*, 472 U.S. at 440.

[8] In order to avoid any delay as a result of this motion, and to enable the Court to obtain the fullest understanding of the underlying facts and issues, Mr. Haysbert proposes that (i) he be permitted to join in Plaintiff's reply briefs in his capacity as a proposed intervenor; (ii) Defendant's opposition to this motion be included in the it's appellee's brief; (iii) Mr. Haysbert's reply to Defendant's opposition be included in Plaintiff's reply brief; and (iv) the Court should defer its determination of this motion until briefing and oral argument are complete.

4.    Mr. Haysbert's application is timely

Generally, filing a motion to intervene as soon as an intervenor realizes its interests are not adequately protected is sufficient to meet the timeliness requirement. *Cameron*, 595 U.S. at 279-80 (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1973)). Here, as explained in Appellants' Motion to Correct the Caption, Mr. Haysbert believed that, because he filed a timely notice of appeal, he was already an appellant. *See* Dkt. 17 at 2-3. It was only after the Court denied that motion without explanation on May 12, 2025, *see* Dkt. 21, that Mr. Haysbert had any reason to believe that intervention might be necessary.

Following that realization, Mr. Haysbert moved promptly to intervene, filing the instant motion fewer than 30 days after the denial of the motion to correct the captin. Mr. Haysbert thereafter acted without delay, accounting for the need to assess Mr. Haysbert's status and the available options, the time necessary to research and draft this motion, and pre-existing obligations in other cases on undersigned counsel, a solo practitioner.

This application is also timely because it is made early in the appellate proceedings, before either party has filed their principal brief, and as noted above, will not delay the resolution of this matter. *Cf.* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.) (explaining "intervention ordinarily will be allowed" if it "will not delay the termination of the litigation").

Accordingly, because Mr. Haysbert has timely sought to intervene, each of the above factors weighs in favor of intervention, and Mr. Haysbert should be permitted to intervene as an appellant in this appeal.[9]

## II.    THE COURT HAS JURISDICTION TO REVIEW THE REVOCATION ORDER BECAUSE THE PRETRIAL ORDERS AND PROCEDURAL HISTORY FROM *HAYSBERT I* WERE ADOPTED BY THE DISTRICT COURT IN *HAYSBERT II*

Defendant is expected to object to the consideration of Revocation Order in this appeal because it was initially issued in *Haysbert I*. However, as explained below, the district court in *Haysbert II* adopted the orders issued in *Haysbert I* as if they had been entered in *Haysbert II* originally.

As a general rule, "an appeal from a final judgment permits review of all rulings that led up to the judgment," *68th St. Site Work Grp. v. Alban Tractor Co.*, 105 F.4th 222, 228 (4th Cir. 2024), and a party must "raise all claims of error in a single appeal following final judgment on the merits," *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374 (1981). Here, if not for the voluntary dismissal of *Haysbert I*, there would be little, if any, doubt that the order revoking his *pro hac vice* status would be reviewable on appeal from a final judgment following trial. *See, e.g.*, *Bulter v. Biocore Med. Tech.*, 348 F.3d 1163, 1166 (10th Cir. 2003) ("Pursuant to 28 U.S.C. § 1291 as limited by Article III, we have jurisdiction to hear appeals from the final orders of district courts, including post-judgment appeals by attorneys of

---

[9] Mr. Haysbert also has standing to appeal. *See infra* Section III.

orders that directly aggrieve them.") (internal quotation marks omitted); *Kirkland v. Nat'l Mortg. Network Inc.*, 884 F.2d 1367, 1369-70 (11th Cir. 1989) (finding that it has jurisdiction to hear an appeal by the defendant and its attorney of an order revoking the attorney's *pro hac vice* admission as part of an appeal from the final judgment); *Johnson v. Trueblood*, 629 F.2d 302, 303 (3d Cir. 1980) (holding that an attorney may appeal the revocation of *pro hac vice* status); *see also Belue v. Leventhal*, 640 F.3d 567, 569 (4th Cir. 2011) (hearing an appeal from three attorneys of the revocation of their *pro hac vice* status).

The question, however, is whether the voluntary dismissal of *Haysbert I* under the conditions imposed by the district court deprived this Court of jurisdiction to review the Revocation Order in an appeal from the judgment in the refiled case, *Haysbert II*.

It did not. As explained below, the Revocation Order in the district court remains subject to review in this appeal despite initially having been entered in *Haysbert I* because the conditions attached to the voluntary dismissal meant that the district court's orders in *Haysbert I* were automatically adopted in *Haysbert II* as if they had originally been entered in the refiled case. What's more, a contrary conclusion would leave significant pretrial orders unreviewable.

The Seventh Circuit addressed an analogous situation in *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680 (7th Cir. 1998). In that case, after being

denied permission to supplement its expert reports, the plaintiffs moved to

voluntarily dismiss its case. The plaintiffs' motion was granted, subject to the

condition "that all rulings and orders in this case apply in any subsequent refiled

action." Plaintiffs later refiled their lawsuit and the refiled case was eventually

dismissed. The plaintiffs appealed from the dismissal of the re-filed case, as well as

from two pretrial orders entered in the original case. *See id.* at 684. The Seventh

Circuit concluded that it had jurisdiction to review the orders from the original

case, explaining:

> Pursuant to the court's order granting the voluntary dismissal of
> LeBlang I, all pretrial orders in LeBlang I would apply in subsequently
> refiled cases. Thus, these two pretrial orders from LeBlang I applied to
> LeBlang II. . . . Because the court's order granting the voluntary
> dismissal of LeBlang I essentially required the court and the parties to
> treat all pretrial orders of LeBlang I as if they had been entered in
> LeBlang II, one of these orders is now reviewable on appeal.

*Id.* at 687.

The decision in *LeBlang* is precisely on point.[10] In this case, when the district

court granted Plaintiff's motion for voluntary dismissal without prejudice, it

imposed a number of conditions, including that "[i]f the case is refiled, all existing

pretrial determinations will be maintained" and "it will be procedurally in the same

---

[10] To the best of undersigned counsel's knowledge, *LeBlang* is the only federal
appellate decision addressing how a condition on refiling similar to the one here
affects the appealability of an order initially entered in the voluntarily dismissed
case.

position as the instant case." *See* Exhibit J at 116. Thus, like in *LeBlang*, "the court's order granting the voluntary dismissal of [*Haysbert I*] essentially required the court and the parties to treat all pretrial orders of [*Haysbert I*] as if they had been entered in [*Haysbert II*]." *LeBlang*, 148 F.3d at 687.

This understanding of the condition attached to the dismissal of *Haysbert I* is confirmed by the district court's actions in *Haysbert II*. For example, in its first scheduling order in *Haysbert II*, the district court stated that "[t]his Order shall supersede all prior Scheduling and Pretrial Orders that have been entered in this matter," Exhibit Q, p. 158, referring to orders issued in "the previous iteration of this case," *i.e.*, *Haysbert I. See id*. Such a statement only makes if the scheduling and pretrial orders from *Haysbert I* had been adopted in *Haysbert II*.[11] Similarly, in preparing the Final Pretrial Order, the district court noted that it had "included various previous [*i.e.*, from Haysbert I] rulings and notes that were not included in the parties' submission to make the final pretrial order consistent with the current standing of the case." Exhibit R., p. 166.

The parties also treated pretrial orders originally entered in *Haysbert I* as binding in *Haysbert II*, *see, e.g.*, Exhibit S, p. 170; Exhibit T, pp. 180-82, and

---

[11] In its order, the district court expressly recognized that "[t]his matter is 'procedurally in the same position' as" *Haysbert I*, and that "all existing pretrial determinations [from *Haysbert* I] will be maintained." Exhibit Q, p. 158 (quoting Exhibit J, p. 116).

referenced such rulings in the proposed final pretrial order submitted to the court, *see* Exhibit U, pp. 222-24, 227-29, *see also generally* Exhibit P, pp. 148-49. Defendant also objected to what it termed "[s]upplemental [e]xpert disclosures" based on the alleged violation of a condition on voluntary dismissal imposed in *Haysbert I*, *see* Exhibit V, p. 239 ("This Order does not give Plaintiff leave to supplement expert disclosures.") (citing Exhibit J).

The above is also true with respect to Mr. Haysbert and the Revocation Order specifically. At the final pretrial conference, counsel for Defendant repeatedly raised (or stated the intention to raise) objections based on alleged non-compliance with the Revocation Order, *see* Exhibit W, pp. 261:5-12, 273:19-22, 293:9-14, 295:10-12, 295:7-10, 301:9-14, 302:24-303:4, 304:14-19, 320:11-17, 321:2-15, leading the district court to interpret the Revocation Order, *see id.* at 317:21-319:10. 326:20-327:11, 328:1-12. Recognizing that "this may be an issue at trial," the district court then invited the parties to submit briefs on the limitations imposed by the Revocation Order*, see id.* at 327:14-24, 328:14-15. Plaintiff did so in the form of a motion to clarify or rescind the district court's comments, *see* Exhibit X, which the district court granted in part, electing to clarify its interpretation of the revocation order, but not rescind it, *see* Exhibit Y.

The Revocation Order itself, ECF No. 315 in *Haysbert I*, was cited during the *Haysbert II* proceedings by both Defendants and Plaintiff, *see* Exhibit T, pp. 201,

216 (Defendants' motion *in limine*); Exhibit Z, p. 353-54 (Plaintiff's memorandum in support of reconsideration of an order excluding an expert witness), Exhibit AA, pp. 370, 374 (order denying Plaintiff's motion for reconsideration), as well as in Plaintiff's motion to clarify or rescind the district court's comments, *see* Exhibit X, pp. 339-41, and the court's order on that motion, *see* Exhibit Y, p. 345.[12]

Accordingly, like in *LeBlang*, under the conditions attached to the voluntary dismissal of Haysbert I, the pretrial orders from *Haysbert I*—including the order revoking Mr. Haysbert's *pro hac vice* status—were effectively adopted in *Haysbert* II, as if they had been entered in *Haysbert II*.

Indeed, the district court in *Haysbert II* went beyond *LeBlang*, adopting not only the pretrial orders from *Haysbert I*, but its entire procedural history. This is evident from*, inter alia*, the district court's *sua sponte* August 28, 2024 order to show cause, *see* Exhibit BB, in response to Defendant Bloomin' Brands' July 24, 2024 motion to dismiss the cause of action against it on the grounds that it was "not responsible for any act or omission at the subject location." *See* Exhibit CC, p. 382. In its order, the district court stated that:

> One of the[] conditions [in the order granting Plaintiff's motion for voluntary dismissal] specified that if the case was refiled, "all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case."

---

[12] The parties have already stipulated to include the Revocation Order as part of the record on appeal based on the citation thereto in Exhibit Y. *See* Dkt. 26.

> Defendant Bloomin' Brands, Inc. was not dismissed from the original case prior to Plaintiff's voluntary dismissal and its Motion to Dismiss, if granted, would place the case in a different procedural posture than the previous case. See id. Thus, Defendant is ORDERED to SHOW CAUSE as to why its Motion to Dismiss, should not be struck.

Exhibit BB, pp. 378-79 (footnotes and citations omitted). The court further noted, based on its own review of the record from *Haysbert I*, that "Defendant Bloomin' Brands, Inc. never moved to be dismissed from the original case, even though the Complaint in the instant case is substantially the same as the one previously filed." *Id.* (citing Exhibit A, pp. 10-19).

Accordingly, because the district court in *Haysbert II* adopted the pretrial orders originally entered in *Haysbert I*, such orders are properly subject to review in this appeal.

Any contrary conclusion would risk arbitrarily depriving similarly situated litigants of their right to a meaningful appeal. When orders entered in a voluntarily dismissed case govern the proceedings in the refiled case, an aggrieved party is entitled to challenge those rulings on appeal. To hold otherwise would create a class of orders which, while binding on the parties in the refiled case, could never be appealed, even if such orders effectively dictated the outcome of the case and regardless of how egregiously erroneous they are. That cannot and should not be the case.

### III. THE COURT MAY ALSO MOOT THIS MOTION BY RECOGNIZING THAT MR. HAYSBERT IS ALREADY AN APPELLANT

Mr. Haysbert would also welcome a decision denying this motion as moot on the grounds that he already has the status of an appellant and intervention is therefore unnecessary.

"As a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment." *United States v. Under Seal*, 853 F.3d 706, 721 (4th Cir. 2017) (quoting *Doe v. Public Citizen*, 749 F.3d 246, 257 (4th Cir. 2014)). "The reason for such a rule is obvious: because a nonparty generally is not bound by a judgment, he [or she] ordinarily cannot be aggrieved by the judgment to the extent necessary to permit appellate review." *Id.* (quoting *Kenny v. Quigg*, 820 F.2d 665, 667 (4th Cir. 1987)).

"In cases where the justifications behind the general rule are inapplicable, however, [the Court has] shown greater flexibility with respect to nonparty appellants." *Under Seal*, 853 F.3d at 721. As explained in *Public Citizen*, "a nonparty [may] appeal a district court's order or judgment when the appellant (1) possessed an interest in the cause litigated before the district court and (2) participated in the proceedings actively enough to make him privy to the record." *Id.* (quoting *Public Citizen,* 749 F.3d at 259) (alterations in original).

Here, Mr. Haysbert meets both of the *Public Citizen* requirements for nonparty appeals. Mr. Haysbert possessed professional, reputational, and financial

interests that were affected by the Revocation Order, as explained above, but was the named subject of, and bound by, the Revocation Order in the same manner that a party would be. He also actively participated in the proceedings connected to that order and is privy to the record.

Mr. Haysbert would also have constitutional and prudential standing on appeal because he was adversely affected by the the Revocation Order, is not advancing the rights of others or asserting a generalized grievance, and falls within the zone of interests protected by the Due Process Clause. *See generally* Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3902 (3d ed.); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984) (discussing prudential standing); *Belue*, 640 F.3d at 576 (explaining that attorneys have a right to due process before their *pro hac vice* status is revoked).

Mr. Haysbert also met the procedural requirements of Federal Rule of Appellate Procedure 3, having filed a timely notice of appeal from the final judgment in *Haysbert II*, *see* Exhibit O, which "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order," Fed. R. App. 3(c)(4).

The Court may therefore moot this motion to intervene by recognizing Mr. Haysbert's status as an appellant instead.

## CONCLUSION

For all of the foregoing reasons, the Court should permit Mr. Haysbert to intervene in this appeal as an appellant, or moot this motion by recognizing Mr. Haysbert's status as an appellant.

DATED: June 9, 2025                    Respectfully submitted,

/s/ Judah J. Ariel
Judah J. Ariel
ARIEL LAW
751 Fairmont St. NW #3
Washington, DC 20001
(202) 681-3032

*Counsel for Proposed Intervenor*
*Nazareth M. Haysbert*