## UNITED STATES COURT OF APPEALS FOR THE
## FOURTH CIRCUIT

_____

)

**JOANN HAYSBERT**

)
)

_Plaintiff-Appellant,_

)
)          Case No. 25-1332

v.

)
)

**OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**

)
)
)

_Defendant-Appellee_

)

and

)
)

**BLOOMIN' BRANDS, INC.**

)
)

_Defendant_

)
)

_____ )

### DECLARATION OF JUDAH J. ARIEL
### IN SUPPORT OF THE MOTION OF NAZARETH M. HAYSBERT
### FOR LEAVE TO INTERVENE AS APPELLANT

I, Judah J. Ariel, declare as follows:

1.      I am an attorney licensed in the District of Columbia and admitted to practice before the U.S. Court of Appeals for the Fourth Circuit. I am counsel for Proposed Intervenor Nazareth M. Haysbert. I am submitting this declaration in support of the Motion of Nazareth M. Haysbert for Leave to Intervene as Appellant. I have personal knowledge of the matters contained herein, and if called as a witness to testify, I could and would do so competently.

1

2.     Attached as exhibits to this declaration are true and correct copies of the following documents from *Haysbert v. Bloomin' Brands, Inc.*, No. 4:20-cv-00121 (E.D. Va.):

- Exhibit A: Notice of removal, July 30, 2020 (ECF No. 1);

- Exhibit B: Nazareth Haysbert's approved *pro hac vice* application, Sept. 10, 2020 (ECF No. 14);

- Exhibit C: Docket report;

- Exhibit D: Minutes from trial days 1-5, Aug. 8- 4, 2023 (ECF Nos. 288, 291, 295, 307, 308);

- Exhibit E: Opinion granting Defendants' motion to quash, revoke Mr. Haysbert's *pro hac vice* status, and for a mistrial, Aug. 23, 2023 (ECF No. 315);

- Exhibit F: Plaintiff's notice requesting a new trial, Sept. 1, 2023 (ECF No. 316);

- Exhibit G: Order granting local counsel Adam Douglas McKelvey's motion to withdraw, Oct. 12, 2023 (ECF No. 333);

- Exhibit H: Pretrial conference minutes, Oct. 30, 2023 (ECF No. 338);

- Exhibit I: Memorandum in support of Plaintiff's motion for voluntary dismissal, Dec. 18, 2023 (ECF No. 350); and

- Exhibit J: Order granting Plaintiff's motion for voluntary dismissal with conditions, Jan. 11, 2024 (ECF No. 357).

3.     Further attached as exhibits to this declaration are true and correct copies of the following documents from *Haysbert v. Outback Steakhouse of Fla., LLC*, No. 4:24-cv-00087 (E.D. Va.):

- Exhibit K: Complaint, June 11, 2024 (ECF No. 1);

- Exhibit L: Order dismissing Defendant Bloomin' Brands, Jan. 24, 2025 (ECF No. 42);

- Exhibit M: Minutes from trial days 1-4, Feb. 25-28, 2025 (ECF Nos. 58-61);

- Exhibit N: Clerk's judgment, Feb. 28, 2025 (ECF No. 65);

- Exhibit O: Notice of appeal, Mar. 28, 2025 (ECF No. 73);

- Exhibit P: Motion to modify, correct, or supplement the record on appeal, June 6, 2025 (ECF No. 77);

- Exhibit Q: Scheduling order, Sept. 23, 2024 (ECF No. 22);

- Exhibit R: Final pretrial order, Jan. 24, 2025 (ECF No. 41);

- Exhibit S: Plaintiff's updated trial brief re: Work Order No. 2, Dec. 16, 2024 (ECF No. 29);

- Exhibit T: Defendants' motions in limine and memorandum in support, Dec. 16, 2025 (ECF Nos. 32-33);

- Exhibit U: Proposed final pretrial order (ECF No. 34);

- Exhibit V: Defendants' objections (ECF No. 36-1);

- Exhibit W: Transcript of the final pretrial conference, Jan 16, 2025 (ECF No. 39);

- Exhibit X: Plaintiff's motion to clarify or rescind, Jan. 24, 2025 (ECF No. 40);

- Exhibit Y: Order on motion to clarify or rescind, Feb. 19, 2025 (ECF No. 50);

- Exhibit Z: Memorandum in support of Plaintiff's motion to reconsider order excluding Plaintiff's expert witness, Jan 29, 2025 (ECF No. 44);

- Exhibit AA: Order denying Plaintiff's motion to reconsider order excluding Plaintiff's expert witness, Feb. 19, 2025 (ECF No. 52)

- Exhibit BB: Order to show cause, Aug. 28, 2024 (ECF No. 14); and

- Exhibit CC: Defendant Bloomin' Brands' motion to dismiss, July 24, 2024 (ECF No. 7).

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, District of Columbia on June 9, 2025.

_____

Judah J. Ariel

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| JOANN WRIGHT HAYSBERT | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BLOOMIN' BRANDS, INC., | ) | Case No.: _____ |
| and | ) | |
| OUTBACK STEAKHOUSE OF | ) | |
| FLORIDA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Defendants, Bloomin' Brands, Inc. ("Bloomin' Brands") and Outback Steakhouse of Florida, LLC ("Outback"), by counsel, pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446, hereby removes the action brought against it by Joann Wright Haysbert ("Haysbert") in the Circuit Court of the City of Hampton, styled <u>JoAnn Wright Haysbert v. Bloomin' Brands, Inc., and Outback Steakhouse of Florida, LLC</u>. As grounds for removal, Defendants state the following:

## PARTIES

1. On or about June 29, 2020, Haysbert filed a Complaint against Bloomin' Brands and Outback in the Circuit Court of the City of Hampton. A copy of the Complaint is attached as Exhibit A.

2. The Complaint was served on Corporate Creations Network, the Registered Agent for Defendants on July 13, 2020.

3. On information and belief, Haysbert is a citizen of the Commonwealth of Virginia.

4. At the time this action was commenced in the Circuit Court of the City of Hampton and at the time of the filing of this Notice of Removal, Bloomin' Brands and Outback were and

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

006

remain corporations organized and existing under the laws of Delaware with their principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

5. Defendants Bloomin' Brands and Outback are not citizens of Virginia and complete diversity exists. Pursuant to 28 U.S.C. §§ 1332 and 1441, this Court has subject matter jurisdiction over the action.

6. The amount in controversy, pursuant to Plaintiff's Complaint, exceeds $75,000, exclusive of interests and costs.

7. The last day of the 30 day period to remove falls on August 13, 2020. Therefore, this notice of removal is timely filed within 30 days' notice of the initial pleading under 28 U.S.C. § 1446(b) and FRCP 6(a)

8. The United States District Court for the Eastern District of Virginia, Newport News Division, embraces the City of Hampton.

## PROCESS AND PLEADINGS

9. A copy of the Complaint and Summons is attached as Exhibit A. No other process, pleadings, or orders have been served upon Defendants. A copy of Bloomin' Brands and Outback's Answers and Grounds of Defense is attached as Exhibit B.

10. The Circuit Court of the City of Hampton has been notified of the removal of this action. (Exhibit C).

## BRIEF IN SUPPORT

11. Bloomin' Brands and Outback will not file a brief in support of their Notice of Removal. According to the United States District Court for the Eastern District of Virginia Local Rule 7(F), briefs are only required to support motions.

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD  •  SUITE 400  •  FAIRFAX, VIRGINIA 22030  •  (703) 385-1000  •  FAX (703) 385-1555

007

WHEREFORE, Defendants, Bloomin' Brands and Outback request that this action be

removed to this Court and that this Court assume subject matter jurisdiction.

**BLOOMIN' BRANDS, INC.**
**and**
**OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**
By Counsel

_/s/_ John D. McGavin
John D. McGavin, VSB No. 21794
jmcgavin@bmhjlaw.com
Anna G. Zick VSB No. 86057
azick@bmhjlaw.com
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Blvd. Suite 400
Fairfax, Virginia 22030
(703)385-1000 Telephone
(703)385-1555 Facsimile
*Counsel for Defendant*

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD  •  SUITE 400  •  FAIRFAX, VIRGINIA 22030  •  (703) 385-1000  •  FAX (703) 385-1555

008

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2020, a true and accurate copy of the foregoing Notice of Filing a Notice of Removal was sent via mail and email to:

Stephen Teague, Esq.
Virginia State Bar No. 81006
Law Office of Stephen C. Teague
P.O. Box 706,
Newport News, VA 23607
contact@teaguelawoffice.com
Telephone:      (757) 317-0716
Facsimile:      (757) 215-2974

Nazareth M. Haysbert, Esq.
California State Bar No. 294431
James L. Moultrie III, Esq.
California State Bar No. 296805
Haysbert Moultrie, LLP
4640 Admiralty Way, Suite 500
Marina Del Rey, California 90292
nazareth@hmlaw.la
james@hmlaw.la
Telephone:      (310) 496-5796
Facsimile:      (310) 760-4083

*Counsel for Plaintiff*

        John D. McGavin /s/

John D. McGavin, VSB No. 21794
jmcgavin@bmhjlaw.com
BANCROFT, McGAVIN,
       HORVATH & JUDKINS, P.C.
9990 Fairfax Blvd. Suite 400
Fairfax, Virginia 22030
(703)385-1000 Telephone
(703)385-1555 Facsimile
*Counsel for Defendant*

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD  •  SUITE 400  •  FAIRFAX, VIRGINIA 22030  •  (703) 385-1000  •  FAX (703) 385-1555

009

**VIRGINIA:**

**IN THE CIRCUIT COURT OF THE CITY OF HAMPTON** Part 3

| | | |
|---|---|---|
| **JOANN WRIGHT HAYSBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL CASE NO.:** CL20-1427 |
| **v.** | ) | |
| | ) | |
| **BLOOMIN' BRANDS, INC.,** | ) | |
| Serve: | ) | **JURY TRIAL DEMANDED** |
| Corporate Creations Network Inc. | ) | |
| 6802 Paragon Place, Suite 410 | ) | |
| Richmond, VA 23230 | ) | |
| | ) | |
| **OUTBACK STEAKHOUSE OF** | ) | |
| **FLORIDA, LLC,** | ) | |
| Serve: | ) | |
| Corporate Creations Network Inc. | ) | |
| 425 W. Washington Street, Suite 4 | ) | |
| Suffolk, VA 23434-5320 | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, JoAnn Wright Haysbert, by counsel, and for her

Complaint against the Defendants, Bloomin' Brands, Inc., and Outback Steakhouse

of Florida, LLC, states as follows:

1

Exhibit A

## The Parties

1.    The Plaintiff, JoAnn Wright Haysbert ("Ms. Haysbert"), is and at all times relevant to this Complaint has been a citizen and resident of the Commonwealth of Virginia and the City of Hampton.

2.    Bloomin' Brands, Inc., at all times relevant to this Complaint, is a company of restaurants that owns and operates several restaurant chains, including Outback Steakhouse of Florida, LLC.  The Outback Steakhouse restaurant at issue in this complaint is organized under and pursuant to the laws of the Commonwealth of Virginia.   Bloomin' Brands is headquartered at 2202 North West Shore Boulevard, Suite 500, Tampa, Florida 33607.

3.    Outback Steakhouse of Florida, LLC, is an LLC authorized to conduct business in the Commonwealth of Virginia and subject to its laws and jurisdiction. Outback Steakhouse of Florida, LLC, is headquartered at 2202 North West Shore Blvd, 5th Floor, Tampa, Florida 33607.

## Jurisdiction and Venue

4.    This Court has jurisdiction over this dispute because the acts giving rise to the claims at issue took place within the Commonwealth of Virginia.

5.    Plaintiff JoAnn Wright Haysbert is a citizen of the Commonwealth of Virginia, and the Outback Steakhouse restaurant at issue is in Virginia.

6.      This Court has exclusive original jurisdiction over this dispute because the damages sought pursuant to this Complaint are in excess of $25,000.

7.      Venue is proper in this Court because Outback Steakhouse of Florida, LLC, conducts substantial business activity in Hampton, Virginia, and there is a substantial nexus to this forum based on the location of Plaintiff and fact witnesses. (Virginia Code § 8.01-262).

8.      Pursuant to the Fifth Order Modifying and Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency issued by the Supreme Court of Virginia through Chief Justice Donald W. Lemons and Va. Code § 17.1-330, the statute of limitations for filing this case was tolled from March 16, 2020 through June 28, 2020.

**Factual Background**

9.      On or about May 23, 2018, JoAnn Wright Haysbert ("Ms. Haysbert") entered the Outback Steakhouse located at 4312 Portsmouth Boulevard, Chesapeake, Virginia 23321, to get dinner with her daughter.

10.     As Ms. Haysbert entered the restaurant, she asked an employee of Outback Steakhouse for directions to the ladies' room, and the employee pointed toward the restrooms.

11.     Ms. Haysbert took two steps before slipping on the floor, hitting her head and entire left side of her body on the ground.

3

12.     Ms. Haysbert lost consciousness for a few seconds as a result of the fall.

13.     Once she regained consciousness, Ms. Haysbert was disoriented, lost recollection of the events that had transpired, was unable to move, and needed to be helped up by three people, including the restaurant manager Lisa Crosby ("Ms. Crosby").

14.     Ms. Crosby asked Ms. Haysbert if she needed an ambulance, and Ms. Haysbert, in her altered mental state, declined.

15.     Ms. Crosby completed a Customer Incident Report and told Ms. Haysbert that she would call and give her a claim number at a later time.

16.     Ms. Haysbert's daughter, who was outside waiting for her in a car when the incident occurred, began icing down the left side of Ms. Haysbert's body to reduce the swelling, pain, and discomfort that she was experiencing from the fall.

17.     Ms. Haysbert additionally received a permanent and visible scar on the left side of her head where she made contact with the floor.

4



18.     On or about May 24, 2018, Ms. Haysbert had still not received a response from Ms. Crosby, so Ms. Haysbert called her and left a message.

19.     Ms. Crosby responded that she had tried several times to call and get a claim number, but that the lines were down.

20.     Ms. Haysbert did not hear from Ms. Crosby again.

21.     On or about May 25, 2018, a woman named Tristal called Ms. Haysbert and said that she was calling from the "corporate office."

22.     Ms. Haysbert told Tristal that she was supposed to receive a claim number from Ms. Crosby, but never did.

5

23.    Tristal told Ms. Haysbert that they did not have medical premise insurance, and that they would only cover out of pocket expenses beyond what Ms. Haysbert's own insurance paid for her treatment.

24.    Ms. Haysbert's condition was not improving despite resting and icing her injuries.

25.    Ms. Haysbert has demonstrated signs consistent with a traumatic brain injury ("TBI") from her severe impact with the floor.

26.    Ms. Haysbert traveled to Medicare Urgent Care at 10136 Two Notch Road, State Route 104, Columbia, South Carolina 29229 seeking treatment for her pain.

27.    The medical providers took full body x-rays of Ms. Haysbert's left side and hand.

28.    Ms. Haysbert was found to have several contusions and needed a splint for her left hand and wrist to correct a sprain. Ms. Haysbert was prescribed pain medication and released.

29.    Following this visit, Ms. Haysbert continued to suffer symptoms consistent with TBI, including post-traumatic vertigo.

## COUNT I

## NEGLIGENCE

30.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though fully set forth herein.

31.     On May 23, 2018, the floor at the Outback Steakhouse in Chesapeake, Virginia was not in a reasonably safe condition.

32.     Further, an employee of Outback Steakhouse directed Ms. Haysbert toward the slippery area on the floor and did not give any warning as to its condition.

33.     Defendant, through its agents and employees, had a duty to exercise reasonable care toward the safety of customers and others lawfully on the premises, including the duty:

a. to avoid allowing unsafe or dangerous conditions to exist on the premises;

b. to make reasonable inspections, from time to time, to determine whether such conditions exist;

c. to ensure that the surface of the floors of the premises are safe after they are cleaned;

d. to keep and maintain the premises, including the floors, in a reasonably safe condition;

7

     e. to remove foreign objects from the floor which it may have placed there, or which it knew or should have known that other persons placed there;

     f. to exercise, at all times, ordinary care to protect customers while on the premises; and

     g. to warn those on the premises of any unreasonable, unsafe or dangerous conditions which are known to, or should be known to, Defendants and/or their agents or employees.

34. No preventative measures such as carpeting, signage, railings, etc., were in place to keep incidents like this from happening.

35. Placing carpeting or signage would cost the restaurant almost nothing and would prevent customers from slipping and falling on the premises.

36. Defendant knew, or through the exercise of reasonable care should have known, of the unsafe condition of the floor.

37. The condition of the floor was not patent or obvious to customers just walking in to the restaurant.

38. As a direct, proximate, and foreseeable result of the negligently maintained floor, Ms. Haysbert fell to the ground where she sustained serious injuries.

017

39.    As the owner and operator of the Outback Steakhouse in Chesapeake, Virginia, Bloomin' Brands Inc. and Outback Steakhouse of Florida, LLC, are liable for injuries that occur on the premises as a result of the acts or omissions of their agents and employees.

40.    Ms. Haysbert was not contributorily negligent.

WHEREFORE, in consideration of the foregoing, the Plaintiff, Ms. Haysbert, respectfully prays that she be granted judgment against the Defendants as follows:

1.    Damages proximately resulting from the negligence of each Defendant for past, present and future pain and suffering in the amount of $2,000,000 or other specific amount to be established at trial;

2.    Compensation for medical bills and expenses incurred to diagnose, treat, and manage the pain of Plaintiff's injuries in the amount of $500,000;

3.    Costs incurred in pursuing this action;

4.    Such other and further relief as the Court may deem appropriate.


**JURY TRIAL HEREBY DEMANDED**

JOANN WRIGHT HAYSBERT

Respectfully Submitted,


9

018

**LAW OFFICE OF STEPHEN C. TEAGUE**

By:  _Stephen Teague_
     Stephen C. Teague, Esq.


Stephen Teague, Esquire.  Virginia State Bar No. 81006
Law Office of Stephen C. Teague
P.O. Box 706,
Newport News, VA 23607
Telephone:   (757) 317-0716
Facsimile:   (757) 215-2974

Nazareth M. Haysbert, Esquire. California State Bar No. 294431*
James L. Moultrie III, Esquire. California State Bar No. 296805*
**Haysbert Moultrie, LLP**
4640 Admiralty Way, Suite 500
Marina Del Rey, California 90292
Telephone:   (310) 496-5796
Facsimile:   (310) 760-4083
*Attorneys for Plaintiff JoAnn Wright Haysbert*
*Application for admission *pro hac vice* forthcoming

10

019

JUL 1 3 2020

V I R G I N I A:

## IN THE CIRCUIT COURT OF THE CITY OF HAMPTON

| | |
|---|---|
| JOANN WRIGHT HAYSBERT | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Case No: CL20-1427 |
| | * |
| OUTBACK STEAKHOUSE OF FLORIDA, | * |
| LLC, et al. | * |
| | * |
| Defendants. | * |

### ANSWER TO THE COMPLAINT

COME NOW the defendants, Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC, and for their Answer to the Complaint filed herein, state as follows:

1. Defendants can neither admit nor deny the allegations of paragraph 1 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

2. Defendant denies that Bloomin' Brands, Inc. is a proper party to this litigation, denies the allegations that "The Outback Steakhouse restaurant at issue in this Complaint is organized under and pursuant to the laws of the Commonwealth of Virginia". To the extent that allegation asserts that the corporate entities are Virginia corporations. Defendant admits that Bloomin' Brands, Inc. is headquartered in Tampa, Florida.

3. Defendant admits Outback Steakhouse of Florida, LLC is authorized to

1

**Exhibit B**

conduct business in the Commonwealth of Virginia and subject to its laws and jurisdiction and is headquartered at 2202 North West Shore Blvd., in Tampa, Florida.

4. Defendants deny the allegations of paragraph 4.

5. Defendants admit the allegations of paragraph 5.

6. Defendants deny the allegations of paragraph 6.

7. Defendants deny the allegations of paragraph 7.

8. Defendants admit that the Supreme Court of Virginia have issued certain emergency Orders but can neither admit nor deny that this cause of action is timely filed at this time.

9. Defendants can neither admit nor deny the allegations of paragraph 9 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

10. Defendants can neither admit nor deny the allegations of paragraph 10 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

11. Defendants deny the allegations of paragraph 11.

12. Defendants deny the allegations of paragraph 12.

13. Defendants deny the allegations of paragraph 13.

14. Defendants deny the allegations of paragraph 14.

15. Defendants can neither admit nor deny the allegations of paragraph 15 having insufficient information to fully and fairly respond and, therefore, these

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD  •  SUITE 400  •  FAIRFAX, VIRGINIA 22030  •  (703) 385-1000  •  FAX (703) 385-1555

allegations shall be construed as denied.

16. Defendants can neither admit nor deny the allegations of paragraph 16 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

17. Defendants can neither admit nor deny the allegations of paragraph 17 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

18. Defendants can neither admit nor deny the allegations of paragraph 18 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

19. Defendants can neither admit nor deny the allegations of paragraph 19 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

20. Defendants can neither admit nor deny the allegations of paragraph 20 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

21. Defendants can neither admit nor deny the allegations of paragraph 21 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

22. Defendants can neither admit nor deny the allegations of paragraph 22 having insufficient information to fully and fairly respond and, therefore, these

3

allegations shall be construed as denied.

23.  Defendants can neither admit nor deny the allegations of paragraph 23 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

24.   Defendants can neither admit nor deny the allegations of paragraph 24 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

25.   Defendants deny the allegations of paragraph 25.

26.   Defendants can neither admit nor deny the allegations of paragraph 26 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

27.  Defendants can neither admit nor deny the allegations of paragraph 27 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

28.  Defendants can neither admit nor deny the allegations of paragraph 28 having insufficient information to fully and fairly respond and, therefore, these allegations shall be construed as denied.

29.  Defendants deny the allegations of paragraph 29.

30.  Defendants incorporate by reference their responses to all preceding paragraphs as if repled herein.

31.  Defendants deny the allegations of paragraph 31.

4

32. Defendants deny the allegations of paragraph 32.

33. Defendants deny the allegations of paragraph 33.

34. Defendants deny the allegations of paragraph 34.

35. Defendants deny the allegations of paragraph 35.

36. Defendants deny the allegations of paragraph 36.

37. Defendants deny the allegations of paragraph 37.

38. Defendants deny the allegations of paragraph 38.

39. Defendants deny the allegations of paragraph 39.

40. Defendants deny the allegations of paragraph 40.

41. For further answer and by way of grounds of defense, these defendants state as follows:

a. Defendants deny that they jointly, severally or vicariously committed any act or omission constituting negligence in this regard.

b. Defendants deny that they had any notice of any allegedly defective condition herein.

c. Defendants assert that any and all defects alleged herein were open and obvious.

d. Defendants assert the defenses of contributory negligence and assumption of the risk.

e. Defendants deny that they are indebted to the plaintiff under any theory of law.

5

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD  •  SUITE 400  •  FAIRFAX, VIRGINIA 22030  •  (703) 385-1000  •  FAX (703) 385-1555

025

42.   Defendants demand trial by jury on all issues joined.

WHEREFORE, the foregoing considered, the defendants, Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC, by counsel, move this court to dismiss this cause of action and award them costs expended.

> **BLOOMIN' BRANDS, INC.**
> **OUTBACK STEAKHOUSE OF FLORIDA, LLC**
> By Counsel

BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703)385-1000 Telephone
(703)385-1555 Facsimile

_for VSB 93585_

John D. McGavin, VSB No: 21794
jmcgavin@bmhjlaw.com
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **Answer to the Complaint** was mailed, postage prepaid, on this 26th day of July, 2020, to:
30th

Stephen Teague, Esquire
P.O. Box 706
Newport News, VA 23607

Nazareth M. Haysbert, Esquire
James L. Moultrie, III, Esquire
4640 Admiralty Way, Suite 500
Marina Del Ray, CA 90292

_for VSB 93585_

John D. McGavin

6

BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

026

V I R G I N I A:

### IN THE CIRCUIT COURT OF THE CITY OF HAMPTON

JOANN WRIGHT HAYSBERT          *
                              *
   Plaintiff,                  *
                              *
v.                            * Civil Case No: CL20-1427
                              *
OUTBACK STEAKHOUSE OF FLORIDA, *
LLC, et al.                   *
                              *
   Defendants.                 *

## NOTICE OF FILING NOTICE OF REMOVAL

Notice is hereby given, pursuant to U.S.C. § 1332(a) and U.S.C. § 1446(d)

that the Defendants Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC,

have filed a Notice of Removal of the above captioned case to the United States

District Court for the Eastern District of Virginia, Newport News Division, on this 31st

day of July, 2020. A copy of the Notice of Removal has been attached hereto and

this matter proceed hereafter in the United States District Court for the Eastern

District of Virginia, Newport News Division.


                            **BLOOMIN' BRANDS, INC.**
                            **OUTBACK STEAKHOUSE OF FLORIDA, LLC**
                            By Counsel


Exhibit C

1

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD   •   SUITE 400   •   FAIRFAX, VIRGINIA 22030   •   (703) 385-1000   •   FAX (703) 385-1555

027

BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703)385-1000 Telephone
(703)385-1555 Facsimile

_____
John D. McGavin, VSB No: 21794
jmcgavin@bmhjlaw.com
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **Notice of Removal** was emailed and mailed, postage prepaid, on this 31st day of July, 2020, to:

Stephen Teague, Esquire
P.O. Box 706
Newport News, VA 23607
contact@teaguelawoffice.com

Nazareth M. Haysbert, Esquire
James L. Moultrie, III, Esquire
4640 Admiralty Way, Suite 500
Marina Del Ray, CA 90292
nazareth@hmlaw.la
james@hmlaw.la

_____
John D. McGavin

2

BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

028

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4

In Case Number **4:20-cv-00121-RBS** , Case Name **JoAnn Wright Haysbert v. Bloomin' Brands**
Party Represented by Applicant: **Plaintiff**

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

### PERSONAL STATEMENT

FULL NAME (no initials, please) **Nazareth Monoah Haysbert**
Bar Identification Number **294431**          State **California**
Firm Name **HAYSBERT | MOULTRIE, LLP**
Firm Phone # **(310)-496-5796**        Direct Dial # **(310) 704-7233**        FAX # **(310) 760-4083**
E-Mail Address **nazareth@hmlaw.la**
Office Mailing Address **4640 Admiralty Way, Suite 500, Marina Del Rey, California 90292**

Name(s) of federal court(s) in which I have been admitted **U.S. Supreme Court, D.C. Circuit, Ninth Circuit, Central District of California**

I certify that the rules of the federal court in the district in which I maintain my office extend a similar *pro hac vice* admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence is current.

I am _____ am not __×__ a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

_____          9/8/2020
(Signature)                                            (Date)
Stephen Veague                                 81006
(Typed or Printed Name)                    (VA Bar Number)

Court Use Only:

Clerk's Fee Paid __✓__ or Exemption Granted _____

The motion for admission is GRANTED __✓__ or DENIED _____

/s/
**Rebecca Beach Smith**
**Senior United States District Judge**          9-10-20

_____          (Date)
(Judge's Signature)

FILED
SEP 1 0 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

030

# EXHIBIT C

CLOSED,JURY,PRO SE

# U.S. District Court
## Eastern District of Virginia – (Newport News)
## CIVIL DOCKET FOR CASE #: 4:20–cv–00121–EWH–RJK

| | |
|---|---|
| Haysbert v. Bloomin' Brands, Inc. et al | Date Filed: 07/31/2020 |
| Assigned to: District Judge Elizabeth W. Hanes | Date Terminated: 01/30/2024 |
| Referred to: Magistrate Judge Robert J. Krask | Jury Demand: Both |
| Demand: $2,500,000 | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Case in other court:  Circuit Court for the City of Hampton, CL20001427–00 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity–Notice of Removal | |

**Plaintiff**

**Joann Wright Haysbert**                 represented by     **Joann Wright Haysbert**
244 William R. Harvey Way
Hampton, VA 23669
757–727–5201
PRO SE

**David Adam McKelvey**
Crandall & Katt
366 Elm Avenue SW
Roanoke, VA 24016
540–342–2000
Fax: 540–345–3527
Email: dmckelvey@crandalllaw.com
*TERMINATED: 10/12/2023*

**Nazareth Monoah Haysbert**
Haysbert Moultrie, LLP
4640 Admiralty Way
Suite 500
Marina Del Ray, CA 90292
NA
(310) 496–5796
Fax: (310) 760–4083
Email: nazareth@hmlaw.la
*TERMINATED: 08/14/2023*
*PRO HAC VICE*

**Stephen Cordell Teague**
Law Office of Stephen C. Teague
P.O. Box 706
Newport News, VA 23607
(757) 317–0716
Fax: (757) 215–2974
Email: stephen@teaguelawoffice.com
*TERMINATED: 12/02/2020*

**Defendant**

**Bloomin' Brands, Inc.**                 represented by     **Anna Grace Gillespie Zick**
McGavin, Boyce, Bardot, Thorsen & Katz, P.C.
9990 Fairfax Boulevard
Suite 400
Fairfax, VA 22030
703–385–1000
Fax: 703–385–1555
Email: azick@mbbtklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

032

**Emily Blake**
McGavin, Boyce, Bardot, Thorsen & Katz,
P.C.
Virginia
9990 Fairfax Boulevard
Suite 400
Fairfax, VA 22030
703–385–1000
Email: eblake@mbbtklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John David McGavin**
McGavin, Boyce, Bardot, Thorsen and
Katz, P.C.
9990 University Dr.
Ste 400
Fairfax, VA 22030
703–385–1000
Email: jmcgavin@mbbtklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Jane Johansen**
Hirschler Fleischer
8270 Greensboro Drive
Suite 700
McLean, VA 22102
703–584–2171
Email: abigail.johansen@katten.com
*TERMINATED: 06/21/2021*

**Nicholas Lawrence**
Bancroft, McGavin, Horvath & Judkins,
P.C.
9990 Fairfax Boulevard
Ste 400
Fairfax, VA 22030
703–385–1000
Email: nicholas.lawrence@loudoun.gov
*TERMINATED: 11/22/2021*

**Defendant**

**Outback Steakhouse of Florida, LLC**    represented by    **Anna Grace Gillespie Zick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily Blake**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John David McGavin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Jane Johansen**
(See above for address)
*TERMINATED: 06/21/2021*

**Nicholas Lawrence**

033

(See above for address)
*TERMINATED: 11/22/2021*

**Interested Party**

**David Adam McKelvey**
*TERMINATED: 12/04/2023*

represented by  **Jeremiah A. Denton , III**
Jeremiah A. Denton III, P.C.
3300 South Building, Suite 208
397 Little Neck Road
Virginia Beach, VA 23452
(757) 340–3232
Fax: (757) 340–4505
Email: jerry@jeremiahdenton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Nazareth Monoah Haysbert**

represented by  **Mary Teresa Morgan**
Infinity Law Group, PLC
4646 Princess Anne Road
Unit 104
Virginia Beach, VA 23462
757–609–2702
Fax: 866–212–1310
Email: mmorgan@parkerpollard.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/31/2020 | 1 | Notice of Removal ( Filing fee $ 400, receipt number 0422–7329878.), , filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Civil Cover Sheet)(McGavin, John) (Entered: 07/31/2020) |
| 07/31/2020 | | Initial Case Assignment to District Judge Rebecca Beach Smith and Magistrate Judge Douglas E. Miller. (epri, ) (Entered: 07/31/2020) |
| 07/31/2020 | 2 | Magistrate Judge Notice and Judge's Information to counsel. (epri, ) (Entered: 07/31/2020) |
| 07/31/2020 | 3 | COPY OF ANSWER to Complaint (Notice of Removal) by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (epri, ) (Entered: 07/31/2020) |
| 07/31/2020 | | Notice of Correction re 1 Notice of Removal. As required by Local Rule7.1, the filing user is directed to file a financial disclosure statement within seven days of the party's first appearance. (epri, ) (Entered: 07/31/2020) |
| 07/31/2020 | | Referred for 16(b). (epri, ) (Entered: 07/31/2020) |
| 08/06/2020 | 4 | MOTION to Amend/Correct 1 Notice of Removal, by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit)(McGavin, John) (Entered: 08/06/2020) |
| 08/06/2020 | 5 | Financial Interest Disclosure Statement (Local Rule 7.1) by Bloomin' Brands, Inc.. (McGavin, John) (Entered: 08/06/2020) |
| 08/06/2020 | 6 | Financial Interest Disclosure Statement (Local Rule 7.1) by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/06/2020) |
| 08/07/2020 | 7 | RULE 26(f) PRETRIAL ORDER: Rule 16(b) Scheduling Conference set for 9/1/2020 at 09:00 AM in Norfolk. Signed by Magistrate Judge Douglas E. Miller on August 7, 2020. (sche) (Entered: 08/07/2020) |
| 08/24/2020 | | Rule 16(b) Scheduling Conference reset for 8/31/2020 at 11:00 AM in Norfolk – Clerk's Office. (lbax, ) (Entered: 08/24/2020) |

**034**

| | | |
|---|---|---|
| 08/26/2020 | 8 | MOTIONS REFERRED to Magistrate Judge: Douglas E. Miller. 4 MOTION to Amend/Correct 1 Notice of Removal, (clou, ) (Entered: 08/26/2020) |
| 08/27/2020 | 9 | ORDER granting 4 Motion to Amend/Correct Notice of Removal. The Defendant shall refile the Corrected Notice of Removal attached to the Motion (ECF No. 4–1) as a separate ECF filing within 7 days of the date of this electronic order. Signed by Magistrate Judge Douglas E. Miller on August 27, 2020. (Miller, Douglas) (Entered: 08/27/2020) |
| 08/27/2020 | 10 | NOTICE by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC re 1 Notice of Removal, *Corrected Notice of Removal* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(McGavin, John) (Entered: 08/27/2020) |
| 08/31/2020 | | Scheduling Conference – Rule 16b held on 8/31/2020. (sche) (Entered: 08/31/2020) |
| 08/31/2020 | 11 | Motion to appear Pro Hac Vice by Nazareth M. Haysbert and Certification of Local Counsel Stephen C. Teague Filing fee $ 75, receipt number 0422–7376750. by Joann Wright Haysbert. (Teague, Stephen) (Entered: 08/31/2020) |
| 09/01/2020 | 12 | Order Rule 16(b) Scheduling Order – Pursuant to the Rule 16(b) Conference it is ordered that the Final Pretrial Conference is set for 6/1/2021 at 10:00 AM in Norfolk. Jury Trial is set for 6/15/2021 at 11:00 AM in Norfolk. Signed by District Judge Rebecca Beach Smith on August 31, 2020. (sche) (Entered: 09/01/2020) |
| 09/02/2020 | | Notice of Correction re 11 Motion to appear Pro Hac Vice by Nazareth M. Haysbert and Certification of Local Counsel Stephen C. Teague Filing fee $ 75, receipt number 0422–7376750. The motion does not contain the signature of the applicant. Local counsel should file a corrected motion that includes the written signature of the applicant. Counsel should not pay a second fee. (tlev, ) (Entered: 09/02/2020) |
| 09/08/2020 | 13 | Motion to appear Pro Hac Vice by Nazareth M. Haysbert and Certification of Local Counsel Stephen C. Teague by Joann Wright Haysbert. (Teague, Stephen) (Entered: 09/08/2020) |
| 09/10/2020 | 14 | ORDER granting 13 Motion for Pro hac vice for Nazareth Monoah Haysbert as to Joann Wright Haysbert. Signed by District Judge Rebecca Beach Smith on 9–10–20. (tlev, ) (Entered: 09/10/2020) |
| 11/17/2020 | | MOTIONS REFERRED to Magistrate Judge: Douglas E. Miller. 15 MOTION for Protective Order *Ex Parte* (clou, ) (Entered: 11/17/2020) |
| 11/18/2020 | 17 | MOTION to Compel *Discovery Responses by Plaintiff* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 11/18/2020) |
| 11/18/2020 | 18 | Memorandum in Support re 17 MOTION to Compel *Discovery Responses by Plaintiff* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit)(McGavin, John) (Entered: 11/18/2020) |
| 11/18/2020 | 19 | Opposition *to Plaintiff's Ex Parte Application for Protective Order ECF 15 (Ex Parte)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 11/18/2020) |
| 11/19/2020 | 20 | NOTICE of Appearance by Abigail Jane Johansen on behalf of Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC (Johansen, Abigail) (Entered: 11/19/2020) |
| 11/24/2020 | 21 | NOTICE of Appearance by David Adam McKelvey on behalf of Joann Wright Haysbert (McKelvey, David) (Entered: 11/24/2020) |
| 11/24/2020 | 22 | *Supplemental Declaration of Nazareth M. Haysbert In Support of 15 Plaintiff's Ex Parte Application for Protective Order* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit B–C)(McKelvey, David) Modified text on 11/25/2020 (tamarm, ). (Entered: 11/24/2020) |
| 11/24/2020 | 23 | Plaintiff's Request for Judicial Notice in Support of 15 Plaintiff's Ex Parte Application for Protective Order filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(McKelvey, David) Modified text on 11/25/2020 (tamarm, ). (Entered: 11/24/2020) |

| 11/24/2020 | 24 | MOTION to Substitute Attorney by Joann Wright Haysbert. (McKelvey, David) Modified on 11/25/2020; Document removed; see Notice of Correction (tamarm, ). (Entered: 11/24/2020) |
| 11/24/2020 | 25 | Reply to Motions Referred *Reply in Support Motion Protective Order* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 11/24/2020) |
| 11/25/2020 | | Notice of Correction re 24 MOTION to Substitute Attorney. Proposed Order was filed as main document; no motion was filed. Attorney notified to file a Motion to Substitute Attorney and attach the Proposed Order to the Motion. (tamarm, ) (Entered: 11/25/2020) |
| 11/25/2020 | | MOTIONS REFERRED to Magistrate Judge Miller. 15 MOTION for Protective Order *Ex Parte* (tamarm, ) (Entered: 11/25/2020) |
| 11/25/2020 | | Set Deadlines as to 15 MOTION for Protective Order *Ex Parte*. Motion Hearing set for 12/2/2020 at 10:00 AM in Norfolk Remote before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 11/25/2020) |
| 11/30/2020 | 26 | MOTION to Substitute Attorney by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 11/30/2020) |
| 12/02/2020 | 27 | Consent ORDER granting 26 MOTION to Substitute Attorney. Copies distributed to all counsel. Signed by District Judge Rebecca Beach Smith on 12/2/2020. (clou, ) (Entered: 12/02/2020) |
| 12/02/2020 | 28 | Memorandum in Opposition re 17 MOTION to Compel *Discovery Responses by Plaintiff* filed by Joann Wright Haysbert. (Attachments: # 1 Supplement Declaration, # 2 Exhibit A–E)(McKelvey, David) (Entered: 12/02/2020) |
| 12/02/2020 | 29 | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Motion Hearing held on 12/2/2020 re 15 MOTION for Protective Order *Ex Parte* filed by Joann Wright Haysbert. Matter came on for hearing on pending Motion For Protective Order (#15). Present via zoom were David McKelvey, Stephen Teague and Nazareth Haysbert on behalf of the plaintiff. John McGavin present on behalf of the defendant. Mr. Haysbert argued the motion and Mr. McGavin responded. The Court made rulings on the record and will issue a short order. The Court granted the motion with limited relief. The Court directed that any of the plaintiffs medical records that are produced by plaintiff or obtained by subpoena shall be used for the sole purpose of litigation and shall not be disclosed to the public. An order shall enter. Hearing adjourned. (Court Reporter Carol Naughton, OCR.)(cdod, ) (Entered: 12/03/2020) |
| 12/03/2020 | 30 | ORDER re 15 MOTION for Protective Order Ex Parte. See order for details. Copies distributed to all counsel. Signed by Magistrate Judge Douglas E. Miller on 12/3/2020. (clou, ) (Entered: 12/03/2020) |
| 12/07/2020 | 31 | REPLY to Response to Motion re 17 MOTION to Compel *Discovery Responses by Plaintiff* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 12/07/2020) |
| 12/08/2020 | | MOTIONS REFERRED to Magistrate Judge: Douglas E. Miller. 17 MOTION to Compel *Discovery Responses by Plaintiff* (clou, ) (Entered: 12/08/2020) |
| 12/10/2020 | | Motion Hearing 17 Motion to Compel set for 12/18/2020 at 11:00 AM w/OCR in Norfolk Remote before Magistrate Judge Douglas E. Miller. (lwoo) (Entered: 12/10/2020) |
| 12/11/2020 | | Set/Reset Deadlines as to 17 MOTION to Compel *Discovery Responses by Plaintiff*. Motion Hearing RESET for 12/18/2020 at 10:00 AM in Norfolk Remote via Zoom w/ OCR before Magistrate Judge Douglas E. Miller. (jjon) (Entered: 12/11/2020) |
| 12/18/2020 | 32 | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Motion Hearing held on 12/18/2020 re 17 MOTION to Compel *Discovery Responses by Plaintiff* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc.. Matter came on for hearing on Motion to Compel (#17). Present via zoom were David McKelvey and Nazareth Haysbert on behalf of the plaintiff and John McGavin on behalf of the defendant. Mr. McGavin informed the Court of the progress made by the parties with regard to the issues in the motion. Mr. Haysbert responds. The Court goes through all of the issues in the motion and makes rulings on the record. A short order |

036

| | | |
|---|---|---|
| | | will be entered. Hearing adjourned. (Court Reporter Heidi Jeffreys, OCR.)(cdod, ) (Entered: 12/18/2020) |
| 12/18/2020 | 33 | ORDER re 17 MOTION to Compel Discovery Responses by Plaintiff. See order for specific details. Copies distributed as directed. Signed by Magistrate Judge Douglas E. Miller on 12/18/2020. (clou ) (Entered: 12/18/2020) |
| 02/11/2021 | 34 | MOTION to Quash *Notices of Deposition and Inspection* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Supplement, # 2 Proposed Order)(McGavin, John) (Entered: 02/11/2021) |
| 02/12/2021 | | Notice of Correction re 34 MOTION to Quash *Notices of Deposition and Inspection*. Document number 34 contains more than one pleading or motion for relief. The Memorandum in support should not be filed as an attachment to the Motion to Quash. It should be filed as a separate entry and linked back to the Motion. Please re–file the Memorandum in Support as a separate entry and link it back to the motion. (mrees, ) (Entered: 02/12/2021) |
| 02/12/2021 | 35 | Memorandum in Support re 34 MOTION to Quash *Notices of Deposition and Inspection* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 02/12/2021) |
| 02/16/2021 | 36 | MOTION to Compel with brief in support *, Determine Sufficiency & for Spoliation of Evidence* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibits A–M, # 3 Proposed Order)(McKelvey, David) Modified text to match document on 2/19/2021 (mrees, ). (Entered: 02/16/2021) |
| 02/16/2021 | 37 | MOTION to Amend/Correct with brief in support *Complaint* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–C, # 3 Exhibit Amended Complaint, # 4 Proposed Order)(McKelvey, David) Modified text to match document on 2/19/2021 (mrees, ). (Entered: 02/16/2021) |
| 02/16/2021 | 38 | MOTION to Remand to State Court with brief in support by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Errata A, # 3 Proposed Order)(McKelvey, David) Modified text to match document on 2/19/2021 (mrees, ). (Entered: 02/16/2021) |
| 02/16/2021 | 39 | MOTION to Expedite *Hearing* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–C, # 3 Proposed Order)(McKelvey, David) (Entered: 02/16/2021) |
| 02/19/2021 | | Notice of Correction re 38 MOTION to Remand to State Court , 39 MOTION to Expedite *Hearing*, 36 MOTION to Compel *, Determine Sufficiency & for Spoliation of Evidence*, 37 MOTION to Amend/Correct *Complaint*. Future motions and briefs in support should either be separated linking the memorandum in support back to the motion or note in the docket text that the motion contains a brief in support. (mrees, ) (Entered: 02/19/2021) |
| 02/19/2021 | | Notice of Correction re 36 MOTION to Compel *, Determine Sufficiency & for Spoliation of Evidence*. Document number 36 does not meet the requirements for Local Civil Rule 7(F). Except for good cause shown in advance of filing, opening and responsive briefs, exclusive of affidavits and supporting documentation, shall not exceed thirty (30) 8–1/2 inch x 11 inch pages double–spaced and rebuttal briefs shall not exceed twenty (20) such pages. Please refile the brief pursuant to Local Civil Rule 7(F). (mrees, ) (Entered: 02/19/2021) |
| 02/19/2021 | | Notice of Correction re 39 MOTION to Expedite *Hearing*. Document number 39 does not match the docket text. Please refile the document using the correct event. (mrees, ) (Entered: 02/19/2021) |
| 02/19/2021 | 40 | MOTION to Expedite *HEARING FOR MOTIONS FOR LEAVE TO AMEND COMPLAINT AND TO REMAND, OR IN THE ALTERNATIVE, EXTENDING TRIAL AND PRETRIAL DATES AND DEADLINES BY 90 DAYS FOR GOOD CAUSE (Memorandum in Support Contained in Motion Text)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–C, # 3 Proposed Order)(McKelvey, David) (Entered: 02/19/2021) |

| 02/19/2021 | 41 | MOTION to Compel *Responses to Interrogatories and Production of Documents by Defendants and to Determine the Sufficiency of Responses to Requests for Admission by Defendants (memorandum in support is part of motion text)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–D, F & H–M, # 3 Proposed Order)(McKelvey, David) (Entered: 02/19/2021) |
|---|---|---|
| 02/19/2021 | 42 | MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit E1–E3 & G, # 3 Proposed Order)(McKelvey, David) (Entered: 02/19/2021) |
| 03/01/2021 | 43 | MOTION to Compel by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 03/01/2021) |
| 03/01/2021 | 44 | Memorandum in Support re 43 MOTION to Compel filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 03/01/2021) |
| 03/02/2021 | 45 | Opposition to 37 MOTION to Amend/Correct *Complaint* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2)(McGavin, John) (Entered: 03/02/2021) |
| 03/02/2021 | 46 | Opposition to 38 MOTION to Remand to State Court filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2)(McGavin, John) (Entered: 03/02/2021) |
| 03/04/2021 | 47 | NOTICE by Joann Wright Haysbert *of Request for Oral Hearing* (McKelvey, David) (Entered: 03/04/2021) |
| 03/04/2021 | 48 | Memorandum in Opposition re 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 03/04/2021) |
| 03/05/2021 | 49 | Memorandum in Opposition re 41 MOTION to Compel *Responses to Interrogatories and Production of Documents by Defendants and to Determine the Sufficiency of Responses to Requests for Admission by Defendants (memorandum in support is part of motion text)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 03/05/2021) |
| 03/08/2021 | 50 | REPLY to Response to Motion re 37 MOTION to Amend/Correct *Complaint (Plaintiff's Reply to Defendant's Opposition to Motion for Leave to Amend Complaint)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit D)(McKelvey, David) (Entered: 03/08/2021) |
| 03/08/2021 | 51 | REPLY to Response to Motion re 38 MOTION to Remand to State Court *(Plaintiff's Reply to Defendants' Opposition to Motion to Remand)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 03/08/2021) |
| 03/10/2021 | 52 | REPLY to Response to Motion re 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion) (PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE)* filed by Joann Wright Haysbert. (McKelvey, David) (tameub, ). (Entered: 03/10/2021) |
| 03/11/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 42 MOTION for Sanctions *Due to Spoliation of Evidence* (jhie, ) (Entered: 03/11/2021) |
| 03/11/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 40 MOTION to Expedite (jhie, ) (Entered: 03/11/2021) |
| 03/11/2021 | 53 | Order: It is ORDERED that U.S. Magistrate Judge Douglas E. Miller is designated to conduct hearings, etc. and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of Motion for Leave to Amend and Motion to Remand to State Court. Signed by District Judge Rebecca Beach Smith on 3/11/2021. (afar) (Entered: 03/11/2021) |
| 03/11/2021 | 54 | REPLY to Response to Motion re 41 MOTION to Compel *Responses to Interrogatories and Production of Documents by Defendants and to Determine the Sufficiency of Responses to Requests for Admission by Defendants (memorandum in support is part of motion text) (Plaintiff's Reply to Defendants' Opposition to Compel and Motion to Determine Sufficiency of Responses to Requests for Admission)* |

| | | |
|---|---|---|
| | | filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 03/11/2021) |
| 03/12/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 41 MOTION to Compel (jhie, ) (Entered: 03/12/2021) |
| 03/16/2021 | 55 | Memorandum in Opposition re 43 MOTION to Compel (*Plaintiff'sOpposition to Defendants' Motion to Compel the Deposition of the Plaintiff and the Independent Medical Examination with Dr. Neil Pugaach, MD)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–G)(McKelvey, David) (Entered: 03/16/2021) |
| 03/16/2021 | | Set Deadlines as to 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion)*, 38 MOTION to Remand to State Court , 37 MOTION to Amend/Correct *Complaint*, 41 MOTION to Compel *Responses to Interrogatories and Production of Documents by Defendants and to Determine the Sufficiency of Responses to Requests for Admission by Defendants (memorandum in support is part of motion text)*, 34 MOTION to Quash *Notices of Deposition and Inspection*, 43 MOTION to Compel . Motion Hearing set for 3/30/2021 at 10:30 AM in Norfolk Remote before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 03/16/2021) |
| 03/31/2021 | 56 | REVISED RULE 16B ORDER terminating as moot 34 Motion to Quash; granting in part 40 Motion to Expedite and was resolved by the scheduling of the hearing on 3/30/2021 and the rulings made by the court; taking under advisement 37 Motion to Amend/Correct and 38 Motion to Remand to State Court and the court will issue a Report and Recommendation; taking under advisement 42 Motion for Sanctions and directing the parties to file supplemental declarations supporting their arguments within fourteen (14) days of the hearing; granting 43 Motion to Compel; granting in part and denying in part 41 Motion to Compel; further granting plaintiff's request for an extension of discovery deadlines and continuing for sixty (60) days all discovery deadlines fixed in the court's Rule 16b Order and establishing new deadlines for discovery and preparation of the Final Pretrial Order; finally removing from the docket the presently scheduled final pretrial conference on 6/1/2021 and the jury trial on 6/15/2021; directing the parties to confer with the District Judge's courtroom deputy to reset the trial and FPTC, as necessary, following the resolution of the pending Motion to Remand. Signed by Magistrate Judge Douglas E. Miller on March 31, 2021. (sche) (Entered: 03/31/2021) |
| 03/31/2021 | 57 | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Motion Hearing held on 3/31/2021 re 43 MOTION to Compel filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 38 MOTION to Remand to State Court filed by Joann Wright Haysbert, 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion)* filed by Joann Wright Haysbert, 34 MOTION to Quash *Notices of Deposition and Inspection* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 40 MOTION to Expedite *HEARING FOR MOTIONS FOR LEAVE TO AMEND COMPLAINT AND TO REMAND, OR IN THE ALTERNATIVE, EXTENDING TRIAL AND PRETRIAL DATES AND DEADLINES BY 90 DAYS FOR GOOD CAUSE (Memorandum in Support Contained in Motion Text)* filed by Joann Wright Haysbert, 41 MOTION to Compel *Responses to Interrogatories and Production of Documents by Defendants and to Determine the Sufficiency of Responses to Requests for Admission by Defendants (memorandum in support is part of motion text)* filed by Joann Wright Haysbert, 37 MOTION to Amend/Correct *Complaint* filed by Joann Wright Haysbert. Proceedings:Matter came on for hearing on pending motions (#34) to quash, (#37) to amend the complaint, (#38) to remand, (#40) to expedite hearing, (#41) to compel, (#42) for sanctions, (#43) to compel. Present via zoom were David McKelvey and Nazareth Haysbert on behalf of the plaintiff and John McGavin on behalf of the defendant. The Court ruled the motion to quash (#34) as moot based on the passage of time. The motion to expedite the hearing (#40) is granted in part, as a hearing is now being held. The Court heard argument on the motions to amend the complaint (#37) and to remand (#38) and will issue a report and recommendation. The Court directed counsel to provide additional factual proffers as to the motion for sanctions (#42) and will issue an opinion following supplemental submissions. Argument was heard on the motions to compel (#41) and (#43). Motion to compel (#43) was GRANTED. Motion to compel (#41) was GRANTED IN PART and DENIED IN PART. Rulings made on the record and discovery deadlines continued 60 days. A revised scheduling order will be entered. Hearing adjourned. |

039

| | | (Court Reporter Heidi Jeffreys, OCR.)(cdod, ) (Entered: 03/31/2021) |
|---|---|---|
| 04/06/2021 | 58 | TRANSCRIPT of proceedings (motions hearing by video conference) held on 03/30/2021, before Judge Douglas E. Miller, Court Reporter/Transcriber Heidi Jeffreys, Telephone number 757–222–7075. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 5/6/2021. Redacted Transcript Deadline set for 6/7/2021. Release of Transcript Restriction set for 7/6/2021.(jeffreys, heidi) (Entered: 04/06/2021)** |
| 04/07/2021 | 59 | REPORT AND RECOMMENDATION re 37 MOTION to Amend/Correct Complaint, 38 MOTION to Remand to State Court. Objections due within 14 days of the date of this Order. Signed by Magistrate Judge Douglas E. Miller on 4/7/21. (jhie, ) (Entered: 04/07/2021) |
| 04/09/2021 | 60 | Declaration *Defendants' Supplement to the Memorandum in Opposition to Plaintiff's Motion for Sanctions Due to Spoliation of Evidence* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Johansen, Abigail) (Entered: 04/09/2021) |
| 04/13/2021 | 61 | AFFIDAVIT in Support re 37 MOTION to Amend/Correct *Complaint Declaration of Kristina Perry Re: Search* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 04/13/2021) |
| 04/13/2021 | 62 | AFFIDAVIT *with Attachments* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Johansen, Abigail) (Entered: 04/13/2021) |
| 04/13/2021 | 63 | AFFIDAVIT in Support re 37 MOTION to Amend/Correct *Complaint [Corrected] Declaration of Kristina Perry* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 04/13/2021) |
| 04/13/2021 | 64 | AFFIDAVIT in Support re 37 MOTION to Amend/Correct *Complaint Declaration of Nineveh Lynn Haysbert* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 04/13/2021) |
| 04/13/2021 | 65 | Objections to Magistrate Judge's Ruling or Recommendation re 56 Order on Motion to Quash,,,,,, Order on Motion to Amend/Correct,,,,,, Order on Motion to Remand to State Court,,,,,, Order on Motion to Expedite,,,,,, Order on Motion to Compel,,,,,, Order on Motion for Sanctions,,,,,,,,,, *Plaintiff's Notice of Objections and Request for Review of Magistrate Judge's Order on Plaintiff's Motion to Compel* by Joann Wright Haysbert. (Attachments: # 1 Exhibit A)(McKelvey, David) Modified text on 4/23/2021 (jhie, ). (Entered: 04/13/2021) |
| 04/13/2021 | 66 | Brief in Support to 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion) Plaintiff's Supplemental Briefing in Support of Plaintiff's Motion for Sanctions Due to Spoliation of Evidence* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit 1–8, # 2 Supplement Declaration)(McKelvey, David) (Entered: 04/13/2021) |
| 04/21/2021 | 67 | Discovery Request by Joann Wright Haysbert. (Attachments: # 1 Proposed Order Granting Request)(McKelvey, David) (Entered: 04/21/2021) |
| 04/21/2021 | 68 | Objections to Magistrate Judge's Ruling or Recommendation re 59 REPORT AND RECOMMENDATIONS re 38 MOTION to Remand to State Court filed by Joann Wright Haysbert, 37 MOTION to Amend/Correct *Complaint* filed by Joann Wright Haysbert *Plaintiff's Notice of Objections and Request for Review of Magistrate Judge's Report and Recommendation Regarding Plaintiff's Motions to Amend and to Remand* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(McKelvey, David) (Entered: 04/21/2021) |
| 04/21/2021 | 69 | Plaintiff's Request for Judicial Notice in Support of 68 Notice of Objections and Request for Review of Magistrate Judge's Report and Recommendation Regarding Plaintiff's Motions to Amend and to Remand re 68 Motion Re: Objections to |

| | | Magistrate Judge's Ruling or Recommendation re 59 REPORT AND RECOMMENDATIONS re 38 MOTION to Remand to State Court filed by Joann Wright Haysbert, 37 MOTION to Amend/Correct *Complaint* filed by by Joann Wright Haysbert. (Attachments: # 1 Exhibit 1–4)(McKelvey, David) Modified text on 4/23/2021 (afar). (Entered: 04/21/2021) |
|---|---|---|
| 04/22/2021 | 70 | MOTION Joint Stipulation to Continue Discovery Deadlines and Set Trial and Related Dates (Filed Pursuant to Rule 29 (b)) *(Corrected Document 67)* by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 04/22/2021) |
| 04/22/2021 | 71 | MOTION for Protective Order by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 04/22/2021) |
| 04/22/2021 | 72 | Memorandum in Support re 71 MOTION for Protective Order filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 04/22/2021) |
| 04/23/2021 | | MOTIONS REFERRED to Magistrate Judge: 70 MOTION Joint Stipulation to Continue Discovery Deadlines and Set Trial and Related Dates (Filed Pursuant to Rule 29 (b)) *(Corrected Document 67)* (jhie, ) (Entered: 04/23/2021) |
| 04/23/2021 | 73 | MOTION for Sanctions *For Failure to Obey Discovery Orders* by Joann Wright Haysbert. (McKelvey, David) (Entered: 04/23/2021) |
| 04/23/2021 | 74 | Memorandum in Support re 73 MOTION for Sanctions *For Failure to Obey Discovery Orders* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–G, # 3 Proposed Order)(McKelvey, David) (Entered: 04/23/2021) |
| 04/23/2021 | 75 | ORDER granting in part 70 Joint Stipulation to Continue Discovery Deadlines and Set Trial and Related Dates. ENTERED AS MODIFIED BY THE COURT. Signed by Magistrate Judge Douglas E. Miller on 4/23/21. (jhie, ) (Entered: 04/23/2021) |
| 04/23/2021 | | Set Deadlines/Hearings: Final Pretrial Conference set for 11/22/2021 at 10:00 AM before Magistrate Judge Douglas E. Miller. Jury Trial set for 12/7/2021 at 11:00 AM in Norfolk Mag Courtroom 2 before District Judge Rebecca Beach Smith. (jhie, ) (Entered: 04/26/2021) |
| 04/27/2021 | 76 | Opposition to 65 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 56 Order on Motion to Quash,,,,,, Order on Motion to Amend/Correct,,,,,, Order on Motion to Remand to State Court,,,,,, Order on Motion to Expedite,,,,,, Order on Motion to C filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 04/27/2021) |
| 05/04/2021 | 77 | Opposition *to Notice of Objections* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 05/04/2021) |
| 05/05/2021 | 78 | MOTION to Quash *Deposition* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 05/05/2021) |
| 05/05/2021 | 79 | Memorandum in Support re 78 MOTION to Quash *Deposition* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 05/05/2021) |
| 05/06/2021 | 80 | Opposition to 73 MOTION for Sanctions *For Failure to Obey Discovery Orders* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Proposed Order Order)(McGavin, John) (Entered: 05/06/2021) |
| 05/07/2021 | 81 | MOTION to Quash by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 05/07/2021) |
| 05/07/2021 | 82 | Memorandum in Support re 81 MOTION to Quash filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit A)(McGavin, John) (Entered: 05/07/2021) |

| 05/11/2021 | 83 | NOTICE of Appearance by Nicholas Lawrence on behalf of Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC (Lawrence, Nicholas) (Entered: 05/11/2021) |
| 05/14/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 71 MOTION for Protective Order (jhie, ) (Entered: 05/14/2021) |
| 05/14/2021 | 84 | MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3)* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Lawrence, Nicholas) (Entered: 05/14/2021) |
| 05/14/2021 | 85 | Memorandum in Support re 84 MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Proposed Order Proposed Order)(Lawrence, Nicholas) (Entered: 05/14/2021) |
| 05/17/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 73 MOTION for Sanctions for Failure to Obey Discovery Orders (jhie, ) (Entered: 05/17/2021) |
| 05/17/2021 | 86 | MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 05/17/2021) |
| 05/17/2021 | 87 | Memorandum in Support re 86 MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 05/17/2021) |
| 05/17/2021 | 88 | MOTION to Quash *May 17, 2021 Subpoena to Lisa Crosby* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Lawrence, Nicholas) (Entered: 05/17/2021) |
| 05/17/2021 | 89 | Memorandum in Support re 88 MOTION to Quash *May 17, 2021 Subpoena to Lisa Crosby* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Proposed Order Proposed Order)(Lawrence, Nicholas) (Entered: 05/17/2021) |
| 05/19/2021 | 90 | MOTION to Compel *IME of Plaintiff* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 05/19/2021) |
| 05/19/2021 | 91 | Memorandum in Support re 90 MOTION to Compel *IME of Plaintiff* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A)(McGavin, John) (Entered: 05/19/2021) |
| 05/20/2021 | 92 | MOTION for Extension *of Expert Discovery Deadlines* by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/20/2021) |
| 05/20/2021 | 93 | Memorandum *of Points & Authorities in Support of Plaintiff's Motion for Extension of Expert Discovery Deadlines* to 92 MOTION for Extension *of Expert Discovery Deadlines* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proposed Order)(McKelvey, David) (Entered: 05/20/2021) |
| 05/20/2021 | 94 | (SUBJECT TO DEFECT) Opposition to 78 MOTION to Quash *Deposition (Plaintiff's Opposition to Defendants' Motion to Quash Deposition of Bloomin' Brands, Inc.)* filed by Joann Wright Haysbert. (McKelvey, David) Modified text on 5/25/2021 (jhie, ). (Entered: 05/20/2021) |
| 05/20/2021 | 95 | NOTICE to Take Deposition of Joann Wright Haysbert by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC.(McGavin, John) (Entered: 05/20/2021) |
| 05/20/2021 | 96 | Opposition to 81 MOTION to Quash *Deposition of Tristal Hall & Michael Bellomo* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/20/2021) |
| 05/20/2021 | 97 | Opposition to 84 MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3) (Plaintiff's Opposition to Defendants' Motion to Terminate Deposition of Lisa Crosby)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/20/2021) |

| 05/20/2021 | 98 | Second MOTION for Sanctions *Due to Spoliation of Evidence* by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/20/2021) |
| 05/20/2021 | 99 | Memorandum *of Points & Authorities in Support of Plaintiff's Second Motion for Sanctions Due to Spoliation of Evidence* to 98 Second MOTION for Sanctions *Due to Spoliation of Evidence* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–E, # 3 Proposed Order)(McKelvey, David) (Entered: 05/20/2021) |
| 05/20/2021 | 100 | MOTION to Quash *Subpoena to Hampton University* by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/20/2021) |
| 05/20/2021 | 101 | Memorandum *of Points & Authorities in Support of Plaintiff's Motion to Quash Subpoena to Hampton University* to 100 MOTION to Quash *Subpoena to Hampton University* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A, # 3 Proposed Order)(McKelvey, David) (Entered: 05/21/2021) |
| 05/21/2021 | 102 | Opposition to 86 MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order (Plaintiff's Opposition to Defendants' Motion to Quash Deposition of Jackie Myers, Gallagher Bassett Services, Inc., and Safety National Casualty Corp. & for Protective Order)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/21/2021) |
| 05/21/2021 | 103 | Memorandum *(Plaintiff's Supplement to Motion to Compel Re: Defendants' Claim Notes and Incident Report & Motion for Sanctions Due to Spoliation)* to 41 MOTION to Compel *Responses to Interrogatories and Production of Documents by Defendants and to Determine the Sufficiency of Responses to Requests for Admission by Defendants (memorandum in support is part of motion text)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–D)(McKelvey, David) (Entered: 05/21/2021) |
| 05/21/2021 | 104 | MOTION to Compel *Depositions* by Joann Wright Haysbert. (McKelvey, David) (Entered: 05/21/2021) |
| 05/21/2021 | 105 | Memorandum *of Points and Authorities in Support of Plaintiff's Motion to Compel Depositions* to 104 MOTION to Compel *Depositions* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–S, # 3 Proposed Order)(McKelvey, David) (Entered: 05/21/2021) |
| 05/21/2021 | 106 | Memorandum to 93 Memorandum, filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit (Memorandum of Points & Authorities in Support of Plaintiff's Motion for Extension of Expert Discovery Deadlines)(McKelvey, David) (Entered: 05/21/2021) |
| 05/25/2021 | 107 | REPLY in Support re 78 MOTION to Quash *Deposition of Bloomin' Brands, Inc.* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 05/25/2021) |
| 05/25/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 78 MOTION to Quash *Deposition* (jhie, ) (Entered: 05/25/2021) |
| 05/27/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 84 MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3)* (jhie, ) (Entered: 05/27/2021) |
| 05/27/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 81 MOTION to Quash (jhie, ) (Entered: 05/27/2021) |
| 05/27/2021 | 108 | (SUBJECT TO DEFECT) REPLY to Response to Motion re 84 MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit D)(Lawrence, Nicholas) (Entered: 05/27/2021) |
| 05/27/2021 | 109 | (SUBJECT TO DEFECT) REPLY in Support re 81 MOTION to Quash *Deposition of Tristal Hall and Michel Bellomo* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(McGavin, John) Modified text on 6/1/2021 (jhie, ). (Entered: 05/27/2021) |

| | | |
|---|---|---|
| 06/01/2021 | | MOTION REFERRED to Magistrate Judge: Douglas E. Miller: 86 MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order* (jhie, ) (Entered: 06/01/2021) |
| 06/02/2021 | 110 | Opposition to 92 MOTION for Extension *of Expert Discovery Deadlines*, 93 Memorandum, filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 06/02/2021) |
| 06/02/2021 | 111 | Opposition to 98 Second MOTION for Sanctions *Due to Spoliation of Evidence*, 99 Memorandum, filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(McGavin, John) (Entered: 06/02/2021) |
| 06/02/2021 | 112 | Opposition to 100 MOTION to Quash *Subpoena to Hampton University*, 101 Memorandum, filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 06/02/2021) |
| 06/03/2021 | 113 | Opposition to 105 Memorandum, 104 MOTION to Compel *Depositions* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Johansen, Abigail) (Entered: 06/03/2021) |
| 06/03/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 88 MOTION to Quash *May 17, 2021 Subpoena to Lisa Crosby* (jhie, ) (Entered: 06/03/2021) |
| 06/03/2021 | 114 | MOTION for Extension of Time to Complete Discovery *(Plaintiff's Motion for Extension of Discovery Deadline)* by Joann Wright Haysbert. (McKelvey, David) (Entered: 06/03/2021) |
| 06/03/2021 | 115 | Memorandum *of Points & Authorities in Support of Plaintiff's Motion for Extension of Discovery Deadline* to 114 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Motion for Extension of Discovery Deadline)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–F, # 3 Proposed Order)(McKelvey, David) (Entered: 06/03/2021) |
| 06/04/2021 | 116 | Opposition to 103 Memorandum,, filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A)(McGavin, John) (Entered: 06/04/2021) |
| 06/04/2021 | 117 | REPLY to Response to Motion re 86 MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 06/04/2021) |
| 06/04/2021 | | Notice of Correction: Attorney notified that leave of court is needed to file 117 REPLY to Response to Motion to Quash Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order (jhie, ) (Entered: 06/04/2021) |
| 06/08/2021 | | Set Deadlines as to 104 MOTION to Compel *Depositions*, 98 Second MOTION for Sanctions *Due to Spoliation of Evidence*, 100 MOTION to Quash *Subpoena to Hampton University*, 81 MOTION to Quash , 88 MOTION to Quash *May 17, 2021 Subpoena to Lisa Crosby*, 78 MOTION to Quash *Deposition*, 90 MOTION to Compel *IME of Plaintiff*, 84 MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3)*, 92 MOTION for Extension *of Expert Discovery Deadlines*, 71 MOTION for Protective Order , 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion)*, 86 MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order*, 73 MOTION for Sanctions *For Failure to Obey Discovery Orders*. Motion Hearing set for 6/15/2021 at 10:30 AM in Norfolk Remote before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 06/08/2021) |
| 06/09/2021 | | MOTIONS REFERRED to Magistrate Judge Douglas E. Miller: 92 MOTION for Extension *of Expert Discovery Deadlines*, 98 Second MOTION for Sanctions *Due to Spoliation of Evidence*, 100 MOTION to Quash *Subpoena to Hampton University* (jhie, ) (Entered: 06/09/2021) |
| 06/09/2021 | 118 | REPLY to Response to Motion re 92 MOTION for Extension *of Expert Discovery Deadlines (Plaintiff's Reply in Support of Motion for Extension of Expert Deadlines)* |

**044**

| | | filed by Joann Wright Haysbert. (Attachments: # 1 Supplement Declaration, # 2 Exhibit C–F)(McKelvey, David) (Entered: 06/09/2021) |
|---|---|---|
| 06/09/2021 | 119 | REPLY to Response to Motion re 98 Second MOTION for Sanctions *Due to Spoliation of Evidence (Plaintiff's Reply in Support of Second Motion for Sanctions Due to Spoliation of Evidence)* filed by Joann Wright Haysbert. (Attachments: # 1 Supplement Declaration, # 2 Exhibit F, # 3 Exhibit G)(McKelvey, David) (Entered: 06/09/2021) |
| 06/09/2021 | 120 | REPLY to Response to Motion re 100 MOTION to Quash *Subpoena to Hampton University (Plaintiff's Reply in Support of Motion to Quash Subpoena to Hampton University)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 06/09/2021) |
| 06/09/2021 | 121 | REPLY to Response to Motion re 104 MOTION to Compel *Depositions (Plaintiffs' Reply in Support of Motion to Compel Depositions)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 06/09/2021) |
| 06/10/2021 | 122 | ORDER entered re 114 Motion for Extension of Time to Complete Discovery: Defendants are ORDERED to file their expedited response to the motion by 3:00 p.m. on 6/14/21. Plaintiff's oral reply to the motion will be considered at the 6/15/21 hearing. Signed by Magistrate Judge Douglas E. Miller on 6/10/21. (jhie, ) (Entered: 06/10/2021) |
| 06/11/2021 | 123 | MOTION to Withdraw as Attorney by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(Johansen, Abigail) (Entered: 06/11/2021) |
| 06/14/2021 | 124 | Opposition to 114 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Motion for Extension of Discovery Deadline)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 06/14/2021) |
| 06/15/2021 | 126 | Minute Order. Proceedings held before Magistrate Judge Douglas E. Miller: Present for hearing via zoom were David McElvey and Nazareth Haysbert on behalf of the plaintiff and Nicholas Lawrence on behalf of the defendants. Court took up each of the pending motions and heard argument. Rulings made on the record on Motions 71, 73, 78, 81,84,86,88, 90, 92, 100, 103 and 104. A written order will be entered for #42 and 98. Rulings as follows. See minute entry for more details. Court took under advisement 42 Motion for Sanctions; granting 71 Motion for Protective Order; denying 73 Motion for Sanctions; granting 78 Motion to Quash; granting 81 Motion to Quash; granting 84 Motion for Protective Order; granting 86 Motion to Quash; granting 88 Motion to Quash; granting 90 Motion to Compel; granting in part and denying in part 92 Motion for Extension of Time to File; taking under advisement 98 Motion for Sanctions; granting in part and denying in part 104 Motion to Compel; Motion Hearing held on 6/15/2021 re 92 MOTION for Extension *of Expert Discovery Deadlines* filed by Joann Wright Haysbert, 84 MOTION for Protective Order *(terminate deposition of Lisa Crosby under Rule 30(d)(3)* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 100 MOTION to Quash *Subpoena to Hampton University* filed by Joann Wright Haysbert, 42 MOTION for Sanctions *Due to Spoliation of Evidence (memorandum in support is in text of motion)* filed by Joann Wright Haysbert, 86 MOTION to Quash *Deposition of Jackie Myers, Gallagher Bassett Services, Inc. and Safety National Casualty Corporation and for Protective Order* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 81 MOTION to Quash filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 104 MOTION to Compel *Depositions* filed by Joann Wright Haysbert, 98 Second MOTION for Sanctions *Due to Spoliation of Evidence* filed by Joann Wright Haysbert, 71 MOTION for Protective Order filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 88 MOTION to Quash *May 17, 2021 Subpoena to Lisa Crosby* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 73 MOTION for Sanctions *For Failure to Obey Discovery Orders* filed by Joann Wright Haysbert, 90 MOTION to Compel *IME of Plaintiff* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc., 78 MOTION to Quash *Deposition* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc.. (Court Reporter Jody Stewart, OCR.) (cdod, ) (Entered: 06/17/2021) |
| 06/16/2021 | 125 | ORDER granting in part and denying in part 100 Motion to Quash Subpoena to Hampton University. See Order for details. Signed by Magistrate Judge Douglas E. Miller on 6/16/21. (jhie, ) (Entered: 06/16/2021) |

| 06/17/2021 | 127 | TRANSCRIPT of proceedings held on 6–15–2021, before Judge Douglas E. Miller, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 7/19/2021. Redacted Transcript Deadline set for 8/17/2021. Release of Transcript Restriction set for 9/15/2021.**(stewart, jody) (Entered: 06/17/2021) |
|---|---|---|
| 06/21/2021 | 128 | ORDER granting 123 Motion to Withdraw as Attorney. Attorney Abigail Jane Johansen terminated. Signed by District Judge Rebecca Beach Smith on 6/21/21. (mrees, ) (Entered: 06/21/2021) |
| 06/22/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 114 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Motion for Extension of Discovery Deadline)* (jhie, ) (Entered: 06/22/2021) |
| 06/29/2021 | 129 | MEMORANDUM ORDER – The court hereby OVERRULES the Plaintiff's Objections to the R&R. Accordingly, the Motion to Amend, ECF 37, is DENIED, and the Motion to Remand, ECF 38, is DENIED. (jhie,) Modified text on 7/21/2021 (afar). (Entered: 06/29/2021) |
| 06/29/2021 | 130 | MOTION Plaintiff's Motion for Court–Ordered Mediation and Appointment of a District Judge as Mediator by Joann Wright Haysbert. (McKelvey, David) (Entered: 06/29/2021) |
| 06/29/2021 | 131 | Memorandum in Support re 130 MOTION Plaintiff's Motion for Court–Ordered Mediation and Appointment of a District Judge as Mediator filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Proposed Order)(McKelvey, David) (Entered: 06/29/2021) |
| 06/29/2021 | 132 | Objection to 126 Order on Motion for Sanctions,,,,,,,,,,,, Order on Motion for Protective Order,,,,,,,,,,,,,,,,,,,,,, Order on Motion to Quash,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, Order on Motion to Compel,,,,,,,,,, Order on Motion for Extension of Time to File,,,,,,,,,,,,,,,,,,,,,,,,, Motion Hearing,,,,,,,,,, *(Plaintiff's Notice of Objections and Request for Review of Magistrate Judge's Rulings on Motions After June 15, 2021 Hearing)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A)(McKelvey, David) (Entered: 06/29/2021) |
| 06/29/2021 | 133 | Memorandum in Support re 65 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 56 Order on Motion to Quash,,,,,, Order on Motion to Amend/Correct,,,,, Order on Motion to Remand to State Court,,,,, Order on Motion to Expedite,,,,, Order on Motion to C *(Plaintiff's Supplement to Notice of Objections and Renewed Request for Review of Magistrate Judge's Order on Plaintiff's Motion to Compel and Request for Discovery Extension)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 06/29/2021) |
| 07/02/2021 | 134 | Third MOTION to Compel *Rule 35 Medical Examination* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Lawrence, Nicholas) (Entered: 07/02/2021) |
| 07/02/2021 | 135 | Memorandum in Support re 134 Third MOTION to Compel *Rule 35 Medical Examination* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order Proposed order)(Lawrence, Nicholas) (Entered: 07/02/2021) |
| 07/03/2021 | 136 | MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for 90 Day Extension of Discovery Deadline)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Memorandum of Points and Authorities, # 2 Exhibit Declaration, # 3 Exhibit A–g, # 4 Proposed Order)(McKelvey, David) (Entered: 07/03/2021) |
| 07/06/2021 | | Notice of Correction re 136 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for 90 Day Extension of Discovery Deadline). The* |

| | | |
|---|---|---|
| | | *Memorandum in Support to* 136 *Motion is filed as an attachment to the Motion. The Memorandum In Support should be filed as a separate document linking it back to the Motion* 136 *. Please immediately file the Memorandum In Support. (afar) (Entered: 07/06/2021)* |
| 07/06/2021 | 137 | Memorandum *of Points & Authorities in Support of Plaintiff's Emergency Motion for 90 Day Extension of Discovery Deadline* to 136 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for 90 Day Extension of Discovery Deadline)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–G, # 3 Proposed Order)(McKelvey, David) (Entered: 07/06/2021) |
| 07/06/2021 | 138 | RULE 35 ORDER FOR MEDICAL EXAMINATION – Plaintiff shall appear for neurological examination by Dr. Neil Pugach, MD on 7/29/21 at 10:00 a.m. See Order for additional details. Signed by Magistrate Judge Douglas E. Miller on 7/6/21. (afar) (Entered: 07/06/2021) |
| 07/06/2021 | 139 | ORDER: Because the Motion for Extension of Time 136 presents no new information not already considered by the court's oral rulings on June 15, 2021, the court DENIES it without further briefing. Signed by Magistrate Judge Douglas E. Miller on 7/6/21. (afar) (Entered: 07/06/2021) |
| 07/06/2021 | 140 | Third Party MOTION to Quash *Modify Subpoena Duces Tecum* by City Of Chesapeake. (Attachments: # 1 Proposed Order)(Jacobi, Meredith) (Entered: 07/06/2021) |
| 07/06/2021 | 141 | Memorandum in Support re 140 Third Party MOTION to Quash *Modify Subpoena Duces Tecum* filed by City Of Chesapeake. (Attachments: # 1 Exhibit Exhibit A)(Jacobi, Meredith) (Entered: 07/06/2021) |
| 07/07/2021 | 142 | ORDER granting 140 Motion to Modify Subpoena Duces Tecum. Signed by Magistrate Judge Douglas E. Miller on 7/7/21. (afar) (Entered: 07/07/2021) |
| 07/07/2021 | 143 | MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline)* by Joann Wright Haysbert. (McKelvey, David) (Entered: 07/07/2021) |
| 07/07/2021 | 144 | Memorandum to 143 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–F, # 3 Proposed Order)(McKelvey, David) (Entered: 07/07/2021) |
| 07/09/2021 | 145 | ORDER: Plaintiff's two Motions for Sanctions Due to Spoliation of Evidence, ECF Nos. 42 and 98, are DENIED. Copies of this Order sent as DIRECTED on 7.9.21. Signed by Magistrate Judge Douglas E. Miller and filed on 7/9/2021. (epri, ) (Entered: 07/09/2021) |
| 07/13/2021 | 146 | Opposition to 132 Motion Re: Objections to Magistrate Judge, 133 Memorandum in Support filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Lawrence, Nicholas) (Entered: 07/13/2021) |
| 07/13/2021 | 147 | RESPONSE in Opposition re 130 MOTION Plaintiff's Motion for Court–Ordered Mediation and Appointment of a District Judge as Mediator filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Lawrence, Nicholas) (Entered: 07/13/2021) |
| 07/19/2021 | 148 | Reply to 130 MOTION Plaintiff's Motion for Court–Ordered Mediation and Appointment of a District Judge as Mediator *(Plaintiff's Reply in Support of Motion for Court–Ordered Mediation and Appointment of a District Judge as Mediator)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 07/19/2021) |
| 07/21/2021 | 149 | ORDER denying 130 Motion for Court–Ordered Mediation and Appointment of District Judge as Mediator. Signed by District Judge Rebecca Beach Smith on 7/21/21. (jhie, ) (Entered: 07/21/2021) |
| 07/21/2021 | 150 | Memorandum in Opposition re 143 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. |

047

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F)(Lawrence, Nicholas) (Entered: 07/21/2021) |
| 07/22/2021 | 151 | ORDER: The Court AFFIRMS AND ADOPTS the Magistrate Judge's rulings on all discovery motions. Accordingly, the Court OVERRULES the Plaintiff's 65 , 132 Objections. Signed by District Judge Rebecca Beach Smith on 7/22/21. (jhie, ) (Entered: 07/22/2021) |
| 07/23/2021 | 152 | Plaintiff's Notice of Objections and Request for Review of Magistrate Judge's 145 Order Denying Plaintiff's Motions for Sanctions Due to Spoliation of Evidence filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–F)(McKelvey, David) Modified docket text to match title and modified event on 7/26/2021 (jhie, ). (Entered: 07/23/2021) |
| 07/27/2021 | 153 | REPLY to Response to Motion re 143 MOTION for Extension of Time to Complete Discovery (*Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline*) filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Supplemental Declaration, # 2 Exhibit H, # 3 Exhibit H1, # 4 Exhibit G)(McKelvey, David) (Entered: 07/27/2021) |
| 07/28/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 143 MOTION for Extension of Time to Complete Discovery (*Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline*) (jhie, ) (Entered: 07/28/2021) |
| 07/29/2021 | 154 | Rule 26 Disclosure by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Main Document 154 replaced on 7/30/2021) (bpet, ). (Entered: 07/29/2021) |
| 07/30/2021 | | Set Deadlines as to 143 MOTION for Extension of Time to Complete Discovery (*Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline*). Motion Hearing set for 8/11/2021 at 11:00 AM in Norfolk Remote before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 07/30/2021) |
| 07/30/2021 | | Notice of Correction re 154 Rule 26 Disclosure: The filing user has been notified that pursuant to F.R.Civ.P 5(d) and/or the Rule 16(b) Scheduling Order, discovery documents are not to be filed. (bpet, ) (Entered: 07/30/2021) |
| 07/30/2021 | 155 | MOTION for Extension *of Fact Discovery...(Plaintiff's Motion to Re–Open Fact Discovery and Extend Expert Discovery Deadlines)* by Joann Wright Haysbert. (McKelvey, David) (Entered: 07/30/2021) |
| 07/30/2021 | 156 | Memorandum of Points and Authorities to 155 MOTION for Extension *of Fact Discovery...(Plaintiff's Motion to Re–Open Fact Discovery and Extend Expert Discovery Deadlines)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Nazareth Haysbert, # 2 Exhibit A–F, # 3 Exhibit Declaration of Randall Atlas, # 4 Proposed Order)(McKelvey, David) (Entered: 07/30/2021) |
| 08/06/2021 | 157 | Memorandum in Opposition re 152 Motion Re: Objections to Magistrate Judge filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Lawrence, Nicholas) (Entered: 08/06/2021) |
| 08/06/2021 | 158 | Second Supplemental Declaration of Nazareth M. Haysbert In Support of Plaintiff's Second Emergency Motion To Extend Plaintiff's Discovery Deadline (Attachments: # 1 Exhibit I–O)(McKelvey, David) Modified text on 8/9/2021 (afar). (Entered: 08/06/2021) |
| 08/09/2021 | | Notice of Correction re 158 Response: The docket text does not match the pleading attached. Also, the incorrect event was used. The correct event that should have been used is Declaration found in Civil Events, Other Filings, Other Documents. Please note that the docket text should always match the pleading title. The Clerk's Office has corrected the mistake. (afar) (Entered: 08/09/2021) |
| 08/09/2021 | 159 | Declaration re 143 MOTION for Extension of Time to Complete Discovery (*Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline) (Third Supplemental Declaration of Nazareth M. Haysbert in Support of Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit P, # 2 Exhibit Q)(McKelvey, David) (Entered: |

| | | |
|---|---|---|
| | | 08/09/2021) |
| 08/09/2021 | 160 | Declaration re 143 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline) (Declaration of Deajah Clark)* by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/09/2021) |
| 08/10/2021 | 161 | ORDER: The court AFFIRMS AND ADOPTS Magistrate Judge Miller's rulings on the Spoliation Motions for the reasons stated in his Memorandum Order dated July 9, 2021. ECF No 145. The Plaintiff's objections, ECF No 152, are OVERRULED. Signed by District Judge Rebecca Beach Smith on 8/10/2021. (afar) (Entered: 08/10/2021) |
| 08/11/2021 | 162 | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Motion Hearing held on 8/11/2021 re 143 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline)* filed by Joann Wright Haysbert. Matter came on for hearing on pending Motion for Extension of Time To Complete Discovery (#143). Present via zoom were David McKelvey and Nazareth Haysbert on behalf of the plaintiff and Nicholas Lawrence on behalf of the defendant. Mr. Haysbert argued the motion and Mr. Lawrence responded. There is another similar motion pending (#155). The Court will take up both of these motions together and directs as follows: The defendants shall file a short opposition to #155 by 8/13/21 to include complete deposition transcripts of Marcus Wilson, Nick Seifert and Christopher Robinson. The defendants shall also submit a declaration of Theresa Matthews, the Regional Facilities Manager by 8/13/21 if possible, but otherwise by 8/16 or 8/17/21. The Court will issue an order after receiving these documents. Hearing adjourned. (Court Reporter Jody Stewart, OCR.)(cdod, ) (Entered: 08/12/2021) |
| 08/13/2021 | 163 | Memorandum in Opposition re 155 MOTION for Extension *of Fact Discovery...(Plaintiff's Motion to Re–Open Fact Discovery and Extend Expert Discovery Deadlines)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit 1 Deposition Transcript (Wilson), # 2 Exhibit 2 Deposition Transcript (Seifert), # 3 Exhibit 3 Deposition Transcript (Robinson), # 4 Exhibit 4 Diagram)(Lawrence, Nicholas) (Entered: 08/13/2021) |
| 08/16/2021 | 164 | REPLY to Response to Motion re 143 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline) (Plaintiff's Reply in Support of Motion to Re–Open Fact Discovery and Extend Discovery Deadlines)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit G–I)(McKelvey, David) (Entered: 08/16/2021) |
| 08/17/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 143 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Second Emergency Motion to Extend Plaintiff's Discovery Deadline)* (jhie, ) (Entered: 08/17/2021) |
| 08/17/2021 | 165 | Response to 155 MOTION for Extension *of Fact Discovery...(Plaintiff's Motion to Re–Open Fact Discovery and Extend Expert Discovery Deadlines)*, 164 Reply to Response to Motion, 160 Declaration, 159 Declaration, 158 Response *and Motion to Strike* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Affidavit Exhibit A)(Lawrence, Nicholas) (Entered: 08/17/2021) |
| 08/19/2021 | | Notice of Correction re 164 Reply to Response to Motion: The filing user is advised that leave of court is needed to file this document as the Reply to this Motion was already filed at ECF 153. Please file a Motion for Leave to File with the proposed document included as an attachment to the motion. (jhie, ) (Entered: 08/19/2021) |
| 08/19/2021 | | Notice of Correction re 165 Response to Motion for Extension of Fact Discovery and Motion to Strike: The filing user is advised that document 165 contains more than one pleading for motion or relief. Please rename and refile the document as a Motion to Strike at your earliest convenience. (jhie, ) (Entered: 08/19/2021) |
| 08/19/2021 | 166 | Objection *(Plaintiff's Objection to Defendants' Supplemental Designation of Expert Witnesses)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/19/2021) |
| 08/19/2021 | 167 | REPLY to Response to Motion re 155 MOTION for Extension *of Fact Discovery...(Plaintiff's Motion to Re–Open Fact Discovery and Extend Expert Discovery Deadlines) (Plaintiff's Reply in Support of Motion to Re–Open Fact* |

| | | |
|---|---|---|
| | | *Discovery and Extend Discovery Deadlines (Dkt. No. 155))* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/19/2021) |
| 08/20/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 155 MOTION for Extension *of Fact Discovery...(Plaintiff's Motion to Re−Open Fact Discovery and Extend Expert Discovery Deadlines)* (jhie, ) (Entered: 08/20/2021) |
| 08/24/2021 | 168 | ORDER denying 143 , 155 Motions for Extension of Time to Complete Discovery. Signed by Magistrate Judge Douglas E. Miller on 8/23/21. (jhie, ) (Entered: 08/24/2021) |
| 08/27/2021 | 169 | MOTION for Extension *of Time to Designate Witnesses and Exhibits Pursuant to Rule26(a)(3)* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 08/27/2021) |
| 08/27/2021 | 170 | Memorandum in Support re 169 MOTION for Extension *of Time to Designate Witnesses and Exhibits Pursuant to Rule26(a)(3)* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/27/2021) |
| 08/30/2021 | 171 | Objection *Plaintiff's Objection to Defendants' Rule 26 (a) (3) List of Witnesses and Exhibits* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/30/2021) |
| 09/07/2021 | 172 | Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 168 Order on Motion for Extension of Time to Complete Discovery, Order on Motion for Extension of Time to File by Joann Wright Haysbert. (McKelvey, David) (Entered: 09/07/2021) |
| 09/10/2021 | 173 | Memorandum in Opposition re 169 MOTION for Extension *of Time to Designate Witnesses and Exhibits Pursuant to Rule26(a)(3)* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit A−I, # 2 Exhibit Declaration)(McKelvey, David) (Entered: 09/10/2021) |
| 09/17/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 169 MOTION for Extension *of Time to Designate Witnesses and Exhibits Pursuant to Rule26(a)(3)* (jhie, ) (Entered: 09/17/2021) |
| 09/21/2021 | 174 | ORDER granting 169 Motion for Extension of Time to Designate Witnesses and Exhibits Pursuant to Rule 26(a)(3). Signed by Magistrate Judge Douglas E. Miller on 9/21/21. (jhie, ) (Entered: 09/21/2021) |
| 09/21/2021 | 175 | RESPONSE in Opposition re 172 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 168 Order on Motion for Extension of Time to Complete Discovery, Order on Motion for Extension of Time to File filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D)(Lawrence, Nicholas) (Entered: 09/21/2021) |
| 09/29/2021 | 176 | ORDER: Plaintiff's 172 Objections to the Magistrate Judge's Ruling or Recommendation are OVERRULED, and the Magistrate Judge's 168 Order denying Motions for Extension of Time and to Complete Discovery is AFFIRMED and ADOPTED. Signed by District Judge Rebecca Beach Smith on 9/29/21. (jhie, ) (Entered: 09/29/2021) |
| 10/01/2021 | 177 | MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for Partial Stay of Magistrate Judge's Order Granting Defendants' Motion to Extend the Deadline for Rule 26 (a) (3) Disclosures and Objections)* by Joann Wright Haysbert. (McKelvey, David) (Entered: 10/01/2021) |
| 10/01/2021 | 178 | Memorandum in Support re 177 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for Partial Stay of Magistrate Judge's Order Granting Defendants' Motion to Extend the Deadline for Rule 26 (a) (3) Disclosures and Objections)* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 10/01/2021) |
| 10/01/2021 | 179 | Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 174 Order on Motion for Extension of Time to File by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A)(McKelvey, David) (Entered: 10/01/2021) |

050

| 10/08/2021 | 180 | MOTION Schedule Judicial Settlement Conference by Joann Wright Haysbert. (McKelvey, David) (Entered: 10/08/2021) |
|---|---|---|
| 10/08/2021 | 181 | Memorandum in Support re 180 MOTION Schedule Judicial Settlement Conference filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–D, # 3 Proposed Order)(McKelvey, David) (Entered: 10/08/2021) |
| 10/12/2021 | 182 | Memorandum in Opposition re 177 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for Partial Stay of Magistrate Judge's Order Granting Defendants' Motion to Extend the Deadline for Rule 26 (a) (3) Disclosures and Objections)* filed by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 10/12/2021) |
| 10/12/2021 | 183 | Response to 180 MOTION Schedule Judicial Settlement Conference filed by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 10/12/2021) |
| 10/14/2021 | | Set Hearings: Settlement Conference set for 10/21/2021 at 10:00 AM before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 10/14/2021) |
| 10/15/2021 | 184 | MOTION for Summary Judgment by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 10/15/2021) |
| 10/15/2021 | 185 | Brief in Support to 184 MOTION for Summary Judgment filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Proposed Order)(McGavin, John) (Entered: 10/15/2021) |
| 10/18/2021 | 186 | SETTLEMENT CONFERENCE ORDER. Settlement conference scheduled for 11/2/21 at 10:00 a.m. (eastern time) via Zoomgov; memorandum due by noon on 10/29/21. See Order for details. Signed by Magistrate Judge Douglas E. Miller on 10/18/21. (jhie, ) (Entered: 10/18/2021) |
| 10/19/2021 | | MOTION REFERRED to Magistrate Judge Douglas E. Miller: 177 MOTION for Extension of Time to Complete Discovery *(Plaintiff's Emergency Motion for Partial Stay of Magistrate Judge's Order Granting Defendants' Motion to Extend the Deadline for Rule 26 (a) (3) Disclosures and Objections)* (jhie, ) (Entered: 10/19/2021) |
| 10/21/2021 | 187 | MOTION for Summary Judgment by Joann Wright Haysbert. (McKelvey, David) (Entered: 10/21/2021) |
| 10/21/2021 | 188 | Memorandum in Support re 187 MOTION for Summary Judgment filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Statement of Undisputed Facts, # 2 Exhibit Declaration, # 3 Exhibit A–R, # 4 Proposed Order)(McKelvey, David) (Entered: 10/21/2021) |
| 10/29/2021 | 189 | Memorandum in Opposition re 184 MOTION for Summary Judgment filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Statement of Undisputed Facts, # 2 Exhibit Declaration, # 3 Exhibit A–V)(McKelvey, David) (Entered: 10/29/2021) |
| 11/02/2021 | | Case Reassigned to Magistrate Judge Robert J. Krask. Magistrate Judge Douglas E. Miller no longer assigned to the case. (jhie, ) (Entered: 11/02/2021) |
| 11/02/2021 | 190 | ORDER directing Clerk to reassign this case to an alternate United States Magistrate Judge. Signed by Magistrate Judge Douglas E. Miller on 11/2/21. (jhie, ) (Entered: 11/02/2021) |
| 11/02/2021 | | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Settlement Conference held on 11/2/2021. (cdod, ) (Entered: 11/04/2021) |
| 11/04/2021 | 191 | Opposition to 188 Memorandum in Support, 187 MOTION for Summary Judgment filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Proposed Order)(McGavin, John) (Entered: 11/04/2021) |
| 11/04/2021 | 192 | Reply to 189 Memorandum in Opposition, 184 MOTION for Summary Judgment filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 11/04/2021) |

051

| | | |
|---|---|---|
| 11/10/2021 | 193 | Rebuttal Brief re 187 MOTION for Summary Judgment filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibits to Declaration, # 3 Exhibit Appendix)(McKelvey, David) (Entered: 11/10/2021) |
| 11/16/2021 | 194 | ORDER. Final pretrial conference scheduled for 11/22/21 at 10:00 a.m. via Zoomgov; the parties are DIRECTED to submit to chambers a proposed Final Pretrial Order signed by both parties no later than 11/18/21. See Order for details. Signed by Magistrate Judge Robert J. Krask on 11/15/21. (jhie, ) (Entered: 11/16/2021) |
| 11/18/2021 | 195 | TRIAL BRIEF *Plaintiff's Trial Brief No. 1: Batson Motions* by Joann Wright Haysbert. (McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 196 | TRIAL BRIEF *Plaintiff's Trial Brief No. 2: Testimony of Plaintiff's Treating Physicians* by Joann Wright Haysbert. (McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 197 | MOTION in Limine by Joann Wright Haysbert. (McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 198 | Brief in Support to 197 MOTION in Limine *(To Exclude Dr. Neil Pugach's Untimely Expert Report and Exclude Any Evidence, Testimony Or Witnesses Relating Thereto* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 199 | Brief in Support to 197 MOTION in Limine *Daubert Motion to Exclude Reports and Testimony of Defendants' Experts Dr. Pugach and Dr. Huang* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Haysbert, # 2 Exhibit Declaration of Dr. FIler, # 3 Exhibit A–C, # 4 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 200 | Brief in Support to 197 MOTION in Limine *To Exclude Sub Rosa Evidence or Any Other Evidence Not Disclosed* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 201 | Brief in Support to 197 MOTION in Limine *To Exclude Evidence of Plaintiff's Subsequent Car Accident and Any Injuries Sustained* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Haysbert, # 2 Exhibit A–C, # 3 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 202 | Brief in Support to 197 MOTION in Limine *To Exclude Prejudicial References to Plaintiff's Shoes Worn at the Time of the Incident* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Haysbert, # 2 Exhibit C–D, # 3 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 203 | Brief in Support to 197 MOTION in Limine *To Exclude Prejudicial Use of Photos of Plaintiff's Head* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Haysbert, # 2 Exhibit, # 3 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 204 | Brief in Support to 197 MOTION in Limine *To Exclude Use of Photograph of Floor and Testimony to Argue the Floor Was Clean and Dry* filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Haysbert, # 2 Exhibit, # 3 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 205 | Brief in Support to 197 MOTION in Limine *To Exclude Reference to Plaintiff's Financial Condition* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 11/18/2021) |
| 11/18/2021 | 206 | Brief in Support to 197 MOTION in Limine *To Exclude Familial References* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 11/19/2021) |
| 11/19/2021 | 207 | Brief in Support to 197 MOTION in Limine *To Exclude Reference to Plaintiff's Counsel's Pro Hac Vice Status* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 11/19/2021) |
| 11/19/2021 | 208 | ORDER: The court ORDERS that the Final Pretrial Conference and the Jury Trial are REMOVED from the court's docket and will be rescheduled, as appropriate, pending the disposition of the outstanding Motions for Summary Judgment. Signed by District Judge Rebecca Beach Smith on 11/19/21. (afar) (Entered: 11/19/2021) |

| 11/19/2021 | 209 | MOTION to Withdraw as Attorney by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order Proposed Order)(Lawrence, Nicholas) (Entered: 11/19/2021) |
| 11/19/2021 | 210 | ORDER: the Magistrate Judge's 174 pretrial Order is MODIFIED regarding its finding of fact as to the dates of the late filings; otherwise, the Order is AFFIRMED and ADOPTED. The 177 Emergency Motion is MOOT regarding the request for a stay. If she still wishes to, Plaintiff may depose Dr. Pugach within 21 days of the date of this Order. Signed by District Judge Rebecca Beach Smith on 11/19/21. (bpet, ) (Entered: 11/19/2021) |
| 11/19/2021 | 211 | CORRECTION ORDER: The Order entered on 11/19/21, ECF 210, is corrected as follows: The citation on line 1 of page 7 shall read, "See ECF No 208", thereby eliminating the citation of ECF No 170 at 3. Signed by District Judge Rebecca Beach Smith on 11/19/21. (afar) (Entered: 11/19/2021) |
| 11/19/2021 | 212 | Referral Order: It is ORDERED that US Magistrate Judge Robert J. Krask is designated to conduct hearings, etc. and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the motions for summary judgment, ECF 184 MOTION for Summary Judgment filed by Outback Steakhouse of Florida, LLC, and 187 MOTION for Summary Judgment filed by Joann Wright Haysbert. Signed by District Judge Rebecca Beach Smith on 11/19/21. (afar) (Entered: 11/19/2021) |
| 11/22/2021 | 213 | ORDER granting 209 Motion to Withdraw as to Nicholas J. Lawrence. Signed by District Judge Rebecca Beach Smith on 11/22/21. (afar) (Entered: 11/22/2021) |
| 11/23/2021 | 214 | Memorandum in Opposition re 197 MOTION in Limine filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 11/23/2021) |
| 11/29/2021 | 215 | REPLY to Response to Motion re 197 MOTION in Limine filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 11/29/2021) |
| 11/30/2021 |  | MOTION REFERRED to Magistrate Judge Robert J. Krask. 197 MOTION in Limine (jhie, ) (Entered: 11/30/2021) |
| 11/30/2021 | 216 | Response to 196 Trial Brief filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 11/30/2021) |
| 11/30/2021 | 217 | Opposition to 195 Trial Brief filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 11/30/2021) |
| 12/01/2021 | 218 | Opposition to 202 Brief in Support, 201 Brief in Support, 200 Brief in Support, 198 Brief in Support, 203 Brief in Support, 199 Brief in Support, 207 Brief in Support, 204 Brief in Support, 205 Brief in Support, 206 Brief in Support filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit)(McGavin, John) (Entered: 12/01/2021) |
| 12/03/2021 | 219 | TRIAL BRIEF *(Plaintiff's Trial Brief No. 3: Admissibility of the Work Order Request Under the Business Records and Present Sense Impression Exceptions to the Hearsay Rule)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration)(McKelvey, David) (Entered: 12/03/2021) |
| 12/03/2021 | 220 | TRIAL BRIEF *(Plaintiff's Trial Brief No. 4: Admissibility of the Declaration and Trial Testimony of Nineveh Haysbert Under the Present Sense Impression Exception to the Hearsay Rule)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration)(McKelvey, David) (Entered: 12/03/2021) |
| 12/06/2021 | 221 | Reply to 195 Trial Brief filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 12/06/2021) |
| 12/06/2021 | 222 | Reply to 196 Trial Brief filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibit A)(McKelvey, David) (Entered: 12/06/2021) |
| 12/07/2021 | 223 | Reply to 197 MOTION in Limine filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 12/07/2021) |
| 12/20/2021 | 224 | Reply to 219 Trial Brief, *Brief in Opposition to Plaintiff's Third Trial Brief* filed by Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit)(McGavin, John) |

| | | |
|---|---|---|
| | | (Entered: 12/20/2021) |
| 02/18/2022 | 225 | UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION re 184 , 187 MOTIONS for Summary Judgment. Signed by Magistrate Judge Robert J. Krask on 2/18/22. (jhie, ) (Entered: 02/18/2022) |
| 02/28/2022 | 226 | ORDER. Plaintiff is ORDERED to file unredacted copies of the relevant expert reports to her 199 Brief in Support by 3/4/22. Plaintiff is also ORDERED to refile the photos of her head submitted as an attachment to her 203 Brief in Support such that they are visible. The parties are ORDERED to contact the courtroom deputy of the undersigned to schedule a hearing on Plaintiff's 197 motions *in limine*. Signed by Magistrate Judge Robert J. Krask on 2/28/22. (jhie, ) (Entered: 02/28/2022) |
| 03/04/2022 | 227 | MOTION to Seal *(Plaintiff's Application for Leave to File Under Seal Expert Reports and Plaintiff's Injury Photos Pursuant to Court Order Dated February 28, 2022)* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit A–C, # 3 Proposed Order)(McKelvey, David) (Entered: 03/04/2022) |
| 03/07/2022 | | Notice of Correction re 227 MOTION to Seal. Pursuant to Local Civil Rule 5(C), the filing user is advised to file a memorandum in support of the motion to seal and a separate Local Civil Rule 5(C) Notice and link them back to the motion. (jhie, ) (Entered: 03/07/2022) |
| 03/07/2022 | 228 | Memorandum in Support re 227 MOTION to Seal Expert Reports and Plaintiff's Injury Photos Pursuant to Court Order Dated February 28, 2022 filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 03/07/2022) |
| 03/07/2022 | 229 | Notice of Filing Sealing Motion re 227 MOTION to Seal *(Plaintiff's Application for Leave to File Under Seal Expert Reports and Plaintiff's Injury Photos Pursuant to Court Order Dated February 28, 2022)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 03/07/2022) |
| 03/07/2022 | 230 | Sealed Document re 227 MOTION to Seal *(Plaintiff's Application for Leave to File Under Seal Expert Reports and Plaintiff's Injury Photos Pursuant to Court Order Dated February 28, 2022)*. (McKelvey, David) (Main Document 230 replaced on 3/8/2022) (jhie, ). (Entered: 03/07/2022) |
| 03/11/2022 | | Set Hearings: Motion Hearing set for 4/12/2022 at 10:00 AM in Norfolk Remote via Zoom before Magistrate Judge Robert J. Krask, with OCR. (btit) (Entered: 03/11/2022) |
| 03/11/2022 | 231 | ORDER. The Court ADOPTS AND APPROVES IN FULL the findings and recommendations set forth in the Magistrate Judge's 225 Report and Recommendation. Accordingly, Defendants' 184 Motion for Summary Judgment and Plaintiff's 187 Motion for Summary Judgment are DENIED. The Clerk is DIRECTED to contact counsel to set a Supplemental Rule 16(b) Conference, at which new dates for the Final Pretrial Conference and the Jury Trial shall be set. Signed by District Judge Rebecca Beach Smith on 3/11/22. (jhie, ) (Entered: 03/11/2022) |
| 03/14/2022 | 232 | ORDER granting 227 Motion to Seal. Signed by Magistrate Judge Robert J. Krask on 3/14/22. (jhie, ) (Entered: 03/14/2022) |
| 03/24/2022 | | Conference call held with counsel on 3/24/2022 to reschedule trial and fptc dates. Present on the phone were David McKelvey, Nazareth Haysbert, and Anna Zick. (sche) (Entered: 03/24/2022) |
| 03/24/2022 | 233 | Amended Rule 16(b) Scheduling Order – Pursuant to the conference call it is ordered that the Final Pretrial Conference is set for 7/29/2022 at 11:00 AM in Norfolk. Jury Trial is set for 8/9/2022 at 11:00 AM in Norfolk. Signed by District Judge Rebecca Beach Smith on March 24, 2022. (sche) (Entered: 03/24/2022) |
| 04/12/2022 | 234 | Minute Entry for Motion Hearing held on 4/12/2022 re 197 MOTION in Limine filed by Joann Wright Haysbert before Magistrate Judge Robert J. Krask: The matter came on for a hearing to address Plaintiffs motions in limine (ECF #197), filed on 11/18/2021. David McKelvey and Nazareth Haysbert appeared on behalf of Plaintiff. John McGavin appeared on behalf of Defendant. Comments and questions by the Court. Argument and responses of counsel heard. The Court grants in part and denies in part the motions in limine. The Court directs counsel to confer and come to an |

| | | |
|---|---|---|
| | | agreement regarding fees and expenses relating to briefing by April 19, 2022. If counsel cannot come to an agreement, they shall file a motion with the appropriate affidavit and records by April 29, 2022. If briefed, counsel for Defendant shall file a response in opposition by May 13, 2022 and counsel for Plaintiff shall file a reply by May 19, 2022. The Court to prepare an order. Court adjourned. (Court Reporter Jody Stewart, OCR.)(btit) Modified on 4/13/2022 (btit). (Entered: 04/12/2022) |
| 04/13/2022 | 235 | ORDER: The motion in limine to preclude expert testimony from Dr. Neil Pugach as untimely is DENIED in light of the Court's prior rulings. The motion in limine to preclude expert testimony from Dr. Neil Pugach and Dr. Abbott Huang on Daubert grounds was GRANTED IN PART AND DENIED IN PART. The motion in limine to exclude sub rosa evidence was DENIED WITHOUT PREJUDICE. The motion in limine to preclude evidence of Haysbert's April 2021 car accident, and any injuries sustained therefrom, was DENIED WITHOUT PREJUDICE, subject to timely and proper objection at trial. The motion in limine to exclude prejudicial references to Haysbert's shoes at the time of her fall was DENIED. The motion in limine to exclude prejudicial use of photographs of Haysbert's head was DENIED WITHOUT PREJUDICE, subject to timely and proper objection at trial. The motion in limine to exclude a photograph of the floor where Haysbert allegedly fell and testimony that the floor was clean and dry was DENIED WITHOUT PREJUDICE, subject to timely and proper objection at trial. The motion in limine to exclude references to Haysbert's financial condition was DENIED WITHOUT PREJUDICE, subject to timely and proper objection at trial. The motion in limine to exclude familial references was GRANTED. The motion in limine to exclude reference to Nazareth Haysbert's pro hac vice admission or status as a California attorney was GRANTED. Signed by Magistrate Judge Robert J. Krask on 4/13/2022. (afar) (Entered: 04/13/2022) |
| 07/11/2022 | 236 | Proposed Voir Dire by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 07/11/2022) |
| 07/11/2022 | 237 | ORDER. The parties are DIRECTED to submit to the chambers of the undersigned, no later than 5:00 p.m. on July 26, 2022, a proposed Final Pretrial Order signed by both parties; a copy of all exhibits to which the parties have objections that were not resolved; and copies of any *de bene esse* depositions to which the parties have made objections. See Order for details. Signed by Magistrate Judge Robert J. Krask on 7/11/22. (jhie, ) (Entered: 07/11/2022) |
| 07/12/2022 | 238 | Proposed Jury Instructions by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 07/12/2022) |
| 07/12/2022 | 239 | Proposed Jury Instructions by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 07/12/2022) |
| 07/13/2022 | | Reset Hearings: Final Pretrial Conference set for 7/29/2022 at 11:00 AM in Norfolk Mag Courtroom 2 before Magistrate Judge Robert J. Krask. (btit) (Entered: 07/13/2022) |
| 07/26/2022 | 240 | EXHIBIT by Outback Steakhouse of Florida, LLC.. (McGavin, John) (Entered: 07/26/2022) |
| 07/29/2022 | 241 | Minute Entry for Final Pretrial Conference held on 7/29/2022 before Magistrate Judge Robert J. Krask: The matter came on for a Final Pretrial Conference. Nazareth Haysbert and David McKelvey appeared on behalf of Plaintiff. John McGavin appeared on behalf of Defendant. The Court addressed the Final Pretrial Order. Comments and questions by the Court. Responses of counsel heard. Court to prepare an order. Court adjourned. (Court Reporter FTR.)(btit) (Entered: 07/29/2022) |
| 07/29/2022 | 242 | ORDER. Pursuant to the final pretrial conference held on 7/29/22, the parties are ordered to follow the directives noted herein. Signed by Magistrate Judge Robert J. Krask on 7/29/22. (jhie, ) (Entered: 07/29/2022) |
| 07/29/2022 | 243 | FINAL PRETRIAL ORDER. Signed by Magistrate Judge Robert J. Krask on 7/29/22. (jhie, ) (Entered: 07/29/2022) |
| 08/01/2022 | 244 | NOTICE of Appearance by Emily Blake on behalf of Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC (Blake, Emily) (Entered: 08/01/2022) |

| | | |
|---|---|---|
| 08/01/2022 | 245 | Request for Authorization to Bring Electronic Devices into Court by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Blake, Emily) Modified docket text on 8/3/2022 (jhie, ). (Entered: 08/01/2022) |
| 08/02/2022 | 246 | TRANSCRIPT of Final Pretrial Conference proceedings held on 7/29/2022, before Judge Robert J. Krask, Court Reporter/Transcriber Paul McManus, Telephone number 757–222–7077. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 9/1/2022. Redacted Transcript Deadline set for 10/3/2022. Release of Transcript Restriction set for 10/31/2022.**(mcmanus, paul) (Entered: 08/02/2022) |
| 08/02/2022 | 247 | Request for use of Courtroom Technology & To Bring Electronic Devices to Trial (McKelvey) by Joann Wright Haysbert. (McKelvey, David) Modified docket text on 8/3/2022 (jhie, ). (Entered: 08/02/2022) |
| 08/02/2022 | 248 | Proposed Voir Dire by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/02/2022) |
| 08/02/2022 | 249 | Proposed Jury Instructions by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/02/2022) |
| 08/02/2022 | 250 | Proposed Jury Instructions by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/02/2022) |
| 08/02/2022 | 251 | Proposed Jury Instructions by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/02/2022) |
| 08/02/2022 | 252 | Proposed Jury Instructions by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/02/2022) |
| 08/05/2022 | 254 | SUPPLEMENTAL FINAL PRETRIAL ORDER ADDRESSING INTERROGATORY EXHIBITS. Signed by Magistrate Judge Robert J. Krask on 8/5/22. (jhie, ) (Entered: 08/05/2022) |
| 08/08/2022 | 255 | Proposed General Verdict Form with Cites by Joann Wright Haysbert. (McKelvey, David) Modified docket text on 2/28/2023 to match title of document (tamarm, ). (Entered: 08/08/2022) |
| 08/08/2022 | 256 | Proposed General Verdict Form with Cites by Joann Wright Haysbert. (McKelvey, David) Modified docket text on 2/28/2023 to match title of document (tamarm, ). (Entered: 08/08/2022) |
| 08/08/2022 | 257 | MOTION Additional Technology and for Witness to Appear via Zoom by Joann Wright Haysbert. (Attachments: # 1 Exhibit Memo in Support)(McKelvey, David) (Entered: 08/08/2022) |
| 08/08/2022 | 258 | NOTICE by Joann Wright Haysbert *of Nonconsent* (McKelvey, David) (Entered: 08/08/2022) |
| 08/08/2022 | | Deadline terminated: Jury Trial set for 8/9/2022 removed from the docket. To be reset. (lbax, ) (Entered: 08/08/2022) |
| 08/15/2022 | 259 | ORDER. As the August 9, 2022, trial date has been removed from the docket to be later reset, the 257 Motion for Additional Technology and for Witnesses to Appear Via Zoom is now MOOT and is no longer pending before the court. Signed by District Judge Rebecca Beach Smith on 8/15/22. (jhie, ) (Entered: 08/15/2022) |
| 11/02/2022 | | Conference call held with counsel on 11/2/2022 to reschedule trial date. Present on the phone were David McKelvey and John McGavin. (tamarm, ) (Entered: 11/02/2022) |
| 11/03/2022 | 260 | ORDER – Pursuant to the conference call on 11/2/2022, it is ordered that the Jury Trial is reset for 3/14/2023 at 11:00 AM in Norfolk before District Judge Rebecca Beach Smith. Signed by District Judge Rebecca Beach Smith on 11/3/2022. (tamarm, ) |

| | | |
|---|---|---|
| | | (Entered: 11/03/2022) |
| 02/13/2023 | 261 | Request for use of Courtroom Technology & To Bring Electronic Devices to Trial by Joann Wright Haysbert. (McKelvey, David) Modified on 2/14/2023 (jhie, ). (Entered: 02/13/2023) |
| 02/23/2023 | 263 | MOTION to Continue by Outback Steakhouse of Florida, LLC. (Attachments: # 1 Proposed Order)(McGavin, John) (Entered: 02/23/2023) |
| 02/23/2023 | 264 | Memorandum in Support re 263 MOTION to Continue filed by Outback Steakhouse of Florida, LLC. (Attachments: # 1 Affidavit)(McGavin, John) (Entered: 02/23/2023) |
| 02/24/2023 | 265 | SETTLEMENT CONFERENCE ORDER. Settlement conference scheduled for 2/28/23 at 1:30 p.m. (eastern time) via Zoomgov; memorandum due by 5:00 p.m. on 2/27/23; see Order for details. Signed by Magistrate Judge Douglas E. Miller on 2/24/23. (jhie, ) (Entered: 02/24/2023) |
| 02/24/2023 | | Set Hearings: Settlement Conference set for 2/28/2023 at 01:30 PM in Newport News Remote before Magistrate Judge Douglas E. Miller. (jhie, ) (Entered: 02/24/2023) |
| 02/28/2023 | 266 | EXHIBIT by Outback Steakhouse of Florida, LLC.. (Attachments: # 1 Exhibit)(McGavin, John) (Entered: 02/28/2023) |
| 02/28/2023 | | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Settlement Conference held on 2/28/2023. (cdod, ) (Entered: 03/01/2023) |
| 03/01/2023 | 267 | NOTICE by Joann Wright Haysbert *(Plaintiff's Notice of Non−Opposition to Defendant Outback Steakhouse's Motion to Continue Trial Date)* (McKelvey, David) (Entered: 03/01/2023) |
| 03/01/2023 | 268 | ORDER granting 263 Motion to Continue; the Jury Trial is continued to August 8, 2023 at 11:00 a.m. Signed by District Judge Rebecca Beach Smith on 3/1/2023. (tamarm, ) (Entered: 03/01/2023) |
| 03/01/2023 | | Jury Trial reset for 8/8/2023 at 11:00 AM in Norfolk before District Judge Rebecca Beach Smith. (tamarm, ) (Entered: 03/01/2023) |
| 06/30/2023 | 269 | ORDER − The Court directs the Calendar Clerk to schedule a Supplemental Final Pretrial Conference with counsel for the parties, to take place after July 25, 2023. SEE ORDER FOR DETAILS. Signed by District Judge Rebecca Beach Smith on 6/30/2023. (dbra, ) (Entered: 06/30/2023) |
| 07/05/2023 | | Set/Reset Hearings: Supplemental Final Pretrial Conference set for 8/1/2023 at 02:00 PM in Norfolk before District Judge Rebecca Beach Smith. (tamarm, ) (Entered: 07/05/2023) |
| 07/06/2023 | 270 | ORDER. A Supplemental Final Pretrial Conference has been set for August 1, 2023, at 2:00 P.M. in Norfolk, Virginia. The parties are reminded that no remote participation is permitted, and any counsel who wish to participate in the trial must be present in person at the Supplemental Final Pretrial Conference. Signed by District Judge Rebecca Beach Smith on 7/6/23. (jhie, ) (Entered: 07/06/2023) |
| 08/01/2023 | | SUPPLEMENTAL FINAL PRETRIAL CONFERENCE held in chambers on 8/1/2023 before District Judge Rebecca Beach Smith. (Court Reporter Jody Stewart.) David McKelvey and Nazareth Haysbert, present on behalf of plaintiff. John McGavin and Emily Blake, present on behalf of defendant. Rulings made on Supplemental Final Pretrial Order. (tamarm, ) (Entered: 08/02/2023) (Entered: 08/02/2023) |
| 08/02/2023 | 273 | ORDER − The attached exhibit and witness lists shall supersede all other such lists in this case. The parties are DIRECTED to make all necessary updates to their trial binders in accordance with this Order, and to provide the original and two copies of these updated binders to the Clerk, in addition to the copy provided to opposing counsel, by 8/7/2023, at or before 11:00 a.m. Signed by District Judge Rebecca Beach Smith on 8/2/2023. (tamarm, ) (Entered: 08/02/2023) |
| 08/03/2023 | | Follow up Settlement Conference set for 8/4/2023 at 09:30 AM in Newport News Remote before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 08/03/2023) |

| 08/04/2023 | | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Settlement Conference held on 8/4/2023. (cdod, ) (Entered: 08/05/2023) |
|---|---|---|
| 08/06/2023 | 274 | MOTION Plaintiff's Motion for Leave to Present Dr. Huma Haider Via Zoom by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/06/2023) |
| 08/06/2023 | 275 | Memorandum in Support re 274 MOTION Plaintiff's Motion for Leave to Present Dr. Huma Haider Via Zoom filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration)(McKelvey, David) (Entered: 08/06/2023) |
| 08/06/2023 | 276 | Proposed General Verdict Form with Citation by Joann Wright Haysbert. (McKelvey, David) Modified text on 8/7/2023 to reflect correct title of pleading. (tamarm, ). (Entered: 08/06/2023) |
| 08/06/2023 | 277 | Proposed General Verdict Form – No Citation by Joann Wright Haysbert. (McKelvey, David) Modified text on 8/7/2023 to reflect correct title of pleading. (tamarm, ). (Entered: 08/06/2023) |
| 08/07/2023 | 278 | Proposed Jury Instructions by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/07/2023) |
| 08/07/2023 | 279 | Proposed Jury Instructions by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/07/2023) |
| 08/07/2023 | 280 | STIPULATION by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/07/2023) |
| 08/07/2023 | 281 | Proposed Jury Instructions by Bloomin' Brands, Inc.. (McGavin, John) (Entered: 08/07/2023) |
| 08/07/2023 | 282 | Proposed Jury Instructions by Bloomin' Brands, Inc.. (McGavin, John) (Entered: 08/07/2023) |
| 08/07/2023 | 283 | MOTION to Quash *a Witness Subpoena* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/07/2023) |
| 08/07/2023 | 284 | Opposition to 274 MOTION Plaintiff's Motion for Leave to Present Dr. Huma Haider Via Zoom filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/07/2023) |
| 08/08/2023 | 286 | TRANSCRIPT of proceedings held on 8–1–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 9/7/2023. Redacted Transcript Deadline set for 10/10/2023. Release of Transcript Restriction set for 11/6/2023.**(stewart, jody) (Entered: 08/08/2023) |
| 08/08/2023 | 288 | Matter came on for jury trial. Motions heard prior to jury trial before District Judge Rebecca Beach Smith on 8/8/2023 re 274 MOTION for Leave to Present Dr. Huma Haider Via Zoom filed by Joann Wright Haysbert and 283 MOTION to Quash *a Witness Subpoena* filed by Outback Steakhouse of Florida, LLC, Bloomin' Brands, Inc. (Court Reporter Jody Stewart.) The Court took Plaintiff's Motion 274 for Leave to Present Dr. Huma Haider via Zoom under advisement pending further information. The Court DENIED Defendants Motion 283 to Quash a Witness Subpoena. Jury Trial continued to 8/9/2023 at 11:00 AM for jury trial in Norfolk Courtroom 4 before District Judge Rebecca Beach Smith. (tameub, ) Modified event on 8/16/2023 (tameub, ). (Entered: 08/16/2023) |
| 08/09/2023 | 289 | MOTION to Quash by Bloomin' Brands, Inc.. (McGavin, John) (Entered: 08/09/2023) |
| 08/09/2023 | 291 | JURY TRIAL HELD (Day 2) before District Judge Rebecca Beach Smith. (Court Reporter Jody Stewart.) Matter came on for trial by jury on 8/9/2023. David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Haysbert. John McGavin and Emily Blake present on behalf of defendants. For reasons stated on the |

| | | record and out of the presence of the jury, the Court finds that 274 Plaintiff's Motion for Leave to Present Dr. Huma Haider Via Zoom filed by Joann Wright Haysbert and 289 MOTION to Quash filed by Bloomin' Brands, Inc., are MOOT. Petit jurors were sworn, examined on voir dire and from said panel came a jury (8 jurors) who were duly sworn. Jurors not serving excused subject to call. Out of the presence of the jury, the plaintiff raised a Batson challenge. Argument of counsel heard and the court overruled the motion. The court directed that the witnesses be separated. Opening statements of counsel heard. Jurors, counsel, and parties excused until 10:00 a.m. on August 10, 2023. (tameub, ) (Entered: 08/10/2023) |
|---|---|---|
| 08/10/2023 | 290 | TRIAL BRIEF *Plaintiff's Trial Brief on the Issue of Ownership and Control* by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/10/2023) |
| 08/10/2023 | 294 | TRIAL BRIEF *as to the Admissibility of Dr. Aaron Filler* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Blake, Emily) (Entered: 08/10/2023) |
| 08/10/2023 | 295 | JURY TRIAL HELD (Day 3) before District Judge Rebecca Beach Smith. (Court Reporter Jody Stewart.) Matter came on for continuation of Jury Trial on 8/10/2023. David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Haysbert. John McGavin and Emily Blake present on behalf of defendants. All jurors (8) present. Stipulation of Facts read into the record. Out of the presence of the jury, defendant moved to strike the testimony of Dr. Aaron Filler, MD, PhD, FRCS. Plaintiff presented evidence. Jurors, counsel and parties excused until 8/11/2023 at 10:30 AM in Norfolk Courtroom 4 before District Judge Rebecca Beach Smith. (tameub, ) (Entered: 08/11/2023) |
| 08/11/2023 | 307 | JURY TRIAL HELD (Day 4) before District Judge Rebecca Beach Smith. (Court Reporter Jody Stewart.) Matter came on for continuation of trial by jury on 8/11/2023. David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Haysbert. John McGavin and Emily Blake present on behalf of defendants. All jurors (8) present. Plaintiff resumed presentation of evidence. Out of the presence of the jury, defendant moved for mistrial. Jurors excused until 11:00 a.m. on August 14, 2023. After jurors were excused, Defendant moved to quash subpoena for Marcus Wilson and to revoke Nazareth Monoah Haysberts Pro Hac Vice admission. Court takes motions under advisement and gave counsel directions regarding briefing schedule for pending motions. Defendants motion to strike Dr. Fillers testimony remains under advisement. Counsel and parties excused until 10:00 a.m. on August 14, 2023. (tameub, ) (Entered: 08/14/2023) |
| 08/13/2023 | 296 | Memorandum *Plaintiff's Opposition to Defendants' Motion for Mistrial (Oral Motion)* filed by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/13/2023) |
| 08/13/2023 | 297 | Declaration *of Nazareth M. Haysbert Regarding Service of a Trial Subpoena on Marcus Wilson* by Joann Wright Haysbert. (McKelvey, David) (Entered: 08/13/2023) |
| 08/13/2023 | 298 | TRIAL BRIEF *as to Defendants' Motion for Mistrial* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Ex A – Haysbert Letter, # 2 Exhibit Ex B – Eleftherion Dep, # 3 Exhibit Ex C – Chase Dep, # 4 Exhibit Ex D – Crosby Dep, # 5 Exhibit Ex E – Trial Transc)(Blake, Emily) (Entered: 08/13/2023) |
| 08/13/2023 | 299 | MOTION to Quash *Witness Subpoena Served on Marcus Wilson* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/13/2023) |
| 08/13/2023 | 300 | TRIAL BRIEF *as to the Admissibility of Work Orders Filed in Response to the Court's Request for Briefing on Subsequent Remedial Measurers under FRE 407* by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration of Haysbert re. Work Orders)(McKelvey, David) (Entered: 08/13/2023) |
| 08/13/2023 | 301 | TRIAL BRIEF *as to Rule 407 Motion to Exclude Subsequent Remedial Measures* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Ex A – Crosby Dep, # 2 Exhibit Ex B – Seifert Dep, # 3 Exhibit Ex C – Work Order, # 4 Exhibit Ex D – Wilson Dep)(Blake, Emily) (Entered: 08/13/2023) |
| 08/13/2023 | 302 | TRIAL BRIEF *in support of Defendant's Motion to Revoke Pro Hac Vice Status* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/13/2023) |

059

| 08/14/2023 | 303 | Memorandum *Response to Defendants' Trial Brief Regarding Dr. Filler* to 294 Trial Brief filed by Joann Wright Haysbert. (Attachments: # 1 Exhibit Declaration)(McKelvey, David) (Entered: 08/14/2023) |
| 08/14/2023 | | Reset Hearings: Jury Trial reset for 8/14/2023 at 11:00 AM in Norfolk Courtroom 4 before District Judge Rebecca Beach Smith. (tameub, ) (Entered: 08/14/2023) |
| 08/14/2023 | 308 | JURY TRIAL HELD (Day 5) before District Judge Rebecca Beach Smith. (Court Reporter Jody Stewart.) David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Haysbert. John McGavin and Emily Blake present on behalf of defendants. Matter came on for continuation of trial by jury on 8/14/2023. No appearance by jurors. Court excused jurors until 11:00 a.m. on August 15, 2023. Argument of counsel heard regarding Defendants Motion to Quash Subpoena Served on Marcus Wilson. For reasons stated on the record, the court GRANTED Defendants Motion to Quash Subpoena Served on Marcus Wilson. Argument of counsel heard regarding Defendants Motion to Revoke Pro Hac Vice Status of Nazareth Monoah Haysbert. For reasons stated on the record, the court GRANTED Defendants Motion to Revoke Pro Hac Vice Status of Nazareth Monoah Haysbert. Argument of counsel heard regarding Defendants Motion for Mistrial. For the reasons stated on the record, the court GRANTED the Defendants Motion for Mistrial. The Court will issue a Memorandum Opinion and Order. Jurors will be dismissed on August 15, 2023, at 11:00 a.m. Counsel was excused from appearing on August 15, 2023, at their request, for the dismissal of jurors. (tameub, ) (Entered: 08/15/2023) |
| 08/15/2023 | 313 | JURY TRIAL HELD (Day 6) before before District Judge Rebecca Beach Smith. (Court Reporter Jody Stewart.) Matter came on for continuation of trial by jury on 8/15/2023. All jurors (8) present. Per the rulings of the Court on August 14, 2023, ECF 308 , the jury was excused from further service. Jurors instructed to notify the court if they are contacted by counsel who appeared in the trial before them or anyone on counsel's behalf. (Attachments: # 1 Witness List, # 2 Exhibit List) (tameub, ) (Entered: 08/16/2023) |
| 08/17/2023 | 314 | ORDER – It is ORDERED that the United States Marshal furnish the jury meals at the expense of the United States. Signed by District Judge Rebecca Beach Smith on 8/17/2023. (dbra, ) (Entered: 08/17/2023) |
| 08/23/2023 | 315 | OPINION granting Defendants' Motion to Quash, Defendants' Motion to Revoke Pro Hac Vice Status of Mr. Haysbert, and Defendants' Motion for Mistrial, as ruled from the bench on August 14, 2023. Parties to notify the court within twenty–one (21) days of this Opinion, if a new trial is to be set. Signed by District Judge Rebecca Beach Smith on 8/23/2023. (afar) (Entered: 08/23/2023) |
| 09/01/2023 | 316 | NOTICE by Joann Wright Haysbert *(Plaintiff's Notice of Request for a New Trial)* (McKelvey, David) (Entered: 09/01/2023) |
| 09/06/2023 | 317 | TRANSCRIPT of proceedings (Day 1) held on 8–8–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 11/6/2023. Release of Transcript Restriction set for 12/5/2023.(stewart, jody) (Entered: 09/06/2023)** |
| 09/06/2023 | 318 | TRANSCRIPT of proceedings (Day 2) held on 8–9–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction.** |

060

| | | After that date it may be obtained through PACER Redaction Request due 10/6/2023. Redacted Transcript set for 11/6/2023. Release of Transcript Restriction set for 12/5/2023.(stewart, jody) (Entered: 09/06/2023) |
|---|---|---|
| 09/06/2023 | 319 | TRANSCRIPT of proceedings (Day 3) held on 8–10–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 11/6/2023. Release of Transcript Restriction set for 12/5/2023.(stewart, jody) (Entered: 09/06/2023)** |
| 09/06/2023 | 320 | TRANSCRIPT of proceedings (Day 4) held on 8–11–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 11/6/2023. Release of Transcript Restriction set for 12/5/2023.(stewart, jody) (Entered: 09/06/2023)** |
| 09/06/2023 | 321 | TRANSCRIPT of proceedings (Day 5) held on 8–14–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 11/6/2023. Release of Transcript Restriction set for 12/5/2023.(stewart, jody) (Entered: 09/06/2023)** |
| 09/06/2023 | 322 | TRANSCRIPT of proceedings (Day 6) held on 8–15–2023, before Judge Rebecca Beach Smith, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 11/6/2023. Release of Transcript Restriction set for 12/5/2023.(stewart, jody) (Entered: 09/06/2023)** |
| 09/12/2023 | 323 | ORDER directing the Clerk to randomly reassign the case to another district judge of this court for a new trial and all further attendant proceedings. Signed by District Judge Rebecca Beach Smith on 9/12/2023. (tameub, ) (Entered: 09/12/2023) |
| 09/12/2023 | | Case Reassigned to District Judge Elizabeth W. Hanes. District Judge Rebecca Beach Smith no longer assigned to the case. (afar) (Entered: 09/12/2023) |
| 09/15/2023 | | Set Hearings: Status Conference set for 9/26/2023 at 10:00 AM in Norfolk Telephonically before District Judge Elizabeth W. Hanes. (kgall) (Entered: 09/15/2023) |

061

| 09/18/2023 | 324 | MOTION to Withdraw as Attorney *(Motion to Withdraw as Counsel)* by Joann Wright Haysbert. (McKelvey, David) (Entered: 09/18/2023) |
| 09/18/2023 | 325 | Memorandum in Support re 324 MOTION to Withdraw as Attorney *(Motion to Withdraw as Counsel)* filed by Joann Wright Haysbert. (Attachments: # 1 Proposed Order)(McKelvey, David) (Entered: 09/18/2023) |
| 09/18/2023 | 326 | MOTION for Sanctions by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 09/18/2023) |
| 09/18/2023 | 327 | Memorandum in Support re 326 MOTION for Sanctions filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 09/18/2023) |
| 09/20/2023 | 328 | NOTICE of Appearance by Jeremiah A. Denton, III on behalf of David Adam McKelvey (Denton, Jeremiah) (Entered: 09/20/2023) |
| 09/22/2023 | 329 | MOTION for Extension *Time* by David Adam McKelvey. (Denton, Jeremiah) (Entered: 09/22/2023) |
| 09/26/2023 | 330 | Minute Entry for proceedings held before District Judge Elizabeth W. Hanes: Telephonic Status Conference held on 9/26/2023. David McKelvey appeared on behalf of Plaintiff. John McGavin appeared on behalf of Defendants. Jeremiah Denton appeared on behalf of Interested Party David McKelvey. Interested Party Nazareth Haysbert appeared pro se. Parties answer questions of the Court. In re Plaintiff's Motion to Withdraw as Attorney [ECF no. 324], the Court gives plaintiff 14 days to retain new counsel. The Court inquires about Interested Party Haysbert proceeding with counsel or pro se and directs him to refer to pro se guidelines on EDVA website. (Court Reporter J. Trail)(kgall) (Entered: 09/26/2023) |
| 09/27/2023 | 331 | Opposition to 324 MOTION to Withdraw as Attorney *(Motion to Withdraw as Counsel)* filed by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 09/27/2023) |
| 10/10/2023 | 332 | NOTICE of Appearance by Mary Teresa Morgan on behalf of Nazareth Monoah Haysbert (Morgan, Mary) (Entered: 10/10/2023) |
| 10/11/2023 | | MOTIONS REFERRED to Magistrate Judge Robert J. Krask. 329 MOTION for Extension *Time* (jhie, ) (Entered: 10/11/2023) |
| 10/12/2023 | 333 | ORDER. The Court GRANTS the 324 Motion to Withdraw as Attorney. Attorney David McKelvey and Crandall & Katt are deemed withdrawn as counsel in this matter. As the deadline to retain new counsel has passed, Plaintiff Joann Wright Haysbert shall proceed *pro se* going forward in this matter. Plaintiff Haysbert and counsel for Defendants are ORDERED to contact the Court within seven (7) calendar days to schedule a status conference. The Court GRANTS the 329 Motion for Extension of Time to file a response to the Motion for Sanctions and extends the deadline for a response for both Mr. McKelvey and Mr. Haysbert to December 4, 2023. Counsel McKelvey is INSTRUCTED to provide Plaintiff Haysbert a copy of this Order within three (3) calendar days. Counsel McKelvey is also INSTRUCTED to provide the Clerk with the appropriate contact information for Plaintiff Haysbert to note in the Court's online filing system within three (3) calendar days of this Order. Signed by District Judge Elizabeth W. Hanes on 10/12/23. (jhie, ) (Entered: 10/12/2023) |
| 10/12/2023 | 334 | NOTICE by Joann Wright Haysbert *to Clerk Pursuant to Order at ECF 333* (McKelvey, David) (Entered: 10/12/2023) |
| 10/18/2023 | | Set Hearings: Pretrial Conference set for 10/30/2023 at 03:00 PM in Norfolk Remote before District Judge Elizabeth W. Hanes. (kgall) (Entered: 10/18/2023) |
| 10/18/2023 | 335 | Order Setting Pretrial Conference (see Order for details). Signed by District Judge Elizabeth W. Hanes on 10/18/2023. (C/S to plaintiff)(kgall) (Entered: 10/18/2023) |
| 10/18/2023 | 336 | AFFIDAVIT re 326 MOTION for Sanctions *Aff of John McGavin* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Ex A – Invoices and Bills)(Blake, Emily) (Entered: 10/18/2023) |
| 10/18/2023 | 337 | AFFIDAVIT re 326 MOTION for Sanctions *Aff of Kevin Keller* by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Ex A – Invoices and Bills)(Blake, Emily) (Entered: 10/18/2023) |

| 10/30/2023 | 338 | Minute Entry for proceedings held before District Judge Elizabeth W. Hanes: Initial Pretrial Conference held on 10/30/2023 via zoom. Plaintiff appeared pro se. Defendant appeared through counsel John McGavin. The Court directed the Plaintiff to refer to EDVA pro se handbook, the Local rules of civil procedure and the Federal rules of civil procedure. For the reasons stated on the record, Plaintiff's oral motion for continuance to find new counsel is DENIED. However, the Court advised the Plaintiff she may retain counsel. The Court directed the parties to meet and confer regarding stipulations, exhibits, witnesses, etc. Motions in Limine to be filed by December 18, 2023. Final pretrial order to be filed by December 18, 2023. Expert reports (and/or other exhibits) to be emailed to Judge Hanes's Law Clerk by December 18, 2023. Final Pretrial Conference set for 1/17/2024 at 10:00 AM in Newport News Courtroom 1 before District Judge Elizabeth W. Hanes. Jury Trial set for 2/5/2024 at 10:00 AM (approx 5 days) in Newport News Courtroom 1 before District Judge Elizabeth W. Hanes. Plaintiff to send in letter by Wednesday, November 1, 2023 if the FPTC date/time does not work for her schedule. Order to follow. (Court Reporter J. Trail)(kgall) (Modified docket text and document as of 11/1/2023 – kgall) (Entered: 10/31/2023) |
| 11/01/2023 | 339 | Scheduling and Pretrial Order. Signed by District Judge Elizabeth W. Hanes on 11/1/2023. (kgall) (C/S to plaintiff) (Entered: 11/01/2023) |
| 11/08/2023 | 340 | ORDER. The Court CONFIRMS that the Final Pretrial Conference is scheduled for January 17, 2024, at 10:00 a.m. in Newport News, as previously provided in its 339 Scheduling and Pretrial Order. Plaintiff is REMINDED that she must send any requests or communications to the Court via mail or by physically delivering the filing to the Clerk's Office. Any filings made via e–mail or other electronic means will not be accepted. Plaintiff is further DIRECTED to consult the online resources for *pro se* parties in the Eastern District of Virginia, which are available on the Court's website. Signed by District Judge Elizabeth W. Hanes on 11/8/23. Copy mailed to Plaintiff on 11/8/23. (jhie, ) (Entered: 11/08/2023) |
| 11/09/2023 | 341 | SUGGESTION OF DEATH Upon the Record as to David A. McKelvey, Esq. by David Adam McKelvey. (Denton, Jeremiah) (Entered: 11/09/2023) |
| 11/20/2023 | 342 | Letter Motion to Reschedule FPTC by Joann Wright Haysbert. (Attachments: # 1 Exhibit, # 2 Envelope)(jhie, ) (Entered: 11/20/2023) |
| 11/20/2023 | 343 | MOTION for Extension *of Time to File Opposition to Motion for Sanctions and for Leave to File Brief in Excess of 20 pages* by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 11/20/2023) |
| 11/20/2023 | 344 | Memorandum in Support re 343 MOTION for Extension *of Time to File Opposition to Motion for Sanctions and for Leave to File Brief in Excess of 20 pages* filed by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 11/20/2023) |
| 11/21/2023 | | Set Hearings: Telephonic Status Conference set for 11/21/2023 at 03:00 PM in Norfolk Telephonically before District Judge Elizabeth W. Hanes. (kgall) (Entered: 11/21/2023) |
| 11/21/2023 | 345 | Minute Entry for proceedings held before District Judge Elizabeth W. Hanes:Telephonic scheduling call regarding Defendants Motion for Sanctions held on 11/21/2023. John McGavin and Emily Blake present on behalf of defendants. Jeremiah Denton on behalf of interested party David McKelvey. Mary Morgan on behalf of interested party Nazareth Haysbert. Defendants directed to file notice by COB on November 28, 2023 regarding whether they intend to proceed against Interested Party David McKelvey. Deadline for Interested Parties to respond to Motion for Sanctions extended to December 18, 2023. The motion for Extension of Time filed by counsel for Interested Party Nazareth M. Haysbert therefore GRANTED. Court also granted request for additional pages. ECF No. 343. (Court Reporter J. Trail)(kgall) (Entered: 11/21/2023) |
| 11/22/2023 | 346 | ORDER denying in part Plaintiff's 342 Letter Motion to Reschedule the Final Pretrial Conference (FPTC). The parties are ORDERED to meet and confer regarding their availability for the FPTC at the alternative times outlined in this Order and inform the Court no later than Wednesday, November 29, 2023, if an alternative time has been chosen. If the parties are unable to reach an agreement to schedule the FPTC at one of the six offered alternatives, the FPTC will remain on January 17, 2024, at 10:00 am as |

| | | |
|---|---|---|
| | | originally scheduled. All other dates and requirements outlined in the Court's Scheduling and Pretrial Order entered on November 1, 2023, remain in effect. Signed by District Judge Elizabeth W. Hanes on 11/22/23. Copy mailed to Plaintiff on 11/22/23. (jhie, ) (Entered: 11/22/2023) |
| 11/28/2023 | | Reset Hearings: Final Pretrial Conference set for 1/19/2024 at 10:00 AM in Newport News Courtroom 1 before District Judge Elizabeth W. Hanes. (kgall) (Entered: 11/28/2023) |
| 11/28/2023 | 347 | ORDER. The final pretrial conference in this matter is RESCHEDULED to January 19, 2023, at 10:00 a.m. All other dates outlined in the Court's 339 Scheduling and Pretrial Order entered on November 1, 2023, remain in effect. Signed by District Judge Elizabeth W. Hanes on 11/28/23. Copy mailed to plaintiff as directed on 11/28/23. (jhie, ) (Entered: 11/28/2023) |
| 12/04/2023 | 348 | Withdrawal of Motion by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC re 326 MOTION for Sanctions *Against Attorney McKelvey* (McGavin, John) (Entered: 12/04/2023) |
| 12/18/2023 | 349 | Plaintiff's Motion for Voluntary Dismissal Pursuant to FRCP 41(A)(2) or, Alternatively, for a Continuance by Joann Wright Haysbert. (jhie, ) (Entered: 12/18/2023) |
| 12/18/2023 | 350 | Memorandum of Points and Authorities in Support of Plaintiff's Motion for Voluntary Dismissal Pursuant to FRCP 41(A)(2) or, Alternatively, for a Continuance of Six Months filed by Joann Wright Haysbert. (jhie, ) (Entered: 12/18/2023) |
| 12/18/2023 | 351 | MOTION in Limine by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 12/18/2023) |
| 12/18/2023 | 352 | Memorandum in Support re 351 MOTION in Limine filed by Outback Steakhouse of Florida, LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(McGavin, John) (Entered: 12/18/2023) |
| 12/18/2023 | 353 | Opposition to 326 MOTION for Sanctions , 327 Memorandum in Support filed by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 12/18/2023) |
| 12/20/2023 | | Set Hearing as to 349 MOTION to Voluntarily Dismiss. Motion Hearing set for 1/8/2024 at 02:00 PM in Norfolk Remote before District Judge Elizabeth W. Hanes. (kgall) (Entered: 12/20/2023) |
| 12/21/2023 | 354 | Reply to 353 Opposition , REPLY to Response to Motion re 326 MOTION for Sanctions filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 12/21/2023) |
| 01/02/2024 | 355 | Opposition to 349 MOTION to Voluntarily Dismiss filed by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 01/02/2024) |
| 01/08/2024 | 356 | Minute Entry for proceedings held before District Judge Elizabeth W. Hanes: Motion Hearing held on 1/8/2024 via zoom in re 349 MOTION to Voluntarily Dismissal Pursuant to FRCP 41(A)(2) or, Alternatively, for a Continuance filed by Joann Wright Haysbert. The plaintiff appeared pro se. John McGavin appeared on behalf of the defendant. Arguments of the parties heard. Comments of the Court. For the reasons stated on the record, the Motion for Voluntary Dismissal (ECF no. 349) is GRANTED with conditions. The plaintiff accepts the conditions. The Court to enter an order. The Court directs the defendant is to file an affidavit within 21 days regarding Interested Party: Nazareth Haysbert's involvement in case since the time his PHV was revoked. (Court Reporter J. Trail)(kgall) (Entered: 01/09/2024) |
| 01/11/2024 | 357 | ORDER granting in part 349 Motion for Voluntary Dismissal. This case is DISMISSED WITHOUT PREJUDICE subject to the conditions outlined herein. Signed by District Judge Elizabeth W. Hanes on 1/11/24. Copy mailed to Plaintiff as directed on 1/11/24. (jhie, ) (Entered: 01/11/2024) |
| 01/12/2024 | 358 | TRANSCRIPT of proceedings (Motion to Dismiss) held on January 8, 2024, before Judge Elizabeth W. Hanes, Court Reporter/Transcriber Jill Trail, Telephone number 757–222–7072. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request** |

064

| | | |
|---|---|---|
| | | **Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/12/2024. Redacted Transcript Deadline set for 3/13/2024. Release of Transcript Restriction set for 4/11/2024.(trail, jill) (Entered: 01/12/2024)** |
| 01/17/2024 | 359 | ORDER. Counsel for Defendants are directed to submit an affidavit no later than January 29, 2024, regarding Mr. Nazareth Haysbert's involvement in this matter after the revocation of his *pro hac vice* status. Mr. Haysbert, through counsel, may similarly file any affidavit for consideration no later than February 12, 2024. Signed by District Judge Elizabeth W. Hanes on 1/17/24. (jhie, ) (Entered: 01/17/2024) |
| 01/17/2024 | 360 | AFFIDAVIT by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 01/17/2024) |
| 02/01/2024 | 361 | Plaintiff's Motion for Clarification and Reconsideration of the Court's Voluntary Dismissal Order by Joann Wright Haysbert. (jhie, ) (Entered: 02/01/2024) |
| 02/01/2024 | 362 | Memorandum of Points and Authorities in Support of Plaintiff's Motion for Clarification and Reconsideration of the Court's Voluntary Dismissal Order filed by Joann Wright Haysbert. (jhie, ) (Entered: 02/01/2024) |
| 02/10/2024 | 363 | AFFIDAVIT by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 02/10/2024) |
| 02/15/2024 | 364 | Opposition to 361 MOTION for Reconsideration filed by Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 02/15/2024) |
| 04/18/2024 | | Motion Hearing set as to 326 MOTION for Sanctions for 5/15/2024 at 02:00 PM via Zoom before District Judge Elizabeth W. Hanes. (vwar) (Entered: 04/18/2024) |
| 04/19/2024 | 365 | ORDER granting in part 361 Motion for Reconsideration filed by Joann Wright Haysbert. The Court AMENDS its prior Order, ECF No. 357 , by REMOVING condition 5 that "[t]o the extent that any designated expert witnesses were previously withdrawn, those expert witnesses will remain withdrawn." All other provisions of that Order remain in effect. Signed by District Judge Elizabeth W. Hanes on 4/19/24. Copies distributed as directed. (jhie, ) (Entered: 04/19/2024) |
| 05/15/2024 | 366 | Minute Entry for proceedings held before District Judge Elizabeth W. Hanes. John McGavin and Emily Blake appeared on behalf of Defendants. Mary Morgan appeared on behalf of the Interested Party. Motion Hearing held on 5/15/2024 re 326 MOTION for Sanctions via zoom. Comments of the court. Arguments heard. Parties supplemental positions to be filed by May 29. (Court Reporter Jill Trail, OCR.)(dbra, ) (Entered: 05/16/2024) |
| 05/23/2024 | 367 | TRANSCRIPT of proceedings (Motions Hearing) held on May 15, 2024, before Judge Elizabeth W. Hanes, Court Reporter/Transcriber Jill Trail, Telephone number 757–222–7072. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 6/24/2024. Redacted Transcript Deadline set for 7/23/2024. Release of Transcript Restriction set for 8/21/2024.(trail, jill) (Entered: 05/23/2024)** |
| 05/24/2024 | | Set Hearings: Motion Hearing re 326 MOTION for Sanctions set for 6/13/2024 at 02:00 PM via remote before District Judge Elizabeth W. Hanes. (dbra, ) (Entered: 05/24/2024) |
| 05/29/2024 | 368 | Memorandum in Opposition re 326 MOTION for Sanctions *Supplemental* filed by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 05/29/2024) |

065

| | | |
|---|---|---|
| 05/29/2024 | 369 | Supplemental MOTION for Sanctions by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (Blake, Emily) (Entered: 05/29/2024) |
| 06/09/2024 | 370 | MOTION to Strike *and Memorandum in Support* by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 06/09/2024) |
| 06/12/2024 | 371 | ORDER granting in part and denying in part 370 Motion to Strike, or in the Alternative, for Leave to File Response. The Court DENIES Attorney Haysbert's motion to strike portions of Defendant's Supplemental Brief and GRANTS Haysbert's motion for leave to file a response. Haysbert is ORDERED to file any response no later than Monday, July 1, 2024. Signed by District Judge Elizabeth W. Hanes on 6/12/24. (jhie, ) (Entered: 06/12/2024) |
| 06/12/2024 | | Reset Hearings: Motion Hearing re 326 Motion for Sanctions reset for 7/8/2024 at 01:00 PM via Zoom before District Judge Elizabeth W. Hanes. (jhie, ) (Entered: 06/12/2024) |
| 06/27/2024 | 372 | MOTION for Leave to File Excess Pages by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 06/27/2024) |
| 06/27/2024 | 373 | Memorandum in Support re 372 MOTION for Leave to File Excess Pages filed by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 06/27/2024) |
| 06/28/2024 | 374 | ORDER granting 372 Motion for Leave to File Excess Pages. Mr. Haysbert's brief shall not exceed thirty–five (35) pages, exclusive of affidavits and supporting documentation. Signed by District Judge Elizabeth W. Hanes on 6/28/24. (jhie, ) (Entered: 06/28/2024) |
| 07/01/2024 | 375 | Reply to Motion re 372 MOTION for Leave to File Excess Pages filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 07/01/2024) |
| 07/01/2024 | 376 | Memorandum in Opposition re 326 MOTION for Sanctions *(Second Supplemental)* filed by Nazareth Monoah Haysbert. (Attachments: # 1 Exhibit 1 Declaration, # 2 Exhibit 2 Shipping Receipt)(Morgan, Mary) (Entered: 07/01/2024) |
| 07/08/2024 | 377 | Minute entry for hearing held via zoom before District Judge Elizabeth W. Hanes: Motion hearing held on 7/8/2024 re Motion for Sanctions, ECF No. 326, and Supplemental Motion for Sanctions, ECF No. 369. John McGavin and Emily Blake appeared on behalf of Defendants. Nazareth Haysbert appeared with Counsel Mary Morgan. For the reasons stated on the record, the Court granted in part the Motions for Sanctions as to misrepresentations related to expert witnesses only and ordered sanctions in the amount of $2,328.75. Order to follow. (Court Reporter Jill Trail, OCR.) (dbra, ) (Entered: 07/08/2024) |
| 07/09/2024 | 378 | ORDER Granting 326 Motion for Sanctions. IT IS SO ORDERED, Attorney Haysbert is ORDERED to pay sanctions in the amount of $2,328.75 to Defendants no later than sixty (60) days from the entry of this Order. Signed by District Judge Elizabeth W. Hanes on 7/9/2024. (Vpea) (Entered: 07/09/2024) |
| 07/10/2024 | 379 | TRANSCRIPT of proceedings (Motions Hearing) held on July 8, 2024, before Judge Elizabeth W. Hanes, Court Reporter/Transcriber Jill Trail, Telephone number 757–222–7072. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 8/9/2024. Redacted Transcript Deadline set for 9/9/2024. Release of Transcript Restriction set for 10/8/2024.**(trail, jill) (Entered: 07/10/2024) |
| 08/06/2024 | 380 | MOTION for Leave to File Excess Pages *and Memorandum in Support* by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 08/06/2024) |
| 08/06/2024 | 381 | MOTION for Reconsideration *Alter or Amend* by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 08/06/2024) |

| 08/06/2024 | 382 | Memorandum in Support re 381 MOTION for Reconsideration *Alter or Amend* filed by Nazareth Monoah Haysbert. (Morgan, Mary) (Entered: 08/06/2024) |
| 08/16/2024 | 383 | RESPONSE to Motion re 381 MOTION for Reconsideration *Alter or Amend* filed by Bloomin' Brands, Inc., Outback Steakhouse of Florida, LLC. (McGavin, John) (Entered: 08/16/2024) |
| 01/15/2025 | 384 | MEMORANDUM ORDER denying Plaintiff's 381 Motion to Reconsider, Alter, or Amend the Court's Order Imposing Sanctions. Signed by District Judge Elizabeth W. Hanes on 1/14/2025. (jhie, ) (Entered: 01/15/2025) |
| 03/13/2025 | 385 | TRANSCRIPT of proceedings held on 8–11–2021, before Judge Douglas E. Miller, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/14/2025. Redacted Transcript Deadline set for 5/13/2025. Release of Transcript Restriction set for 6/11/2025.**(stewart, jody) (Entered: 03/13/2025) |
| 03/13/2025 | 386 | TRANSCRIPT of proceedings held on 4–12–2022, before Judge Robert J. Krask, Court Reporter/Transcriber Jody Stewart, Telephone number 757–222–7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/14/2025. Redacted Transcript Deadline set for 5/13/2025. Release of Transcript Restriction set for 6/11/2025.**(stewart, jody) (Entered: 03/13/2025) |
| 03/19/2025 | 387 | TRANSCRIPT of Video Teleconference Proceedings (Motion Hearing) held on 12–02–2020, before Magistrate Judge Douglas E. Miller, Court Reporter/Transcriber Carol Naughton, Telephone number 757–222–7073. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/18/2025. Redacted Transcript Deadline set for 5/19/2025. Release of Transcript Restriction set for 6/17/2025.**(naughton, carol) (Entered: 03/19/2025) |

# EXHIBIT D

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____ August 8, 2023 _____

**MINUTES OF PROCEEDINGS** IN ___Open Court_____

**PRESENT:** THE HONORABLE ___Rebecca Beach Smith, USDJ_____

Deputy Clerk:_Tammy Armstrong_____    Reporter:_Jody Stewart, OCR_

| Set: 11:00 a.m. | Started: 11:00 a.m. | Ended: 4:30 p.m. |
|---|---|---|

| 4:20cv121 | Joann Wright Haysbert v. Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC |
|---|---|

David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Hasbert.

John McGavin and Emily Blake present on behalf of defendants.

Matter came on for jury trial.  Motions heard prior to jury trial. (ECF #274 – Plaintiff's Motion for Leave to Present Dr. Huma Haider via Zoom and ECF #283 – Defendant's Motion to Quash a Witness Subpoena)

Argument of counsel.

The Court took Plaintiff's Motion for Leave to Present Dr. Huma Haider via Zoom under advisement pending further information. (ECF #274)

The Court denied Defendant's Motion to Quash a Witness Subpoena. (ECF #283)

Counsel and parties excused until 11:00 a.m. on August 9, 2023, to begin jury trial.

Court adjourned.

**Defendant's Exhibits:**

#1 – National Brain Injury Institute Deposition and Trial Fees and Payment Terms

#2 – Curriculum Vitae of Huma Haider, MD



**Court's Exhibits:**

#1 – FedEx Proof of Delivery dated 8/8/2023

#2 – FedEx Detailed Tracking dated 8/8/2023

#3 – Emails re Dr. Aaron Filler's travel (SEALED)



Lunch:  2:25 p.m. – 3:30 p.m.

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____ August 9, 2023 (Day 2) _____

**MINUTES OF PROCEEDINGS IN** __Open Court_____

**PRESENT:** THE HONORABLE _____Rebecca Beach Smith, USDJ_____

Deputy Clerk: Tammy Armstrong_____    Reporter: Jody Stewart, OCR

| Set: 11:00 a.m. | Started: 11:00 a.m. | Ended:  5:00 p.m. |
|---|---|---|

| 4:20cv121 | Joann Wright Haysbert v. Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC |
|---|---|

David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Hasbert.

John McGavin and Emily Blake present on behalf of defendants.

Matter came on for trial by jury.

For reasons stated on the record and out of the presence of the jury, the Court finds that ECF #274 (Plaintiff's Motion for Leave to Present Dr. Huma Haider Via Zoom) and ECF #289 (Defendant's Motion to Quash) are MOOT.

Petit jurors were sworn, examined on voir dire and from said panel came a jury (8 jurors) who were duly sworn.  Jurors not serving excused subject to call.

Out of the presence of the jury, the plaintiff raised a Batson challenge.  Argument of counsel heard and the court overruled the motion.

The court directed that the witnesses be separated.

Opening statements of counsel heard.

Jurors, counsel, and parties excused until 10:00 a.m. on August 10, 2023.

Court adjourned.

Lunch:  1:00 p.m. - 1:30 p.m.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____ **August 10, 2023 (Day 3)** _____

**MINUTES OF PROCEEDINGS IN** __Open Court__

**PRESENT:** THE HONORABLE ___Rebecca Beach Smith, USDJ___

Deputy Clerk: Tammy Eubanks                     Reporter: Jody Stewart, OCR

| Set: 10:00 a.m. | Started: 10:00 a.m. | Ended:  5:55 p.m. |
|---|---|---|

| 4:20cv121 | Joann Wright Haysbert |
|---|---|
| | v. |
| | Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC |

David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Hasbert.

John McGavin and Emily Blake present on behalf of defendants.

Matter came on for continuation of trial by jury.

All jurors (8) present.

Stipulation of Facts read into the record.

Out of the presence of the jury, defendant moved to strike the testimony of Dr. Aaron Filler, MD, PhD, FRCS.

Plaintiff presented evidence.

Defendant renewed motion to strike the testimony of Dr. Aaron Filler, MD, PhD, FRCS.

Jurors excused until 10:30 a.m. on August 11, 2023.

The Court directed remaining witnesses subpoenaed for today to arrive by 11:00 a.m. on August 11, 2023, with the exception of Ninevah Haysbert (to report by 10:30 a.m. on August 11, 2023.)

Counsel and parties excused until 10:30 a.m. on August 11, 2023.

Lunch:  1:05 p.m. — 2:00 p.m.

071

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### NORFOLK DIVISION

_____ **August 11, 2023 (Day 4)** _____

**MINUTES OF PROCEEDINGS IN** __ Open Court _____

**PRESENT: THE HONORABLE** ____ Rebecca Beach Smith, USDJ _____

Deputy Clerk: Tammy Eubanks _____          Reporter: Jody Stewart, OCR

| Set: 10:30 a.m. | Started: 10:30 a.m. | Ended: 7:45 p.m. |
|---|---|---|

| 4:20cv121 | Joann Wright Haysbert<br>v.<br>Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC |
|---|---|

David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Haysbert.

John McGavin and Emily Blake present on behalf of defendants.

Matter came on for continuation of trial by jury.

All jurors (8) present.

Plaintiff resumed presentation of evidence.

Out of the presence of the jury, defendant moved for mistrial.

Jurors excused until 11:00 a.m. on August 14, 2023.

After jurors were excused, Defendant moved to quash subpoena for Marcus Wilson.  Defendant also moved to revoke Nazareth Monoah Haysbert's Pro Hac Vice admission.

Court takes motions under advisement and gave counsel directions regarding briefing schedule for pending motions.  Defendant's motion to strike Dr. Filler's testimony remains under advisement.

Counsel and parties excused until 10:00 a.m. on August 14, 2023.

Lunch:  1:35 p.m. — 2:30 p.m.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____ **August 14, 2023 (Day 5)** _____

**MINUTES OF PROCEEDINGS** IN __Open Court_____

**PRESENT:** THE HONORABLE_____Rebecca Beach Smith, USDJ_____

Deputy Clerk: Tammy Eubanks_____          Reporter: Jody Stewart, OCR

| Set: 11:00 a.m. | Started: 11:00 a.m. | Ended: 5:20 p.m. |
|---|---|---|

| 4:20cv121 | Joann Wright Haysbert |
|---|---|
| | v. |
| | Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC |

David McKelvey and Nazareth Monoah Haysbert present with plaintiff, Joann Wright Haysbert.

John McGavin and Emily Blake present on behalf of defendants.

Matter came on for continuation of trial by jury.

No appearance by jurors. Court excused jurors until 11:00 a.m. on August 15, 2023.

Argument of counsel heard regarding Defendant's Motion to Quash Subpoena Served on Marcus Wilson. For reasons stated on the record, the court GRANTED Defendant's Motion to Quash Subpoena Served on Marcus Wilson.

Argument of counsel heard regarding Defendant's Motion to Revoke Pro Hac Vice Status of Nazareth Monoah Haysbert. For reasons stated on the record, the court GRANTED Defendant's Motion to Revoke Pro Hac Vice Status of Nazareth Monoah Haysbert.

Argument of counsel heard regarding Defendant's Motion for Mistrial. For the reasons stated on the record, the court GRANTED the Defendant's Motion for Mistrial.

The Court will issue a Memorandum Opinion and Order.

Jurors will be dismissed on August 15, 2023, at 11:00 a.m. Counsel excused from appearing.

Lunch:  2:50 p.m. — 3:35 p.m.

073

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

JOANN WRIGHT HAYSBERT,

       Plaintiff,

    v.                                          CASE NO. 4:20cv121

BLOOMIN' BRANDS, INC.,
and
OUTBACK STEAKHOUSE OF
FLORIDA, LLC,

       Defendants.

## OPINION

Pending before the court on the fifth day of trial in the above-mentioned case were three (3) motions brought by Defendants: (1) an oral Motion to Quash a Witness Subpoena ("Motion to Quash"); (2) an oral Motion to Revoke Plaintiff's Counsel, Nazareth Haysbert's ("Mr. Haysbert"), <u>Pro Hac Vice</u> Status; and (3) an oral Motion for Mistrial, all of which were brought to the court's attention during trial on Friday, August 11, 2023. <u>See</u> ECF No. 307. The motions were taken under advisement, and the parties were ordered to submit briefs to the court containing their arguments and/or responses by 3:00 P.M. on Sunday, August 13, 2023.[1]

---

[1] Also pending was Defendants' Motion to Strike Dr. Filler's testimony on the basis of admissibility, and Plaintiff's Motion to Admit Work Orders as Subsequent Remedial Measures over Defendants' objections. Although these matters were briefed, <u>see</u> ECF Nos. 294, 300, 301, 303, the court did not make any rulings on these issues, and, consequently, these matters are not resolved further herein. <u>See</u> <u>infra</u> Part IV.

After receiving the parties' briefs, see ECF No. 296 (Plaintiff's Opposition to Defendants' Motion for Mistrial); ECF No. 297 (Declaration of Nazareth M. Haysbert Regarding Service of a Trial Subpoena on Marcus Wilson); ECF No. 298 (Defendants' Trial Brief as to Defendants' Motion for Mistrial); ECF No. 299 (Defendants' written Objection and Motion to Quash a Witness Subpoena, served on Marcus Wilson); ECF No. 302 (Defendants' Trial Brief as to Motion to Revoke Pro Hac Vice Status), the court advised the jurors, through the jury clerk's automated call system, not to report to the courthouse on August 14, 2023, which then allowed for the court to address the pending motions that needed to be resolved before continuing with the trial. The court addressed each motion in turn, thereby providing the parties with an opportunity to orally present their arguments and any responses, and issued its rulings from the bench. Ultimately, the Motion to Quash was **GRANTED**, the Motion to Revoke Mr. Haysbert's Pro Hac Vice Status was **GRANTED**, and the Motion for Mistrial was **GRANTED**. ECF No. 308. Therefore, the purpose of this Opinion is to memorialize the court's rulings in writing.[2]

---

[2] At the hearing on Monday, August 14, 2023, the court specifically indicated that a written opinion would follow regarding its oral rulings.

## I. MOTION TO QUASH

The first motion the court addressed at the August 14, 2023, hearing was the Motion to Quash. See ECF No. 299. On August 11, 2023, Mr. Haysbert represented to the court that Marcus Wilson had been served that day with a subpoena commanding that he appear in court as a witness on August 11, 2023, and August 14, 2023. See ECF No. 297 at 17. Records provided to the court demonstrated that Marcus Wilson had not been served by the process server until 5:25 P.M. on August 11, 2023, outside of the court's normal business hours, and certainly not timely as set forth below. Id. at 14.

The court spent a considerable amount of time, both on August 11, 2023, and on August 14, 2023, seeking to understand why the subpoena was served so late in the proceedings, especially considering that the revised trial date was known to all counsel for the parties on March 1, 2023, there had been identical subpoena issues earlier in the week, and Plaintiff deemed Marcus Wilson to be a critical witness. As the record reflects, the court concluded that Plaintiff failed to demonstrate good cause for the late issuance of the subpoena for Marcus Wilson, and **GRANTED** the Motion to Quash because the subpoena was untimely. See E.D. Va. Civ. R. 45(E) ("Except as otherwise ordered by the [c]ourt for good cause shown, subpoenas for attendance of witnesses at hearings or trials in civil actions shall be served not later than fourteen (14) days before the date of the hearing or trial.").

## II. MOTION TO REVOKE MR. HAYSBERT'S <u>PRO</u> <u>HAC</u> <u>VICE</u> STATUS

Next the court addressed the Motion to Revoke the <u>Pro</u> <u>Hac</u> <u>Vice</u> Status of Plaintiff's Counsel. The decision to revoke an attorney's <u>pro</u> <u>hac</u> <u>vice</u> status is within the discretion of the trial court. <u>A1 Procurement, LLC v. Thermcor, Inc.</u>, No. 2:15cv15, 2015 WL 13733927, at *3 (E.D. Va. Nov. 18, 2015) (Leonard, J.), <u>report and recommendation adopted in part</u>, No. 2:15cv15, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (Smith, J.); <u>see</u> E.D. Va. Civ. R. 83.1(E)(2) (providing that the court <u>may</u> admit an attorney <u>pro</u> <u>hac</u> <u>vice</u> and explaining that any such attorney is "subject to the Local Rules of the United States District Court for the Eastern District of Virginia and the Federal Rules of Disciplinary Enforcement"); <u>Belue v. Leventhal</u>, 640 F.3d 567, 577-78 (4th Cir. 2011) (indicating that an attorney's <u>pro</u> <u>hac</u> <u>vice</u> status may be revoked after the attorney receives adequate due process); <u>Thomas v. Cassidy</u>, 249 F.2d 91, 92 (4th Cir. 1957 (explaining that permission to appear <u>pro</u> <u>hac</u> <u>vice</u> "is not a right but a privilege"). "Specific grounds for revocation can include unprofessional conduct, violation of the local rules, and a wide variety of ethics violations," as well as "an attorney's impact on judicial economy." <u>A1 Procurement, LLC</u>, 2015 WL 13733927, at *4. "[E]ven if there is not one bold ground to revoke an attorney's <u>pro</u> <u>hac</u> <u>vice</u> admission, the [c]ourt has the discretion to revoke an attorney's <u>pro</u> <u>hac</u> <u>vice</u> status based on the combined effect of an attorney's

4

078

misconduct and disregard for the Local Rules, so long as the attorney is provided due process." Id.

Although "the amount of process required is hardly onerous," a pro hac vice attorney "must receive notice of the specific grounds for revocation and a meaningful opportunity to respond." Belue, 640 F.3d at 577. Briefs were filed on August 13, 2023, as directed by the court on August 11, 2023.[3] Then, at the August 14, 2023, hearing, Defendants first presented their arguments as to why Mr. Haysbert's pro hac vice status should be revoked, to which Mr. Haysbert responded. Then, the court presented its own reasons for why it was considering revoking Mr. Haysbert's pro hac vice status, to which Mr. Haysbert again had an opportunity to respond.

The court considered both parties' positions, and ultimately found that the cumulative effect of Mr. Haysbert's unprofessional conduct, which included violations of the federal rules, local rules, and court rulings, and his impact on judicial economy, warranted the revocation of his pro hac vice status. Below the court lists several examples of Mr. Haysbert's conduct supporting its decision, all of which were addressed at the August 14, 2023, hearing and are part of the case record of the proceedings.

---

[3] See supra at 1-2.

- Unprofessional Conduct:

  o Slamming papers and making outbursts on two (2) occasions in front of the jury.

  o Issuing a subpoena to his own expert, Dr. Haider, who is located more than one hundred (100) miles from the courthouse, even when Mr. Haysbert knew the subpoena was unenforceable. Mr. Haysbert indicated to the court that he still issued a subpoena to Dr. Haider because, as a non-attorney, she was not familiar with the legal process, and he thought it might encourage and put pressure on her to come to trial.

  o Badgering witnesses through repetitive and combative questioning techniques.

  o Misstating Federal Rule of Evidence 407 ("Rule 407") to the court to support admission of a contested work order exhibit, and also implying that the court itself was violating the Federal Rules of Evidence, if the exhibit was not admitted.

  o Attempting to quickly publish an exhibit (i.e., a work order) to the jury, which had outstanding objections to it and on which the court previously reserved its ruling, and claiming the exhibit was being used for impeachment purposes, even though the seemingly real

6

purpose was to prove negligence, culpable conduct, or a defect, in violation of Rule 407.

o Purposely misleading the jury (e.g., implying that witness statements were inconsistent when they were not, including by misrepresenting Christopher Robinson's and Alicia Eleftherion's ("Ms. Eleftherion") testimony; suggesting that the restaurant had a camera that could have captured Plaintiff's fall when the camera was only positioned to capture the front entrance/host stand area; and repeating that a work order was "authentic" in front of the jury, even though its admissibility was still under advisement).

o Making conflicting representations and misrepresentations to the court (e.g., telling the court that he reached out to his service processing company at approximately 6:00 A.M. when emails confirmed that such contact was not made until 9:00 A.M. on August 11, 2023, ECF No. 297 at 1; and stating that he was a term law clerk to a district court judge when he served as a judicial intern).

o Speaking over the court, opposing counsel, and witnesses on multiple occasions, even after being warned and reprimanded for this conduct.

- o Accusing the court of attempting to "catch" him in something when the court was simply and constantly trying to enforce the federal and local rules of the court to ensure a fair trial.

- Violations of Rules and Rulings:

  - o Intentionally eliciting hearsay testimony and testimony regarding risk management/insurance on multiple occasions, even after the court explained that this was a violation of rules and case law.

  - o Failing to understand and/or follow the Federal Rules of Evidence and related court rulings/instructions (e.g., attempting to admit a brain animation into evidence when no foundation had been laid and outstanding objections had not been ruled upon by the court; and declaring two (2) witnesses, Norman "Chip" Chase and Nick Siefert, as adverse in front of the jury <u>before</u> the witness began to testify, and <u>after</u> the court had instructed that this pronouncement by counsel during Ms. Eleftherion's testimony was improper and not pursuant to the Federal Rules of Evidence and the law).

  - o Failing to issue subpoenas to <u>multiple</u> witnesses at least two (2) weeks in advance of trial, in violation of Local Civil Rule 45(E).

8

- o Failing to properly and timely redact Dr. Filler's PowerPoint exhibit and provide it to the court and counsel in advance of trial, even though Mr. Haysbert had been ordered by the court to do so at the Supplemental Final Pretrial Conference on August 1, 2023.

- o Swiftly publishing Dr. Filler's PowerPoint exhibit to the jury, knowing it had prejudicial headers and outstanding objections not yet addressed by the court and not in compliance with the court's redaction order.

- o Failing to lay proper foundations and improperly impeaching witnesses on multiple occasions, despite court rulings and explanations to the contrary. The court repeatedly had to instruct on the process for using deposition testimony to impeach or refresh the recollection of witnesses, and the difference between the two processes, which also delayed the trial proceedings.

- Negative Impact on Judicial Economy:
  - o Failing to come prepared as required with paper copies of necessary documents, including at the Supplemental

Final Pretrial Conference on August 1, 2023,[4] and during trial itself, which led to two (2) trial delays of at least, or more than, forty-five (45) minutes each.

o Filing last-minute motions and other filings, including witness subpoenas and a motion to have Dr. Haider testify remotely by Zoom, see ECF Nos. 274, 275 (filed at 10:01 P.M. the Sunday before trial).[5]

o Scheduling a delivery for August 8, 2023, the morning the trial was to start, to Defendants at their counsel's Fairfax, Virginia office, which delivery

---

[4] For the August 1, 2023, Supplemental Final Pretrial Conference, counsel arrived at the court with all documents on computers contrary to specific instructions and requirements of the court. He had not even submitted an electronic device authorization form for this purpose, which is required and available on the court's website.

[5] Pursuant to the court's website, parties requesting remote participation of outside parties in court proceedings "must attain written authorization from the trial judge **two business weeks** in advance prior to using the [c]ourt's video conference system." United States District Court, Eastern District of Virginia, Evidence Presentation System, https://www.vaed.uscourts.gov/evidence-presentation-system. Moreover, Rule 43 of the Federal Rules of Civil Procedure requires that witness testimony "be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." The motion to have Dr. Haider testify by Zoom was apparently first mentioned on Friday, August 4, 2023, at a settlement conference before Magistrate Judge Douglas E. Miller, but it was not brought before the undersigned trial judge until Sunday, August 6, 2023, in the 10:01 P.M. filing.

contained Plaintiff's updated final trial exhibit binder. Mr. Haysbert represented otherwise to the court, despite the Federal Express receipt and tracking record to the contrary, see ECF No. 313-2 (Court Exhibits 1 and 2 from August 8, 2023), thereby causing delay to the proceedings to sort out the matter, as well as to defense counsel who were delayed in their review of Plaintiff's updated exhibits.[6]

o Making improper and/or frivolous objections on multiple occasions, including his claim that a question was compound when it simply was not.

o Repeating questions that had already been asked and answered on multiple occasions. The repetitions were so numerous that defense counsel and the court stopped raising the objection, just to keep the trial moving forward, as trial had only been scheduled to last for three (3) to four (4) days.[7]

In sum, the court **GRANTED** Defendants' Motion to Revoke Mr. Haysbert's Pro Hac Vice Status based on the combined effect of Mr. Haysbert's misconduct, rules violations, and impact on judicial

---

[6] The court also notes that defense counsel's law firm then had to ship the package containing the updated exhibits from Fairfax to Norfolk on the day that trial was scheduled to start.

[7] See infra note 19 and accompanying text.

11

economy, which is clearly illustrated by the concerns listed in this Opinion, the record, and addressed from the bench on August 14, 2023. See, e.g., Al Procurement, LLC, 2015 WL 13733927, at *4.

### III. MOTION FOR MISTRIAL

Lastly, the court addressed Defendants' Motion for Mistrial. As the court stated at the August 14, 2023, hearing, the court recognizes that declaring a mistrial is an extreme measure. That being said, "because the trial judge can best evaluate the atmosphere of the trial and the possibility of prejudice," it is within the court's discretion to determine whether an error in a case can be cured by a cautionary instruction. Riddle v. Exxon Transp. Co., 563 F.2d 1103, 1108-09 (4th Cir. 1997). Unless the exercise of such discretion is clearly erroneous, the decision of the trial judge will not be disturbed. Bright v. Coastal Lumber Co., 962 F.2d 365, 370 (4th Cir. 1992) (internal citation and quotation marks omitted). In short, the court is of the belief that this case has become completely infected by the cumulation of misrepresentations, rules violations, "red herrings," and other misconduct by Plaintiff's counsel, and, the prejudice that presently exists cannot be cured by a cautionary instruction.

### A.

First, the court turns to the repeated, and intentional, injections by Mr. Haysbert of insurance/risk management and an improper standard of care in this negligence suit. "'The rule in

12

086

Virginia is that in an action to recover damages for personal injuries, the admission of evidence or argument of counsel <u>deliberately</u> injected into a case to inform the jury that a defendant is insured against the accident is reversible error.'" ECF No. 298 at 1 (quoting <u>Hope Windows, Inc. v. Snyder</u>, 208 Va. 489, 493 (1968)) (emphasis added). Moreover, "a court is required to grant a new trial, if requested, when the prejudicial effect of an improper remark or question is overwhelming, such that it cannot be cured by a cautionary instruction." <u>Lowe v. Cunningham</u>, 268 Va. 268, 273 (2004) (internal citation omitted). That is because "a mistrial . . . should be ordered . . . [when] there has been interference with a fair trial." <u>Riner v. Commonwealth</u>, 268 Va. 296, 315-16 (2004).[8]

This issue first arose during Ms. Eleftherion's testimony on August 11, 2021, where Plaintiff used the word "ensure" in a question even after an objection had been sustained. The relevant testimony, Tr. at 8-9,[9] is as follows:

---

[8] The parties agree that Virginia law applies in this case, meaning that Virginia case law addressing a party's injection of insurance into a negligence suit governs the court's analysis of this issue.

[9] The page numbers cited by the court in this portion of the Opinion correspond to the page numbers of the transcript of Ms. Eleftherion's testimony, which was provided by the court reporter to counsel, at counsel's request. These page numbers will likely change when the full trial transcript is filed by the court reporter.

Plaintiff's Counsel: Okay. You were to ensure there was no grease, cleaning solution, water, soda, Coke left on the floors unattended in the dining room, correct?

Defendants' Counsel: Objection, Your Honor. The use of the term "ensure." There is no -- the law does not require --

Plaintiff's Counsel: Oversee. Oversee. I was saying oversee.

Defendants' Counsel: May I just --

Plaintiff's Counsel: Sure. Of course.

Defendants' Counsel: Thank you. I object to the use of "ensure." It's not the law (emphasis added).

Court: Rephrase your question, please (emphasis added).

Plaintiff's Counsel: Will do, Your Honor (emphasis added). It's your responsibility [] to make sure that wet floor signs were put out when needed, correct?

Witness: Yes. I had direct oversight of all those things.

Plaintiff's Counsel: And your job was to ensure that mats were put down when needed, correct (emphasis added)?

Court: Do not use the word "ensure" (emphasis added).

Plaintiff's Counsel: I will never use the word "ensure" again (emphasis added).[10]

Then, only but a minute later, Mr. Haysbert's line of questioning to the same witness led directly to testimony regarding insurance, Tr. at 10-11:[11]

---

[10] The court emphasizes this exchange to highlight the intentional injection of the insurance issue again in this case. See infra note 12 and accompanying text.

[11] See supra note 9 and accompanying text.

Plaintiff's Counsel: So would part of that overseeing responsibility include following up [on] an injured person who had slipped and fallen on the floors?

Witness: It was not, no.

Plaintiff's Counsel: I'm sorry?

Witness: No, that was not part of my responsibilities at the time.

Plaintiff's Counsel: Whose responsibility was it at the time that you were the manager of the Outback Steakhouse in Chesapeake to follow up with an injured person who had slipped and fallen?

Witness: Correct. If our insurance provider at that time was involved, we had an insurance liaison who would follow up with that person.

Defendants' Counsel: Objection, Your Honor.

Court: Sustained.

Plaintiff's Counsel: It's only been said. I don't have a question pending.

Court: Insurance is not an issue at all in this case.

Plaintiff's Counsel: So I'm only asking you what you would do in your personal knowledge. Okay. So let's leave insurance out of it. And although insurance [is] within your personal knowledge, we are leaving insurance out of it (emphasis added).[12]

---

[12] The court emphasizes this statement, where Mr. Haysbert uttered "insurance" three (3) times before the jury, after the court had sustained the objection, and after he knew, or should have known, from discovery and the law, as well as from the court's previous ruling on the issue of "ensure," that the question would likely result in a problematic response. Moreover, the court found this statement to be particularly harmful and intentional given that Mr. Haysbert included that insurance was within Ms. Eleftherion's personal knowledge, but "we are leaving insurance out of it." See Tr. at 11.

Court: Mr. Haysbert, please, follow the court's rulings.

Plaintiff's Counsel: Yes, ma'am.

Defendants' Counsel: Your Honor, I have a motion.

The court then excused Ms. Eleftherion and the jurors to discuss the oral Motion for Mistrial and spent a considerable amount of time explaining to Mr. Haysbert the issue with his injecting insurance and an improper standard of care into the case.[13] However, once the court returned from recess, Mr. Haysbert posed a nearly identical question to Ms. Eleftherion which, unsurprisingly, led to a nearly identical response, Tr. at 36-37:[14]

> Plaintiff's Counsel: Okay. If a person was injured in the dining room through a slip and fall, whose responsibility is it to follow up with that person at Chesapeake Outback Steakhouse, at the Chesapeake Outback Steakhouse, if anyone?
>
> Defendants' Counsel: Objection, Your Honor. <u>Object to the form, relevance</u> (emphasis added).
>
> Court: Let's see. <u>I hope this doesn't go astray</u> (emphasis added).
>
> Plaintiff's Counsel: <u>It won't. I promise you</u> (emphasis added).
>
> Witness: There is protocol to follow, any type of incident, whether it's slip and fall or different incident regarding to a guest or somebody who works there, <u>we have to call that into our insurance group</u> (emphasis added).
>
> Defendants' Counsel: Objection, Your Honor.

---

[13] <u>See</u> <u>supra</u> note 12 and accompanying text.

[14] <u>See</u> <u>supra</u> note 9 and accompanying text.

16

090

Court: You'd asked that question before, and that's the answer you got. There has been an objection to it, and the court specifically said there is no insurance in this case, should be no mention of it and no insurance issue. That's the question you asked before that got the same answer.

Plaintiff's Counsel: I said at the Chesapeake Outback Steakhouse, is what I said.

Court: Whatever. It elicited it. It is along the same lines, and it has now elicited the same response.

Defendants' Counsel: Your Honor, I renew the motion I previously made.

Court: I completely strike that question and that answer at this juncture because it's not part of the case. It's improper under the law for it to even be mentioned. I thought you heard that, too, but you didn't as a witness hear that?

Witness: Yes, ma'am. I heard you.[15]

Plaintiff's Counsel: If I [may] move on. Thank you, Your Honor, and thank you, M[s]. Eleftherion.

Then, when Norman "Chip" Chase took the stand as a witness later in the day, Mr. Haysbert <u>again</u> asked a question that he knew, or should have known, would have injected insurance into the case, Tr. at 6-7:[16]

---

[15] The court recognizes that a lay witness, such as Ms. Eleftherion, takes her responsibility seriously to answer the questions truthfully under oath. Mr. Haysbert should never have asked this question again knowing the answer and with the outstanding objections and warnings from the court. This is yet another example of repeated questions in basically the same form, as he did with many of the witnesses.

[16] The page numbers cited by the court in this portion of the Opinion correspond to the page numbers of the transcript of Mr. Chase's testimony, which was provided by the court reporter to the

17

091

Plaintiff's Counsel: Mr. Chase, what were you responsible for as the number one person and managing partner at the Chesapeake Outback during your tenure?

Witness: Operations of the front and back of the house, staffing, confirming scheduling, hiring, maintaining the facility.

Plaintiff's Counsel: And that would include restaurant safety, correct?

Witness: Yes.

Plaintiff's Counsel: That would also include overseeing guest liability, correct?

Defendants' Counsel: Objection, Your Honor.

Plaintiff's Counsel: When I say that I mean --

Defendants' Counsel: Excuse me. I must object. We are going down the same road that I had previously brought up regarding guest liability. I object (emphasis added).

Plaintiff's Counsel: I withdraw the question (emphasis added).[17]

Given the repetitive nature of these lines of questioning which Mr. Haysbert knew, or at least should have known based on depositions and discovery in this case, see ECF Nos. 298-1, 298-2, 298-3, 298-4, would inevitably lead to responses relating to Defendants' risk management/insurance, the court found this to be a deliberate injection of insurance into the case. See

---

court, at the court's request. These page numbers will likely change when the full trial transcript is filed by the court reporter.

[17] See supra note 15 and accompanying text.

18

092

Hope Windows, Inc., 208 Va. at 493. Therefore, it is the court's opinion that this issue alone is grounds for a mistrial.

B.

However, the above ground is not the only concern of prejudice before the court. Again, the court underscores the cumulation of misconduct that has occurred and recognizes its duty to look at the proceedings as a whole. See Riddle, 563 F.2d at 1108-09. Without repeating the many reasons that supported granting the Motion to Revoke Mr. Haysbert's Pro Hac Vice Status, see supra Part II, many of these reasons also support declaring a mistrial, and the court incorporates those reasons herein. Reasons include, inter alia, Mr. Haysbert's failure to follow the rules and the rulings of the court, his outbursts before the jury, his intentional lines of questioning that injected insurance into the case, his backdoor attempts to introduce evidence that was not yet admitted or ruled upon (including the work orders and brain animation), his blatant mischaracterization of witness testimony, and his improper impeachments, all of which have, no doubt, had a prejudicial effect on the jury and cannot be cured by any type of curative instruction. In the court's opinion, the whole atmosphere of this trial had become infected.

Moreover, in the court's opinion, allowing Plaintiff's local counsel, David Adam McKelvey ("Mr. McKelvey"), to proceed without Mr. Haysbert at this juncture would be extremely prejudicial to

19

Plaintiff. <u>Mr. McKelvey did not examine a single witness</u>, rarely was able to answer questions posed by the court regarding the case, and allowed numerous rules violations to occur before the court, apparently without counsel to Mr. Haysbert. In addition, Mr. Haysbert referred to himself as "lead counsel," he sat in the lead counsel chair at the counsel table for Plaintiff, and he conducted the trial before the jury. His sudden absence from the trial would inevitably cause much speculation among members of the jury, which was also a major concern to the court. Such speculation is not appropriate in a jury trial.

### C.

Although the court constantly endeavored to keep this case on track and made multiple attempts to diligently control it, even before trial began, the court is of the opinion that this case has become so infected that a fair trial cannot proceed. It is the cumulation of problems, explained both on the record and reiterated in this Opinion, that has thwarted fairness for all those involved, such that no curative instructions could overcome the prejudice that exists. Succinctly put, the court is of the opinion that the process of trial has been abused and a fair trial in the presence of this jury could not go forward at this juncture.[18] Therefore,

---

[18] The jury returned at 11:00 A.M. on Tuesday, August 15, 2023, and was dismissed in open court on the record. <u>See</u> ECF No. 313.

the court had no choice but to **GRANT** Defendants' Motion for Mistrial.[19]

## IV. CONCLUSION

The Motion to Quash is **GRANTED**, the Motion to Revoke Mr. Haysbert's <u>Pro Hac Vice</u> Status is **GRANTED**, and the Motion for Mistrial is **GRANTED**. Mr. McKelvey remains in the trial as counsel of record.[20] Plaintiff has twenty-one (21) days from the entry of this Opinion to notify the court if a new trial date should be set.[21]

The court further **DIRECTS** that any new trial be reassigned to another judge of this court with a new jury.[22] Moreover, the newly

---

[19] The court notes that when the Motion for Mistrial was granted on August 14, 2023, Plaintiff had not yet rested her case, and Defendants had not put on their defense, even though the proceedings were in the fifth day.

[20] Mr. McKelvey is on notice from the court that as counsel of record and/or local counsel, if a new trial goes forward, he is responsible for being prepared for all incidents of the proceeding as is required of a member of the bar of this court. Although Mr. McKelvey has indicated he is prepared to go forward with trial, he also indicated he would need some time to get "fully up to speed" [paraphrased by the court], and his participation at the first trial, as shown on the record and as addressed herein, also demonstrates just that. The court further notes that, other than his lack of preparedness in his role as local counsel in this case, the court knows of no deficit in his ability to perform in cases as a member of this court's bar. <u>See</u> <u>infra</u> note 21 and accompanying text.

[21] If no notice is provided by Plaintiff through her counsel, then the case will be closed on the court's docket.

[22] <u>See</u> <u>supra</u> note 21 and accompanying text.

assigned judge will be able to determine any outstanding evidentiary issues, including those related to the admissibility of Dr. Filler's testimony and the work orders, as well as any <u>pro hac vice</u> motion(s), if they are made.

The court further **DIRECTS** the Clerk to send a copy of this Opinion to counsel for the parties and to Mr. Haysbert.

**IT IS SO ORDERED.**

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

August 23, 2023

096

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| **JOANN WRIGHT HAYSBERT**, | ) | |
| | ) | Case No.: 4:20-cv-00121 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **BLOOMIN' BRANDS, INC.,**     **et al.** | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S NOTICE OF REQUEST FOR A NEW TRIAL

COMES NOW the plaintiff, by counsel, and gives notice that she requests a new trial be scheduled in this matter, pursuant to the Court's Opinion of August 23, 2023.

Respectfully submitted,

**CRANDALL & KATT**

By: /s/ D. Adam McKelvey, Esq.
D. Adam McKelvey, Esq. (75174)
CRANDALL & KATT
366 Elm Avenue, SW
Roanoke, VA 24016
Telephone: (540) 342-2000
Facsimile: (540) 345-3527
dmckelvey@crandalllaw.com

*Attorney for Plaintiff JoAnn Wright Haysbert*

-1-

098

CERTIFICATE

I certify that on 9/1/23, I filed a true copy of the foregoing, in the Court's electronic filing

system, which caused a true copy of the same to be delivered to the following:

John McGavin, Esq.
9990 Fairfax Blvd, Ste 400
Fairfax, VA 22030
Counsel for Defendants


_____/s/D. Adam McKelvey_____

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT,

     Plaintiff,

v.                                                    Civil Action No. 4:20-cv-121

BLOOMIN' BRANDS, INC., *et al.*,

     Defendant.

**ORDER**

This matter is before the Court on Plaintiff's Motion to Withdraw as Counsel, ECF No. 324, and Interested Party McKelvey's Motion for Extension of Time, ECF No. 329. For the reasons stated below, the Court GRANTS the Motion to Withdraw and the Motion for Extension. ECF Nos. 324, 329.

At the status conference on September 26, 2023, the Court addressed Plaintiff's Motion to Withdraw as Counsel. In the Motion to Withdraw as Counsel, counsel McKelvey moved to withdraw, as Plaintiff is seeking other counsel to represent her and has verbally agreed to terminate the lawyer-client relationship. Mem. Supp. Mot. Withdraw Counsel at 1, ECF No. 325. Defendants oppose the Motion. Br. Opp'n Mot. Withdraw Counsel, ECF No. 331. The Court finds that given the circumstances of this case, as well as the fact that the matter has not been set for trial, good cause exists to GRANT the Motion to Withdraw. ECF No. 324. Counsel McKelvey and Crandall & Katt are deemed withdrawn as counsel in this matter. At the status conference, the Court also addressed Plaintiff's stated interest of retaining new counsel. The Court granted Plaintiff fourteen (14) calendar days to retain new counsel. That deadline having passed, and having granted the Motion to Withdraw, Plaintiff Joann Wright Haysbert shall proceed *pro se* going forward in this

matter. Plaintiff Haysbert and counsel for Defendants are ORDERED to contact the Court within seven (7) calendar days to schedule a status conference for purposes of setting trial in this matter. The parties are advised that the Court anticipates setting this matter for trial no later than February 2024.

Also pending before the Court is Defendants' Motion for Sanctions. ECF No. 326. Both Mr. McKelvey and Nazareth Monoah Haysbert remain interested parties pending resolution of the Motion for Sanctions. Counsel for Mr. Haysbert noted her appearance yesterday, October 10, 2023. ECF No. 332. Counsel for Mr. McKelvey has moved for an extension of time to respond to Defendants' Motion for Sanctions. Mot. Extension Time at 1–2, ECF No. 329. Counsel for Mr. McKelvey explains that he requires additional time to review the extensive history of the case, including the 1,017-page trial transcript. *Id.* For good cause shown, and given the recent addition of counsel for Mr. Haysbert, the Court GRANTS the Motion and extends the deadline for response to the Motion for Sanctions for both Mr. McKelvey and Mr. Haysbert to December 4, 2023. Further motions for extension will be disfavored.

Counsel McKelvey is INSTRUCTED to provide Plaintiff Haysbert a copy of this Order within three (3) calendar days. Counsel McKelvey is also INSTRUCTED to provide the Clerk with the appropriate contact information for Plaintiff Haysbert to note in the Court's online filing system within three (3) calendar days of this Order. The Clerk is directed to send a copy of this Order to all counsel of record and to mail a copy of this Order to *pro se* Plaintiff Haysbert at her address of record once it is provided by Counsel McKelvey.

It is SO ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Date: October 12, 2023

102

# EXHIBIT H

# UNITED STATES DISTRICT COURT
# CIVIL MOTION/STATUS MINUTES

Date: **10/30/2023**                                  Judge:        Elizabeth W. Hanes
Time Set: **3:00**                                     Reporter:     Jill Trail
Time**: 3:10 – 3:54**                                  Deputy Clerk: Katie Galluzzo

Case Number: **4:20cv121**

## JOAN WRIGHT HAYSBERT

vs.

## BLOOMIN' BRANDS, INC. et al

| Counsel for Plaintiff: | Counsel for Defendant: |
|---|---|
| **Pro Se** | **John McGavin** |

PROCEEDINGS:

Case on for pretrial conference to set a trial date.

The Court directed the Plaintiff to refer to EDVA pro se handbook, the local rules of civil procedure and the federal rules of civil procedure.

For the reasons stated on the record, Plaintiff's oral motion for continuance to find new counsel is DENIED. However, the Court advised the Plaintiff she may retain counsel.

Final pretrial conference set for January 17, 2024 at 10:00 am. Jury Trial set for February 5, 2024 (approx. 5 days).

Plaintiff to send in letter by Wednesday, November 1, 2023 if the FPTC date/time does not work for her schedule.

The Court directed the parties to meet and confer regarding stipulations, exhibits, witnesses, etc. Motions in Limine to be filed by December 18, 2023. Final pretrial order to be filed by December 18, 2023. Expert reports (and/or other exhibits) to be emailed to Judge Hanes's law clerk by December 18, 2023.

Order to follow.

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NEWPORT NEWS DIVISION

|  |  |  |
|---|---|---|
| **JOANN WRIGHT HAYSBERT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:20-cv-00121 |
| | ) | |
| v. | ) | |
| | ) | |
| **BLOOMIN' BRANDS, INC., et al.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO FRCP 41(A)(2) OR , ALTERNATIVELY, FOR A CONTINUANCE OF SIX MONTHS</u>

Plaintiff JoAnn Wright Haysbert submits hereby submits the following Memorandum of

Points and Authorities in support of her Motion for Voluntary Dismissal Pursuant to FRCP

41(a)(2) or, Alternatively, for a Continuance.

### I.    <u>FACTUAL BACKGROUND</u>

On August 14, 2023, following five days of trial, the Court orally granted Defendants'

motions for a mistrial and to revoke the *pro hac vice* admission of Plaintiff's counsel, Mr.

Nazareth Haysbert. The Court memorialized its rulings in a written order dated August 23, 2023.

[Dkt. 315] In its Order, the Court gave Plaintiff 21 days to notify the Court if a new trial date

should be set and ordered that any new trial be reassigned to a new judge. On September 1, 2023,

Plaintiff notified the Court of her request for a new trial date be set. [Dkt. 316] The case was

subsequently reassigned to Judge Hanes on September 12, 2023.

On September 18, 2023, Plaintiff's only remaining counsel, Mr. David McKelvey, moved

to withdraw as counsel. [Dkt. 324] And, on that same day, Defendants moved for sanctions

106

against Messrs. Haysbert and McKelvey. [Dkt. 326] At a status conference on September 26, 2023, the Court gave Plaintiff 14 days to retain new counsel, [Dkt. 330], which she was unable to do by the deadline.

On October 12, 2023, the Court granted Mr. McKelvey's motion to withdraw. [Dkt. 333] The Court also noted that the time for Plaintiff to obtain new counsel had passed and therefore she "shall proceed *pro se* going forward in this matter." Id. On October 30, 2023 the Court held an Initial Pretrial Conference. Plaintiff made an oral motion for a continuance to retain new counsel, which the Court denied, although it advised Plaintiff that she may still retain counsel. The Court also set a trial date for February 5, 2024, scheduled the pretrial conference for January 17, 2024, which was subsequently rescheduled for January 19, 2024, and ordered the parties to file certain motions and pretrial briefs by December 18, 2023. [Dkt. 338, Dkt. 346, Dkt. 347] A Scheduling and Pretrial Order was entered on November 1, 2021. [Dkt. 338]. Tragically and unexpectedly, Mr. McKelvey, Plaintiff's former counsel, passed away on November 5, 2023.

Plaintiff has been working diligently to retain new counsel ever since instructed to do so by the Court following its grant of Mr. McKelvey's Motion to Withdraw. Unfortunately, she has at present been unable to do so. In just the past two to three months, Plaintiff has reached out personally or through her network to at least fifteen local attorneys, none of whom have been willing and able to represent Plaintiff. Based on these conversations, it appears to Plaintiff that the prospects of obtaining new counsel prior to trial are only growing more remote, owing to (1) the late stage of the proceedings; (2) the limited—and quickly decreasing—amount of time before trial; (3) the holiday season and the proximity of pretrial deadlines thereto; (4) the complexity of the case, as reflected in the length of the docket; and (5) media attention that this

107

case has received, specifically with respect to the motion for sanctions against Plaintiff's former counsel.

Plaintiff has endeavored in good faith to comply with the Court's deadline of December 18, 2023 to meet and confer with Defendants' counsel regarding the matters contained in the Court's Scheduling and Pretrial Order, as well as to prepare updated motions *in limine* and pretrial briefs. However, given the memory issues associated with her brain injury, she has struggled to do so without the assistance of counsel. She has found the process confusing, has had trouble understanding and ensuring compliance with the Court's instructions, and experienced difficulty following and participating meaningfully in conversations with opposing counsel. As a result, she has also realized that she is not in a position to effectively represent herself *pro se* at trial. Plaintiff therefore concluded that the best option was to seek to voluntarily dismiss this action, so as to allow her the time to consider how best to approach this matter or, in the alternative, to seek a continuance of sufficient length to enable her to obtain new representation.

## II.    ARGUMENT

### A. LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(a)(2), a plaintiff may voluntarily dismiss an action with a court order, on such terms that the court considers proper.[1] Unless the court's order states otherwise, a dismissal under that provision is without prejudice.

The requirement to obtain the Court's consent under Rule 41(a)(2) is intended to ensure that the defendant is not substantially prejudiced. Andes v. Versant Corp., 788 F.2d 1033, 1036

---

[1] Plaintiff sought Defendants' consent to a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), which counsel for Defendants denied.

(4th Cir. 1986). The determination of a motion to voluntarily dismiss under Rule 41(a)(2) is within the discretion of the Court. <u>Davis v. USX Corp.</u>, 819 F.2d 1270, 1273 (4th Cir. 1987).

In deciding how to rule on a motion to voluntarily dismiss, "a district court should consider factors such as the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation." <u>Miller v. Terramite Corp.</u>, 114 Fed.Appx. 536, 539 (4th Cir. 2004) (internal citations and quotations omitted).

## B.  THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL

Granting Plaintiff's motion will not substantially prejudice Defendants. Plaintiff's decision to seek dismissal of this action is not intended to circumvent an expected adverse result. <u>Cf. Skinner v. First Am. Bank of Va.</u>, No. 93-2493, 1995 WL 507264, at *2 (4th Cir. Aug. 28, 1995). Rather, it is because of Plaintiff's difficulty in obtaining new counsel and her conclusion that her disabilities prevent her from effectively representing herself *pro se* at trial.

Plaintiff could have allowed this case to expire just a few months ago after the mistrial had she not elected to seek a new trial. However, that decision was premised on her expectation—since proven false—that she would be able to obtain new counsel in a timely manner. In the intervening period, Defendants are unlikely to have expended substantial effort and expense preparing for trial, given that they were already prepared for the August trial and the new trial date is still two-and-a half months away.

Plaintiff has not delayed in seeking voluntary dismissal, nor would any greater diligence have allowed her to do so earlier. Plaintiff is not a lawyer and was not familiar with all that would be required of her from the litigation process before becoming, against her wishes, a self-represented litigant. Only in seeking to comply with the Court's Scheduling and Pretrial Order

109

did she become aware of the extent of the demands that proceeding *pro se* would impose on her and the difficulty she would face meeting those demands in light of her neurological disabilities.

Plaintiff, in this motion, has fully explained her reasons for seeking voluntary dismissal. And, with no dispositive motions pending and trial still months away, the stage of the proceedings does not suggest any prejudice to Defendants from granting Plaintiff's motion.

The one area in which Defendants might be concerned about prejudice is the effect of a voluntary dismissal on their pending motion for sanctions against Plaintiff's former counsel. Plaintiff understand that an order of voluntary dismissal under Rule 41(a)(2) does not moot a pending motion for sanction and that "there is no jurisdictional bar to the imposition of sanction after a voluntary dismissal." In re: Kunstler, 914 F.2d 505, 512 (4th Cir. 1990) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990)). While both Kunstler and Cooter deal with sanctions under Fed. R. Civ. P. 11, Plaintiff understands that their holdings apply to sanctions more generally. See, e.g., TMM Data, LLC v. Braganza, No. 5:14-CV-726-FL (E.D.N.C. Mar. 26, 2016) ("As a matter of law, a voluntary dismissal does not preclude a defendant from seeking sanctions, attorneys' fees, or other relief based upon conduct of counsel in filing and prosecuting an action."). Nevertheless, if the Court so wishes, Plaintiff would agree to an order of voluntary dismissal, subject to the Court's continued jurisdiction to decide Defendants' motion for sanctions.

### C. Alternatively, The Court Should Continue These Proceedings for Six Months

Should the Court for any reason be disinclined to grant Plaintiff's request for voluntary dismissal, Plaintiff seeks to continue the trial and all pretrial deadlines for six months, so as to enable her to obtain new counsel. Based on her conversations with prospective counsel, Plaintiff

believes that a six-month continuance would enable her to obtain new representation by assuaging the concerns of prospective counsel over the looming trial date and pretrial deadlines.

Because her cognitive disabilities prevent Plaintiff from effectively representing herself *pro se*, unless she is able to obtain counsel, Plaintiff will in effect be denied meaningful access to the courts, a right guaranteed under the First Amendment. See <u>California Motor Transport Co. v. Trucking Unlimited,</u> 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."). While Plaintiff appreciated the premium this Court places on the timely and efficient disposition of cases, she submits that such considerations cannot take precedence over the need for effective representation in our adversarial system of justice.

### III.    <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should grant Plaintiff's Motion for Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(2) and dismiss this case without prejudice or, in the alternative, continue these proceedings for six months.

Respectfully submitted,

DATED:    December 18, 2023

JOANN WRIGHT HAYSBERT
*Plaintiff* pro se
244 William R. Harvey Way
Hampton, VA 23669
Tel: (757) 913-9114

111

## CERTIFICATE OF SERVICE

*Haysbert v. Bloomin' Brands et al.*
*No. 4:20-cv-00121*

I hereby certify that on December 18, 2023, a true and accurate copy of the foregoing was

sent via email, and first-class mail to:

John D. McGavin, VSB No. 21794
jmcgavin@bmhjlaw.com
Bancroft, McGavin, Horvath & Judgkins, P.C.
9990 Fairfax Blvd., Suite 400
Fax: (703) 385-1000
Tel: (703) 385-1555
Fairfax, Virginia 22030
*Counsel for Defendants*

DATED:     December 18, 2023

JoAnn Wright Haysbert
244 William R. Harvey Way
Hampton, VA 23669
Tel: (757) 913-9114

112

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Newport News  **DIVISION**

JoAnn Wright Haysbert
_____
Plaintiff(s),

v.

Bloomin' Brands, Inc. et. al.,                                Civil Action Number: 4:20-cv-00121
_____
Defendant(s).


## LOCAL RULE 83.1(M) CERTIFICATION


**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of**_____.
                                                              **(Title of Document)**

JoAnn Wright Haysbert
_____
Name of *Pro Se* Party (Print or Type)


_____
Signature of *Pro Se* Party

Executed on: December 18, 2023 _____ (Date)                MEMORANDUM OF POINTS AND
                                                            AUTHORITIES IN SUPPORT OF
                                    **OR**                   PLAINTIFF'S MOTION FOR
                                                            VOLUNTARY DISMISSAL PURSUANT
**The following attorney(s) prepared or assisted me in preparation of** TO FRCP 41(A)(2)_____.
                                                              **(Title of Document)**

Mary T. Morgan
_____
(Name of Attorney)

4646 Princess Anne Road, Unit 104, Virginia Beach, VA 23462
_____
(Address of Attorney)

(757) 609-2702
_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

JoAnn Wright Haysbert
_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: December 18, 2023 _____ (Date)

113

EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT,

     Plaintiff,

v.                                         Civil Action No. 4:20-cv-121

BLOOMIN' BRANDS, INC., *et al.*,

     Defendant.

**ORDER**

This matter is before the Court on Plaintiff's Motion for Voluntary Dismissal. ECF No. 349. On January 8, 2024, the Court held a hearing on the Motion, at which the *pro se* Plaintiff and counsel for Defendants were present. ECF No. 356. For the reasons stated on the record, the Plaintiff's Motion is GRANTED IN PART, and the Court will allow a dismissal without prejudice subject to the conditions stated below. *Id.* At the hearing, the Court provided Plaintiff the opportunity to accept the conditions for voluntary dismissal without prejudice or proceed to trial. *Id.* The Plaintiff accepted the conditions, and therefore this case is DISMISSED WITHOUT PREJUDICE subject to the below conditions. *Id.* Plaintiff is CAUTIONED that the statute of limitations continues to run.

Pursuant to Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The Court may "impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice." *Id.* The Court determined that voluntary

115

dismissal without prejudice is appropriate only subject to conditions to protect Defendants against prejudice due to the significant advancement of this case.

Accordingly, the case is hereby DISMISSED WITHOUT PREJUDICE subject to the following conditions:

1. If Plaintiff chooses to refile this case, she must refile it in the Eastern District of Virginia.

2. If Plaintiff chooses to refile this case, the parties may not engage in additional discovery, and any discovery taken in the instant case may be used in the refiled case. The parties are therefore limited, for example, to the expert designations, reports, and opinions; witnesses; and exhibits disclosed in the instant case.

3. If the case is refiled, all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case.

4. Plaintiff may not file previously withdrawn claims for past or future medical specials, a life care plan, or claims for lost earning capacity or future lost wages.

5. To the extent that any designated expert witnesses were previously withdrawn, those expert witnesses will remain withdrawn.


Plaintiff may appeal from this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. This written notice must be received by the Clerk within thirty days of the entry date of this Dismissal Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* must be submitted to the Clerk of the United States Court of Appeals for the Fourth Circuit, 1100 East Main Street, Richmond, Virginia 23219.

Nothing in this Order shall be read to affect the outstanding Motion for Sanctions, ECF No. 326, which remains pending in this matter.

The Clerk is directed to send a copy of this Order to all counsel of record and mail a copy of this Order to *pro se* Plaintiff Dr. Haysbert at her address of record.

It is SO ORDERED.

_____ /s
Elizabeth W. Hanes
United States District Judge

Date: January 11, 2024
Newport News, Virginia

# EXHIBIT K



FILED

JUN 1 1 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

JOANN WRIGHT HAYSBERT,    )
)
)
Plaintiff,    )    Case No.: _4:24cv87_
)
)
v.    )
)
OUTBACK STEAKHOUSE    )
OF FLORIDA, LLC,    )
)
Serve:    )
Corporate Creations Network Inc.    )
425 W. Washington St., Suite 4    )
Suffolk, VA, 23434    )
)
and    )
)
BLOOMIN' BRANDS, INC.,    )
)
Serve:    )
Kelly Lefferts    )
2202 N. West Shore Blvd., 5th Floor    )
Tampa, FL 33607    )
)
)
Defendants.    )
)

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiff JOANN WRIGHT HAYSBERT brings this complaint for negligence against

Defendants OUTBACK STEAKHOUSE OF FLORIDA, LLC and BLOOMIN' BRANDS, INC.

in relation to a "slip and fall" incident at the Outback Steakhouse located at 4312 Portsmouth

Boulevard in Chesapeake, Virginia (the "Chesapeake Outback").

119

## PARTIES

2.      Plaintiff JoAnn Wright Haysbert ("Dr. Haysbert") is a citizen of the Commonwealth of Virginia and resident of Hampton, Virginia.

3.      Defendant Outback Steakhouse of Florida, LLC is a limited liability company organized under the laws of Delaware and having its principal place of business in Tampa, Florida. Outback Steakhouse of Florida, LLC owns and operates the Outback Steakhouse chain of restaurants, including the Chesapeake Outback. Outback Steakhouse of Florida, LLC is a wholly-owned subsidiary of Bloomin' Brands, Inc.

4.      Defendant Bloomin' Brands, Inc. is a corporation organized under the laws of Delaware and having its principal place of business in Tampa, Florida. Bloomin' Brands, Inc. owns several restaurant chains, including Outback Steakhouse of Florida, LLC.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of parties and the amount in controversy exceeds $75,000.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in the Eastern District of Virginia.

7.      Venue is proper in the Norfolk Division under Local Civil Rule 3(C) because a substantial part of the events giving rise to the claim occurred in the City of Chesapeake.

## FACTUAL ALLEGATIONS

8.      On or about May 23, 2018, Dr. Haysbert entered the Chesapeake Outback to pick up dinner for herself and her daughter.

9.      When Dr. Haysbert entered the lobby of the restaurant, she approached the host stand and asked an employee for directions to the restroom, to which the employee pointed her.

2

10.     Dr. Haysbert took a couple of steps towards the restroom before slipping on the floor, hitting her head and entire left side of her body on the ground.

11.     As a result of her fall, Dr. Haysbert was diagnosed with a traumatic brain injury and continues to suffer symptoms consistent with a traumatic brain injury to this day.

12.     Defendants were on notice of the unsafe or dangerous condition of the Chesapeake Outback's floor prior to Dr. Haybert's slip and fall because they had been informed by a manager on or about March 7, 2018 that the floor tended to collect moisture when the temperature outside changed and therefore needed to be replaced.

13.     Defendants did not post a sign or otherwise attempt to warn Dr. Haysbert about the condition of the floor.

14.     On or about June 29, 2020, Dr. Haysbert filed an action for negligence against Defendants in the Circuit Court for the City of Hampton. This filing was timely due to the Judicial Emergency in Response to the COVID-19 Emergency declared by the Supreme Court of Virginia.

15.     On July 31, 2020, Defendants removed the action to the U.S. District Court for the Eastern District of Virginia, Newport News Division, pursuant to 28 U.S.C. §§ 1441, 1446.

16.     On December 18, 2023, Dr. Haysbert moved to voluntarily dismiss the action pursuant to Federal Rule of Civil Procedure 41(a)(2).

17.     By order dated January 11, 2024, the Court granted Dr. Haysbert's motion in part and dismissed the case without prejudice, subject to the following conditions:

      i.     If Plaintiff chooses to refile this case, she must refile it in the Eastern District of Virginia;

ii.    If Plaintiff chooses to refile this case, the parties may not engage in additional discovery, and any discovery taken in the instant case may be used in the refiled case. The parties are therefore limited, for example, to the expert designations, reports, and opinions; witnesses; and exhibits disclosed in the instant case;

iii.    If the case is refiled, all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case;

iv.    Plaintiff may not file previously withdrawn claims for past or future medical specials, a life care plan, or claims for lost earning capacity or future lost wages;

v.    To the extent that any designated expert witnesses were previously withdrawn, those expert witnesses will remain withdrawn.

18.    On February 1, 2024, Dr. Haysbert filed a motion for clarification and reconsideration of the Court's order.

19.    By order dated April 19, 2024, the Court granted Dr. Haysbert's motion for clarification and reconsideration in part, as follows:

i.    Clarified that "should the case be refiled, this condition [that if the case is refiled, all existing pretrial determinations will be maintained] does not restrict the parties from submitting any pretrial motions or filings that were due on December 18, 2023, as specified in the Court's Scheduling and Pretrial Order, ECF No. 339."

ii.    Removed condition (v) that "[t]o the extent that any designated expert witnesses were previously withdrawn, those expert witnesses will remain withdrawn."

20.    Under Virginia Code § 8.01-229(E)(3), when a plaintiff suffers a voluntary nonsuit (including a voluntary dismissal under Fed. R. Civ. P. 41, *see Scoggins v. Douglas*, 760 F.2d

4

535, 538 (4th Cir. 1985)), the statute of limitations applicable to that action is tolled from the commencement of the action and the plaintiff may recommence her action within six months from the date of the order entered by the court or within the original period of limitation, whichever is longer.

## COUNT ONE
## NEGLIGENCE

21.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 20, as if fully set forth herein.

22.     On May 23, 2018, the floor at the Chesapeake Outback was not in a reasonably safe condition.

23.     Dr. Haysbert was directed towards a slippery area of the floor by a Chesapeake Outback employee, who did not give Dr. Haysbert any warning about the condition of the floor.

24.     Defendants, together with their agents and employees, owed their customers and other invitees, such Dr. Haysbert, a duty of care, including:

    i.     to use ordinary care to have the premises, including the floors, in reasonably safe condition for invitees' use;

    ii.    to use ordinary care to warn an invitee of any unsafe condition about which the occupant knows, or by the use of ordinary care should know, unless the unsafe condition is open and obvious to a person using ordinary care for his own safety; and

    iii.   to use ordinary care to remove any foreign substance from the floor if the foreign substance creates an unsafe condition, within a reasonable time after they knew or should have known it was there, regardless of how it got there.

25.     Defendants, together with their agents and employees, knew, or through the use of ordinary care should have known, of the unsafe condition of the floor.

26.     Defendants, together with their agents and employees, did not take any measures—such as installing carpeting, nonslip floor coverings, or railings--to prevent customers from slipping on the floor.

27.     Defendants, together with their agents and employees, did not take any measures to warn customers about the dangerous condition of the floor.

28.     Measures to prevent customers from slipping or to warn customers about the condition of the floor would have cost Defendants very little, while effectively preventing customers from slipping and falling on the premises.

29.     The unsafe condition of the floor was not open and obvious to a person using ordinary care for their own safety.

30.     As a direct, proximate, and foreseeable result of the negligence of Defendants, its agents and employees, Dr. Haysbert slipped and fell, thereby injuring herself.

31.     Defendants are liable for injuries that are proximately caused by their own negligence, as well as from the negligence of their agents and employees acting within the scope of their agency or employment.

32.     Dr. Haysbert was not contributorily negligent.

**PRAYER FOR RELIEF**

WHEREFORE, in consideration of the foregoing, Plaintiff JoAnn Wright Haysbert respectfully prays the Court to enter judgment against Defendants and award the following relief:

a. Damages for past, present, and future pain and suffering proximately resulting from the negligence of each Defendant in such amount greater than $75,000 as may be established at trial;

b. Costs incurred in pursuing this action;

c. Such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Local Civil Rule 38, Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

DATED: June 11, 2024

JOANN WRIGHT HAYSBERT
*Plaintiff* pro se
244 William R. Harvey Way
Hampton, VA 23669
Tel: (757) 913-9114

125

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
_____Norfolk_____**DIVISION**

JOANN WRIGHT HAYSBERT
_____
                **Plaintiff(s),**

        v.

                                    Civil Action Number: _____

OUTBACK STEAKHOUSE OF FLORIDA, LLC
_____
                **Defendant(s),**


## LOCAL RULE 83.1 (N) CERTIFICATION


**I declare under penalty of perjury that:**

**No attorney has prepared or assisted in the preparation of** _____.
                                                              **(Title of Document)**

_____
Name of _Pro Se_ Party (Print or Type)

_____
 Signature of _Pro Se_ Party

Executed on: _____(Date)

                        **OR**

                                        COMPLAINT AND DEMAND FOR JURY TRIAL
**The following attorney(s) prepared or assisted me in preparation of** _____.
                                                              **(Title of Document)**

  Mary T. Morgan
_____
(Name of Attorney)

  4646 Princess Anne Road, Unit 104, Virginia Beach, VA 23462
_____
(Address of Attorney)

  (757) 609-2702
_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

  JoAnn Wright Haysbert
_____
(Name of _Pro Se_ Party (Print or Type)

Signature of _Pro Se_ Party

Executed on: June 11, 2024 (Date)

126

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT,

     Plaintiff,

v.                                                    Civil Action No. 4:24-cv-87

OUTBACK STEAKHOUSE OF
FLORIDA, LLC,

     Defendant.

## **ORDER**

The Court held a final pretrial conference in this matter on January 16, 2025. ECF No. 37.

At that conference, the court heard argument on several outstanding motions *in limine* and several

trial briefs filed by Plaintiff.

For the reasons stated on the record, Defendant's Motions *in Limine*, ECF No. 32, are

GRANTED IN PART and DENIED IN PART.[1] The Court ruled as follows on each:[2]

1) Defendant's first Motion *in Limine* to exclude evidence of insurance, incident reports,

claims processes, etc. including the question, "Did anyone [from Outback] follow up with Dr.

Haysbert" after the slip and fall is GRANTED;

2) Defendant's second and third Motions *in Limine* have been resolved by the parties;

---

[1]    The Court's rulings only address the grounds specifically raised by the parties and do not
preclude objections, such as lack of foundation, that may arise at trial.

[2]    The Court uses the numbering from Defendants' numbered paragraphs in its Motions *in
Limine*. ECF No. 32.

128

3) Defendant's fourth Motion *in Limine* to Exclude Work Order #1 is DENIED, and Defendant's fifth Motion *in Limine* to Exclude Work Order #2 is DENIED as moot given Plaintiff's withdrawal of the exhibit;

4) Defendant's sixth Motion *in Limine* has been resolved by the parties;

5) Defendant's seventh Motion *in Limine* to Exclude the Brain Map Animation for lack of foundation is DENIED, and Defendant's Motion to Exclude the PowerPoint Demonstrative is DENIED;

6) Defendant's eighth Motion *in Limine* to Exclude the testimony of Dr. Filler is GRANTED;[3]

7) Defendant's ninth and tenth Motions *in Limine* have been resolved by the parties;

8) Defendant's eleventh Motion *in Limine* has been resolved by the parties;

9) Defendant's twelfth, thirteenth, fourteenth, and fifteenth Motions *in Limine* have been resolved by the parties.

Plaintiff's pretrial briefs and requested relief are resolved as follows:

1) Plaintiff withdrew her pretrial brief related to the testimony of Plaintiff's treating physicians, *see* ECF No. 27, as well as her pretrial brief on the admissibility of Work Order #2, ECF No. 29. As such, the relief sought in each brief is DENIED as moot. ECF Nos. 27, 29;

2) For the reasons stated on the record, Plaintiff's brief seeking a ruling on the admissibility of Work Order #1 as evidence of constructive notice is GRANTED. ECF No. 28;

---

[3]     This relief was also requested in Defendant's Notice at ECF No. 36. Relief requested in that Notice is GRANTED IN PART AND DENIED IN PART. Defendant's motion to strike Dr. Filler is GRANTED and Defendant's motion to strike Mr. Avrit is DENIED as moot given Plaintiff's withdrawal of Mr. Avrit. ECF No. 36 at 9–10. Defendant's remaining requests for relief are DENIED. *Id.* at 10–12.

3) Plaintiff's brief seeking a ruling on Dr. Filler's admissibility was GRANTED, ECF No. 30, however, it is now moot given the Court's subsequent exclusion of Dr. Filler;

4) Plaintiff's brief seeking a ruling on the admissibility of the brain map animation demonstrative is RESERVED. ECF No. 31. The parties were directed to share any demonstratives with the other party no later than Wednesday, February 19, 2025. If there are objections remaining to demonstratives, the parties must file notice with the Court no later than February 21, 2025, indicating the specific portion of a demonstrative to which there is objection;

5) Plaintiff's brief seeking a ruling on the admissibility of the declaration and testimony of Nineveh Haysbert is DENIED on the basis that such testimony is inadmissible hearsay, and Plaintiff has not established that an exception to the rule against hearsay applies. ECF No. 27;

6) Plaintiff made an oral motion at the Final Pretrial Conference to dismiss Defendant Bloomin' Brands—that motion is GRANTED and Defendant Bloomin' Brands is DISMISSED.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

It is so ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: January 24, 2025

3

130

# EXHIBIT M

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

February 25, 2025 (Day 1)

**MINUTES OF PROCEEDINGS** IN __Open Court__

**PRESENT:** THE HONORABLE___Elizabeth W. Hanes, USDJ___

Deputy Clerk: Dee Brandt                          Reporter: Jill Trail, OCR

| Set: 10:00 a.m. | Started: 9:35 a.m. | Ended: 5:11 p.m. |
|---|---|---|

| 4:24cv87 | Joann Wright Haysbert v. Outback Steakhouse of Florida, LLC |
|---|---|

Mary Morgan, Trevor Reid and Meredith Yoder present with plaintiff, Joann Wright Haysbert.

John McGavin and William Miller present on behalf of defendant.

Matter came on for trial by jury.

Out of the presence of the jury motion to exclude witnesses granted.

Jurors (Panel of 35 jurors) appeared as summoned, sworn, and examined on voir dire. Jurors not serving, excused. From Panel came a jury (8) who were duly sworn.

The Plaintiff requested sidebar conference and raised a Batson challenge. Argument of counsel heard and the court overruled the objection.

Out of the presence of the jury arguments heard and ruling made re Plaintiff's Request for Judicial Notice (ECF No. 35). The Court overruled Defendant's objection. Arguments heard re Plaintiff's motion to deem witnesses as adverse witnesses. The Court granted Plaintiff's motion as to Marcus Wilson and denied Plaintiff's motion without prejudice as to the remaining witnesses.

Opening statements of counsel heard.

Evidence presented by Plaintiff.

Jurors, counsel, and parties excused until 9:00 a.m. February 26, 2025

Out of the presence of the jury the Court found Deajah Clark to be unavailable. Her prior trial testimony will be admitted under Rule 804(a)(b)."

Court adjourned.

Lunch: 12:30 p.m. – 1:30 p.m.

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____February 26, 2025 (Day 2)_____

**MINUTES OF PROCEEDINGS** IN __Open Court_____

**PRESENT:** THE HONORABLE___Elizabeth W. Hanes, USDJ_____

Deputy Clerk: Dee Brandt_____          Reporter: Jill Trail, OCR

| Set: 9:00 a.m. | Started: 8:55 a.m. | Ended: 3:00 p.m. |
|---|---|---|

| 4:24cv87 | Joann Wright Haysbert |
|---|---|
| | v. |
| | Outback Steakhouse of Florida, LLC |

Mary Morgan, Trevor Reid and Meredith Yoder present with plaintiff, Joann Wright Haysbert.

John McGavin and William Miller present on behalf of defendant.

Matter came on for continuation of trial by jury.

All jurors (8) present.

Evidence presented by Plaintiff and Defendant.

Out of the presence of the jury, the Court heard argument on Defendant's objection, ECF No. 55. Defendant's objection was overruled, and rulings placed on the record regarding Plaintiff's demonstrative

Plaintiff's Judicial Notice read into the record.

Jurors excused until 9:00 a.m. on February 27, 2025. Counsel and parties to return at 8:40 a.m.

Court adjourned.

Lunch: 12:35 p.m. – 1:40 p.m.

133

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

**February 27, 2025 (Day 3)**

**MINUTES OF PROCEEDINGS** IN __Open Court__

**PRESENT**: THE HONORABLE___Elizabeth W. Hanes, USDJ

Deputy Clerk: Dee Brandt                          Reporter: Jill Trail, OCR

| Set: 9:00 a.m. | Started: 8:52 a.m. | Ended: 5:22 p.m. |
|---|---|---|

| 4:24cv87 | Joann Wright Haysbert |
|---|---|

v.

Outback Steakhouse of Florida, LLC

Mary Morgan and Trevor Reid present with plaintiff, Joann Wright Haysbert.

John McGavin and William Miller present on behalf of defendant.

Matter came on for continuation of trial by jury.

All jurors (8) present.

Evidence presented by Plaintiff and Defendant.

Objections argued and rulings made.

Out of the presence of the jury, the court reviewed jury instructions with counsel.

The Court read the Stipulated Facts into the record.

Closing arguments of counsel heard.

Jurors excused until 9:30 a.m. on February 28, 2025. Counsel and parties to return at 9:15 a.m.

Court adjourned.

Lunch:  12:10 p.m. – 1:20 p.m.

134

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____ February 28, 2025 (Day 4) _____

**MINUTES OF PROCEEDINGS** IN ___Open Court_____

**PRESENT**: THE HONORABLE_____Elizabeth W. Hanes, USDJ_____

Deputy Clerk: Dee Brandt_____                    Reporter: Jill Trail, OCR

| Set: 9:15 a.m. | Started: 9:30 a.m. | Ended: 10:50  p.m. |
|---|---|---|

| 4:24cv87 | Joann Wright Haysbert |
|---|---|
| | v. |
| | Outback Steakhouse of Florida, LLC |

Mary Morgan, Trevor Reid and Meredith Yoder present with plaintiff, Joann Wright Haysbert.

John McGavin present on behalf of defendant.

Matter came on for continuation of trial by jury.

All jurors (8) present.

Jury received the court's charge and instructions; Jury retires to deliberate at 9:56. Jury returned with verdict. Verdict read into the record. Verdict for Defendant. Plaintiff made motion to poll the jury.  Defense counsel asked that the Clerk enter Judgment in accordance with the Verdict. Jurors excused.

Court adjourned.

136

# EXHIBIT N

# United States District Court

### Eastern District of Virginia
### Newport News Division

Joann Wright Haysbert

      Plaintiff(s)

v.

Outback Steakhouse of Florida, LLC

      Defendant(s)

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER:  4:24cv87

X              **Jury Verdict**.  This action came before the Court for a trial by jury.
The issues have been tried and the jury has rendered its verdict.

               **Decision by Court.**  This action came to trial or hearing before the
Court.  The issues have been tried or heard and a decision has
been rendered.

     **IT IS ORDERED AND ADJUDGED** that the plaintiff take nothing, that the action
be DISMISSED on the merits, and that the defendant recover of the plaintiff its costs of
action.

DATE: February 28, 2025

FERNANDO GALINDO, *Clerk*

    /s/  DB
(By) Deanne Brandt, Deputy Clerk

138

# EXHIBIT O

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

|  |  |  |
|---|---|---|
| JOANN WRIGHT HAYSBERT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:24-cv-87 |
| | ) | |
| v. | ) | |
| | ) | |
| OUTBACK STEAKHOUSE | ) | |
| OF FLORIDA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF APPEAL

Plaintiff JoAnn Wright Haysbert and Interested Party Nazareth M. Haysbert appeal to the

United States Court of Appeals for the Fourth Circuit from the final judgment entered on

February 28, 2025.

Respectfully submitted,

DATED: March 28, 2025

JOANN WRIGHT HAYSBERT
244 William R. Harvey Way
Hampton, VA 23669
Tel: (757) 913-9114

NAZARETH M. HAYSBERT
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
Tel: (310) 917-1056

140

# EXHIBIT P

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

|  |  |  |
|---|---|---|
| JOANN WRIGHT HAYSBERT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-00087 |
| | ) | |
| v. | ) | |
| | ) | |
| OUTBACK STEAKHOUSE OF | ) | |
| FLORIDA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO
CORRECT, MODIFY, OR SUPPLEMENT THE RECORD ON APPEAL
AND MEMORANDUM OF POINTS AND ATHORITIES IN SUPPORT THEREOF**

Plaintiff JoAnn Haysbert hereby moves pursuant to Federal Rule of Appellate Procedure

10(e)(1) and (2)(b) and Fourth Circuit Local Rule 10(d) to correct, modify, or supplement the

record on appeal of the above-captioned case with the record from *Haysbert v. Bloomin' Brands,*

*Inc. et al.*, Civil Action No. 4:20-cv-121 [hereinafter, "*Haysbert I*"].[1]

As explained further in the Memorandum of Points and Authorities, inclusion of these

materials in the record on appeal is appropriate so as to permit the Court of Appeals to review the

district court's decisions "on the same record as that before the district court." *Schatz v. Rosenberg,*

943 F.2d 485, 487 n.1 (4th Cir. 1991).[2]

---

[1] By referring to "the record" from *Haysbert I*, Plaintiff means the items described in Federal Rule of Appellate Procedure 10(a)(1)-(3).

[2] Counsel for Defendant has agreed to supplementation of the record with (i) the *Haysbert I* docket report and (ii) *Haysbert I*, ECF Nos. 126, 168, 294, 315, 320, 349, 350, 351, 352, 357, 361, 362, and 379, including any exhibits or attachments thereto. A joint stipulation to that effect is



RECEIVED

2025 JUN -5 P 2: 22

Pursuant to Federal Rule of Civil Procedure 78, Plaintiff requests that the Court decide this motion on the briefs.

---

expected to be filed with the Fourth Circuit shortly. *See* Declaration of Judah J. Ariel ("Ariel Decl.") ¶ 2.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO CORRECT, MODIFY, OR SUPPLEMENT THE RECORD ON APPEAL

### PROCEDURAL HISTORY

On June 29, 2020, Dr. Haysbert filed an action for negligence in Virginia state court against Defendants Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., arising out of a slip-and-fall at an Outback Steakhouse restaurant in Chesapeake, Virginia in which Dr. Haysbert allegedly suffered a traumatic brain injury. *See Haysbert I*, ECF No. 1-1. On July 31, 2020, Defendants removed the case to the Eastern District of Virginia. *Haysbert I*, ECF No. 1.

Following a mistrial, on December 18, 2023, Dr. Haysbert filed a motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) or for a six month continuance. *Haysbert I*, ECF No. 349. On January 1, 2024, the Court granted Dr. Haysbert's motion in part, dismissing the case without prejudice subject to certain conditions, including that "[i]f the case is refiled, all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case." *Haysbert I*, ECF No. 357 at 1-2; *see also Haysbert I*, ECF No. 365 (clarifying and reconsidering the conditions).

On June 11, 2024, Dr. Haysbert recommenced the action. *See Haysbert v. Outback Steakhouse of Fla., LLC*, No. 4:24-cv-00087 (E.D. Va.) [hereinafter, "*Haysbert II*"], ECF No. 1.[3] A jury trial began on February 25, 2025, *see* ECF. No. 58, resulting in a verdict for Defendant Outback Steakhouse of Florida, *see* ECF No. 65.

Dr. Haysbert appealed, *see* ECF No. 73, and the appeal is currently pending before the United States Court of Appeals for the Fourth Circuit.

---

[3] ECF citations that follow without a case designation are from this case, *Haysbert II*.

3

145

ARGUMENT

I.    **THE RECORD MAY BE CORRECTED, MODIFIED, OR SUPPLEMENTED WITH MATERIALS THAT WERE BEFORE THE DISTRICT COURT**

Federal Rule of Appellate Procedure 10(a) defines the record on appeal as "the original papers and exhibits filed in the district court; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the district clerk." Under Federal Rule of Appellate Procedure 10(e), the district court may correct or modify the record if (1) "any difference arises about whether the record truly discloses what occurred in the district court"; or (2) "if anything material to either party is omitted from or misstated in the record by error or accident." *See* Fed. R. App. P. 10(e)(1)-(2); *Himler v. Comprehensive Care Corp.*, 790 F.Supp.114, 115 (E.D. Va. 1992); *see also* 4th Cir. Loc. R. 10(d) ("Disputes concerning the accuracy of the composition of the record on appeal should be resolved in the trial court in the first instance"). Fourth Circuit Local Rule 10(d) further provides that "the record may be supplemented by the parties by stipulation or by order of the district court at any time during the appellate process."

As the Fourth Circuit and other circuit courts of appeals have recognized, the record may properly be supplemented or corrected to include materials that were before the district court, yet for some reason not made a part of the record on appeal. *See, e.g., Feminist Majority Foundation v. Hurley*, 911 F. 3d 674, 697 & n.11 (4th Cir. 2018) (noting that "either party could have sought to correct or modify the record on appeal to include" a letter that the district court had obtained from the internet and considered in granting a motion to dismiss); *Castner v. Colorado Springs Cablevision*, 979 F. 2d 1417, 1423 (10th Cir. 1992) ("Cablevision's motion to supplement the record is granted insofar as it relates to documents that were before the district court, and denied as to those documents that were not presented to the district court."); *Ross v. Kemp*, 785 F.2d 1467,

4

1471-72 (11th Cir. 1986) (supplementing the record with a deposition that was relied upon by the parties but inadvertently not filed in the district court); *McDaniel v. Travelers Ins. Co.*, 494 F. 2d 1189, 1190 (5th Cir. 1974) (per curiam) (same); *Davis v. Musler*, 713 F.2d 907, 911-12 (2d Cir. 1983) (affirming a decision to supplement the record with materials that had been provided to the district court judge but not formally filed).

Indeed, the decisions of both the Fourth Circuit and this Court have regularly turned on whether the materials as to which supplementation was sought had been considered by the district court. *See, e.g., Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973 n.8 (4th Cir. 1990) ("we decline to consider the letter as well as the other documents not considered by the district court"); *Schatz*, 943 F.2d at 487 n.1 (denying a motion to supplement the record with a deposition not considered by the district court); *Thomas v. Lodge No. 2461*, 348 F.Supp.2d 708, 710 (E.D. Va. 2004) ("Our Court also has made clear that 'the purpose of Rule 10(e) is not to allow a district court to add to the record on appeal matters that did not occur there in the course of the proceedings leading to the judgment under review.'") (quoting *In re Robbins Maritime, Inc.*, 162 F.R.D. 502, 504 (E.D. Va. 1995)); *Amr v. Va. State Univ.*, No. 3:07-cv-628, 2009 WL 1208203, at *2 (E.D. Va. May 4, 2009).

In focusing on whether the materials at issue were before the district court, these decisions reflect the principle that the court of appeals "must review the district judge's decision on the same record as that before the district court." *Schatz*, 943 F.2d at 487 n.1; *cf. In re Robbins Maritime*, 162 F.R.D. at 504 (denying motion to supplement because the "record of what occurred before [the district] court is . . . more accurate without the inclusion").

## II. THE MATERIALS PROPOSED TO BE INCLUDED IN THE RECORD WERE CONSIDERED BY THE DISTRICT COURT

In this motion, Plaintiff seeks to supplement[4] the record on appeal because the record from *Haysbert I* was considered by the Court during the course of *Haysbert II*. Therefore, supplementation is necessary in order to permit the Court of Appeals to "review the district judge's decision on the same record as that before the district court," *Schatz*, 943 F.2d at 487 n.1.

In granting Plaintiff's motion to voluntarily dismiss *Haysbert I*, the Court imposed a condition that "[i]f the case is refiled, all existing pretrial determinations will be maintained" and "it will be procedurally in the same position as the instant case." *See Haysbert I*, ECF No. 357 at 2. As explained below, this condition on the voluntary dismissal of *Haysbert I* effectively required the Court in *Haysbert II* to treat the filings, orders, and other proceedings in *Haysbert I* as if they had been made or occurred in the refiled case. *Cf. LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 687 (7th Cir. 1998) (finding that a similar condition on a voluntarily dismissed case "essentially required the court and the parties to treat all pretrial orders of LeBlang I as if they had been entered in LeBlang II").

In *Haysbert II*, the parties and the Court regularly raised, addressed, and made arguments on the basis of matters that occurred or were decided in *Haysbert I*. To give just a few examples:

- In its first scheduling order in *Haysbert II*, the Court stated that "[t]his Order shall supersede all prior Scheduling and Pretrial Orders that have been entered in this matter," ECF No. 22 at 1, referring to orders issued in "the previous iteration of this case," *i.e.*, *Haysbert I. See id.; see also id.* at 2-4 (stating that "[t]he parties previously

---

[4] References to supplementing the record should be understood to include correcting or modifying the record, unless the context indicates otherwise.

filed numerous versions of proposed jury instructions" (citing *Haysbert I*, ECF Nos. 238-39, 249-52, 278-79, 281-82); retaining the proposed *voir dire*, factual stipulations, exhibit lists, and witness lists from *Haysbert I* (citing *Haysbert I*, ECF Nos. 236, 243, 248, 273, 280); and referring to the trial briefs and motions *in limine* that had been filed in *Haysbert I* (citing *Haysbert I*, ECF Nos. 195-96, 219-20, 290, 294, 298, 300-02, 351)).

- Defendants' motions *in limine* cited to their motions *in limine* in *Haysbert I, see* ECF No. 32 at 1-7 (citing *Haysbert I*, ECF Nos. 351-52), as well as to various motions, briefs, exhibits, and transcripts from *Haysbert I, see id.* (citing *Haysbert I*, ECF Nos. 196 (trial brief re: testimony by treating physicians), 243 (Final Pretrial Order), 273 (order following the Supplemental Final Pretrial Conference), 286 (Final Pretrial Conf. Tr.), 294 (trial brief as to admissibility of Dr. Filler), 298 (motion for mistrial), 301 (trial brief re: subsequent remedial measures), 315 (opinion granting Defendants' motions to quash, revoke Nazareth Haysbert's *pro hac vice* status, and for a mistrial), 319 (Trial Tr. Day 3), 320 (Trial Tr. Day 4), 321 (Trial Tr. Day 5)); *see also* ECF No. 33 (Defendants' memorandum in support of their motions *in limine*) at 2-4, 6-8 11-14 (citing *Haysbert I*, ECF Nos. 57 (minute entry for March 31, 2021 hearing before magistrate judge), 61 (3/31/2021 Hr'g Tr.), 273, 294, 300 (trial brief as to the admissibility of work orders), 301, 315, 318 (Trial Tr. Day 2), 319, 320, 351-52; ECF Nos. 33-1 to -4 (attaching an exhibit, Plaintiff's expert disclosure, and two deposition excerpts from *Haysbert I* to Defendant's memorandum).

7

149

- Defendant's objections to the "[s]upplemental [e]xpert disclosures" of Dr. Filler and Brad Avrit referred to various orders, motions, briefs, disclosures, and declarations from *Haysbert I*. *See* ECF No. 36-1 at 1-2, 10-12 (citing *Haysbert I*, ECF Nos. 168 (order denying extension of time to complete discovery), 294 (trial brief as to admissibility of Dr. Filler), 350 (motion for voluntary dismissal), 351-52 (Defendants' motions *in limine*), 356 (minute entry for hearing on motion for voluntary dismissal), 355 (opposition to motion for voluntary dismissal), 357 (order on voluntary dismissal), 361-62 (motion for clarification and reconsideration of order on voluntary dismissal and memorandum in support thereof), 363 (affidavit of Nazareth Haysbert re: compliance with the order revoking his *pro hac vice* status); Plaintiff's expert disclosures in *Haysbert I*).

- Defendant repeatedly raised issues concerning Nazareth Haysbert and the revocation of his *pro hac vice* status during the course of the proceedings in *Haysbert II*, *see, e.g.*, ECF Nos. 32 at 1 (citing *Haysbert I*, ECF No. 298 (motion for a mistrial)), 36-1 at 10 (citing *Haysbert I*, ECF No. 363 (affidavit of Nazareth Haysbert)); 39 at 21:20-22, 68:15-69:16 (discussing the order revoking Mr. Haysbert's *pro hac vice* status, the limitations it imposes, and compliance therewith); 45 at 2-4 (alleging non-compliance with the revocation order, and referring to Mr. Haysbert's "misconduct" during *Haysbert I* and the motion for sanctions against him), eventually leading the Court to interpret the limitations imposed by the revocation order, *see* ECF No. 39 at 65:21-67:10. 74:20-75:11, 76:1-12. Recognizing that "this may be an issue at trial," the Court invited the parties to submit briefs on the matter, *see id.* at 75:14-24, 76:14-15.

8

150

Plaintiff did so in the form of a motion to clarify or rescind the Court's interpretive comments, *see* ECF No. 40 (citing *Haysbert I*, ECF Nos. 13-14, 21, 27, 315) , which the Court granted in part, electing to clarify its interpretation of the revocation order, but not rescind it, *see* ECF No. 50 (citing *Haysbert I*, ECF Nos. 13, 315, 321, 367, 379).

As the above examples demonstrate, the parties, as well as the Court itself, treated the entirety of the proceedings in *Haysbert I* as if they were part of the record before the Court in *Haysbert II*.[5]

This is confirmed by the Court's *sua sponte* August 28, 2024 order to show cause, ECF No. 14, in response to Defendant Bloomin' Brands' July 24, 2024 motion to dismiss the cause of action against it on the grounds that it was "not responsible for any act or omission at the subject location." *See* ECF No. 7. In its order, the Court stated that:

> One of the[] conditions [in the order granting Plaintiff's motion for voluntary dismissal] specified that if the case was refiled, "all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case." Defendant Bloomin' Brands, Inc. was not dismissed from the original case prior to Plaintiff's voluntary dismissal and its Motion to Dismiss, if granted, would place the case in a different procedural posture than the previous case. Thus, Defendant is ORDERED to SHOW CAUSE as to why its Motion to Dismiss, should not be struck.

ECF No. 14 at 1-2 (footnotes and citations omitted). The Court further noted that "Defendant Bloomin' Brands, Inc. never moved to be dismissed from the original case, even though the Complaint in the instant case is substantially the same as the one previously filed." *Id.* (citing *Haysbert I*, ECF No. 1-1).

---

[5] For example, none of the parties requested the Court to take judicial notice of the proceedings in *Haysbert I*, nor did the Court ever state that it had done so. Rather, the practice of the parties and the Court was simply to cite to the record from *Haysbert I* by ECF number in the same manner that they would cite to the record from *Haysbert II*.

The Court's statements that "Defendant Bloomin' Brands, Inc. was not dismissed from the original case prior to Plaintiff's voluntary dismissal" and "Defendant Bloomin' Brands, Inc. never moved to be dismissed from the original case" were based on the Court's own review of the record from *Haysbert I*, indicating that the Court had before it, and would, on its own accord, consider the whole of the *Haysbert I* record in the course of overseeing the proceedings in *Haysbert II*.[6]

Accordingly, inclusion of the record from *Haysbert I* in the record on appeal is necessary to "truly disclose[] what occurred in the district court, Fed. R. App. P. 10(e)(1) and permit the Court of Appeals to "review the district judge's decision on the same record as that before the district court," *Schatz*, 943 F.2d at 487 n.1.

Without supplementing the record on appeal with the record of *Haysbert I*, it will be impossible for the Court of Appeals to understand what occurred in the district court or for Plaintiff to explain why she believes that the district court erred. Moreover, absent supplementation of the record, Plaintiff's appellate briefs will not be able to discuss the materials relied upon by this Court, thus limiting the arguments available to Plaintiff and her ability to demonstrate error and prejudice. *See* Ariel Decl., ¶¶ 3-5

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion and correct, modify, or supplement the record on appeal to include the record from *Haysbert I*.

---

[6] The same is true with respect to the preparation of the Final Pretrial Order. *See* ECF No. 41 at 2 ("The Court has included various previous [*i.e.*, from *Haysbert I*] rulings and notes that were not included in the parties' submission to make the final pretrial order consistent with the current standing of the case.").

DATED: June 5, 2025                    Respectfully submitted,

JOANN WRIGHT HAYSBERT
244 William R. Harvey Way
Hampton, VA 23669
(757) 913-9114

11

## DECLARATION OF JUDAH J. ARIEL

I, Judah J. Ariel, declare as follows:

1.      I am an attorney licensed in the District of Columbia and admitted to practice before the U.S. Court of Appeals for the Fourth Circuit. I am appellate counsel for Plaintiff JoAnn Wright Haysbert in *Haysbert v. Outback Steakhouse of Florida, LLC*, No. 25-1332. I am submitting this declaration in support of Plaintiff's Motion to Correct, Modify, or Supplement the Record on Appeal. I have personal knowledge of the matters contained herein, and if called as a witness to testify, I could and would do so competently.

2.      Counsel for Defendant Outback Steakhouse of Florida, LLC has informed me that Defendant agrees to supplement the record on appeal with the (i) the *Haysbert I* docket report and (ii) Haysbert I, ECF Nos. 126, 168, 294, 315, 320, 349, 350, 351, 352, 357, 361, 362, and 379, including any exhibits or attachments thereto. A joint stipulation to that effect is expected to be filed with the Fourth Circuit tomorrow (June 5, 2025) or shortly thereafter.

3.      The record from *Haysbert I* is material to Plaintiff's arguments on appeal, where her opening brief is due to be filed by June 24, 2025. Without supplementing the record on appeal with the record of *Haysbert I*, it will be impossible for the Court of Appeals to understand what occurred in the district court or for Plaintiff to explain why she believes that the district court erred.

4.      For example, Plaintiff intends to argue on appeal that the Court erred in excluding the testimony of Dr. Aaron Filler. In selecting the particular sanction to apply for what the Court found to be a failure to timely supplement, *see* ECF No. 39 at 70:14-15, the Court relied on "a string of previous issues concerning discovery" in *Haysbert I. See* ECF No. 52 at 5-6 (citing *Haysbert I*, ECF Nos. 168, 315, 379). Unless the Court permits the record to be supplemented,

154

Plaintiff will not be able in her appellate briefs to discuss the items relied upon by the Court, thus limiting the arguments she can make. Similarly, without the ability to discuss Dr. Filler's testimony in the August 2023 trial, Plaintiff will be unable to demonstrate prejudice as a result of his exclusion.

5.      Plaintiff also intends to address Defendant's objection that none of the orders from *Haysbert I* concerning Plaintiff's former counsel, Nazareth Haysbert, are properly before the Fourth Circuit in Plaintiff's appeal. Given the early stage of the appeal, Plaintiff has yet to set out her argument to the contrary. While there is legal authority to support Plaintiff's position, supplementation of the record with the record from *Haysbert I* is necessary for Plaintiff to be able to explain the relevant facts, such as the content of and context for the repeated references in the *Haysbert II* record to the proceedings in *Haysbert I* concerning Mr. Haysbert. Declining to supplement the record would hamper Plaintiff's ability to address issues of appealability and jurisdiction (as well as her substantive claims of error) at the Fourth Circuit by withholding from her the materials necessary to understand the relationship between the proceedings in *Haysbert I* and *Haysbert II*.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, District of Columbia on June 4, 2025.

Judah J. Ariel

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

| | |
|---|---|
| JOANN WRIGHT HAYSBERT, | ) |
| | ) |
| Plaintiff, | )    Case No. 4:24-cv-00087 |
| | ) |
| v. | ) |
| | ) |
| OUTBACK STEAKHOUSE OF | ) |
| FLORIDA, LLC, | ) |
| | ) |
| Defendant. | ) |

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that the following attorney prepared or assisted me in

preparation of Plaintiff's Motion to Correct, Modify, or Supplement the Record on Appeal and

Memorandum of Points and Authorities in Support Thereof:

> Judah J. Ariel
> ARIEL LAW
> 751 Fairmont St. NW #3
> Washington, DC 20001
> (202) 495-1552

Executed on June 5, 2025.

JOANN WRIGHT HAYSBERT

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Plaintiff's Motion to

Correct, Modify, or Supplement the Record on Appeal and Memorandum of Points and

Authorities in Support Thereof, Declaration of Judah J. Ariel, and Local Rule 83.1(M)

Certification to be sent by first-class mail, postage pre-paid, on the 4th day of June, 2025, upon:

John McGavin
Emily Blake
William Miller
McGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C.
1990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030

*Counsel for Defendant Outback Steakhouse of Florida, LLC*

_____
Judah J. Ariel

# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOANN WRIGHT HAYSBERT,
　　　　Plaintiff,

v.                                    Civil Action No.  4:24cv87 (EWH)

OUTBACK STEAKHOUSE OF
FLORIDA, LLC, *et al*.,
　　　　Defendants.

### SCHEDULING ORDER

The Court held an initial pretrial conference on September 18, 2024. At that conference, Defendant's Motion to Dismiss, ECF No. 7, was DENIED AS MOOT pursuant to Defendant's withdrawal of the Motion. ECF No. 18. Defendants have fourteen (14) days to file an answer. Given the denial of the Motion to Dismiss, Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 11, was also DENIED AS MOOT. The Court's Order to Show Cause, ECF No. 14, is DISMISSED.

The following shall govern the progress of this action in addition to the provisions of the Federal Rules of Civil Procedure as modified and/or enlarged upon by the Local Rules for this Court. This Order shall control if any conflict is perceived between it and either the Federal or Local Rules. This Order shall supersede all prior Scheduling and Pretrial Orders that have been entered in this matter. This matter is "procedurally in the same position" as the previous iteration of this case. *See Haysbert v. Bloomin' Brands, Inc., et al*., No. 4:20-cv-121, Order at 2, ECF No. 357 (Jan. 11, 2024). Given this procedural posture, "the parties may not engage in additional discovery, and any discovery taken in the [previous] case may be used" here. *Id.* Additionally, "all existing pretrial determinations will be maintained." *Id.*

159

## Trial Date

1.  A 5-day **Jury Trial** is scheduled to commence at **10:00 a.m.** on **February 25, 2025, at the United States Courthouse, 2400 West Avenue, Newport News, VA 23607.**

## Jury Trial

2.  The parties previously filed numerous versions of proposed jury instructions. *Haysbert v. Bloomin' Brands, Inc., et al*., No. 4:20-cv-121, ECF Nos. 238-39, 249-52, 278-79, 281-82. Some of these instructions may no longer be pertinent. Counsel shall meet and confer in a good-faith effort regarding jury instructions. Counsel for all parties shall <u>jointly</u> file electronically any requested jury instructions, including all requested standard instructions, not later than December 16, 2024. The submission of proposed jury instructions shall include each requested jury instruction (regardless whether agreed or objected to) fully set forth on a separate page with a citation in support of the instruction set forth at the bottom of the requested instruction. The submission shall be organized as follows. First, the parties shall tender the agreed set of instructions (to be labeled "J-1," "J-2," etc.), including any special interrogatory verdict form. Second, the parties shall tender any of Plaintiff's proposed instructions (to be labeled "P-1," P-2," etc.) to which Defendant objects. Third, the parties shall tender any of Defendant's proposed instructions (to be labeled "D-1," "D-2," etc.) to which Plaintiff objects. Counsel shall also provide a copy of the requested jury instructions in WORD format via e-mail to Chambers.

3.  Not more than four (4) calendar days after the filing of the requested jury instructions, each party shall submit a memorandum addressing all disputed jury instructions. Each party shall set forth the nature of the dispute, any authority on the issue, and any alternative instructions.

### *Voir Dire*

4.     The parties previously filed proposed *voir dire* on July 11, 2022, and August 2, 2022. *Id.* at ECF Nos. 236, 248. The proposed *voir dire* is retained.

### Written Stipulations

5.     The parties previously stipulated to undisputed facts, as laid out in the Court's final pretrial orders. *Id*. at ECF Nos. 243, 280. The preexisting stipulations are retained. Counsel shall meet and confer in a good-faith effort to enter into any additional written stipulations of uncontroverted facts. The preexisting stipulations and any new stipulations shall be included in the Proposed Final Pretrial Order filed no later than January 9, 2025.

### Exhibit & Witness Lists

6.     The final exhibit list and final witness list for each party set forth previously on August 2, 2023, will be retained. *Id.* at ECF No. 273. However, the parties are directed to meet and confer and remove any exhibits that will not be used or witnesses who will not be called at trial. The exhibit and witness list, after these removals, shall be included in the Proposed Final Pretrial Order filed no later than January 9, 2025.

7.     All exhibits will be presented by available electronic means at trial, with counsel to contact the courtroom deputy clerk before trial if counsel is not sufficiently familiar with the courtroom electronic system to effectuate presentation at trial. In anticipation of trial, each party shall ensure that three (3) sets of pre-marked, indexed copies of that party's exhibits are submitted in binders to the Clerk at least three (3) days before trial begins for use by the courtroom deputy clerk during trial proceedings and the jury during its deliberations.

### Pretrial Briefs

8. The parties previously filed numerous "Trial Briefs," reflecting material issues the parties expected to arise at trial. *Id.* at ECF Nos. 195-96, 219-20, 290, 294, 298, 300-02. Some of these issues have been resolved or may no longer be pertinent. Defendants also previously filed a Motion *in Limine* on December 18, 2023. *Id.* at ECF No. 351. Some of the issues therein may no longer be pertinent. Counsel are directed to meet and confer and determine which material issues remain. As to these preexisting issues, the parties are permitted to file updated briefs. If either party wishes to stand on their previously filed brief, the party must file a Notice specifically indicating which briefs, and which pages, remain relevant. The parties are also permitted to file a brief addressing any newly arisen material issue, but only if that issue has become relevant since August 8, 2023. Any updated briefs, briefs addressing newly arisen issues, or Notices must be filed no later than December 16, 2024. Counsel shall provide a copy of relevant discovery materials, such as expert reports, necessary to the consideration of these motions via e-mail to Chambers no later than December 16, 2024.

**Final Pretrial Conference**

9. A Final Pretrial Conference will be held on **January 16, 2025,** at **10:00 a.m.**, at the Walter E. Hoffman United States Courthouse, 600 Granby St., Norfolk, VA 23510. No later than January 9, 2025, the parties shall <u>jointly</u> submit a proposed Final Pretrial Order to the Court, endorsed by counsel and setting forth all resolved and disputed matters related to trial evidentiary issues. The proposed Final Pretrial Order shall be broken down by the following sections: (1) Stipulated Facts; (2) Legal and Evidentiary Stipulations (including jurisdiction and venue); (3) List of Proposed Witnesses by Each Party; (4) Exhibits

(including identification of those exhibits to which there is no objection); (5) Factual Contentions as set forth by each party; and (6) Triable Issues as set forth by each party.

### Courtroom Technology

10. All exhibits will be presented by available electronic means during trial. The courtroom is equipped with a document viewer that displays evidence on monitors located on counsel tables, on the bench and in the jury box. The parties may also use personal laptop computers to aid in the presentation of evidence. The Court does not provide laptops. The Court advises the parties to visit the following webpage for more information on the Court's technological capabilities: https://www.vaed.uscourts.gov/evidence-presentation-system.

11. Any party wishing to use courtroom technology during a proceeding should submit a Request to Use the Court's Evidence Presentation System form and confer with the undersigned's courtroom deputy at least ten (10) days before the proceeding. The Court expects all parties using courtroom technology to conduct a test run before any proceeding.

12. Any party wishing to bring personal electronic devices, including laptops and cell phones, to a proceeding should submit a Request for Authorization form to the undersigned's law clerks at least three (3) days before the proceeding. While in the courthouse, all devices should be turned off (not in silent or vibrate modes) unless in use for court-related matters.

### Deadlines

13. Unless otherwise specified, any deadline established herein shall be governed by Rule 6. For purposes of Fed. R. Civ. P. 6(d), all electronically filed documents shall be deemed electronically served regardless of additional service by any other means.

### Settlement

14. The parties shall notify the Court of any settlement, either in whole or in part, as soon as practicable but not later than 12:00 p.m. on the nearest business day following the date of settlement. Counsel shall submit a stipulation of dismissal not later than eleven (11) calendar days after filing the notice of settlement, unless otherwise ordered by the Court. If such stipulation is not timely filed, the Court will dismiss this action with prejudice as to all parties involved in the settlement.

## Attorneys' Fees

15. Any motion for an award of attorneys' fees will be addressed after trial pursuant to Rule 54 and Local Rule 54 (if fees are treated as costs by statute or rule). Such motions shall be governed by applicable statutory and decisional law and must be accompanied by a brief. A party moving for attorneys' fees must submit an affidavit or declaration itemizing time spent on the case, describing the work done and the hourly rate of the person billing the case. In addition, a movant must submit an affidavit or declaration from an expert establishing the reasonableness of the fees.

## Communications with Chambers

16. *Ex parte* communications with chambers are strongly discouraged and should be limited to scheduling questions and other clerical matters. All other requests and communications should be made via filings on the public docket.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.

_____ /s/

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: September 23, 2024

# EXHIBIT R

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT

      Plaintiff,

v.

BLOOMIN' BRANDS, INC.,               Case No.: 4:24-cv-87
and
OUTBACK STEAKHOUSE OF
FLORIDA, LLC,

      Defendants.

## FINAL PRETRIAL ORDER

The parties submitted a proposed final pretrial order on January 9, 2025. ECF No. 34. Thereafter, the Court held a Final Pretrial Conference on January 16, 2025, in which it made several rulings. ECF No. 37. At the Final Pretrial Conference, the Court directed the parties to notify the Court of any exhibits or witnesses that were withdrawn given the Court's rulings. The parties provided the Court with an updated proposed final pretrial order via email, however, certain rulings made by the Court do not appear to be reflected therein. Accordingly, the Court has reviewed the proposed order and created this final document intended to reflect the Court's rulings. The parties are DIRECTED to review this final pretrial order and, if necessary, file a notice indicating any disagreement with the status of the record as set forth below no later than Thursday, January 30, 2025.

### Stipulation of Undisputed Facts

The parties, as evidenced by their endorsements to this Final Pretrial Order, stipulate to the following facts as being undisputed between them:

1.      On May 23, 2018, Defendant Outback Steakhouse of Florida, LLC owned and operated the Outback Steakhouse in Chesapeake, Virginia, located at 4312 Portsmouth Blvd.

2.      Plaintiff fell while visiting the Outback restaurant in Chesapeake, Virginia on May 23, 2018.

3.      Plaintiff was a business invitee of Outback Steakhouse of Florida, LLC when she entered the Chesapeake Outback Steakhouse on May 23, 2018.

## Legal and Evidentiary Stipulations

The parties, as evidenced by their endorsements to this Final Pretrial Order, stipulate to the following legal and evidentiary issues as being undisputed between them:

1.      Jurisdiction and venue is proper.

2.      Plaintiff was a business invitee of Outback Steakhouse of Florida, LLC when she entered the Chesapeake Outback Steakhouse on May 23, 2018.

## List of Proposed Witnesses[1]

### A. Plaintiff's Proposed Witnesses and Defendant's Objections

| No. | Witness | Defendant's Objections | Court's Ruling |
|-----|---------|------------------------|----------------|
| 1 | Lisa Crosby | | |
| 2 | Norman "Chip" Chase, Jr. | | |
| 3 | Alicia Elefherion | | |
| 4 | Nicholas Seifert | | |
| 5 | Marcus Wilson | | |
| 6 | Joi Myrick | | |
| 7 | Deajah Clark | | |
| 8 | Samantha Gump | | |

---

[1]     The Court has included various previous rulings and notes that were not included in the parties' submission to make the final pretrial order consistent with the current standing of the case. These alterations are notated in bold and docket citations refer to the docket in *Haysbert v. Bloomin' Brands, Inc., et al.*, 4:20-cv-121.

| 11 | Dr. Huma Haider, MD 6065 Hillcroft St. Suite 202 Houston, TX 77081 | Defendant objects as the opinions fail under Rules 702 and 703 and lack of foundation. Court previously reserved ruling until trial. | The parties agreed that Dr. Haider is not being offered as a treating physician. Reserved as to remaining objections. |
| 12 | Dr. Aaron Filler, M.D., Ph.D., FRCS 2716 Ocean Park Blvd., Suite 1007B Santa Monica, CA 90405 | Defendant objects as the opinions fail under Rules 702 and 703 and lack of foundation.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33, which incorporated ECF 294, 351, and 352 of the prior case.<br>Court previously reserved ruling until trial. | Dr. Filler is excluded from trial under Fed. R. Civ. P. 37(c)(1) for Plaintiff's failure to timely supplement. |
| 13 | Nineveh Haysbert | | |
| 14 | JoAnn Wright Haysbert | | |

## B. Defendant's Proposed Witnesses and Plaintiff's Objections

| No. | Witness | Plaintiff's Objections | Court's Ruling |
|-----|---------|------------------------|----------------|
| 1 | Lisa Crosby | | |
| 2 | Alicia Eleftherion | | |
| 3 | Marcus Wilson | | |
| 4 | Neil Pugach, M.D. | Restricted by Motion in Limine Ruling, Dkt. Nos. 234-235. | |
| 5 | Abbot Huang, M.D. | Restricted by Motions in Limine Ruling, Dkt. Nos. 234-235. | |

| 6 | Chris Robinson | Plaintiff objects on the grounds of foundation, relevance, and speculation. Rules 702, 703. Court previously reserved ruling until trial. | **The Court previously allowed Mr. Robinson's testimony, with the ability for Plaintiff to impeach. ECF No. 273 at 12.** |

### C. Witnesses Defendant May Call if the Need Arises

| No. | Witness | Plaintiff's Objections | Court's Ruling |
|-----|---------|------------------------|----------------|
| 1 | Chip Chase | | |
| 2 | Samantha Gump | | |
| 3 | Joy Myrick | | |
| 4 | Nick Seifert | | |

### List of Proposed Exhibits

### A. Plaintiff's Proposed Exhibits and Defendant's Objections

| Pl. Ex. No. | Description | Def. Objections | Court's Ruling |
|-------------|-------------|-----------------|----------------|
| P1 | Haider Demonstratives and Images - Brain Map Animation, including brain cortex localization map | Defendant objects on the grounds of relevance, speculation, foundation, and unfair prejudice. Federal Rules of Evidence 802, 402, 403.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33 | Overruled. Any demonstratives involving experts must be disclosed to the other party no later than February 19, 2025. If there are objections remaining to demonstratives, the parties must file notice with the Court no later than February 21, 2025, indicating the specific portion of a demonstrative to which there is objection. |

4

169

| P2 | National Brain Injury Institute, Diffusion Tensor Images, By Dr. Aaron Filler, Dated September 18, 2020, and Demonstratives | Defendant objects on the grounds of hearsay, foundation, speculation and relevance. Federal Rules of Evidence 802, 702, 703.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33<br><br>Court previously reserved ruling on admissibility until trial. | **The Court previously overruled Defendants' hearsay objection to machine generated images. ECF No. 273 at 3.** |
|---|---|---|---|
| P3 | Excerpts of National Brain Injury Institute, Life Care Plan for JoAnn Haysbert, By Dr. Huma Haider, Dated June 22, 2021 | Expert report is not properly admissible as evidence, is hearsay, lacks proper evidentiary foundation and requires expert testimony in person. Further, the expert report lacks evidentiary foundation, is speculative and is irrelevant to these proceedings. Federal Rules of Evidence 802, 702, 703.<br><br>~~Plaintiff withdrew this claim at the prior trial and the order granting the voluntary dismissal does not permit these claims to be revived. "Plaintiff may not file previously withdrawn claims for past or future medical specials, a life care plan, or claims for lost earning capacity or future lost wages." ECF 357.~~[2] | **The Court previously reserved as to admissibility and foundation and sustained the hearsay objection to the expert report except as to the summary at the last page of the exhibit. ECF No. 273 at 4. The Court reserved ruling on the admissibility of the summary, pending testimony. ECF No. 286. The Plaintiff agreed to redact the written statement on the last page of the exhibit. *Id.*** |
| ~~P5~~ | ~~Defendant Outback Steakhouse of Florida, LLC's Verified Responses to~~ | ~~Plaintiff offers as exhibits pleadings and discovery responses from the Defendant and Defendant objects on the~~ | This exhibit appears to no longer be relevant |

[2]    This objection was not previously included in the parties' proposed final pretrial order. *See* ECF No. 34. As such, the objection has been struck by the Court. Additionally, Plaintiff has not suggested that she seeks to reintroduce previously withdrawn claims such as medical specials or lost wages. While the Court previously ruled that the entirety of the life care plan would not be admissible, it reserved ruling on specific, redacted portions of the life care plan and suggested that a redacted summary may be admissible if an adequate foundation was laid. ECF No. 286.

| | Plaintiff's Special ~~Interrogatories~~ | ~~grounds of relevance, probative value, prejudicial impact, cumulative testimony. Federal Rules of Evidence 402, 403.~~ ~~Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document.~~ | under Plaintiff's stated theory of admissibility.[3] |
|---|---|---|---|
| ~~P6~~ | ~~Outback Steakhouse, "Safety in the Outback – Reference Guide"~~ | ~~Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403.~~ ~~Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document.~~ | *See supra* note 3. |
| ~~P7~~ | ~~Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – General Practices"~~ | ~~Plaintiff offers exhibits identified as policy and practice materials for Outback~~ | *See supra* note 3. |

---

[3]     The Court advised the parties following the Final Pretrial Conference to meet and confer regarding exhibits and to withdraw any exhibits that were no longer relevant given various rulings and motions made. At the Final Pretrial Conference, Plaintiff dismissed Bloomin' Brands as a party. ECF No. 37. Accordingly, exhibits P5–P11 are seemingly no longer pertinent.

| | | Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| | | Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document. | |
| P8 | Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – Proper Housekeeping" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | *See supra* note 3. |
| | | Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document. | |
| P9 | Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – Slip- Resistant Footwear" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant | *See supra* note 3. |

| | | ~~objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403.~~<br><br>~~Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document.~~ | |
|---|---|---|---|
| ~~P10~~ | ~~Outback Steakhouse, "Best Practices: Prevention of Slips & Falls—Use of Mats"~~ | ~~Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403.~~<br><br>~~Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document.~~ | *See supra* note 3. |

| P11 | ~~Video, Bloomin' Brands, Inc., "Clean and Safe Floors – Cleaning Up Spills," Runtime 2:46~~ | ~~Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403.~~ ~~Court previously ruled that private rules cannot be used to fix the standard of care under common law. ECF 273. Plaintiff previously represented that the policy may be used to show Bloomin' Brand's control. However, now that Bloomin' Brands has been dismissed, there is no stated reason for the admissibility of this document.~~ | *See supra* note 3. |
|---|---|---|---|
| P12 | Outback Steakhouse, Architectural Floor Plans for Outback Store #4759, 4312 Portsmouth Blvd., Chesapeake, VA 23321, "A111," "A121," and "A131," Dated September 22, 2015 | Defendants object to Plaintiff's offered exhibit of Architectural Floor Plans on the grounds that those documents are hearsay, not relevant and lack probative value. Federal Rules of Evidence 402, 403. | **Previously, the Court noted that Defendants' objections were resolved "subject to counsel redacting reference to camera, video, etc." ECF No. 273 at 6.** |
| P14 | Work Order Request Number 95465523, Dated March 7, 2018 | Defendant objects to Work Order Request Number 95465523 dated March 7, 2018, on the grounds of relevance, materiality and probative value. Federal Rules of Evidence 402, 403, 802. Defendant also incorporates motions *in limine* filed, ECF 32 and 33. Now that Plaintiff has stipulated that Plaintiff did not slip in the area where the work order | Overruled. This work order is admissible as evidence of notice. |

9

| | | | |
|---|---|---|---|
| | | described, Mr. Avrit has been withdrawn as an expert, and there is no evidence that the floor where Plaintiff slipped was wet prior to her fall, Defendant continues to object on the grounds of relevance, materiality and probative value. Federal Rules of Evidence 401, 402, and 403. | |
| P16 | Reserved - Other Demonstrative and Illustrative Materials, Charts, Summaries of Evidence, and PowerPoint Presentations | Reserved | Reserved. Any demonstratives involving experts must be disclosed to the other party no later than February 19, 2025. If there are objections remaining to demonstratives, the parties must file notice with the Court no later than February 21, 2025, indicating the specific portion of a demonstrative to which there is objection. The parties are directed to meet and confer regarding other demonstratives prior to the start of trial. |
| P17 | Theresa Seibert Affidavit | Defendant objects to the affidavit of Theresa Seibert, on the grounds of hearsay, relevance and foundation. Federal Rules of Evidence 802, 402, 403. | **The Court previously excluded this affidavit except as to possible impeachment purposes. ECF No. 273 at 7.** |

**B. Defendant's Proposed Exhibits and Plaintiff's Objections**

| Def. Ex. No. | Description | Pl.'s Objections | Court's Ruling |
|---|---|---|---|
| D1 | Photograph of floor produced by Defendants | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D2 | Photograph of shoes produced by Defendants | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D3 | Curriculum vitae, Neil Pugach, M.D. | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rule 403. | Reserved. |
| D4 | Curriculum vitae, Abbot Huang, M.D. | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rule 403. | Reserved. |
| D5 | Photos of Plaintiff's scar JWH 0079 - 0080 | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D6 | Photos of Plaintiff's shoes JWH 0081-0084 | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D7 | Photos of Outback 8-16-18 JWH 0085-0087 | Plaintiff objects on the grounds of speculation, foundation, relevance, and Rule 403. | Reserved. **Defendants previously agreed to remove the portion of the photos depicting a camera. ECF No. 273 at 8.** |
| D8 | Labor Punches at Outback May 23, 2018 | | |
| D9[4] | Plaintiff's Medical Record for February 3, 2017 visit | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |

---

[4] D9-15 are new exhibits. Initially, undersigned believed new exhibits would be permitted, but upon a re-read of ECF 22, it is now unclear whether the Court intended to allow the parties to add additional exhibits, or if the intent was simply to remove. So as to not waive any right to introduce these documents, they have been left on the list. These medical records were discussed with Plaintiff during the prior trial. ECF 319, Trial Tr. Day 3, pp. 332-354. Counsel was intending on introducing the records as impeachment evidence in Defendants' case-in-chief, but the trial did not make it that far. Undersigned included these as exhibits for this trial, in an attempt to present a cleaner and clearer record.

| | | | |
|---|---|---|---|
| | with Divine Health Care, LLC/Dr. Chinniry | | |
| D10 | Plaintiff's Medical Record for February 13, 2017 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |
| D11 | Plaintiff's Medical Record for March 13, 2017 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |
| D12 | Plaintiff's Medical Record for April 11, 2018 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |
| D13 | Plaintiff's Medical Record for May 25, 2018 visit with Medcare | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |
| D14 | Plaintiff's Medical Record for July 9, 2018 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |
| D15 | Plaintiff's Medical Record for September 10, 2018 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | Reserved. |
| TBD | 2020 Fundraising Video for Hampton University featuring Plaintiff (offered for impeachment) | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rules 403, 608. Method and Type of impeachment is not clear and is speculative regarding Plaintiff's expected testimony. Also subject to Motion *in Limine* and Ruling, Dkt. No. 235 | Reserved. |
| TBD | April 2022 Video of Ceremony for retiring President of Hampton University featuring plaintiff's remarks (offered for impeachment) | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rules 403, 608. Method and Type of impeachment is not clear and is speculative regarding Plaintiff's expected testimony. Also subject to Motion *in Limine* and Ruling, Dkt. No. 235 | Reserved. |

| TBD[5] | Plaintiff's signed employment contract for June 23, 2021 with Hampton University (offered for impeachment) | Plaintiff objects on the grounds of hearsay, relevance, foundation and Rule 403. | Reserved. |
|---|---|---|---|

### Plaintiff's Factual Contentions

Plaintiff, makes the following factual contentions in this case, which are meant only as a summary of her contentions and should not be construed as a verbatim, exclusive recitation of all facts she may seek to prove or move into evidence in this case.

1.      Defendant Outback was open to the public for dining on May 23, 2018.

2.      Defendant Outback is the owner/operator of the property.

3.      Defendant Bloomin' Brands is the franchisor of the property and exercised control over the property.

4.      Plaintiff went to Outback on May 23, 2018 to pick up To-Go order and use restroom.

5.      Plaintiff was a customer of the restaurant, open to the public, walking in the dining room, also open to the public.

6.      Upon entering the Chesapeake Outback Steakhouse, Plaintiff had the right to assume the interior of the restaurant was reasonably safe.

7.      Hostess directed Plaintiff toward the restrooms. Plaintiff took two steps in that direction.

8.      At this point, Outback had not made reasonable inspection of the floor.

---

[5] This is also new to the list, but was discussed during the prior trial. ECF 319, Trial Tr. Day 3, pp. 366-367.

9.      Outback cleaned the floor prior to Plaintiff's entry.  Outback did not ensure the floor was safe after cleaning it.

10.     Outback did not remove a slippery substance that was present when Plaintiff entered the premises, and which Outback knew or should have known was there.

11.     Plaintiff was given no oral warning from any Outback employees about the unsafe condition of the floor.

12.     At the time and place of Plaintiff's fall, there were no wet floor signs warning of the unsafe condition of the floor; nor was there any carpeting, railing, or other device that would have reduced the danger of a slip and fall.

13.     The slickness of the floor was not open or obvious to customers.

14.     Defendants owed Plaintiff the duty to exercise ordinary care to have the premises of the Chesapeake Outback Steakhouse in a reasonably safe condition.

15.     Defendants owed Plaintiff the duty to remove, within a reasonable time, foreign objects or substances which it either knew or should have known were placed on the floor.

16.     Defendants owed Plaintiff the duty to warn her of unsafe conditions which the Defendants knew or should have known existed but were unknown to Plaintiff.

17.     Defendants owed Plaintiff the duty to ensure a sanitary environment inside the restaurant.

18.     Defendants owed Plaintiff the duty to make sure that no cleaning solution, grease, water, or other moisture was left on the floor where she could slip on it.

19.     Defendants owed Plaintiff the duty to warn her that the floor was wet by placing a wet floor sign in the area.

20.     Defendants owed Plaintiff the duty to have in place floor mats to ensure no grease, moisture, or other substance was being tracked into the dining room.

21.     Defendants owed Plaintiff the duty to adhere to their own policies and procedures regarding guest safety, including proper cleaning of spills in the restaurant.

22.     On or about March 7, 2018, Defendants actually knew that the floor in the dining room of the Chesapeake Outback Steakhouse needed to be replaced because it was not refinished correctly and caused lots of slip and falls.

23.     Defendants did not change, replace, or repair the floor in the dining room of the Chesapeake Outback Steakhouse between March 7, 2018 and May 23, 2018.

24.     At the time of the incident, Defendants had no formal policy or protocol for inspecting the floor for spills or formation of condensation during business hours.

25.     At the time of the incident, Defendants had no formal policy or protocol for cleaning spills or formation of condensation or moisture on the floor during business hours.

26.     At the time of the incident, Defendants did not employ bussers at the restaurant, and no server assistants were on duty that day.

27.     Defendants never had a policy, procedure, or practice for using cleaning logs to record when the floor was cleaned.

28.     At the time of the incident, climatological conditions existed which had been previously identified as causing moisture to collect on the floor.

29.     On May 23, 2018, Plaintiff slipped and fell in the dining room of the restaurant, with the left side of her body and head striking the floor.

30.     Defendants did not warn Plaintiff verbally of the dangerous condition.

31.     There were no visible warning signs, including wet floor signs, which would have notified Plaintiff of the dangerous condition.

32.     If not for the dangerous condition of the floor, Plaintiff would not have slipped and fell.

33.     The dangerous condition of the flooring caused Plaintiff to slip and fall as a natural and probable consequence of the condition of the floor.

34.     Plaintiff did not fully understand the nature and extent of the dangerous condition on the floor of the Chesapeake Outback Steakhouse prior to slipping and falling.

35.     Plaintiff did not voluntarily expose herself to the dangerous condition the caused her to slip and fall.

36.     As a result of the slip and fall, Plaintiff sustained a permanent traumatic brain injury.

37.     As a result of the slip and fall, and the resulting brain injury, Plaintiff now suffers from, and will continue to suffer from, physical, neurocognitive, and psychosocial disabilities.  By way of example and not of limitation, Plaintiff suffers from headaches; increased sensitivity to light; increased sensitivity to sound; spots in her vision; ringing in the ears; dizziness; memory loss; and anxiety.

38.     As a result of the slip and fall, and the resulting brain injury, Plaintiff will incur future costs for medical treatment, personal care, and related expenses in excess of $1,382,000.

**Defendant's Factual Contentions**

Defendants make the following factual contentions in this case, which are meant only as a summary of its contentions and should not be construed as a verbatim, exclusive recitation of all facts it may seek to prove or move into evidence in this case:

1.    There was no defect in the area of the restaurant where the Plaintiff fell on May 23, 2018.

2.    Outback employees inspected the area immediately after the fall and the floor was clean and dry.

3.    An independent witness did not see or feel anything slippery on the floor where the plaintiff fell before or after the plaintiff fell.

4.    Defendants' evidence will demonstrate the Plaintiff did not suffer a traumatic brain injury in this case.

**Plaintiff's Statement of Triable Issues**

1.    Plaintiff was a business invitee who had the legal right to assume the floor of the Chesapeake Outback Steakhouse was safe for her visit on May 23, 2018. *Cunningham v. Delhaize Am., Inc.*, 2012 U.S. Dist. LEXIS 140655, at *5 (W.D. Va. Sep. 27, 2012) ("Business patrons are invitees of the store owner."); *see Arthur v. Crown Cent. Petroleum Corp.*, 866 F. Supp. 951, 953 (E.D. Va. 1994) (citing *Knight v. Moore*, 179 Va. 139, 145, 18 S.E.2d 266 (1942); *Crocker v. WTAR Radio Corp.*, 194 Va. 572, 574, 74 S.E.2d 51 (1953)) (patrons have the right to assume premises safe).

2.    Defendants owed Plaintiff the duty to exercise ordinary care to keep the restaurant in a reasonably safe condition. *See Winn–Dixie Stores, Inc. v. Parker*, 240 Va. 180, 182 (1990) (store owner must maintain premises in reasonably safe condition, remove foreign objects which

17

**182**

it knew or reasonably knew were on the floor within reasonable time, and warn customers of unsafe conditions which it knew or should have known existed).

3.    Defendants breached this duty, having actual or constructive knowledge of an inherent, dangerous defect in the twenty-year-old flooring of the dining room of the restaurant, making it more prone to slip and fall incidents, but failing to remedy it in any way or take proper care in cleaning the floor so that it would not become more slick. *See Kribbs v. Wal-Mart Stores E., L.P.*, 2006 WL 1788969, at *4 (E.D. Va. June 27, 2006) (plaintiff must prove defendant had actual or constructive notice, or that the condition was affirmatively made by defendant). *See also Austin v. Shoney's, Inc.*, 254 Va. 134, 486 S.E.2d 285, 288 (Va. 1997) (plaintiff need not prove actual notice); *Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 55 (Va. 1986) (store owner must exercise reasonable care to avoid the "genesis of the danger"); *Harrison v. The Kroger Co.*, 737 F. Supp. 2d 554, 558 (W.D. Va. 2010) (citations omitted) (constructive notice exists if "the condition was noticeable and had existed for enough time to charge the store owner with notice of the hazardous condition.").

4.    Additionally, before Plaintiff entered the restaurant, Defendants' employees utilized improper methods to clean the floor where Plaintiff eventually fell, and failed to place any warning signs indicating to patrons that the floor was slick. *Colonial Stores Inc. v. Pulley*, 203 Va. 535, 537 (1962) (store owner with actual or constructive notice of dangerous condition must warn customers)

5.    As a direct and proximate result of Defendants' actions or lack thereof, Plaintiff took one or two steps past the hostess stand in the front of the restaurant, slipped on the floor, and slammed the left side of her body and head on the floor. *See Cannon v. Clarke*, 209 Va. 708, 711 (1969) (citations omitted); *Williams v. Joynes*, 278 Va. 57, 62 (2009) (proximate cause is "an act

or omission that, in natural and continuous sequence . . . produces a particular event and without which that event would not have occurred."). Defendants eventually replaced the floor months after the incident, and due to complaints from patrons and Defendants' own employees about the slipperiness of the floor.

**Defendant's Statement of Triable Issues**

1.   Were the defendants negligent?

    a.   Was there a foreign substance on the floor at the time of the incident?

    b.   Was there any defect in the floor that required notice or a warning to the plaintiff?

    c.   Did the defendants have notice of any alleged defect in the floor?

2.   Was the plaintiff negligent?

    a.   Did she look and did she see any alleged defect?

    b.   Did the plaintiff exercise ordinary care for her own safety?

3.   Proximate cause

    a.   Was any alleged defect the cause of plaintiff's fall?

    b.   Was any alleged defect the proximate cause of plaintiff's claimed injuries?

4.   Damages

    a.   If the jury finds for the plaintiff, what is the amount of her damages?

/s/ _Elizabeth W. Hanes_
Elizabeth W. Hanes
United States District Judge

**Entered:** 1/24/25

The Honorable Elizabeth W. Hanes
United States District Court Judge for the
Eastern District of Virginia

**SEEN AND objected to, to the extent any objection above is overruled:**


 /s/ *Emily K. Blake*
John D. McGavin, Esq. VSB No. 21794
Emily K. Blake, Esq. VSB No. 90562
McGAVIN, BOYCE, BARDOT
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
(703) 385-1000 - Telephone
(703) 385-1555 - Facsimile
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*


**SEEN AND objected to, to the extent any objection Above is overruled:**

 /s/ *Mary T. Morgan*
Mary T. Morgan, Esq.
Virginia State Bar No. 44955
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
*Counsel for Plaintiff*

# EXHIBIT S

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
*Newport News Division*

**JOANN WRIGHT HAYSBERT,**

**Plaintiff,**

**v.**                                                    **Civil Action No.: 4:24-CV-87**

**OUTBACK STEAKHOUSE OF**
**FLORIDA, LLC, AND**
**BLOOMIN' BRANDS, INC. et al.,**

**Defendants.**

## PLAINTIFF'S UPDATED PRETRIAL BRIEF IN SUPPORT OF ADMITTING WORK ORDER NO. 2 INTO EVIDENCE

COMES NOW, Plaintiff, JoAnn Wright Haysbert by counsel, and submits this updated pretrial brief in support of admitting Work Order No. 103519732, created August 27, 2018, requesting floor repair to the Subject Location ("Work Order No. 2") into evidence, and in support thereof, states as follows:

## I.    FACTUAL BACKGROUND

In the summer of 2020, Plaintiff propounded written discovery on Defendants in the form of Interrogatories, Requests for Production, and Requests for Admissions. Defendants' objections were due on August 31, 2020. E.D. Va. Local Rule 26(C). Defendants' responses were due on September 14, 2021. Following Plaintiff's meet and confer efforts, having received no discovery responses, Defendants finally served responses to the aforementioned discovery requests on October 30, 2020.   The responses were limited.   Concerned that Defendants were withholding documents and responses to interrogatories based on boilerplate and unsupported objections, Plaintiff filed a Motion to Compel [Dkt. 41]. A hearing on Plaintiff's Motion was held on March 30, 2021 and, at the hearing, the Court granted the Motion in part and denied it in part, directing

additional production as set forth on the record.   On June 2, 2021, Defendants produced Work Order No. 95465523, created March 7, 2018 ("Work Order No. 1"), as part of Defendants' Answers to Plaintiff's Request for Production of Documents.  Work Order No. 1 requests floor repair to the Subject Location and states that there have been, "lots of slip and falls."

On August 1, 2023, a Final Status Conference was held in this matter. That same day, Plaintiff received an updated response to a subpoena from Service Channel, the third party used by Defendants to keep track of the work orders for the Subject Location.  This production included Work Order No. 2 for repairs to the floor at the Chesapeake Outback. Under the heading "PROBLEM DESCRIPTION," this work order stated that "our floors are so bad. People are tripping. There's mold. There's warping. They're getting mworse [sic] every minute of every hour. I need them fixed now."  Work Order No. 2 was clearly responsive to Plaintiff's initial discovery, to which responses were due by September 14, 2021. Specifically, Work Order No. 2 should have been identified in response to Special Interrogatory No. 21, which instructed Defendants to "[d]escribe all remedial measures taken to repair, remedy or correct the Condition [defined as 'the state of the floor … at the Subject Location where the Incident occurred'] after the Incident" because it was an order from August 2018 for repairs to the floor which were completed around December 2019. And, having been identified in response to Special Interrogatory No. 21, Work Order No. 2 should have been produced in response to Request for Production No. 1, which sought "All Documents identified in Your responses to Plaintiff's Written Interrogatories."

At the first trial, Defendants objected to any reference to the subject of Work Order No. 2. Day 4 Tr. 694:4-9 [ECF No. 307]. At the request of the Court, Day 4 Tr. 696:14-2 [ECF. No.

307], on August 13, 2021, Plaintiff and Defendants both filed trial briefs on the admissibility of

Work Orders Nos. 1 and 2 under FRE 407. [ECF Nos. 300, 301].

**II.**   **ARGUMENT**

   A. *Work Order No. 2 Should Be Added to Plaintiff's Exhibit List Because Its Absence Therefrom is the Fault of Defendants*

As explained above, although Work Order No. 2 was responsive to discovery requests, it

was never produced by Defendants. Instead, Plaintiff only received a copy of Work Order No. 2

from Service Channel, Defendants' maintenance management vendor, in response to a subpoena

for document production. Plaintiff did not receive Work Order No. 2, however, until 5:13 p.m.

EDT on August 1, 2023, the same day as the Final Status Conference before the first trial. Had

Work Order No. 2 been produced as required within the time frame for discovery, Plaintiff would

have designated it as an exhibit. Yet, because Defendants withheld Work Order No. 2, Plaintiff

did not have the opportunity to include it on her exhibit list, which had been finalized earlier that

same day at the Final Status Conference. (Plaintiff was also denied the opportunity to depose

parties with knowledge of Work Order No. 2 or its subject matter, as depositions had concluded

by that time and discovery deadlines had passed.)

In its Scheduling Order of September 23, 2024, the Court adopted the final exhibit and

witness lists memorialized in the Court's Order of August 2, 2023 [ECF No. 273], except for any

exhibits or witnesses that the parties may choose to remove. Nevertheless, so as to ensure that

Defendants do not benefit from their misconduct and that Plaintiff is not prejudiced thereby,

Plaintiff requests the Court's permission to add Work Order No. 2 to her exhibit list.  Because the

decision to retain the preexisting final witness list was an exercise of the Court's "inherent

powers … 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of

cases,'" Dietz v. Bouldin, 136 S. Ct. 1885, 1891 (2016) (quoting Link v. Wabash R. Co., 370

U.S. 626, 630-631 (1962)), it is within the Court's discretion to permit Plaintiff to add Work

Order No. 2 to her exhibit list.

>  B. *Work Order No. 2 Falls Within the Exceptions to FRE 407 Regarding Subsequent*
>     *Remedial Measures for Impeachment Evidence and Evidence Proving Ownership or*
>     *Control*

Plaintiff acknowledges that Work Order No. 2 is a subsequent remedial measure within

the meaning of FRE 407. Nevertheless, it is admissible under the exceptions to that rule for

impeachment evidence and evidence proving ownership or control.

With respect to impeachment, Ms. Alicia Eleftherion, who was manager of the

Chesapeake Outback location at the time and whose cell phone number appears as the contact

information for the person who originated the work order, testified that the floors were replaced

around December 2018 for aesthetic reasons. Day 4 Tr. 72:1-73:5. Mr. Nick Siefert, Joint

Venture Partner of Outback Steakhouses in the Hampton Roads and Richmond areas and who is

identified in Work Order No. 2 as having been involved in the floor replacement process,

testified at his deposition that the floors were replaced because of a damage from a water leak

that had been discovered in the area of the soda machine around the time that Work Order No. 2

was submitted in August 2018. Deposition of Nicholas Siefert Tr. 216:1-217:21. Yet, Work Order

No. 2 tells a different story, referring instead to warping and mold, as well as noting that

"[p]eople are tripping," with no mention of a water leak or a soda machine.

Beyond direct impeachment, evidence of subsequent remedial measures may be offered

to rebut a defendant's claims that no defective condition existed.[1]  If the defendant has raised the

question of ... the nature of the condition at the time of the accident, then evidence of subsequent

remedial measure is admissible not only for the limited purpose of impeachment but also as

---

[1] *See also* § III(C), *infra*.

affirmative proof to rebut defendant's claims. In such circumstances, it would be manifestly

unjust to deny plaintiff the right to elicit such evidence by cross-examination or by direct proof.

2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 407[04] (1976) (quoted approvingly in

Patrick v. South Central Bell Tel. Co., 641 F. 2d 1192, 1197-98 (6th Cir. 1980)).

Defendants' actions illustrate the reason why this sort of impeachment evidence is

important. On one hand, Defendants claim that there was no defect at all with the subject

flooring, but even so, they want to bring in evidence of that the floor was replaced due to a soda

leak to demonstrate the lack of a defect at the time of Plaintiff's slip and fall.[2] Yet, on the other

hand, Defendants contend that Plaintiff should not be able to introduce their own evidence about

the same measure through the actual work order, which indicates that the floor had to be replaced

because of people "tripping." Defendants cannot benefit from introducing evidence, and also

attempt to preclude Plaintiff from introducing evidence on the same subject.

Work Order No. 2 is also admissible under the exception to FRE 407 for evidence

proving ownership or control. Defendants have repeatedly taken the position that Defendant

Bloomin' Brands had no knowledge of the condition of the floor at issue and were not involved

in any remediation thereof. According to Work Order No. 2, however, Bloomin' Brands was

highly involved in controlling and overseeing the work of replacing the floor. Bloomin' Brands is

mentioned twenty-six times in Work Order No. 2, by way of notes input into the system and

emails regarding the replacement of the floors. For example, in Note 14, dated November 14,

2008, Kim Graeff at Bloomin' Brands Inc. approves the proposal from Tamerlane Commercial

---

[2] For example, at the first trial, Defendants freely chose to inform the jury of both work orders in their opening statement. Counsel for Defendants informed the jury of a "work order," *i.e.*, Work Order No. 1, and "that several months later a soda machine burst and broke and flooded the restaurant, and that subsequent to that, the entire floor for the entire restaurant was replaced," referring to the work performed as a result of Work Order No. 2. *See, e.g.*, Day 2 Tr. 10:11-22 [Dkt. 291].

Flooring for the floors to be replaced. Because Work Order No. 2 is clear evidence of ownership or control by Defendant Bloomin' Brands it is admissible for that purpose, notwithstanding FRE 407.

### C. Work Order No. 2 is Not Inadmissible Hearsay

Defendants have asserted that Work Order No. 2 is "double hearsay," Def's SRM Brf. 3, and thus inadmissible. However, neither Work Order No. 2 nor the statements contained within it are hearsay within the meaning of FRE 801 because they are opposing-party statements. Furthermore, even if they are deemed to be hearsay, they are nevertheless admissible because they fall within the exception in FRE 803(1) for present sense impressions or FRE 803(6) for records of a regularly conducted activity (*i.e.*, the business record exception).

> i.  Neither Work Order No. 2 nor the statements contained therein are hearsay because they are statements of an opposing party under FRE 801(d)(2)(C) and (D).

FRE 801(d)(2) provides in relevant part that a statement is not hearsay when it is "offered against an opposing party" and:

> *(C) was made by a person whom the party authorized to make a statement on the subject;*
>
> *(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or....[3]*

As the Advisory Committee Notes on Proposed FRE 801 explain, "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."

---

[3] The use of "or" at the end of clause (D) indicates that a statement is not hearsay if it falls under *either* clause (C) or (D).

6

192

Specifically, Work Order No. 2 and the statements contained in it are excluded from the definition of hearsay because they are an opposing party's statements within the meaning of FRE 801(d)(2)(C) or (D) because they is being offered by Dr. Haysbert, the plaintiff, against Defendants and were made by a person authorized to make statements on the subject or by a party's agent or employee within the scope of that employment.[4]

    ii.    Work Order No. 2 falls within the exceptions to the rule against hearsay for business records and present sense impressions.

FRE 803(6) allows hearsay evidence to be admitted if it constitutes "[a] record of an act, event, condition, opinion, or diagnosis" and the following conditions are met:

*(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;*

*(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;*

*(C) making the record was a regular practice of that activity;*

*(D) all these conditions are shown by the testimony of the custodian or another qualified witness…; and*

*(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.*

Based the deposition testimony of Mr. Marcus Wilson who prepared and submitted Work Order No. 1, it should be understood that work orders and the statements they contain are made by someone with knowledge of the relevant condition around the time that such condition existed; that preparing service requests for Service Channel, their third party-provider, was part of a regular process for dealing with maintenance issues; and that the statements in a work order

---

[4] Because Defendants failed to produce Work Order No. 2 and denied Plaintiff the opportunity to depose witnesses about it, Plaintiff has not definitively established who authored the work order, although it appears most likely to have been Ms. Eleftherion based on the inclusion of her cell phone number as the contact. Regardless, it could only have been an employee or agent authorized to submit work orders or else the work order would never have been approved and acted upon.

7

193

are made as part of the regular practice of submitting service requests. <u>See</u> Deposition of Marcus Wilson, Tr. 54:25-58:18.

FRE 803(1) also allows hearsay evidence to be admitted if it is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Thus, because the statements in Work Order No. 2 about the condition of the floor were self-evidently made at or immediately thereafter perceiving those conditions, they would be admissible as present sense impressions.

D.    *Work Order No. 2 is Otherwise Admissible*

Work Order No. 2 should be admissible under FRE 402 because it is relevant within the meaning of FRE 401. This is because Work Order No. 2 tends to make the following consequential facts more probable:

- That defects in the floor, including warping and mold, existed prior to August 27, 2018, a few months after Dr. Haysbert's slip and fall;
- That the defects had been getting worse and causing people to trip;
- That Defendants replaced the floor around December 2019, rendering it unavailable for Plaintiff's experts to examine;
- That Bloomin' Brands exercised control over the project, including by the involvement of its employees in selecting the contractor, managing the project, and approving the project and payment.
- That replacing the defective floor was a feasible measure.

Defendants have argued, however, that Work Order No. 1 should nevertheless be excluded under FRE 403 because it would allegedly be "more prejudicial than it is probative." Def's SRM Brf. 3-4. This is because, in Defendants' view, the replacement of the floor was due to damage from an issue with the soda machine that only arose in August 2018, after Dr. Haysbert's slip and fall. <u>See</u> Def's SRM Brf. 1-3.  While Defendants want to suggest that this leak was a discrete "incident" or "failure," Def's SRM Brf. 2-3, as if someone had discovered pools of water on the floor, their witnesses tell a different story - that there had been an ongoing

leak for some unidentified amount of time prior to August 2018. As Mr. Siefert testified during his deposition, the leak was only discovered because the condition of the floor had been getting worse and, therefore, "[they] had somebody look at the floor to see what the issue was, and I think that's how they found out, you know, trying to figure out what the issue with that part of the floor was…" Deposition of Nicholas Siefert Tr. 216:19-24.

Because Defendants' cannot establish when this leak started or that the poor condition of the floor was wholly attributable to the leak, they should not be allowed to exclude Work Order No. 2 from evidence simply because there is a disagreement over its implications for the case.

WHEREFORE, all of the foregoing reasons and for such reasons as may be articulated during oral argument, Plaintiff, by counsel, respectfully requests that this Court admit Work Order No. 2 into evidence, and for such further relief as is necessary and proper.

Respectfully submitted,

Date: December 16, 2024          By:    _____/s/_____
                                        Mary T. Morgan, Esq.
                                        Virginia State Bar No. 44955
                                        *Counsel for Plaintiff*
                                        PARKER POLLARD WILTON & PEADEN
                                        4646 Princess Anne Road, Unit 104
                                        Virginia Beach, Virginia 23462
                                        Telephone: (757) 384-3166
                                        Facsimile: (866) 212-1310
                                        Email: mmorgan@parkerpollard.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of December 2024, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

> John D. McGavin, Esq.
> Emily Blake, Esq.
> MCGAVIN, BOYCE, BARDOT,
> THORSEN & KATZ, P.C.
> 9990 Fairfax Boulevard, Suite 400
> Fairfax, Virginia 22030
> jmcgavin@mbbtklaw.com
> *Counsel for Defendants*

> _____/s/_____
> Mary T. Morgan, Esq.
> Virginia State Bar No:. 44955
> Trevor B. Reid, Esq.
> Virginia State Bar No:. 77233
> *Counsel for Plaintiff*
> PARKER POLLARD WILTON & PEADEN
> 4646 Princess Anne Road, Unit 104
> Virginia Beach, Virginia 23462
> Telephone: (757) 384-3166
> Facsimile: (866) 212-1310
> Email: mmorgan@parkerpollard.com
> Email: treid@parkerpollard.com

# EXHIBIT T

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| JOANN WRIGHT HAYSBERT | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) |
| BLOOMIN' BRANDS, INC., et al. | )    Case No.: 4:24-cv-00087-EWH-RJK |
| | ) |
|     Defendants. | ) |

## DEFENDANTS' MOTIONS *IN LIMINE*

COMES NOW, that the Defendants, Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., by counsel, pursuant to this Court's Scheduling Order (ECF 22), entered September 23, 2024, hereby move this Court to grant their Motions *in Limine*, previously filed, regarding certain evidence that may be offered by the Plaintiff and to address anticipated matters of evidence.

Pursuant to this Court's Scheduling Order (ECF 22), counsel for the parties met and conferred several times to attempt to narrow these issues. Based on those conversations, a number of the motions raised in ECF 351/352 have resolved. Left outstanding, Defendants request the Court to address the following:

1.    Defendants' first Motion *in Limine*, as set forth in ECF 351/352, requested that the Court exclude evidence of insurance, incident reports, claims process, and evidence as to how a claim is presented after an individual suffers an incident. This was also partially brief in Defndants' Motion for Mistrial, docketed at ECF 298. Counsel for Plaintiff has agreed that these topics are not relevant and does not intend to elicit any evidence related to these topics, however, Counsel for Plaintiff does reserve the right to ask the question, "Did anyone [from Outback] follow up with Dr. Haysbert" after the slip and fall. When requested to provide the relevance of this question, it was stated that such question goes to 'the general theme of corporate indifference.' Defendants

1

198

contend that whether or not anyone from Outback or Bloomin' Brands followed up with Plaintiff is not relevant to Plaintiff's injuries or theory of liability. Therefore, Defendants would ask that an Order be entered excluding such evidence, and rely upon the attached memorandum of law.

2.     Defendants' second and third Motions *in Limine*, as set forth in ECF 351/352 requested a Court Order excluding evidence related to surveillance cameras inside the restaurant, as there are no operating surveillance cameras inside the restaurant and arguments related to the spoliation of evidence regarding video from inside the facility from cameras, regarding any documentation or otherwise, as the Court has previously ruled on these matters. Counsel for Plaintiff has agreed that the Court has already ruled on the issues related to spoliation and the surveillance cameras on the premises and she does not intend to bring in any evidence Defendants sought to exclude in ECF 351/352, other than to ask a witness one to two questions about the existence of a camera. Defendants have no objection as to a very limited line of questioning related to the cameras, but reserve the right to object if counsel determines that the line of questioning exceeds the agreement reached by counsel. Therefore, Defendants believe that Defendants' second and third Motions *in Limine*, as set forth in ECF 351/352 is resolved at this time, without prejudice to raise the issue at trial, if necessary.

3.     The Parties have not been able to reach an agreement as to Defendants' fourth and fifth Motions *in Limine*, as set forth in ECF 351/352, as to the two work orders Plaintiff sought to introduce at the 2023 trial. This matter was briefed in ECF 301 as well. These issues remain unresolved and, therefore, Defendants would ask that an Order be entered excluding such evidence, and rely upon the attached memorandum of law. Briefly, there are two work orders – the first, listed as Plaintiff's Exhibit 14 in ECF 273, is a work order dated March 7, 2018, attached as Exhibit A. The second work order, dated August 27, 2018, was created after the subject incident

(Plaintiff fell May 23, 2018) and was never listed as a trial exhibit by Plaintiff. Plaintiff sought, mid-trial, to introduce the document as impeachment against Ms. Eleftherion. ECF 320, Tr. Trans. Day 4, 689:4-394:25. Defendant seeks to exclude both work orders and any evidence related to both work orders.

4.      Defendants' sixth Motion *in Limine*, as set forth in ECF 351/352, requested the Court to exclude evidence as to policies and procedures for cleaning, mopping or inspecting, as this Court has previously ruled that internal policies and procedures do not establish the standard of care and are irrelevant. *See, e.g.*, ECF 273 pp. 4-6. Counsel have almost resolved this issue and hope to have it completely resolved by the time this Court rules on these motions. Therefore, as permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 351/352.

5.      Defendants' seventh Motion *in Limine*, as set forth in ECF 351/352, requested an Order regarding the admissibility of Plaintiff's proposed demonstrative exhibits including, but not limited to, Plaintiff's Exhibit 1, Dr. Haider's video, and Plaintiff's Exhibit 2, Dr. Filler's Power Point. Specifically, Defendants argued because Plaintiff withdrew all of her experts, except Dr. Filler, Exhibit 1 was inadmissible because it was believed this was prepared by Dr. Haider[1] and Dr. Filler testified at trial that he had never reviewed the video and it had not been designated as a document that Dr. Filler has reviewed or relied upon in Plaintiff's Rule 26 disclosures. Plaintiff's counsel has now indicated that Plaintiff potentially intends to call Dr. Haider at the upcoming trial and intends to use the video with both Dr. Haider and Dr. Filler. ECF 31. However, Dr. Filler has testified that he has never seen the animation before and Dr. Haider's designation does not disclose

---

[1] Which apparently, according to ECF 31, is not the case; it was prepared by an undisclosed third-party vendor with the scans that Dr. Filler took.

that she reviewed the animation. Exhibit B, Pl. Damages Expert Designation, dated June 23, 2021. Plaintiff has consistently represented through the pre-trial orders that this animation was generated by Haider. For example, ECF 243 and 273 list the demonstrative as "Haider Demonstratives and Images – Brain Map Animation." In the Final Pre-Trial conference on August 8, 2023, counsel for Plaintiff stated "Judge, this is the brain animation that I was telling you about earlier. There is a map of the brain that she uses to describe how she came to her findings that Ms. Haysbert had suffered a dangerous injury from the fall." ECF 286:41:17-21. Counsel for Plaintiff advised for the first time at trial that this brain map animation was created by a third-party vendor. ECF 321, Tr. Trans. Day 5 936:5-17. Therefore, Defendants seek an Order prohibiting Plaintiff from introducing Exhibit 1.

As to Exhibit 2, Defendants objected to the PowerPoint prepared by Dr. Filler because it contains significant amounts of hearsay and irrelevant information. During the 2023 Final Pre-Trial conference, Plaintiff was ordered to provide an amended PowerPoint because Plaintiff needed to have "Dr. Filler update PPT to remove references to court rulings." ECF 273, p. 3. However, the amended proposed Exhibit 2 that was provided by Plaintiff during trial simply black-box redacted the references to prior court rulings on the Diffusion Tensor Images, but then left the caption of the PowerPoint slide in the slide deck. Judge Smith never had an opportunity to rule upon all of Defendants' objections to the various slides because Plaintiff's counsel introduced the exhibit during his direct examination of Dr. Filler, quickly publishing it to the jury, and Judge Smith wanted to move things along. *See* ECF 319, Tr. Trans. Day 3, 455:19-456:13; *see also* ECF 315 pp. 8-9.

Plaintiff's counsel has indicated that she agrees that black-box redactions are not appropriate and a clean copy of the PowerPoint will be provided, but at this point it is too late.

Plaintiff was ordered to produce the PowerPoint over a year ago. If Plaintiff wanted to use Dr. Filler's PowerPoint, it should have at least been provided prior to the date of this motion, so that this Court could have the opportunity to rule on the Exhibit in preparation for trial. Therefore, Defendants request a Court Order excluding Plaintiff's Exhibit 2.

6.    Defendants' eighth Motion *in Limine*, as set forth in ECF 351/352, requested an Order excluding the testimony of Dr. Filler. This issue was also briefed in ECF 294. As permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 294 and 351/352. Defendants further rely upon Dr. Filler's testimony, as provided in the prior trial, as such testimony clearly indicative of Dr. Filler's expected testimony to be offered during the trial in February 2025. *See* ECF 319, 408:10-512:15.

Plaintiff still intends to call Dr. Filler of an expert and counsel for Plaintiff indicated that Dr. Filler has even treated Plaintiff since last year's trial, however, Plaintiff has never sought to amend her designation, provide any treatment records, or provide literally any information other than a brief mention in a phone call. Therefore, Defendants' object to any facts or opinions not properly designated by Plaintiff.

7.    The ninth and tenth Motions *in Limine*, as set forth in ECF 351/352, request a court order prohibiting Plaintiff from issuing last-minute subpoenas and filing last-minute motions to have an expert witness present trial testimony by remote means has been resolved, as Counsel for Plaintiff has indicated that these will not be issues in the future.

8.    Defendants' tenth Motion *in Limine*, as set forth in ECF 351/352, confirmation of which of plaintiff's four nonresident Virginia experts will be coming to trial. The number of experts and when they may testify will impact the length of the trial. This specifically goes to the

issue of Defendants' expert witnesses waiting and ultimately never being allowed to testify despite four reserved trial dates. The defense sought a reasonable expectation of how long Plaintiff's case may last including, which witnesses will actually be called so that a reasonable schedule and orderly trial may occur. Counsel for Plaintiff has advised that she does not intend to call any of the liability experts and, as of right now, intends to call Dr. Haider and Dr. Filler. Plaintiff's counsel indicated that her trial strategy may change depending on how the Court rules on Dr. Filler's admissibility. This is also a necessary discussion as Plaintiff has renewed her Trial Brief relating to the admissibility of opinions from Plaintiff's treating physicians. ECF 27 (this case); ECF 196 (prior case). In the original trial brief, in Footnote 1, Plaintiff indicated calling up to 6 treating physicians, none of whom (other than Dr. Haider) were listed as witnesses in either ECF 243 or ECF 273. Therefore, as permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 351/352 and request that Plaintiff set forth a reasonable expectation of how long Plaintiff's case may last including, which witnesses will actually be called so that a reasonable schedule and orderly trial may occur.

9.    The twelfth, thirteenth, fourteenth, and fifteenth Motions *in Limine*, as set forth in ECF 351/352, are resolved.

**BLOOMIN' BRANDS, INC.**
**and OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**
By Counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:    (703) 385-1000
Facsimile:    (703) 385-1555

    /s/ *Emily K. Blake*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on December 16, 2024 the following was e-filed and served upon counsel of record:

        Mary T. Morgan, Esq.
        PARKER POLLARD WILTON & PEADEN
        4646 Princess Anne Road, Unit 104
        Virginia Beach, Virginia 23462
        Telephone: (757) 384-3166
        Facsimile: (866) 212-1310
        Email: mmorgan@parkerpollard.com
        *Counsel for Plaintiff*

         /s/ *Emily K. Blake*
        Emily K. Blake (VSB 90562)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT          )
     Plaintiff,                  )
v.                             )
                                           )
BLOOMIN' BRANDS, INC., et al.  )      Case No.: 4:24-cv-00087-EWH-RJK
                                           )
     Defendants.                 )

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS *IN LIMINE*

COMES NOW, that the Defendants, Outback Steakhouse of Florida, LLC and Bloomin'

Brands, Inc., by counsel, and in support of its Motions *in Limine*, state as follows:

1.     Motion to Exclude Evidence of Corporate Indifference; "Did anyone [from Outback] follow up with Dr. Haysbert" after the slip and fall.

Whether any Outback employee, Bloomin' Brands employee, or employee of any

claims/insurance company on behalf of Defendants called Plaintiff after the slip and fall on May

23, 2018 is simply not relevant under Federal Rule of Evidence 401 and is inadmissible pursuant

to Federal Rule of Evidence 402 and, in the alternative, 403. Plaintiff's counsel indicates that the

question is relevant to the theme of 'corporate indifference,' however 'corporate indifference' is

not an element of negligence, nor is it a fact "of consequence in determining the action," Fed. R.

Evid. 401, especially as there is no claim for punitive damages. While the Defendants are

corporations, Joint Jury Instruction 33 clearly instructs: "A corporation is entitled to the same fair

trial as a private individual. All persons, including corporations, and other organizations stand

equal before the law, and are to be treated as equals." A corporation cannot be 'indifferent' more

or less than any other individual. Plaintiff is seeking to utilize Defendants' corporate status to seek

to 'dehumanize' Defendants in the eyes of the jury. Such trial themes and questions are unduly prejudicial and such prejudice substantially outweighs any possible relevance.

2.    Motion to Exclude the March 7, 2018 Work Order, P14.

Defendants objected to Plaintiff's attempt to introduce the March 7, 2018 work order through Nicholas Seifert, as the document was not authored by Mr. Seifert and he had no knowledge of the creation of the document or the statements contained therein. *See* ECF 301 p. 2. Plaintiff's counsel argued that the March 7, 2018 work order was admissible through Mr. Seifert as evidence of "feasibility of precautionary measures." *Id.*; *see also* ECF 320, Trial Trans. Day 4 774:5-13 ("Your Honor, this goes directly to the feasibility of precautionary measures."). Thus, Defendants were simply responding to Plaintiff's arguments at trial. Defendants have always maintained that the March 7, 2018 work order was not admissible pursuant to Federal Rules of Evidence 402 and 403. ECF 273 p. 7.

When counsel for the parties met and conferred on this Work Order, undersigned was simply told that she would have to renew her prior motion (ECF 301) on this topic, as Plaintiff would not consent that the work order is inadmissible. Now, according to ECF 28, Plaintiff is arguing that she never intended to use the work order to prove feasibility of precautionary measures and, instead, the work order is simply relevant and arguing that Marcus Wilson, the actual author of the work order, clearly lied in his deposition when discussing the scope of the work order. ECF 28 pp. 6-7. *But see* ECF 28 p. 6 (listing that the work order is relevant to prove "[t]hat repairing or replacing the defective floor was a feasible measure.").[1]

---

[1] To the extent that Plaintiff seeks to introduce the March 7, 2018 work order as 'proof of a feasible measure,' Defendants adopt and incorporate the arguments previously made in ECF 301.

Plaintiff's counsel's arguments aside, Plaintiff has *no evidence* that Mr. Wilson intended to indicate that that there was any problem with the floors in the area where Plaintiff actually slipped and fell. Exhibit C, Marcus Wilson Dep. Plaintiff's brief on this topic offers no proffer of evidence, other than counsel's conjecture and argument that Mr. Wilson's description was not specific enough to the location that Mr. Wilson was intending to describe. Plaintiff's brief even goes so far as to assume that Mr. Wilson, as a seasoned restaurant employee, "may have simply been clarifying that 'up front' did not refer to the entire 'front of house.'" ECF 28, p. 7 n. 3. Plaintiff's counsel's musings are nothing more than pure conjecture in the face of *detailed* and *extensive* deposition testimony from Mr. Wilson. *See generally* Ex. C.

The work order specifically states that "[w]hen temperature changes outside it tends to collect moisture and sweat." Ex. A. Plaintiff has already testified at trial:

- "[I]t was a beautiful day." ECF 319, 312:23-25.

- It did not rain. ECF 319, 313:1-8.

- Plaintiff did not notice anything about the condition of the floor before she stepped past the hostess stand. ECF 319, 314:21-25.

- Plaintiff did not inspect the floor after she fell, nor did she look to see what caused her to fall. ECF 319, 327:11-328:4.

- Plaintiff did not notice whether any of her clothes were wet after the fall. ECF 319, 321:6-18.

- When Plaintiff got up and walked out of the restaurant, she walked out the same way she walked in and did not have any difficulty with the floor. ECF 319, 325:10-326:6.

While Plaintiff's daughter, Nineveh Haysbert, testified that she saw an employee with a dry mop near her mother when she walked into the restaurant, ECF 320, 567:24-270:8, Nineveh

Haysbert could not determine if the floor was wet, did not have any difficulty walking on the area where her mother fell, specifically testified that the floor was not slippery, and did not notice whether her mother's clothes were wet after the fall, ECF 320, 571:2-25; 572:18-573:16.

Independent Witness, Christopher Robinson, testified the floor was not wet and he did not see anyone else having any difficulty with the floor prior to Plaintiff falling. ECF 320, 734:24-735:22. Mr. Robinson specifically looked to see if there was something on the floor that Plaintiff fell on, but did not see anything. ECF 320, 737:8-12.

There are similarly no photos or any other document to substantiate that the floors were wet on May 23, 2018, nor is there any evidence that there was the 'temperature change' as Mr. Wilson describes in the work order.

Simply put, Plaintiff has absolutely no physical or testimonial evidence that the floors were wet and apparently intends to rely upon mere conjecture that the issue Mr. Wilson described in his March 7, 2018 Work Order was somehow related to Plaintiff's fall. However, Dr. Haysbert's statements of fact are binding upon her and she cannot raise above her own testimony. *Massie v. Firmstone*, 134 Va. 450, 462 (1922). The fact that this work order existed prior to Plaintiff's fall does not mean that the issue described in the work order was present on the day Plaintiff fell. It is Plaintiff's burden to provide this Court with evidence of negligence; "[n]egligence cannot be presumed from the mere happening of an accident." *Weddle v. Draper*, 204 Va. 319, 323 (1963). Rather, "[i]t is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, [s]he cannot recover." *Id.* (citations omitted).

While the above case law is whether a plaintiff has sufficient proved her case, as opposed to the admissibility of evidence, it is still probative because it goes to what a plaintiff has to prove

in meeting her burden. The Notes of the Advisory Committee on Federal Rule of Evidence 401 are also instructive as it discusses 'conditional' relevancy:

> In this situation, probative value depends not only upon satisfying the basic requirement of relevancy as described above but also upon the existence of some matter of fact. For example, if evidence of a spoken statement is relied upon to prove notice, probative value is lacking unless the person sought to be charged heard the statement.

Fed. R. Evid. 401 advisory committee's note; *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Here, Plaintiff has failed to proffer the existence of the facts that would make the March 7, 2018 work order relevant, namely that there was any moisture on the floor or that there was the temperature change, as detailed in the work order. Rather, Plaintiff is clearly attempting to use the March 7, 2018 work order *to prove* that the floor was wet on the date she fell. This is improper. Thus, the March 7, 2018 work order is inadmissible as Plaintiff has failed to proffer how it is relevant under Federal Rule of Evidence 401 and, therefore, is inadmissible pursuant to Federal Rule of Evidence 402.

In the alternative, the March 7, 2018 work order is substantially more prejudicial than it is probative as, at most, Plaintiff's evidence amounts testimony from her daughter (which is contradicted by Mr. Robinson) that an employee was dry-mopping around the area where Plaintiff fell. Even if this could be used as circumstantial evidence to prove that the floor was wet, it does not tend to prove that the floor was wet due to "temperature changes outside . . . ." Ex. A. As, during the last trial, Plaintiff had no evidence related to the weather and, in her motion, Plaintiff has failed to proffer that she will have any admissible evidence as to the weather in the new trial, admitting the work order would be unduly prejudicial, pursuant to Federal Rule of Evidence 403.

As to Plaintiff's arguments regarding to hearsay, Plaintiff has never laid the foundation at trial to establish that all of the statements contained with the March 7, 2018 work order were made "by a person whom [Defendants] authorized to make a statement on the subject" or that the statement were made by Defendants' "agent or employee within the scope of that relationship and while it existed." While Plaintiff may argue that she can lay sufficient foundation to prove the March 7, 2018 work order is not double hearsay, she has yet to do that at trial. Lastly, simply because a document is not hearsay, does not make it admissible. Plaintiff still must pass the other evidentiary hurdles to admit the March 7, 2018 work order into evidence.

3.    <u>Motion to Exclude the August 27, 2018 Work Order, not listed as an exhibit.</u>

a.    *Plaintiff's Procedural Arguments as to Why she Should be Permitted to Designate this Exhibit Late are Factually Flawed and Unsupported by the Record.*

Plaintiff admits that she received the August 27, 2018 work order in response to a subpoena, but did not produce the document or otherwise notify the court or the Defendants of its existence until Day 4 of trial on August 11, 2023. Undersigned could not locate her copy of the document, conceivably provided at trial, and a copy of the document was not attached to Plaintiff's motion or the prior motion, ECF 300.

Plaintiff's arguments that the work order should have been produced in discovery is confusing, especially as none of the discovery requests are set forth in full, nor are they attached to the motion. Plaintiff's motion references a hearing on March 30, 2021, ECF 57, but the Court's notes does not reflect the rulings and Plaintiff's brief does not set forth any rulings made by Judge Miller.

As many years have passed since this March 30, 2021 hearing, and Plaintiff did not file a subsequent motion for sanctions for failure to comply with any ruling made at the March 30, 2021

hearing (or at least it is not detailed in this brief and undersigned has no knowledge of one), undersigned expects that counsel for Defendant complied with any rulings made during the March 30, 2021 hearing. Plaintiff argues in her brief that the August 27, 2018 work order should have been identified in response to Interrogatory 21 and produced in response to Request for Production 1. Plaintiff's brief sets forth Interrogatory 21, which is a very limited interrogatory. Plaintiff only asked Defendant to "[d]escribe all remedial measures taken to repair, remedy, or correct *the Condition* after the Incident." Defendant Outback responded "Objection, relevance regarding subsequent remedial measures alleged, although as there was no defect, no subsequent remedial measures were indicated." As Defendant Outback has always contended that the floor did not have a defect at the time Plaintiff fell, it is unclear how the August 27, 2018 work order was relevant in response to Interrogatory 21.

Plaintiff did file the transcript from the March 30, 2021 hearing, docketed at ECF 65-1, wherein Plaintiff noted objections to Judge Miller's rulings on March 30, 2021. Judge Miller stated that he was confused by Plaintiff's use of the word 'condition' in Plaintiff's discovery request, ECF 65-1, 66:367:1. Ultimately, Judge Miller recognized that because Plaintiff had failed to allege or identify what, exactly, the defective condition she alleged caused her fall, it was difficult for Defendants to respond to these discovery requests. ECF 65-1, 66:367:1, 70:11-71:10. Defendants were then ordered to provide information related to *prior* slips and falls. ECF 65-1, 70:11-71:10. Undersigned cannot identify any portion where Interrogatory 21 was ever actually discussed, nor was it identified in Plaintiff's motion who is seeking for leave to add a new exhibit. Thus, Plaintiff has failed to substantiate her allegation that Defendants' misconduct prohibited her from discovering this subsequent work order and the August 27, 2018 work order should be excluded, as it was not timely designated.

Plaintiff also does not identify when this subpoena *duces tecum* to Service Channel was issued, nor does the motion provide any facts to substantiate a finding that the subpoena complies with the Court's scheduling order. It is unclear from Plaintiff's motion why Plaintiff received the subpoena response so late. Discovery had been closed for over a year by the time Plaintiff received the subpoena response on August 1, 2023, as the case had originally been set for trial in August 2022.

A fair reading of defense counsel's opening does not, in fact, reference two work orders. It references the one work order that was known (and referenced in Plaintiff's opening), ECF 318 252:18-253:2, and a reference as to the testimony that had been elicited in discovery depositions – that the floors were never replaced as a result of the condensation issue or any issue raised by Plaintiff – that several months after Plaintiff's slip and fall, it was discovered that a soda machine burst. ECF 253:3-7. This was thoroughly discussed in Mr. Seifert's deposition:

15 What was the water leaking happening

16 from, where was it coming from?

17 A I believe it was something related to

18 the soda station in the kitchen.

Exhibit D, Seifert Dep. 217:15-18; *see also* Ex. C, Wilson Dep. 80:3-22; 125:16-127:1.

b. *This Work Order does Not Fall under the Rule 407 Exceptions*

Plaintiff now argues that the Work Order can be used to prove ownership or control, however Defendant Outback has never contended it did not own or control the premises. In the meet and confers undersigned had with Counsel for Plaintiff, she indicated that she 'had no problem' with dismissing Defendant Bloomin' Brands as soon as undersigned can produce information related to Defendant Outback's ability to pay whatever verdict, if any, is awarded to

8

212

Plaintiff. Thus, undersigned was completely surprised by this argument that the work order would be used to show Bloomin' Brands ownership or control, when all discussions between counsel have pointed to an agreement to have Bloomin' Brands dismissed as a party. Undersigned cannot assess the rest of the arguments related to notice and control as the work order was not attached to the motion and does not seem to be have been filed with the Court.

Plaintiff argues that this work order impeaches Ms. Eleftherion, however absolutely no foundation has been laid that Ms. Eleftherion had any knowledge of this work order. Rather, Plaintiff relies upon the assumption that simply because Ms. Eleftherion's phone number is on the work order, she must have drafted it. No foundation has been laid for this assumption, other than Mr. Wilson's testimony that a work order is placed through an app on his phone, called Service Channel. Ex. C, Wilson Dep. 37:17-23. Otherwise, there is no evidence, as far as undersigned can tell without having the opportunity to review the document again, that Ms. Eleftherion had any knowledge of this work order. Therefore, it is too premature to argue that this work order can be used to impeach Ms. Eleftherion.

Lastly, Plaintiff argues that the August 27, 2018 work order can be used to show that Defendants had knowledge that a defective condition existed. However, the only 'defective condition' that Defendants can have notice of, based on this work order, is warped floors, which, as evidenced by the deposition testimony cited above, was as a result of a soda machine leak that occurred after Plaintiff's slip and fall. Plaintiff's own argument evidence how Plaintiff is constantly shifting what this supposed defective condition was that caused Plaintiff to slip and fall. The two work orders very clearly identify two very different problems. Plaintiff cannot rely upon both to prove a defective condition existed; it is Plaintiff's burden to present evidence that Plaintiff slipped as a result of a *particular* defective condition, of which Defendants had notice.

9

213

### c. *Plaintiff Cannot Prove this Work Order is Relevant*

Regardless, for similar reasons articulated above, it is unclear how the August 27, 2018 work order could possibly be relevant, as it discusses people *tripping* due to a *warped* floor. ECF ECF 29 p. 2. Plaintiff has repeated testified and alleged in her Complaint that she *slipped*. ECF 1, Compl. ¶¶ 10, 30; *see also* Compl. ¶ 23 (describing the floor as slippery); ¶¶ 26, 28 (arguing Defendants should use precautionary measures to prevent slipping). Plaintiff further alleges in her Complaint that "Defendants were on notice of the unsafe or dangerous condition of the Chesapeake Outback's floor prior to Dr. Haysbert's slip and fall because they had been informed by a manager on or about March 7, 2018 that the floor tended to collect moisture when the temperature outside changed and therefore needed to be replaced." ECF 1, Compl. ¶ 12.

Absolutely no one has testified that the soda machine leak caused pools of water to form or that people slipped as a result of the soda machine leak. Mr. Wilson's understanding of the leak was that the soda machine "exploded in between the walls, which leaked into the floor, which buckled the floor . . . [t]he floor closest to the kitchen." Ex. C., Wilson Dep. 126:4-127:1. Thus, the August 27, 2018 work order is inadmissible as Plaintiff has failed to proffer how it is relevant under Federal Rule of Evidence 401 and, therefore, is inadmissible pursuant to Federal Rule of Evidence 402.

In the alternative, the August 27, 2018 work order is substantially more prejudicial than it is probative as it would confuse the jury. There are clearly two separate issues identified by these work orders. There is no evidence that Plaintiff tripped due to floors warping. Plaintiff has no evidence to substantiate her attorney's assertion that the soda machine leak (that was leaking in the walls), caused the floor to buckle in the area where Plaintiff *slipped,* thereby causing Plaintiff

to slip. Thus, the probative value of the August 27, 2018 work order is substantially outweighed by the prejudice to Defendants and confusion of the issues.

> ### d. Plaintiff Has Not Laid Any Foundation to Argue Hearsay Exception Applies

Plaintiff has cited no testimony or evidence that would substantiate an argument that any hearsay exception applies to this document. Without this foundation, this Court cannot making a ruling based on the current record.

### 4. Motion to Exclude Internal Policies.

As indicated in the Motion, Counsel have almost resolved this issue and hope to have it completely resolved by the time this Court rules on these motions. Therefore, as permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 351/352.

### 5. Motion to Exclude Plaintiff's Demonstrative 1 – Brain Map Animation.

For the reasons set forth in Defendants' Motion in Limine, the Brain Map Animation should be excluded. This demonstrative was not created by counsel or by Plaintiff's experts. It was not produced in discovery and it was not even provided to undersigned until trial had begun. Defendants have no information about how the animation was created, other than it was created by an unnamed third-party vendor. Defendants have no assurances that this third-party vendor appropriately took the imaging created by Dr. Filler and created this animation. Plaintiff's counsel assures the Court that Dr. Filler will be "prepared to lay the necessary foundation for the animation at the upcoming trial," ECF 31 p. 3, but declines to disclose how that will be possible. Dr. Filler himself did not even want to rely upon the animation at trial, and preferred to use his actual imaging. ECF 319, 454:5-12. Further, the animation has not been identified in Plaintiff's designation for damages experts as being relied upon by either Dr. Filler or Dr. Haider. If

Plaintiff's own experts are content with using the images from the scan, it is unclear why Plaintiff's counsel is convinced that this demonstrative is necessary.

      6.    <u>Motion to Exclude Plaintiff's Demonstrative 2 – Filler PowerPoint.</u>

During the 2023 Final Pre-Trial conference, Plaintiff was ordered to provide an amended PowerPoint because Plaintiff needed to have "Dr. Filler update PPT to remove references to court rulings." ECF 273, p. 3. However, the amended proposed Exhibit 2 that was provided by Plaintiff during trial simply black-box redacted the references to prior court rulings on the Diffusion Tensor Images, but then left the caption of the PowerPoint slide in the slide deck.

Then, in the midst of Dr. Filler's direct examination, the slides were discussed in front of the jury. ECF 319, Day 3 Tr. 454:18-459:1; 466:9-18;[2] s*ee also id*. at 486:8-487:9 507:5-509:23 (referencing slides that Dr. Filler showed the jury); 489:15-23 (Judge Smith referencing that the jury has been viewing a demonstrative, which is not evidence). Judge Smith never had an opportunity to rule upon all of Defendants' objections to the various slides because Plaintiff's counsel introduced the exhibit during his direct examination of Dr. Filler, quickly publishing it to the jury, and Judge Smith wanted to move things along. *See* ECF 319, Tr. Trans. Day 3, 455:19-456:13; *see also* ECF 315 pp. 8-9.

Plaintiff's counsel has indicated that she agrees that black-box redactions are not appropriate and a clean copy of the PowerPoint will be provided, but at this point it is too late. Plaintiff was ordered to produce the PowerPoint over a year ago. If Plaintiff wanted to use Dr. Filler's PowerPoint, it should have at least been provided prior to the date of this motion, so that

---

[2] These slides were extremely prejudicial because they were referencing side effects that a person who suffers a TBI *might* experience –but there was no evidence that Dr. Haysbert had actually experienced any of these symptoms. *See* ECF 319, Day 3 Tr. 507:5-509:23.

this Court could have the opportunity to rule on the Exhibit in preparation for trial. Therefore, Defendants request a Court Order excluding Plaintiff's Exhibit 2.

       7.    <u>Motion to Exclude Dr. Filler.</u>

Defendants' eighth Motion *in Limine*, as set forth in ECF 351/352, requested an Order excluding the testimony of Dr. Filler. This issue was also briefed in ECF 294. As permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 294 and 351/352. Defendants further rely upon Dr. Filler's testimony, as provided in the prior trial, as such testimony clearly indicative of Dr. Filler's expected testimony to be offered during the trial in February 2025. *See* ECF 319, 408:10-512:15.

As discovered in the Parties' meet and confers, Plaintiff still intends to call Dr. Filler of an expert and counsel for Plaintiff indicated that Dr. Filler has even treated Plaintiff since last year's trial. However, Plaintiff has never sought to amend her designation, provide any treatment records, or provide literally any information other than a brief mention in a phone call. Therefore, Defendants' object to any facts or opinions not properly designated by Plaintiff.

       8.    <u>Motion to Request Clarification on Which Witnesses Plaintiff Actually intends on Calling at trial.</u>

The number of experts and when they may testify will impact the length of the trial. This specifically goes to the issue of Defendants' expert witnesses waiting and ultimately never being allowed to testify despite four reserved trial dates. During the meet and confers, defense sought a reasonable expectation of how long Plaintiff's case may last including, which witnesses will actually be called so that a reasonable schedule and orderly trial may occur. Counsel for Plaintiff has advised that she does not intend to call any of the liability experts and, as of right now, intends to call Dr. Haider and Dr. Filler. Plaintiff's counsel indicated that her trial strategy may change

depending on how the Court rules on Dr. Filler's admissibility. Therefore, as permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 351/352.

**BLOOMIN' BRANDS, INC.**
**and OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**
By Counsel

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:    (703) 385-1000
Facsimile:     (703) 385-1555

_____ /s/ *Emily K. Blake* _____
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2024 the following was e-filed and served upon counsel of record:

Mary T. Morgan, Esq.
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
 Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
*Counsel for Plaintiff*

_____/s/ *Emily K. Blake*_____
Emily K. Blake (VSB 90562)

# EXHIBIT U

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| JOANN WRIGHT HAYSBERT | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BLOOMIN' BRANDS, INC., | ) | Case No.: 4:24-cv-00087-EWH-RJK |
| and | ) | |
| OUTBACK STEAKHOUSE OF | ) | |
| FLORIDA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] FINAL PRETRIAL ORDER**

The parties to this action, by their endorsements below, and in accordance with the

Scheduling Order entered by this Court on September 23, 2024, submit this Proposed Final Fretrial

Order to the Court for entry, stating as follows:

**Stipulation of Undisputed Facts**

The parties, as evidenced by their endorsements to this Final Pretrial Order, stipulate to the

following facts as being undisputed between them:

1.      On May 23, 2018, Defendant Outback Steakhouse of Florida, LLC owned and

operated the Outback Steakhouse in Chesapeake, Virginia, located at 4312 Portsmouth Blvd.

2.      Plaintiff fell while visiting the Outback restaurant in Chesapeake, Virginia on May

23, 2018.

3.      Plaintiff was a business invitee of Outback Steakhouse of Florida, LLC when she

entered the Chesapeake Outback Steakhouse on May 23, 2018.

## Legal and Evidentiary Stipulations

The parties, as evidenced by their endorsements to this Final Pretrial Order, stipulate to the following legal and evidentiary issues as being undisputed between them:

1.      Jurisdiction and venue is proper.

2.      Plaintiff was a business invitee of Outback Steakhouse of Florida, LLC when she entered the Chesapeake Outback Steakhouse on May 23, 2018.

## List of Proposed Witnesses

### A.  Plaintiff's Proposed Witnesses and Defendant's Objections

| No. | Witness | Defendant's Objections | Court's Ruling |
|-----|---------|------------------------|----------------|
| 1 | Lisa Crosby | | |
| 2 | Norman "Chip" Chase, Jr. | | |
| 3 | Alicia Elefherion | | |
| 4 | Nicholas Seifert | | |
| 5 | Marcus Wilson | | |
| 6 | Joi Myrick | | |
| 7 | Deajah Clark | | |
| 8 | Samantha Gump | | |
| 10 | Brad P. Avrit, PE 4124 Del Rey Avenue Marina Del Rey, CA 90292 (310) 306-3877 | Defendant objects to the testimony of Brad P. Avrit, P.C. on the grounds that his testimony lacks proper evidentiary foundation, is irrelevant and will not assist the jury in assessing the subject incident which is a matter of common sense and does not require expert testimony. Rules 702, 703. Court previously reserved ruling until trial. | |
| 11 | Dr. Huma Haider, MD 6065 Hillcroft St. Suite 202 Houston, TX 77081 | Defendant objects as the opinions fail under Rules 702 and 703 and lack of foundation. Court previously reserved ruling until trial. | |

| 12 | Dr. Aaron Filler, M.D., Ph.D., FRCS<br>2716 Ocean Park Blvd., Suite 1007B<br>Santa Monica, CA 90405 | Defendant objects as the opinions fail under Rules 702 and 703 and lack of foundation.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33, which incorporated ECF 294, 351, and 352 of the prior case.<br>Court previously reserved ruling until trial. | |
| 13 | Nineveh Haysbert | | |
| 14 | JoAnn Wright Haysbert | | |

## B. Defendant's Proposed Witnesses and Plaintiff's Objections

| No. | Witness | Plaintiff's Objections | Court's Ruling |
|---|---|---|---|
| 1 | Lisa Crosby | | |
| 2 | Alicia Eleftherion | | |
| 3 | Marcus Wilson | | |
| 4 | Neil Pugach, M.D. | Restricted by Motion in Limine Ruling, Dkt. Nos. 234-235. | |
| 5 | Abbot Huang, M.D. | Restricted by Motions in Limine Ruling, Dkt. Nos. 234-235. | |
| 6 | Chris Robinson | Plaintiff objects on the grounds of foundation, relevance, and speculation. Rules 702, 703. Court previously reserved ruling until trial. | |

## C. Witnesses Defendant May Call if the Need Arises

| No. | Witness | Plaintiff's Objections | Court's Ruling |
|---|---|---|---|
| 1 | Chip Chase | | |
| 2 | Samantha Gump | | |
| 3 | Joy Myrick | | |
| 4 | Nick Seifert | | |

## List of Proposed Exhibits

### A.  Plaintiff's Proposed Exhibits and Defendant's Objections

| Pl. Ex. No. | Description | Def. Objections | Court's Ruling |
|---|---|---|---|
| P1 | Haider Demonstratives and Images - Brain Map Animation, including brain cortex localization map | Defendant objects on the grounds of relevance, speculation, foundation, and unfair prejudice. Federal Rules of Evidence 802, 402, 403.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33 | |
| P2 | National Brain Injury Institute, Diffusion Tensor Images, By Dr. Aaron Filler, Dated September 18, 2020, and Demonstratives | Defendant objects on the grounds of hearsay, foundation, speculation and relevance. Federal Rules of Evidence 802, 702, 703.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33<br><br>Court previously reserved ruling on admissibility until trial. | |
| P3 | Excerpts of National Brain Injury Institute, Life Care Plan for JoAnn Haysbert, By Dr. Huma Haider, Dated June 22, 2021 | Expert report is not properly admissible as evidence, is hearsay, lacks proper evidentiary foundation and requires expert testimony in person. Further, the expert report lacks evidentiary foundation, is speculative and is irrelevant to these proceedings. Federal Rules of Evidence 802, 702, 703. | |
| P4 | Defendant Bloomin' Brands, Inc.'s Verified Responses to Plaintiff's Special Interrogatories | Plaintiff offers as exhibits pleadings and discovery responses from the Defendant and Defendant objects on the grounds of relevance, probative value, prejudicial impact, | |

| | | | |
|---|---|---|---|
| | | cumulative testimony. Federal Rules of Evidence 402, 403. | |
| P5 | Defendant Outback Steakhouse of Florida, LLC's Verified Responses to Plaintiff's Special Interrogatories | Plaintiff offers as exhibits pleadings and discovery responses from the Defendant and Defendant objects on the grounds of relevance, probative value, prejudicial impact, cumulative testimony. Federal Rules of Evidence 402, 403. | |
| P6 | Outback Steakhouse, "Safety in the Outback – Reference Guide" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| P7 | Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – General Practices" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| P8 | Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – Proper Housekeeping" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| P9 | Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – Slip- Resistant Footwear" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal | |

| | | | |
|---|---|---|---|
| | | policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| P10 | Outback Steakhouse, "Best Practices: Prevention of Slips & Falls – Use of Mats" | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| P11 | Video, Bloomin' Brands, Inc., "Clean and Safe Floors – Cleaning Up Spills," Runtime 2:46 | Plaintiff offers exhibits identified as policy and practice materials for Outback Steakhouse to which Defendant objects on grounds that internal policies and procedures do not establish standard of care, relevance, foundation and hearsay. Federal Rules of Evidence 402, 403. | |
| P12 | Outback Steakhouse, Architectural Floor Plans for Outback Store #4759, 4312 Portsmouth Blvd., Chesapeake, VA 23321, "A111," "A121," and "A131," Dated September 22, 2015 | Defendants object to Plaintiff's offered exhibit of Architectural Floor Plans on the grounds that those documents are hearsay, not relevant and lack probative value. Federal Rules of Evidence 402, 403. | |
| P13 | Photo of Incident Report Binder page, "Insurance Who To Contact List" (as previously instructed to redact) | Defendant objects to photo of Incident Report Binder page on the grounds of relevance. Federal Rules of Evidence 402, 403. | |

| | | | |
|---|---|---|---|
| P14 | Work Order Request Number 95465523, Dated March 7, 2018 | Defendant objects to Work Order Request Number 95465523 dated March 7, 2018, on the grounds of relevance, materiality and probative value. Federal Rules of Evidence 402, 403, 802.<br><br>Defendant also incorporates motions *in limine* filed, ECF 32 and 33 | |
| P15 | CDC Materials/Guidance regarding TBI | Defendant objects on the grounds of hearsay, foundation, relevance, expert opinions without proper foundation, and unfair prejudice. Defendant reserves the right to assert additional objections once presented with the proposed exhibit. | |
| P16 | Reserved - Other Demonstrative and Illustrative Materials, Charts, Summaries of Evidence, and PowerPoint Presentations | Reserved | |
| P17 | Theresa Seibert Affidavit | Defendant objects to the affidavit of Theresa Seibert, on the grounds of hearsay, relevance and foundation. Federal Rules of Evidence 802, 402, 403. | |

**B. Defendant's Proposed Exhibits and Plaintiff's Objections**

| Def. Ex. No. | Description | Pl.'s Objections | Court's Ruling |
|---|---|---|---|
| D1 | Photograph of floor produced by Defendants | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |

| D2 | Photograph of shoes produced by Defendants | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D3 | Curriculum vitae, Neil Pugach, M.D. | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rule 403. | |
| D4 | Curriculum vitae, Abbot Huang, M.D. | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rule 403. | |
| D5 | Photos of Plaintiff's scar JWH 0079 - 0080 | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D6 | Photos of Plaintiff's shoes JWH 0081-0084 | Subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| D7 | Photos of Outback 8-16-18 JWH 0085-0087 | Plaintiff objects on the grounds of speculation, foundation, relevance, and Rule 403. | |
| D8 | Labor Punches at Outback May 23, 2018 | | |
| D9[1] | Plaintiff's Medical Record for February 3, 2017 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |
| D10 | Plaintiff's Medical Record for February 13, 2017 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |
| D11 | Plaintiff's Medical Record for March 13, 2017 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |

---

[1] D9-15 are new exhibits. Initially, undersigned believed new exhibits would be permitted, but upon a re-read of ECF 22, it is now unclear whether the Court intended to allow the parties to add additional exhibits, or if the intent was simply to remove. So as to not waive any right to introduce these documents, they have been left on the list. These medical records were discussed with Plaintiff during the prior trial. ECF 319, Trial Tr. Day 3, pp. 332-354. Counsel was intending on introducing the records as impeachment evidence in Defendants' case-in-chief, but the trial did not make it that far. Undersigned included these as exhibits for this trial, in an attempt to present a cleaner and clearer record.

| D12 | Plaintiff's Medical Record for April 11, 2018 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |
|-----|-----|-----|-----|
| D13 | Plaintiff's Medical Record for May 25, 2018 visit with Medcare | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |
| D14 | Plaintiff's Medical Record for July 9, 2018 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |
| D15 | Plaintiff's Medical Record for September 10, 2018 visit with Divine Health Care, LLC/Dr. Chinniry | Plaintiff objects on the grounds of hearsay, foundation and Rule 403. | |
| TBD | 2020 Fundraising Video for Hampton University featuring Plaintiff (offered for impeachment) | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rules 403, 608. Method and Type of impeachment is not clear and is speculative regarding Plaintiff's expected testimony. Also subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| TBD | April 2022 Video of Ceremony for retiring President of Hampton University featuring plaintiff's remarks (offered for impeachment) | Plaintiff objects on the grounds of hearsay, speculation, foundation, relevance and Rules 403, 608. Method and Type of impeachment is not clear and is speculative regarding Plaintiff's expected testimony. Also subject to Motion *in Limine* and Ruling, Dkt. No. 235 | |
| TBD[2] | Plaintiff's signed employment contract for June 23, 2021 with Hampton University (offered for impeachment) | Plaintiff objects on the grounds of hearsay, relevance, foundation and Rule 403. | |

---

[2] This is also new to the list, but was discussed during the prior trial. ECF 319, Trial Tr. Day 3, pp. 366-367.

## Plaintiff's Factual Contentions

Plaintiff, makes the following factual contentions in this case, which are meant only as a summary of her contentions and should not be construed as a verbatim, exclusive recitation of all facts she may seek to prove or move into evidence in this case.

1.      Defendant Outback was open to the public for dining on May 23, 2018.

2.      Defendant Outback is the owner/operator of the property.

3.      Defendant Bloomin' Brands is the franchisor of the property and exercised control over the property.

4.      Plaintiff went to Outback on May 23, 2018 to pick up To-Go order and use restroom.

5.      Plaintiff was a customer of the restaurant, open to the public, walking in the dining room, also open to the public.

6.      Upon entering the Chesapeake Outback Steakhouse, Plaintiff had the right to assume the interior of the restaurant was reasonably safe.

7.      Hostess directed Plaintiff toward the restrooms. Plaintiff took two steps in that direction.

8.      At this point, Outback had not made reasonable inspection of the floor.

9.      Outback cleaned the floor prior to Plaintiff's entry.  Outback did not ensure the floor was safe after cleaning it.

10.     Outback did not remove a slippery substance that was present when Plaintiff entered the premises, and which Outback knew or should have known was there.

11.     Plaintiff was given no oral warning from any Outback employees about the unsafe condition of the floor.

12. At the time and place of Plaintiff's fall, there were no wet floor signs warning of the unsafe condition of the floor; nor was there any carpeting, railing, or other device that would have reduced the danger of a slip and fall.

13. The slickness of the floor was not open or obvious to customers.

14. Defendants owed Plaintiff the duty to exercise ordinary care to have the premises of the Chesapeake Outback Steakhouse in a reasonably safe condition.

15. Defendants owed Plaintiff the duty to remove, within a reasonable time, foreign objects or substances which it either knew or should have known were placed on the floor.

16. Defendants owed Plaintiff the duty to warn her of unsafe conditions which the Defendants knew or should have known existed but were unknown to Plaintiff.

17. Defendants owed Plaintiff the duty to ensure a sanitary environment inside the restaurant.

18. Defendants owed Plaintiff the duty to make sure that no cleaning solution, grease, water, or other moisture was left on the floor where she could slip on it.

19. Defendants owed Plaintiff the duty to warn her that the floor was wet by placing a wet floor sign in the area.

20. Defendants owed Plaintiff the duty to have in place floor mats to ensure no grease, moisture, or other substance was being tracked into the dining room.

21. Defendants owed Plaintiff the duty to adhere to their own policies and procedures regarding guest safety, including proper cleaning of spills in the restaurant.

22. On or about March 7, 2018, Defendants actually knew that the floor in the dining room of the Chesapeake Outback Steakhouse needed to be replaced because it was not refinished correctly and caused lots of slip and falls.

23.     Defendants did not change, replace, or repair the floor in the dining room of the Chesapeake Outback Steakhouse between March 7, 2018 and May 23, 2018.

24.     At the time of the incident, Defendants had no formal policy or protocol for inspecting the floor for spills or formation of condensation during business hours.

25.     At the time of the incident, Defendants had no formal policy or protocol for cleaning spills or formation of condensation or moisture on the floor during business hours.

26.     At the time of the incident, Defendants did not employ bussers at the restaurant, and no server assistants were on duty that day.

27.     Defendants never had a policy, procedure, or practice for using cleaning logs to record when the floor was cleaned.

28.     At the time of the incident, climatological conditions existed which had been previously identified as causing moisture to collect on the floor.

29.     On May 23, 2018, Plaintiff slipped and fell in the dining room of the restaurant, with the left side of her body and head striking the floor.

30.     Defendants did not warn Plaintiff verbally of the dangerous condition.

31.     There were no visible warning signs, including wet floor signs, which would have notified Plaintiff of the dangerous condition.

32.     If not for the dangerous condition of the floor, Plaintiff would not have slipped and fell.

33.     The dangerous condition of the flooring caused Plaintiff to slip and fall as a natural and probable consequence of the condition of the floor.

34.     Plaintiff did not fully understand the nature and extent of the dangerous condition on the floor of the Chesapeake Outback Steakhouse prior to slipping and falling.

35.     Plaintiff did not voluntarily expose herself to the dangerous condition the caused her to slip and fall.

36.     As a result of the slip and fall, Plaintiff sustained a permanent traumatic brain injury.

37.     As a result of the slip and fall, and the resulting brain injury, Plaintiff now suffers from, and will continue to suffer from, physical, neurocognitive, and psychosocial disabilities.  By way of example and not of limitation, Plaintiff suffers from headaches; increased sensitivity to light; increased sensitivity to sound; spots in her vision; ringing in the ears; dizziness; memory loss; and anxiety.

38.     As a result of the slip and fall, and the resulting brain injury, Plaintiff will incur future costs for medical treatment, personal care, and related expenses in excess of $1,382,000.

**<u>Defendant's Factual Contentions</u>**

Defendants make the following factual contentions in this case, which are meant only as a summary of its contentions and should not be construed as a verbatim, exclusive recitation of all facts it may seek to prove or move into evidence in this case:

1.     There was no defect in the area of the restaurant where the Plaintiff fell on May 23, 2018.

2.     Outback employees inspected the area immediately after the fall and the floor was clean and dry.

3.     An independent witness did not see or feel anything slippery on the floor where the plaintiff fell before or after the plaintiff fell.

4.     Defendants' evidence will demonstrate the Plaintiff did not suffer a traumatic brain injury in this case.

## Plaintiff's Statement of Triable Issues

1.    Plaintiff was a business invitee who had the legal right to assume the floor of the Chesapeake Outback Steakhouse was safe for her visit on May 23, 2018. *Cunningham v. Delhaize Am., Inc.*, 2012 U.S. Dist. LEXIS 140655, at *5 (W.D. Va. Sep. 27, 2012) ("Business patrons are invitees of the store owner."); *see Arthur v. Crown Cent. Petroleum Corp.*, 866 F. Supp. 951, 953 (E.D. Va. 1994) (citing *Knight v. Moore*, 179 Va. 139, 145, 18 S.E.2d 266 (1942); *Crocker v. WTAR Radio Corp.*, 194 Va. 572, 574, 74 S.E.2d 51 (1953)) (patrons have the right to assume premises safe).

2.    Defendants owed Plaintiff the duty to exercise ordinary care to keep the restaurant in a reasonably safe condition. *See Winn–Dixie Stores, Inc. v. Parker*, 240 Va. 180, 182 (1990) (store owner must maintain premises in reasonably safe condition, remove foreign objects which it knew or reasonably knew were on the floor within reasonable time, and warn customers of unsafe conditions which it knew or should have known existed).

3.    Defendants breached this duty, having actual or constructive knowledge of an inherent, dangerous defect in the twenty-year-old flooring of the dining room of the restaurant, making it more prone to slip and fall incidents, but failing to remedy it in any way or take proper care in cleaning the floor so that it would not become more slick. *See Kribbs v. Wal-Mart Stores E., L.P.*, 2006 WL 1788969, at *4 (E.D. Va. June 27, 2006) (plaintiff must prove defendant had actual or constructive notice, or that the condition was affirmatively made by defendant). *See also Austin v. Shoney's, Inc.*, 254 Va. 134, 486 S.E.2d 285, 288 (Va. 1997) (plaintiff need not prove actual notice); *Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 55 (Va. 1986) (store owner must exercise reasonable care to avoid the "genesis of the danger"); *Harrison v. The Kroger Co.*, 737 F. Supp. 2d 554, 558 (W.D. Va. 2010) (citations omitted) (constructive notice exists if "the

condition was noticeable and had existed for enough time to charge the store owner with notice of the hazardous condition.").

4.　　Additionally, before Plaintiff entered the restaurant, Defendants' employees utilized improper methods to clean the floor where Plaintiff eventually fell, and failed to place any warning signs indicating to patrons that the floor was slick. *Colonial Stores Inc. v. Pulley*, 203 Va. 535, 537 (1962) (store owner with actual or constructive notice of dangerous condition must warn customers)

5.　　As a direct and proximate result of Defendants' actions or lack thereof, Plaintiff took one or two steps past the hostess stand in the front of the restaurant, slipped on the floor, and slammed the left side of her body and head on the floor. *See Cannon v. Clarke*, 209 Va. 708, 711 (1969) (citations omitted); *Williams v. Joynes*, 278 Va. 57, 62 (2009) (proximate cause is "an act or omission that, in natural and continuous sequence . . . produces a particular event and without which that event would not have occurred."). Defendants eventually replaced the floor months after the incident, and due to complaints from patrons and Defendants' own employees about the slipperiness of the floor.

### **Defendant's Statement of Triable Issues**

1.　　Were the defendants negligent?

　　a.　Was there a foreign substance on the floor at the time of the incident?

　　b.　Was there any defect in the floor that required notice or a warning to the plaintiff?

　　c.　Did the defendants have notice of any alleged defect in the floor?

2.　　Was the plaintiff negligent?

　　a.　Did she look and did she see any alleged defect?

    b.  Did the plaintiff exercise ordinary care for her own safety?

3.    Proximate cause

    a.  Was any alleged defect the cause of plaintiff's fall?

    b.  Was any alleged defect the proximate cause of plaintiff's claimed injuries?

4.    Damages

    a.  If the jury finds for the plaintiff, what is the amount of her damages?

**Entered:**_____     _____

                                      The Honorable Elizabeth W. Hanes
United States District Court Judge for the
Eastern District of Virginia

**SEEN AND objected to, to the extent any objection
above is overruled:**


 /s/ *Emily K. Blake*
John D. McGavin, Esq. VSB No. 21794
Emily K. Blake, Esq. VSB No. 90562
McGAVIN, BOYCE, BARDOT
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
(703) 385-1000 - Telephone
(703) 385-1555 - Facsimile
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*


**SEEN AND objected to, to the extent any objection
Above is overruled:**

 /s/ *Mary T. Morgan*
Mary T. Morgan, Esq.
Virginia State Bar No. 44955
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
*Counsel for Plaintiff*

# EXHIBIT V

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| JOANN WRIGHT HAYSBERT | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BLOOMIN' BRANDS, INC., et al. | ) | Case No.: 4:24-cv-00087-EWH-RJK |
| | ) | |
|     Defendants. | ) | |

**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S SUPPLEMENTAL EXPERT
DISCLOSURES AND REQUEST FOR RELIEF, INCLUDING STRIKING PLAINTIFFS'
EXPERTS**

COMES NOW, that the Defendants, Outback Steakhouse of Florida, LLC and Bloomin'
Brands, Inc., by counsel, and hereby file their objections to Plaintiff's Supplemental Expert
disclosures for Dr. Aaron Filler and Brad Avrit, P.E., filed January 10, 2025, and state as follows
in support:

I.     **INTRODUCTION AND PROCEDURAL HISTORY**

In the prior case, Plaintiff's liability expert disclosures were due June 17, 2021 and her
damages experts were due June 25, 2021. ECF 126, prior case; *see also* Pl.'s 2021 Expert Discl.
previously provided to Court by e-mail Jan. 10, 2025. This deadline was never extended, as
Plaintiff's subsequent request for an extension was denied. ECF 168, prior case (detailing all of
the extensions to discovery that had been granted in the prior case). The parties went to trial in
August 2023, based on the opinions set forth in Plaintiff's 2021 designations.

When Plaintiff requested a voluntary dismissal of the prior suit, the order granting the
voluntary dismissal states: "The parties are therefore limited, for example, to the expert
designations, reports, and opinions; witnesses; and exhibits disclosed in the instant case." ECF
357, prior case. This Order does not give Plaintiff leave to supplement expert disclosures.

Now, 46 days before trial, Plaintiff seeks to 'supplement' her expert disclosures for Dr. Aaron Filler and Brad Avrit, P.E. Notably, both reports contain new and additional information that completely changes the scope of the experts' opinions. Defendants object to this late 'supplemental' disclosure and move for Dr. Filler and Mr. Avrit to be struck as experts, as their testimony is tainted by the new investigation and facts they have learned. Defendants also intend to reserve the right for additional relief, as discussed below, and intended to be raised at the Pretrial Conference on January 16, 2025.

## II.    DR. FILLER'S NEW OPINIONS

At the prior trial and in the motions *in limine* that have been briefed by defense counsel, it has been argued that Dr. Filler should be struck as an expert as he lacks foundation to support the opinions he intends to offer at trial. These arguments outline the deficiencies with Dr. Filler's report, including that he fails to offer an opinion as to causation, he makes no opinion as to the symptoms Plaintiff suffers, and he failed to make opinions to a reasonable degree of medical certainty, etc. *See* ECF 294, 351, 352, prior case. Notably, it is specifically argued:

> Dr. Filler does not make any opinions as to causation because he has no foundation to offer any of the above opinions. Dr. Filler never examined Plaintiff, never interviewed her, never reviewed any of her medical records, nor reviewed her deposition testimony. This is evident because if he had reviewed these materials, he would have been required to disclose them in his report pursuant to Federal Rule of Civil Procedure 26(a)(2). Dr. Filler never offered any opinions as to the symptoms that Plaintiff does allegedly suffer for the same reasons – any statements would be purely speculative and lack foundation.

ECF 294, p. 2.

On December 18, 2023, Plaintiff moved for a voluntary dismissal, representing to the court that the voluntary dismissal would not "substantially prejudice Defendants" because she just needs time to retain a new attorney. ECF 350, prior case. *Sixteen days* later, and before her case is even dismissed, Plaintiff had a telemedicine interview with Dr. Filler on January 3, 2024, which

2

included a "partial Zoom neurologic exam as set forth" in the report. *See* Filler's Suppl. Rep't, p. 1 (listing date of service as January 3, 2024), p. 4. Dr. Filler further notes in his report that he has reviewed "photographs obtained on the day of the injury," Plaintiff has filled out a "systems questionnaire," which has never been provided or produced in discovery, and Dr. Filler has reviewed "more records from before and after the fall . . . ." *Id.* at pp. 1, 2-3, 6. Specifically which records Dr. Filler reviewed are not listed; they are just referred to generically as records belonging to Dr. Haysbert. Dr. Filler's report contains multiple new opinions that specifically respond to the defects raised by defense counsel in the previously filed motions *in limine*, including that Plaintiff has "a number of problematic post concussive symptoms." *Id.* at p. 6. Dr. Filler even goes so far to opine that the "fall that [Plaintiff] suffered on May 23, 2018, was due to extrinsic factors such as she describes a slipperiness on the floor and that it did cause sufficient impact to have produced post concussive symptoms." *Id.* Dr. Filler also makes opinions as to future treatments Plaintiff will need to manage her 'post-concussive' symptoms. *Id.*

Notably, despite this report being authored January 3, 2024, *no explanation* is given as to why it was disclosed more than one year later, on January 10, 2025.

### III.    MR. AVRIT'S NEW OPINIONS

Mr. Avrit's prior report included a number of inadmissible opinions related to Defendants' policies and procedures. Mr. Avrit's new report "is based on the materials [he has] reviewed thus far and additional evidence related to condensation forming on the subject flooring." *See* Avrit's Suppl. Rep't, p. 1. When listing the "additional documents reviewed" for this 2025 report, no explanation is offered as to why it was not available to him when he made his initial opinions in 2021. Specifically, Mr. Avrit's Supplemental Report completely changes his opinions related to the cause of Plaintiff's fall.

Mr. Avrit's prior report discussed the March 7, 2018 work order and states: "Based on the weather data my staff retrieved through reliable online resources there was rain in the weather report on the day of the incident. This would have most likely caused moisture to be tracked within the subject entrance and throughout the immediate area." Avrit 2021 Rep't, p. 9. Mr. Avrit further stated in his report that he was "unable to determine the exact nature of the defective floor which was improperly refinished according to Defendant's own work order." *Id.* at p. 14 (referring to March 7, 2018 work order). However, because Mr. Avrit is not a meteorologist and his assumption related to weather was inaccurate – all witnesses have testified that it did not rain the day of the incident – and because Plaintiff had the burden to prove the floor was defective, Defendants did not feel compelled to take further action regarding these clearly inadmissible opinions,[1] other than to note their objections to Mr. Avrit's testimony in the Pretrial Order. Then, Plaintiff withdrew Mr. Avrit as a witness at the prior trial.

Now, Avrit's supplemental report states:

I personally analyzed climatology data acquired through the National Oceanic & Atmospheric Administration for the date of the subject incident that occurred on May 23, 2018 between the hours of 6pm and 8pm daylight saving time as it is my understanding that the State of Virginia sets the clock forward one hour in the month of March. Therefore, the time span between 1700 (5pm) to 1900 (7pm) hours were analyzed to account for the change of time. (a true and correct copy of the climatology data is attached hereto as **Exhibit 'L'**) It is my opinion that the outdoor weather conditions present between the time span of 5pm to 7pm in combination with the testimony that the temperature range inside the building was only adjustable between 69 degrees Fahrenheit and 74 Degrees Fahrenheit were within the parameters needed for condensation to form on the floor surface. The climatology data provides various parameters that are used to design and also analyze moisture problems within a structure and negative pressures cause the outside moisture to be forced inside the building and if the buildings mechanical air moving systems do not compensate for the additional moisture intrusion condensation will form (reference building science document 014 "Controlling Air

---

[1] Mr. Avrit's report also included other improper opinions that made legal conclusions, such as Defendants knew or should have known of the wet floor, and that Defendants' policies and procedures were below the standard of care.

Flow Through Enclosures" attached hereto as Exhibit 'M'). The weather data shows that there were positive pressures prior to 4pm standard time (5pm in Virginia) and the positive pressures began to change into negative pressures within a short span of time. Additionally, winds from 7 miles per hour at 60 degrees to 5 miles per hour at 20 degrees were present and **Figure 1** below is a map of the property with yellow arrows depicting the direction of the wind traveling towards the front entrance.

The dew point is the temperature where the moisture in the air is visibly seen as a liquid. So, when the temperature of the floor surface is below that of the dew point temperature, the moisture in the air from the high humidity that was present will condensate and liquid water will form on the floor surface. The article by Green Building Advisor (a true and correct copy of the article attached hereto as **Exhibit 'N'**) explains how the temperature varies between the floor surface, the elevation where the thermostat is placed and the ceiling elevation. A single story structure with a slab on grade such as the subject premises with a thermostat set at a temperature of 72 degrees placed 4 feet off the ground floor will have a temperature of 65 degrees on the floor surface because of the fact that heat rises (the same temperature at the ceiling level would be 79 degrees. Therefore, it is my opinion that with the thermostat set within the range that was available from 69 to 74 degrees, and based on the weather data that the dew point temperature was 67 degrees, conditions existed (floor temperature below the dew point) where liquid moisture from the air would condense on the floor surface present at the time of Plaintiff's slip incident.

Avrit's Suppl. Rep't, pp. 6-8.

Thus, whereas Mr. Avrit previously stated that he was unable to determine why the floor was defective, Avrit 2021 Rep't, p. 14, and it was possibly raining on the day of the incident, Avrit 2021 Rep't, p. 9, now Mr. Avrit makes meteorological opinions that the dew point permitted condensation to form on the day of the incident. These are completely new opinions based on data that was easily accessible to Mr. Avrit back in 2021. Further, no explanation is provided as to how a civil engineer is qualified to make such opinions. If this had been Mr. Avrit's opinion back in 2021, Defendants certainly would have retained a meteorologist or similar expert to respond to these specious opinions. This is also clearly intended to bolster Plaintiff's liability argument as well as bolster arguments as to the admissibility of the March 7, 2018 work order.

## IV.     <u>STANDARD AND ARGUMENT</u>

Federal Rule of Civil Procedure 26(a) requires parties to identify experts and disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). This report "*must* contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* (emphasis added).

Expert disclosures must be supplemented when required under Rule 26(e).  Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e) provides:

> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Furthermore, supplementation must be "in a timely manner . . . ." Fed. R. Civ. P. 26(e)(1)(A).

### A.  *These New Opinions are not 'Supplemental' Opinions, but Plaintiff's Attempts to Bolster her Case and are Evidence of Gamesmanship.*

Plaintiff's counsel has represented that these new opinions of Dr. Filler and Mr. Avrit are intended to 'supplement' their prior opinions. However, supplementation is only required when a party "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Here, Plaintiff has not articulated how Dr. Filler's and Mr. Avrit's reports were 'incomplete' or 'incorrect.' Rather, she is clearly bolstering their opinions with information that they easily could have had access to in 2021. "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (finding that the 'supplemental' report of the party was clearly attempting to

6

**244**

cure an initial deficient expert designation); *see also Coles v. Perry*, 217 F.R.D. 1, 3-4 (D.D.C. 2003) ("When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of [Rule 26 disclosures] is nullified."); *East West, LLC v. Rahman*, No. 1:11-cv-1380, 2012 U.S. Dist. LEXIS 133381, at *21 (E.D. Va. Sep. 17, 2012) ("This court must first determine whether the defendant's supplemental disclosures were 'true supplementation' rather than 'gamesmanship and delay.'"). If it is a new opinion, as opposed to a true supplementation, "this Court will apply the five-fold factors in order to discern a remedy." *East West, LLC*, 2012 U.S. Dist. LEXIS 133381, at *21 (citing *Luma Corp. v. Stryker Corp.*, 226 F.R.D. 536 (S.D. W. Va. 2005); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003)).

Plaintiff is inappropriately characterizing these new reports as 'supplemental' in hopes to bring it within Rule 26(e), however, it is clear that these are, in fact, new opinions. "The mere fact that [Plaintiff's] First Report does not state all of the opinions it would now like to admit does not give them free reign to submit those opinions under the guise of supplementation, and it certainly does not mean that the Court must now admit them." *East West, LLC*, 2012 U.S. Dist. LEXIS 133381, at *21.

> To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e)(1) supplementation would be to invite the proverbial fox into the henhouse. The experienced expert could simply "lie in wait" so as to express his genuine opinions only after plaintiff discloses hers. While a variation of this practice is contemplated by the Rules, true rebuttal must occur within 30 days of the original expert disclosure. Otherwise, it fails as admissible proof because the late disclosure of rebuttal opinions is disallowed under the Rules. *See* Rule 26(a)(2)(C).

*Keener*, 181 F.R.D. at 641.

Thus, as demonstrated above, this late-attempt to 'supplement' is clearly as a result of Plaintiff's gamesmanship.

B. *Sanctions are Permissible*

If there has been a failure to disclose, the party is "not allowed to use that information or witness" at trial. Fed. R. Civ. P. 37(c)(1). This sanction is "self-executing" and "automatic." Fed. R. Civ. P. 37, advisory committee's note to 1993 amendments. The only exception is if the "failure was substantially justified or is harmless." *Id.* The Fourth Circuit applies a five-factor test:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (citations omitted). There is no requirement of a "finding of bad faith or callous disregard of the discovery rules." *Id.* The rule "generally requires exclusion of evidence that a party seeks to offer but has failed to disclose . . . ." *Id.* (citing Fed. R. Civ. P. 37(c)(1)).

Here, there is certainly surprise, as Defendants learned of the new opinions on January 10, 2025. There is no ability to cure, as discovery has been closed for years. The evidence would absolutely disrupt trial, and it would be incredibly detrimental to allow yet another continuance of the trial date, as this trial has already been continued multiple times *and* Plaintiff has already been granted a voluntary dismissal, over the objection of Defendants. If this evidence was so important to Plaintiff and her case strategy, there is no explanation as to why she waited *years* to designate these new opinions. Lastly, Plaintiff has offered no explanation for her failure to disclose these opinions other than stating current counsel for Plaintiff was "not in a position to do so" earlier and it was "not something that [she] had access to . . . ." Ex. 1, Jan. 10, 2025 email.

In addition to striking the experts or the expert testimony, "the court, on motion and after giving an opportunity to be heard:

246

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)."

Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(i)–(vi) provide that additional appropriate sanctions include:

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party.

Defendants intend, through this filing, to notify the Court that defense counsel will make an oral motion for sanctions, as permitted in Federal Rule of Civil Procedure 37(c), as well as any other permissible remedy. Due to Plaintiff's last minute notice of this 'supplementation,' defense counsel has not had sufficient time to research and brief these issues.

## V.    <u>RELIEF SOUGHT</u>

Having only received notice a few days prior to the pre-trial conference that Plaintiff not only intended to supplement her expert disclosures, but also provided her experts with new and additional evidence on which to base their new opinions, this list is not intended to be exclusive. If the Court is unwilling to grant the relief requested, Defendants request an opportunity to brief the matter further.

### A.  *Dr. Filler and Mr. Avrit should be Struck as Experts.*

It is patently inequitable to allow Dr. Filler and Mr. Avrit to testify. They have conducted new and additional investigations and created new and additional opinions, which were never previously disclosed. Simply striking their new opinions would not be sufficient. Dr. Filler and

Mr. Avrit are tainted by the new information that they have learned and the new opinions they have formed. Even if this Court were to instruct these experts to only testify as to their previously disclosed opinions, counsel would have no way to tell whether the testimony these experts provide at trial are based on the information they knew in 2021 versus the information they learned after the first trial.

    **B. *Dismissal with Prejudice is Warranted or, at the very least, This Court should Reinstate the Conditions of the January 11, 2024 Voluntary Dismissal Order and Strike Plaintiff's experts.***

First, Plaintiff clearly misrepresented to the Court why she sought a voluntary dismissal. While Plaintiff stated in her brief that she needed additional time to locate counsel and that she did not have the capacity to represent herself in a federal case, ECF 350 p. 3, somehow Plaintiff still managed to set up a Zoom interview with Dr. Filler and ensure that he had her relevant medical records[2], *see* Filler's Suppl. Rep't, p. 1 (listing date of service as January 3, 2024), p. 4. This Court granted the voluntary dismissal on January 11, 2024 based on certain conditions, which included "[t]o the extent that any designated expert witnesses were previously withdrawn, those expert witnesses will remain withdrawn." ECF 356, 357, former case. These conditions were consented to by Plaintiff on the record. *Id.*

Despite consenting to the terms of the voluntary dismissal, Plaintiff then later, on February 1, 2024, filed a "Motion for Clarification and Reconsideration of the Court's Voluntary Dismissal Order," asking the Court to "[r]econsider the condition that any previously disclosed but withdrawn expert witnesses remains withdrawn." ECF 361, former case. At no point did Plaintiff advise the Court that she had been seen by Dr. Filler or provided him with her medical records.

---

[2] Plaintiff's former attorney, Nazereth Haysbert, filed an Affidavit on February 10, 2024 with this Court stating that he has not "practiced law in this case without authorization since August 23, 2023." ECF 363 ¶ 9, former case.

*See generally* ECF 361, 362, former case. Plaintiff continued to represent that she was unrepresented by counsel. *See generally id.* Plaintiff then argued that, again, there would be no prejudice to Defendants because having to re-try the case is not considered prejudice under Rule 41(a)(2). ECF 362 pp.14-15.

However, using a voluntary dismissal to allow a party to investigate and prepare new expert opinions in order to respond to the deficiencies and defense strategies brought to light at the prior trial is certainly prejudicial to Defendants. Especially when these new opinions are provided 46 days prior to trial *with no explanation* as to why they were withheld other than current counsel for Plaintiff was "not in a position to do so" earlier and it was "not something that [she] had access to . . . ." Ex. 1, Jan. 10, 2025 email.

C. *In the Alternative, Defendants should be Granted the Opportunity to Supplement their Expert Disclosures with New Opinions.*

The prejudice of Plaintiff's actions is abundantly clear – she moved for a voluntary dismissal to remove this case from the active trial docket to allow her experts additional time to research and form new opinions. Now, weeks before trial, Defendants have no opportunity to conduct discovery or retain an expert to respond to these new opinions. Defense had no notice that Plaintiff intended to supplement her expert designations and Plaintiff never moved for leave to supplement; she just supplemented. Defendants therefore, in the alternative, request that expert discovery be opened back up and that Defendants be permitted a reasonable time to supplement their expert designations to include, but not limited to, an opportunity to respond to these new opinions as well as add any additional opinions.

D. *Defendants Reserve the Right to ask for Fees and Costs.*

Undersigned does not have sufficient time to research and brief a motion for fees and costs. However, Defendants do not intend to waive such a claim. Plaintiff's counsel was notified of

11

Defendants' intention to move for fees and costs, as well as other relief, on January 10, 2025, when the 'supplemental' expert reports were provided. *See* Ex. 1. Defendants previously requested costs in opposition to Plaintiff's Motion for Voluntary Dismissal, pursuant to Federal Rule of Civil Procedure 41(d), ECF 355 p. 9, but it was never ruled upon by this Court.

## VI.    <u>CONCLUSION</u>

Wherefore, the foregoing considered, the Defendants, Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., by counsel, request this Court sustain these objections, dismiss this matter with prejudice, or, in the alternative, impose certain additional sanctions on Plaintiff, as set forth above, and for any other relief this Court deems just.

**BLOOMIN' BRANDS, INC.**
**and OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**
By Counsel

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:    (703) 385-1000
Facsimile:    (703) 385-1555

    /s/ *Emily K. Blake*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2025 the following was e-filed and served upon counsel of record:

Mary T. Morgan, Esq.
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
 Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
*Counsel for Plaintiff*

　　　　　　/s/ *Emily K. Blake*
Emily K. Blake (VSB 90562)

# EXHIBIT W

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    Newport News Division

 3

 4    - - - - - - - - - - - - - - - - - -
                                        )
 5    JOANN WRIGHT HAYSBERT,            )
                                        )
 6           Plaintiff,                 )   CIVIL ACTION NO.
                                        )   4:24cv87
 7    v.                                )
                                        )
 8    OUTBACK STEAKHOUSE OF FLORIDA,    )
      LLC,                              )
 9    and                               )
      BLOOMIN' BRANKS, INC.,            )
10                                      )
             Defendants.                )
11    - - - - - - - - - - - - - - - - - -

12

13                  TRANSCRIPT OF PROCEEDINGS
                    (Final Pretrial Conference)
14
                      Norfolk, Virginia
15
                     January 16, 2025
16

17

18    BEFORE:  THE HONORABLE ELIZABETH W. HANES
               United States District Judge
19

20

21    APPEARANCES:

22               PARKER POLLARD WILTON & PEADEN
                 By:  Mary Teresa Morgan
23                    Counsel for Plaintiff

24               McGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C.
                 By:  John David McGavin
25                    Emily Blake
                      Counsel for Defendants
```

JILL H. TRAIL, Official Court Reporter

USCA4 Appeal: 25-1332     Doc: 38-2       Filed: 06/09/2025     Pg: 254 of 384     Total Pages:(254 of 384)
Case 4:24-cv-00087-EWH-RJK     Document 39     Filed 01/21/25     Page 2 of 84 PageID# 625

2

```
 1              (Hearing commenced at 10:09 a.m.)

 2              THE COURT:  Good morning, everyone.

 3              MS. MORGAN:  Good morning, Your Honor.

 4              THE COURT:  Madam Clerk, can you call our next

 5    matter.

 6              THE CLERK:  Yes, Your Honor.

 7              Case number 4:24cv87, Joann Wright Haysbert versus

 8    Outback Steakhouse of Florida, LLC, and Bloomin' Brands,

 9    Inc.

10              The plaintiff is represented by Mary Morgan.

11              Ms. Morgan, are you ready to proceed?

12              MS. MORGAN:  I am ready, thank you.

13              Good morning.

14              THE CLERK:  The defendant is represented by John

15    McGavin and Emily Blake.

16              Mr. McGavin, are you ready to proceed?

17              MR. McGAVIN:  Yes, I am.

18              THE COURT:  All right.  Good morning to you all.

19    Good morning to everyone.  It's nice to see you all.

20              All right.  Let me just tell you how I'd like to

21    handle what order I think we'll go in generally, and then we

22    will get started.

23              I think we'll try to just have you stay seated, but

24    if we start to get into extensive argument, I'm going to

25    have you come up to the podium.  But as long as I can hear
```

USCA4 Appeal: 25-1332    Doc: 39-2    Filed: 06/09/2025    Pg: 255 of 384    Total Pages:(255 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 3 of 84 PageID# 626

3

1    you and our court reporter is doing okay, then we'll have

2    everyone remain seated.

3         So, what I had hoped to do is, we have a number of

4    motions *in limine*.  There is some additional motions filed.

5    There is some issues raised in the Final Pretrial Order.

6    And then I'll talk to you just a bit about my trial process

7    at the end.

8         Let me just walk through the motions *in limine* to

9    make sure I understand which ones we're dealing with, and

10   which ones may have been resolved.

11        From plaintiff's side, there is a facts and brief

12   filed, but that's not really in my view a pending motion.

13   It's more informational, and so I don't believe that there

14   is any reason for me to address that.

15        Do you agree?

16        MS. MORGAN:  I do.

17        THE COURT:  Now, the treating physician motion *in*

18   *limine* I think may be resolved based upon which witnesses

19   you intend to call, but it wasn't entirely clear to me.

20        Is that still outstanding?

21        MS. MORGAN:  No.  I believe that's resolved because

22   the only three expert witnesses that I expect to call are

23   Filler, Haider, and Avrit.

24        THE COURT:  Very well.

25        And does the defense agree that then that motion *in*

USCA4 Appeal: 25-1332    Doc: 38-2    Filed: 06/09/2025    Pg: 256 of 384  Total Pages:(256 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 4 of 84 PageID# 627

4

1    *limine* is resolved?

2         MS. BLAKE:  Yes.

3         THE COURT:  All right.  So, I do think I'll need to

4    deal with the present sense impression motion *in limine*

5    issues relating to Dr. Filler, which are raised by both

6    parties and also relate to his PowerPoint demonstrative; the

7    admissibility of the two work orders; the brain map

8    demonstrative, which is raised by both parts.  There is a

9    request for judicial notice.

10        Defendants, in addition to those that were

11   duplicative of issues raised by plaintiff, makes a motion to

12   exclude corporate indifference, exclude internal policies,

13   and then they've made a separate motion relating to

14   supplementation, which I think we'll need to address.

15        Any other motions *in limine* that you think have

16   been resolved or are pending that I didn't just list,

17   Ms. Morgan?

18        MS. MORGAN:  I don't believe so, Your Honor.

19        THE COURT:  Okay.

20        Ms. Blake, are you going to handle this part?

21        MS. BLAKE:  Yes.

22        MR. McGAVIN:  Your Honor, may I say that we may

23   share and split up some of these motions depending upon

24   which one you take.

25        THE COURT:  Very well.  That's no problem.

JILL H. TRAIL, Official Court Reporter

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 257 of 384 Total Pages:(257 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 5 of 84 PageID# 628

5

```
 1              MR. McGAVIN:  We'll work together.

 2              MS. MORGAN:  And, Your Honor, I do think that there

 3    will be one or two issues that may resolve some of the

 4    global stuff, if you'd like me to address that after.  Thank

 5    you.

 6              THE COURT:  All right.

 7              MS. BLAKE:  I agree that --

 8              THE COURT REPORTER:  I'm sorry.  Is your mic even

 9    on?

10              MS. BLAKE:  It is not.

11              I agree that resolves all of the outstanding

12    issues.

13              THE COURT:  All right.

14              So, Ms. Morgan, do you want to address, you said

15    that there are one or two issues that may resolve?

16              MS. MORGAN:  Yes.  So, first of all, I think I've

17    made the decision, along with my partner, that we would like

18    to go ahead and dismiss Bloomin' Brands as a defendant.  The

19    condition, caveat that I would add to that is, I would like

20    to be able to either have the jury instructed by the Judge

21    or no preclusion of making reference to them during the

22    trial, because I think otherwise the jury will be confused

23    about their relationship, because some people do work for

24    Bloomin' Brands as the franchiser.  So, I don't know if just

25    explaining to the jury preliminarily that they are the
```

1    franchiser -- I have done a preliminary instruction on this
2    type of thing before -- but they're not a party to the
3    lawsuit.  So, that would just be my only request of the
4    Court.  I think that could deal with some of the issues that
5    we have pending today.
6              THE COURT:  All right.
7              MS. MORGAN:  The second one is that with respect to
8    Work Order 2, I have looked at this issue exhaustively, and
9    I do agree that it would constitute a subsequent remedial
10   measure under 403, I think -- 407, excuse me.  That
11   particular rule of evidence has exceptions.  I don't believe
12   any of them apply because I am not -- as you might imagine,
13   from my previous statement just a moment ago -- trying to
14   show ownership and control, but we will still argue over
15   Work Order Number 1, but I think that will eliminate some of
16   this as well.
17             THE COURT:  All right.  I want to make sure I
18   understood what you were saying.  I understand your point
19   about dismissing Bloomin' Brands and that there is some
20   effect on prior arguments you made relating to Work Order 2.
21   I'm just not clear, is Work Order 2 still at issue or?
22             MS. MORGAN:  I don't believe so, because we're not
23   going to seek to introduce it or make reference to it.
24             THE COURT:  Okay.
25             MS. MORGAN:  I'm sorry I wasn't clear.

USCA4 Appeal: 25-1332    Doc: 28-2      Filed: 06/09/2025    Pg: 259 of 384  Total Pages:(259 of 384)
Case 4:24-cv-00087-EWH-RJK   Document 39   Filed 01/21/25   Page 7 of 84 PageID# 630

7

```
 1            THE COURT:  So, that would take care of the
 2    admissibility relating to Work Order Number 2?
 3            MS. MORGAN:  Correct.
 4            THE COURT:  All right.  Anything else?
 5            MS. MORGAN:  I think that's it from our standpoint.
 6            THE COURT:  As to your first point relating to
 7    reference to Bloomin' Brands, I mean, I've seen this in
 8    other cases, whether it's a stipulation or something that I
 9    simply explain to the jury in my preliminary instructions
10    that say, you know, you may hear defendants referred to
11    as -- and you guys can talk about this language -- but
12    Bloomin' Brands or Outback Steakhouse, and so just simply
13    explain whatever it is that you need to explain so that they
14    can understand the testimony.
15            Mr. McGavin, I don't think you need to necessarily
16    decide, but I think it's helpful for you to hear that.  To
17    me, that seems like that would take care of any issues of
18    reference during the testimony and/or documentation so that
19    the jury can understand.
20            Do you anticipate other issues that I might not be
21    thinking about?
22            MR. McGAVIN:  Your Honor, what I would say is based
23    upon the last trial that we had, there were so many efforts
24    to inject both Bloomin' Brands and insurance into this case,
25    I don't know what the plaintiff has planned, and I am
```

1   extremely cautious that we do not start down that road.  I

2   know that plaintiff wants to persist on this issue of,

3   "Didn't somebody call Dr. Haysbert after this incident?"

4   And as we have argued, there is no duty on a corporation to

5   call afterwards.  So, that goes to this corporate

6   indifference issue.  So, I just -- I don't want to get

7   whipsawed and then get back into corporate indifference or

8   some of the other issues that were so prominent in the last

9   trial.

10          THE COURT:  All right.  So, let me, I think it

11   could help to go through and rule upon things.  You all can

12   talk afterwards.

13          Ms. Morgan, I appreciate that you're willing and

14   making attempts, and in my view dismissing one of the

15   defendants and withdrawing on the Work Order 2 suggests an

16   effort to streamline the case, and that is appreciated.

17   That is what everyone should be doing.

18          Mr. McGavin, look, I mean, we've all spent a lot of

19   time with this case in a way that I don't think anybody

20   would like to be spending this much time with this case, but

21   plaintiff now has new counsel, and my expectation is that

22   we've put those issues to bed, and we're going to get this

23   case tried.  And so, I understand that you are cautious, but

24   I think we still have to operate in a way in which we are

25   expecting that everyone is working in good faith to get this

1    case tried in a professional and efficient manner, and

2    that's, I think, the best way we can proceed at this point.

3              MR. McGAVIN:  I agree, Your Honor.

4              We have other issues as we work through today's

5    motions that we'll take up on their merits, but I believe

6    that it's not just Ms. Morgan involved in this case, based

7    upon the documents that we've received and that

8    they're -- I'm not sure what's going to happen at trial

9    regarding Mr. Haysbert, whether he'll be here sitting on the

10   front row directing traffic.  I want to be very clear that

11   when that starts to happen that we will be -- we will raise

12   that with the Court.

13             THE COURT:  All right.

14             Let's move on, then, to the first motion *in limine*

15   which is still pending, which relates to --

16             Ms. Morgan, how does she say her first name?

17             MS. MORGAN:  Nineveh, I believe.  Nineveh.

18             THE COURT:  Nineveh, okay.

19             -- Nineveh Haysbert's testimony regarding what

20   certain patrons had told her.

21             As I understand the motion, what she would testify

22   is set forth in her declaration, which has now been filed so

23   many times that I can't see the document number, but it's

24   been entered as her declaration.  And that's your

25   understanding as well, right?

1          MS. MORGAN:  That is correct, Your Honor.

2          THE COURT:  All right.  Do you have any arguments

3    you want to make?

4          MS. MORGAN:  I think it speaks for itself.  It was

5    filed, obviously, before I got involved in this case.  I

6    don't know that the declaration would necessarily even come

7    in.  I think that the testimony is sufficient, and I think

8    that when she testifies, it would be something to be raised

9    as objections for the trial court to consider at that time.

10          THE COURT:  All right.  I have reviewed this, and I

11   am going to deny your motion *in limine* for a couple of

12   reasons.

13          The issue that I see is that what the declaration

14   says, which we would anticipate her testimony to be, is that

15   a patron or patrons told her that an employee of the

16   restaurant was mopping the floor prior to her mother

17   slipping and falling in the area.  I think the problem with

18   that is, there is no indication -- prior to means before,

19   but it does not in any way provide any clarification as to

20   temporally, whether that was moments before or an hour

21   before, and that creates some problems.  Certainly, it

22   decreases the reliability and the relevance of the statement

23   itself.  But this exception to the hearsay statement

24   requires that the statement be made while you're perceiving

25   the event, which certainly does not occur here, or

JILL H. TRAIL, Official Court Reporter

```
 1    immediately after.  And it's plaintiff's burden to show that
 2    that kind of temporal component is met; that's so that it's
 3    reliable.  And they can't, they can't meet that burden given
 4    what the testimony is.  It is classic hearsay testimony, and
 5    I don't find that the exception applies.
 6          MS. MORGAN:  Your Honor, if we were able to elicit
 7    some information that -- I think it's actually double
 8    hearsay -- but if we were able to elicit some information
 9    about when this occurred from Ms. Nineveh -- of course, I'm
10    sort of at a disadvantage because I did not try the original
11    case, and I'm in the process of going through everybody's
12    testimony and deposition testimony.  But that would be the
13    only exception I would ask, is that if we could put some
14    limits on the parameters of it, maybe just in a sidebar
15    without publishing it to the jury first; that's what I would
16    ask.
17          THE COURT:  I'm happy to revisit the ruling
18    depending on her testimony, but I think you have an uphill
19    battle, frankly.
20          MS. MORGAN:  I don't disagree.
21          THE COURT:  All right.  Let me deal, then, with the
22    first work order.  This is a work order dated March 7th of
23    2018, which is prior to the incident at issue in the case
24    and indicates:  "The floor up front needs replaced; floor
25    not refinished correctly; lots of slips and falls; when the
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 264 of 384   Total Pages:(264 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 12 of 84 PageID# 635

12

```
 1    temperature changes outside, it tends to collect moisture
 2    and sweat."
 3            Let me ask you, do the parties agree as to who
 4    authored this work order?
 5            MS. MORGAN:  I believe so.
 6            THE COURT:  That would be Mr. Wilson?
 7            MS. BLAKE:  Yes.
 8            THE COURT:  Okay.
 9            Now, Ms. Morgan, there has been some debate here as
10    to whether or not the work order is evidence of the
11    feasibility of precautionary measures.  I think, though,
12    that that may have been abandoned; is that correct?
13            MS. MORGAN:  Yeah.  I don't believe that that's my
14    theory.  The work order, in my view, constitutes potential
15    constructive notice to the defendant in this case.  As the
16    plaintiff, which is the side I'm not normally on, but as the
17    plaintiff, I have the burden of establishing notice.  I can
18    do that a number of different ways.
19            If you look at the Memco Stores versus Yeatman
20    case, which is 232 Virginia 50, that's a case that's
21    somewhat analogous to this.  This is the plant case where
22    the defendant furniture store I believe had a -- I'm trying
23    to think of the name of the plant -- pepromia plant that
24    they had placed on a table, and it was -- essentially, it
25    became a jury issue, and that's what the Supreme Court of
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 265 of 384 Total Pages:(265 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 13 of 84 PageID# 636

13

```
 1    Virginia said, it was a jury issue as to whether the
 2    defendants should have known or reasonably known that it was
 3    foreseeable that this particular plant would lose its
 4    leaves, that it could be on the floor for patrons to slip
 5    on.
 6            So, the analogy that I would draw, Your Honor, is
 7    we've got a situation where a work order for the same type
 8    of flooring -- it's not the exact same area, but the same
 9    type of flooring -- is issued in March of 2018.  That puts
10    the defendants on notice that when the weather changes, you
11    know, that there is some condensation, people are slipping.
12    You combine that with Deajah Clark, who is an employee of
13    them, her testimony about witnessing people fall, and it
14    becomes a jury issue as to whether the defendant had notice
15    of this particular condition such that they should have
16    remedied it before Ms. Haysbert fell.
17            THE COURT:  So, before I get to the notice issue,
18    what I'm hearing from your argument is, you're not
19    attempting to use this record to show that the area of the
20    floor where Ms. Haysbert slipped and fell is the area of the
21    floor that was at issue; meaning, you're not seeking to use
22    the report to say this demonstrates that there was in fact a
23    defect, and it is that defect which caused her to fall?
24            MS. MORGAN:  No.  Because it's not that same area,
25    and I think that was raised a lot in the last trial, so, no,
```

USCA4 Appeal: 25-1332    Doc: 28-3      Filed: 06/09/2025    Pg: 266 of 384  Total Pages:(266 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 14 of 84 PageID#
637

14

  1    but it is the same type of flooring.

  2            THE COURT:  The floor itself, I mean, the way I

  3    understand this, and I could be just misunderstanding, but

  4    the same flooring was in the entire front of the house.  It

  5    was not changed between this work order and the time in

  6    which Ms. Haysbert fell.  Is that right?

  7            MS. MORGAN:  That's my understanding, yes, Your

  8    Honor.

  9            THE COURT:  Okay.

 10            MS. MORGAN:  We're dealing with essentially a

 11    three-month period.

 12            THE COURT:  All right.

 13            MS. MORGAN:  It was obviously, as we know, changed

 14    later, but for other reasons which we are not going to bring

 15    up at trial.

 16            THE COURT:  All right.  And so, just let me shift

 17    to defense.  I think, let's just be clear about what this is

 18    not about.  This is not a subsequent remedial measure.  It

 19    happened before.  They're not seeking to bring in any

 20    feasibility of precautionary measures.  She's identifying

 21    that the issue is notice.

 22            Your arguments had been that it's hearsay.  You

 23    make an argument that it's not a business record, but I

 24    believe that you previously agreed that it was an authentic

 25    business record at the prior final pretrial conference, and

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 267 of 384  Total Pages:(267 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 15 of 84 PageID# 638

15

1    so that issue is -- well, I think it is a business record,
2    but I think you've also agreed that it is a business record.
3            And so, just let me, then, make sure I understand
4    what your argument is now.  What's your challenge?
5            MS. BLAKE:  So, for the hearsay issue, it's double
6    hearsay.  That was what I was trying to point out in this
7    most recent brief that I filed, was that even if you get
8    past the business record exception -- which we have
9    consented to that it is a business record -- Mr. Wilson's
10   statements within the business record are double hearsay.
11           And so, plaintiff's motion outlined that there was,
12   you know, sufficient deposition testimony to verify that
13   Mr. Wilson was employed by Outback at the time.  I think I
14   even only included this as a single paragraph at the end of
15   our most recent motion.  It was just to point out that at
16   that prior trial no foundation was ever laid at trial.  So,
17   there was no evidence.  So, it's inappropriate at this time
18   to move for the admissibility of this document based on
19   deposition testimony because we're not at trial.
20           But the real crux of the argument is the relevance
21   of what I am now understanding.
22           THE COURT:  Hold on just one second.  Let me just
23   talk about the double hearsay and make sure.
24           Their argument is that his statements are an
25   opposing party's statement.  He -- I mean, I think you've

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 268 of 384  Total Pages:(268 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 16 of 84 PageID# 639

16

 1    agreed -- put the work order in, and he had previously

 2    testified regarding that process, and that he was an

 3    employee at the time that the work order was made.

 4           Setting aside your argument that that evidence came

 5    in via deposition, are you contesting that if this evidence

 6    came in, in the way it came in at his deposition, that that

 7    statement is not an opposing party statement?

 8           MS. BLAKE:  I am not.

 9           THE COURT:  Okay.  So, then it's really a relevance

10    argument?

11           MS. BLAKE:  Yes.

12           THE COURT:  All right.  So, what's your relevance

13    argument, then?

14           MS. BLAKE:  So, and I might be a little bit

15    confused as to what has changed between the filing of

16    plaintiff's motion back on December 16 and what is being

17    represented today, but it sounds like plaintiff's counsel is

18    now saying that she understands that the work order does not

19    cover the area where plaintiff slipped and fell.

20           THE COURT:  That's my understanding of what she's

21    saying, it is not the same area.  So, it's a notice.

22           MS. BLAKE:  But notice as to what, right?  So,

23    notice, they have to prove that there was actual or

24    constructive notice of the particular defect that caused

25    plaintiff to fall.  It's not just notice that all of the

```
 1   floors are defective all of the time.  That's not what the
 2   work order says.  The work order says that there is a
 3   particular issue in a particular part of our restaurant
 4   during particular times as a result of particular weather
 5   changes.  There has been substantial testimony about where
 6   Dr. Haysbert fell, what caused her to fall.  Plaintiff
 7   doesn't know.  Dr. Haysbert doesn't know what caused her to
 8   fall.  The floor was slippery, according to her.
 9            There is no evidence that anybody saw any
10   condensation on the floor at any time.  There is no evidence
11   that her clothes were soiled as a result.  There is no
12   wetness.
13            The only thing is that Ms. Haysbert, Nineveh
14   Haysbert, intends to testify that she saw somebody dry
15   mopping.  But just because somebody is dry mopping after the
16   slip and fall doesn't even mean that there was moisture on
17   the floor, or if there was moisture, that it was
18   condensation.  So, it's just kind of like when you walk
19   outside and you look at a puddle, you assume that it has
20   rained, but that's not the only explanation for the puddle.
21   Just because somebody was dry mopping on the floor does not
22   ipso facto mean that there was condensation on the floor
23   that was similar to the condensation described in this work
24   order.
25            THE COURT:  All right.  Just give me just one
```

```
 1   moment.

 2           So, let me deal with this in two steps.  The first

 3   is a question about whether or not the record can come in as

 4   a business record or whether it's hearsay.  Really, when

 5   you're talking about kind of those types of evidentiary

 6   questions, I think it is proper for me to consider

 7   Mr. Wilson's deposition testimony regarding whether or not

 8   the statements he makes in the exhibit are party statements,

 9   and so that I think is appropriate to rule on currently and

10   doesn't need to wait until trial.

11           And so, on the hearsay objection, I'll overrule the

12   hearsay objection, finding that this document does satisfy

13   an exception to the hearsay rule as an authentic business

14   record containing opposing party's statements.

15           As to the relevancy objection, I am going to also

16   overrule that.  I do think there is some risk that the

17   argument could be made it is a confusion, it is this defect

18   which existed, or it's evidence of the defect, or alleging

19   that, you know, it is the same hazard essentially.

20   Ms. Morgan has been fairly clear that that's not her theory,

21   and so obviously the expectation is she's not going to delve

22   into testimony like that.  But it is evidence of notice.

23   The order does say "the floor up front," and it talks about

24   not just this condensation issue but also the refinishing of

25   the floors, and so I think it certainly is evidence of
```

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 271 of 384  Total Pages:(271 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 19 of 84 PageID# 642

19

```
 1    notice.  It's probative of that fact, and I think that the
 2    jury can understand that, and the risk of prejudice is not
 3    so great that the document should be excluded on that basis.
 4              Any questions about that?
 5              MS. MORGAN:  No, Your Honor.
 6              THE COURT:  The second work order has been dealt
 7    with.
 8              Defendants, I know I'm going a little bit out of
 9    order here, but there has been some question about
10    witnesses.  I think that Ms. Morgan has clarified which
11    experts she intends at this moment to call.  Certainly, I
12    think that could change depending on we have some additional
13    rulings to deal with, but I think that issue has been
14    resolved.
15              Is that right, Mr. McGavin, or is there still some
16    question regarding witnesses generally that we need to
17    address?
18              MR. McGAVIN:  I think Ms. Blake is handling that
19    piece.
20              THE COURT:  All right.
21              MS. BLAKE:  I think that, yes, as long as we can
22    finalize which experts are intended to testify, that will
23    help us not expend so many costs as we did at the last trial
24    relating to our experts.
25              THE COURT:  All right.  So, at this point it's
```

JILL H. TRAIL, Official Court Reporter

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 272 of 384 Total Pages:(272 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 20 of 84 PageID# 643

20

```
 1   clear it's Dr. Haider, Dr. Filler, and Mr. Avrit.  I know
 2   we're going to talk about them in a moment, so we'll deal
 3   with that.
 4          All right.  So, let's then move to Dr. Filler.
 5   Let's deal with these in two sets.  So, there is an initial
 6   challenge that's been raised regarding his initial
 7   disclosure.  I have reviewed and been provided his report,
 8   and I have reviewed his testimony previously.
 9          My review of the record is that Judge Krask
10   previously ruled relating to essentially whether or not he
11   was presenting scientific or specialized knowledge to assist
12   the trier of fact, and essentially overruled defendant's
13   objection on that point.  And I don't see that defendants
14   are contesting that he applied reasonable principles and
15   methods.  I think the issue is causation and lack of
16   foundation.
17          Ms. Blake, am I understanding that?
18          MR. McGAVIN:  This one is for me, Your Honor.
19          THE COURT:  All right.
20          MR. McGAVIN:  Thank you.
21          Yes, that's right.
22          THE COURT:  Okay.  Do you want to be heard?  Do you
23   want to be heard on that, in addition to anything you have
24   already briefed?
25          MR. McGAVIN:  Yes, Your Honor.
```

```
 1            Dr. Filler came to trial with a PowerPoint and an
 2   opinion where he had never seen the patient, hadn't read the
 3   medical records, and was trying to offer evidence that she
 4   had a brain injury.  And his opinion did not meet the
 5   standard for reasonable degree of medical certainty based
 6   upon an adequate foundation.  He was saying, "I have looked
 7   at this film and this could be."  And that's not proper.
 8   It's not proper foundation.  It's not a proper medical
 9   opinion.
10            And I think the plaintiff concedes, evidently
11   concedes it was inadequate by the subsequent filing that we
12   received last week.  So, I think the best evidence of why
13   that opinion is faulty is that the plaintiff at the last
14   minute is trying to fix it and withheld the report from us
15   for over a year, after the Court allowed the plaintiff, over
16   our objection, to take a voluntary dismissal without
17   prejudice, having been ordered not to supplement, change or
18   otherwise modify the opinions, which we've complied with.
19   Two weeks later she went to see Dr. Filler, a report was
20   prepared and not provided to us.  In my opinion, that was
21   done by Mr. Haysbert -- because Ms. Morgan wasn't even
22   counsel of record -- which he shouldn't have done.
23            THE COURT:  I know we are going to get to this, but
24   I do want to deal with them in steps, because I think it's
25   helpful for me to deal with first the initial disclosure and
```

```
 1    then subsequently this supplementation issue.
 2             MR. McGAVIN:  But my point, Your Honor, is it's
 3    difficult to separate them because the second report
 4    demonstrates all of the problems with Dr. Filler's testimony
 5    and why we were so strenuously objecting to him.  Because
 6    Dr. Haider wasn't coming, there was no expert to talk about
 7    what her actual condition is.  She's never had
 8    neuropsychological testing.  So, to allow him to offer these
 9    opinions to talk about this sort of in a vacuum is highly
10    improper, and it's totally speculative.  So, based upon
11    that, he should not have been permitted to testify at all.
12    They even showed him -- I forget what they tried to show
13    him -- both the "Day in the Life" video, he shouldn't be
14    allowed to talk about that.  He never saw it.  And there was
15    another document -- I can't remember right now what it
16    was -- where he was shown and asked to testify about it, and
17    he said, "I don't even know what that is."  That's further
18    evidence of the problems with his testimony.
19             THE COURT:  All right.
20             Ms. Morgan.
21             MS. MORGAN:  Do you mind if I stand?
22             THE COURT:  Go ahead.
23             MS. MORGAN:  It's just a little easier.
24             Your Honor, thank you.
25             As a preliminary matter, I'd like to raise the
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 275 of 384    Total Pages:(275 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 23 of 84 PageID# 646

23

 1   point that even though we did file the admissibility
 2   request, this issue was dealt with at the trial by Judge
 3   Smith.  There were 70-something pages of her, even before
 4   the jury was brought in.
 5        And Dr. Filler did testify in that case.  Judge
 6   Smith allowed him to testify after pressing him on certain
 7   points and being cross-examined by Mr. McGavin, and he still
 8   did testify.
 9        What we have here is another example of the defense
10   taking that and using it essentially as if they had deposed
11   him, which they chose not to do before the trial in the last
12   case, and now trying to exclude his opinions after he's
13   already testified at trial.  So, I just want to make that
14   point on the record.
15        Now, when Dr. Filler came in -- we put a lot of
16   things in our brief -- but he is the inventor of Diffusion
17   Tensor Imaging, the DTI process.  He doesn't do it himself
18   because it's a procedure that you stick things on their
19   brain.  But he invented that process.  So, there are places
20   around the country where a person goes, and they run the
21   brain scans.
22        He ran -- he requested -- well, I think Dr. Haider
23   in connection with him requested the brain scans using that
24   technology, and then he reviewed it.
25        And when he was at trial, he explained, "I look at

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 276 of 384 Total Pages:(276 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 24 of 84 PageID# 647

24

```
 1    the brain scans.  Yes, I typically do see a patient" --
 2    which I'll -- we'll get to that in a little bit -- "but in
 3    this case I did not.  What I did do was, I looked at the
 4    clinical findings of Dr. Haider."  She wasn't there at
 5    trial.  She wasn't going to be there.  But that's not
 6    necessarily an issue because Rule 407 allows an expert to
 7    rely on other things, whether they personally observed it or
 8    just read it or not.  So, I think that was a trial objection
 9    that was raised, and maybe was an issue for Judge Smith,
10    maybe it wasn't.  But it's not like he did nothing in that
11    trial.
12            His opinions are laid out in his report.  The
13    findings are at Page 2, 6, 25, and 26.  His impressions are
14    at 3, 7, and 26.  He puts the brain scans, which he
15    reviewed -- and the way he explained it at trial is like
16    it's like somebody looking at a picture of a broken arm and
17    seeing the break in the arm.  It's not just a radiologist
18    reading it.  He's looking at a scan from the technology that
19    he developed.  And then he explained to Judge Smith, "Well,
20    this is why it was written in the way that it was."  He's
21    actually also a lawyer.  I caught that when I read his trial
22    transcript.  But he said, "I can formulate it in a way where
23    I'm reciting it to a reasonable degree of medical certainty"
24    -- which he confirmed that he did at trial -- "but I wrote
25    this as a clinician."  Yes, not one that had seen her.  But
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 277 of 384    Total Pages:(277 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 25 of 84 PageID# 648

25

 1   he alluded to the fact that he probably would see her.  And
 2   I know we're going to get to this argument about why he did.
 3   But it was contemplated from the very beginning of his
 4   retention that he would eventually see her, he just hadn't
 5   at that point in time.  But he said, "I can talk about the
 6   scans."  There was a big dialogue with him and Judge Smith.
 7   And he said, "I read her scans."
 8           "Well, you didn't see her brain."
 9           Well, nobody can see anybody's brain.  It's inside
10   their head.  The best evidence of a brain is not just
11   sitting and looking at somebody, it's reviewing their brain
12   scans, which he did.
13           So, I think everything that he did was questioned
14   and within the field that he should be in at this point, and
15   he was properly allowed in the last trial, and he should be
16   properly allowed at this trial.  And I'll get to the other
17   stuff later, Your Honor, but that's essentially what we have
18   to say on that.
19           Thank you.
20           THE COURT:  All right.  So, let me just deal first
21   with this, his initial disclosure, and clearly what I'm
22   considering.  I mean, I would not say that it's necessarily
23   a *Daubert* motion that's been raised, but there is a question
24   regarding, really, the admissibility of his opinions.
25           And to me, having reviewed both his report but also

1    then his testimony, I agree with Ms. Morgan that this review

2    of these images, there has not really been a challenge to

3    whether or not that's a reliable process, and that's not

4    really at issue.  I think given his profession and his

5    testimony, his review of those scans is appropriate.

6            What his report indicates is that he reviews the

7    scans, and he, based upon his review of the scans, makes

8    certain findings, so, you know, the scans themselves.  The

9    first one reveals losses bilaterally in the frontal lobe,

10   and so that's a finding I think is perfectly appropriate for

11   him to make given his review of the scans themselves.  I

12   think there is no reason that he would need to evaluate

13   Dr. Haysbert in order to make those findings.  And I think

14   there is sufficient foundation.  He received the scans and

15   he reviewed them.  I think his report makes clear that he

16   reviewed those images.  I don't think there is any issue

17   with that.  And I think, again, it's consistent with this is

18   the type of information he would review as well as the

19   information from Dr. Haider in making his opinion, and so I

20   think those opinions appropriately should come in or could

21   come in.

22           Regarding his causation, you know, I think that to

23   the extent that there was some confusion regarding the

24   language he uses in his opinions, he does clarify that in

25   his testimony that he provided.  And I think he does make a

JILL H. TRAIL, Official Court Reporter

 1   causation opinion, and he makes that to a reasonable degree

 2   of medical certainty, and he testifies to that.  To the

 3   extent that there is some confusion with the language that

 4   he uses in the report, I think that's understandable and

 5   explainable, and I don't think it rises to the level that

 6   would justify exclusion on that basis.

 7          Now, I do want to be careful about what his

 8   causation opinion is, because he clearly at this point had

 9   not spoken to Dr. Haysbert.

10          Ms. Morgan, you mentioned the review of

11   Dr. Haider's clinical findings.

12          I just want to be clear, because I don't want to

13   make a ruling and then for there to be some disagreement

14   regarding how far his opinion goes regarding causation, and

15   so certainly, in my mind it would be appropriate.  He's

16   identified certain things within the imaging.  And if you

17   were to ask him, you know, just using this as an example, is

18   loss of sight consistent with that injury?  Because

19   that's one of the -- I know she hasn't said this, but let's

20   just say she testified, "I lost my sight."  And so, then you

21   ask him, is loss of sight consistent with what you're seeing

22   on the scan?  And he says, yes.  That's one opinion.  Kind

23   of to me a more significant opinion would be, What I'm

24   seeing here was caused by this specific event.

25          And so my question is, explain to me what you

JILL H. TRAIL, Official Court Reporter

USCA4 Appeal: 25-1332    Doc: 28-3    Filed: 06/09/2025    Pg: 280 of 384   Total Pages:(280 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 28 of 84 PageID# 651

28

```
 1    understand his causation opinion to be.

 2         MS. MORGAN:  I mean, I think that he has concluded

 3    and opined that she sustained a traumatic event, and by

 4    history, because he does say that he relied upon the

 5    clinical information from Dr. Haider -- that's in the trial

 6    transcript at 411.  And that trauma he can recognize on the

 7    images, and it's consistent with a trauma to the brain.  It

 8    has nothing to do with, you know, why she fell or anything

 9    along those lines, but a fall.  And I think the way he

10    explained it was, in her line of work, where she's primarily

11    administrative, you know, she's not going to be on a jobsite

12    banging her head around, but she did by history sustain a

13    fall, and that fall is consistent with what he's seeing in

14    the shearing and other images on her brain scans.  And so,

15    there is a causal relationship between the fall and the

16    resulting images and the resulting problems.

17         Now, I mean, he could be cross-examined on a

18    multitude of other points.  You know, she could have been in

19    a car accident.  She could have done this and this.  And

20    that's why we take depositions, and that's why we

21    cross-examine.

22         THE COURT:  All right.

23         MS. MORGAN:  Is that sufficient to answer your

24    question?

25         THE COURT:  It is.
```

```
 1              Mr. McGavin, do you want to be heard?

 2              MR. McGAVIN:  That's not the standard.  It's

 3    not it's consistent with.  That doesn't meet the standard

 4    for medical testimony.  It has to be to a reasonable degree

 5    of medical certainty this was caused by this event.  It's

 6    basically serving up a laundry list of potential causes, but

 7    he doesn't have the foundation to link any clinical

 8    correlation of any claimed symptom to this occurrence.  It's

 9    just it's out in the atmosphere without a connection.

10              And he is neither designated nor qualified nor

11    prepared to testify to those things because he read no

12    medical records.  He never talked to the patient.  All he

13    did is receive a scan and write a report that he writes in

14    every case.  And he looked at some images and says, yeah,

15    this can be consistent with trauma.  But he doesn't know the

16    severity of the trauma.  He doesn't know if there was loss

17    of consciousness.  He doesn't know if there was physical

18    injury or physical indication of injury.  He doesn't know if

19    there was an emergency room visit.  He doesn't know that she

20    left and got in a car and drove to South Carolina, and that

21    she didn't seek any care until several days later.  He

22    doesn't know that every time she went to her primary care

23    physician she offered no complaints of cognitive deficits.

24    He doesn't know any of that history.  So, for him just to

25    say "it's consistent with" does not meet the standard, and
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 282 of 384 Total Pages:(282 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 30 of 84 PageID# 653

30

```
 1    therefore it should be excluded.

 2           He's limited.  If the Court permits him to testify,

 3    he is limited.  And if there is no Dr. Haider or somebody

 4    else to link all of this, it's irrelevant, and it doesn't

 5    assist the jury in reaching a conclusion.

 6           THE COURT:  Ms. Morgan, you had indicated that at

 7    trial -- and this is my recollection -- that he testified he

 8    had reviewed the clinical findings of Dr. Haider with the

 9    scans; is that right?

10           MS. MORGAN:  That's correct.

11           THE COURT:  What are those documents?

12           MS. MORGAN:  They are located in Dr. Haider's

13    report, and I actually just pulled that up.  There is a

14    neurological evaluation that's 27 pages long, and then there

15    is a life care plan that follows that.  So, that does talk

16    about what happened to her in the incident.  I think that's

17    all cross-examination area.  I mean, he relied on what he

18    relied on.

19           And maybe I didn't state it right now in the best

20    terminology, but you were asking me specifically about what

21    he said in term of causation, but he did say that his

22    opinions were drawn to a reasonable degree of medical

23    certainty.

24           THE COURT:  All right.  Give me just one moment.

25           All right.  I am going to overrule the defendant's
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 283 of 384    Total Pages:(283 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 31 of 84 PageID# 654

31

1    objection.  In reviewing his report -- and I think it has to

2    be taken together with his testimony -- he does articulate

3    that his opinions are made to a reasonable degree of medical

4    certainty.  And so, I think the use of this "consistent

5    with," which is often how it's -- that is a term that's

6    used, for example, in DNA evidence even.  It only goes so

7    far.  There are limitations to his expert opinion, and those

8    are the points that can be made on cross-examination, but I

9    don't think it makes -- it doesn't undermine his opinion in

10   the way that Mr. McGavin is suggesting.  And I think when

11   you look together at the testimony as well as his report, he

12   was reviewing in those, and there is at least some reference

13   to this information from Dr. Haider, and so I think it may

14   not have been entirely clear that he had received that, but

15   together with his testimony that he had and the language in

16   the report itself, that's the information that he had.  I

17   think that is the type of information someone in his field

18   would generally look to, and the opinions that he draws, I

19   think, are sufficiently reliable to be admitted at trial.

20   So, on that basis that objection is overruled.

21        Let's now deal with the supplemental expert

22   designation.

23        My understanding, Ms. Morgan, is that that

24   supplemental opinion is based upon a January 2024

25   evaluation, meaning an evaluation done one year ago, that it

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 284 of 384    Total Pages:(284 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 32 of 84 PageID# 655

32

```
 1   included an evaluation of her via Zoom, of the plaintiff,

 2   but also during that evaluation there were some

 3   questionnaires and things completed with her.  And my

 4   understanding is that neither the report nor that additional

 5   information has been disclosed to the defense, and that the

 6   supplement was made on January 10th, 2025, which was six

 7   days ago.

 8            MS. MORGAN:  That is correct, Your Honor.

 9            I did make reference to Ms. Blake in December, when

10   we were discussing these motions, that it was my

11   understanding that she had been seen, but I had not been

12   able to put my hands on any documentation at that point.

13   So, I gave what I had to the defense within I think five

14   business days of when I got it.

15            THE COURT:  All right.

16            MS. MORGAN:  And I'll explain a little bit more

17   about that.

18            THE COURT:  Go ahead.

19            MS. MORGAN:  Do you want me to?

20            THE COURT:  Sure.

21            MS. MORGAN:  Okay.  I understand the defense

22   argument to some degree.  I am almost always exclusively on

23   the defense side, but this situation is not how they've

24   couched it to be.

25            So, as you know, Mr. Haysbert was counsel for
```

```
 1    Dr. Haysbert up until when Judge Smith's opinion revoked his
 2    pro hac vice.  And I think you've questioned him before when
 3    he was helping her file documents and whatnot, and we have
 4    affirmatively stated that that was the case.  That does not
 5    mean that he was not assisting her, and he is not precluded
 6    from doing so, just like he is not precluded from assisting
 7    me in this case because he is former trial counsel, and he
 8    is a licensed attorney.  He is not doing any filing.  He is
 9    not doing anything in Virginia.  He is not conducting
10    depositions.  But he is former trial counsel, and he is a
11    relative of the plaintiff.
12          And so, he is, contrary to Mr. McGavin's assertion,
13    entitled to be somewhat involved in this case, and he does
14    plan to be here.  He's not going to sit at counsel table
15    with me.  But this is his mother that is coming to trial, so
16    we can take that up at a later time.
17          But here's -- I'm going to talk a little bit about
18    the conditions that were imposed, and what I felt my
19    obligations were, and then how the supplemental reports came
20    to be.
21          Now, of course, the voluntary dismissal, the
22    hearing on that, the motion to clarify, which I was involved
23    in the order on the motion to clarify, all came down between
24    December and April of 2024, well, December of 2023, April of
25    2024.  There were certain conditions that were laid out by
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 286 of 384    Total Pages:(286 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 34 of 84 PageID# 657

34

1    the Court including, you know, no refiling in the Eastern

2    District, no additional discovery, pretrial determinations

3    procedurally the same, and then the one expert's withdrawn

4    was the Court revoked that.

5         I do not see providing supplemental reports as

6    engaging in additional discovery.  I am not asking

7    questions.  I am simply turning over material that I have.

8         Now, I personally had no involvement in plaintiff's

9    decision to go see Dr. Filler, but that, as I mentioned a

10   moment ago, was in January of 2024, long before I was

11   involved, at least in this part of the case as a primary

12   player, and it was contemplated from the beginning of his

13   representation.

14        I will say this, too, Your Honor.  When you have a

15   mistrial, it presents a very unique set of circumstances.

16   You can say we're going to freeze everything, and it all be

17   the same, but the reality is that it doesn't, it doesn't

18   really work like that because lives go on, and people need

19   care, and they need treatment.

20        So, what my understanding is, is that she at trial

21   -- what happened was he met with her, and because she did

22   need treatment -- he actually was there, as I mentioned just

23   a few moments ago, in more of a clinical role, and it was

24   his intention to see her.  So, he did see her on January 3rd

25   of 2024.

1              Now, let's talk about my duty to supplement.  Rule
2    26 is very specific.  There is a must supplement when I get
3    it, okay?  That is an ongoing obligation, not just in state
4    court but in federal court.
5              So, let's just pretend for a moment that between
6    August of 2023 and January of 2024 or even January of 2025
7    something else had happened.  Let's say that there had been
8    a change in the medical field such that it changed his
9    opinions, or he invented something else.  Or from Brad
10   Avrit's standpoint, let's say that there had been a change
11   in engineering principles that caused something to change.
12   Or maybe there was a change in the law.  All of those
13   situations would have required me to disclose.
14             Just like if there is a motion to continue because
15   the Judge has COVID or a party has COVID, and the plaintiff
16   continues treating, those conditions are -- they're required
17   to be told to the defense, and that's why I told them.
18             Imagine for a moment if I had put Dr. Filler on the
19   stand without supplementing, and on cross-examination
20   Mr. McGavin asks him, "Well, Dr. Filler, you never saw the
21   plaintiff."  And he says, "Well, actually I did."  Don't you
22   think that they would be a little upset if I hadn't told
23   them about that situation and supplemented?  Absolutely.  I
24   would be as a defense attorney.  So, I felt that it was my
25   obligation to do that, and I did it as soon as I could.

```
 1          Now, in terms of the timing, I haven't been
 2    involved in this case for very long.  I have the
 3    disadvantage of coming in and not even being a plaintiff's
 4    attorney.  But as I mentioned, it was always intended for
 5    plaintiff to be treated by him, and in fact there were
 6    several times during his testimony where he referenced, you
 7    know, "I'm a clinician.  I see my patients.  I plan to see
 8    my patients."  He has extensive experience and specialized
 9    knowledge in that area, and he met with her at the time of
10    trial, and they decided, it's my understanding, at that time
11    to have her follow-up care.
12          And if you have read his supplemental report, he
13    has in fact seen her.  He has put her on medication.  He is
14    essentially now a treating physician, although he's already
15    -- you know, I wasn't going to change his status and call
16    him that, but that's essentially what he is, and I think
17    he's even made a conclusion that some of her effects are
18    reversible.  And for Dr. Haysbert this is not just about
19    this case, this is about her health, and so that's why she's
20    seeing Dr. Filler.
21          Now, Avrit, I'll just touch on this briefly because
22    I know that's an issue as well.  And actually, this is
23    entirely my fault, Your Honor.  I was very curious as to
24    whether Mr. Avrit had supplemented his report, because when
25    I went through it, I said, you know, in his initial report
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 289 of 384 Total Pages:(289 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 37 of 84 PageID# 660

37

 1    he referred to some climatological changes and conditions,

 2    and that was on Page 2 and 4 of his initial report.

 3          And so, I talked to Nazareth and I said, hey, when

 4    you were trying to get trial counsel involved -- those 15

 5    attorneys or more that he tried to relate or tried to get

 6    involved in the case before I got in -- "did you have them

 7    look at anything?  And he said, yes.  I sent them his

 8    report, and a lot of the feedback I got was, beef up this

 9    report, because he does talk about it, but yet he doesn't

10    clarify it.

11          So, what I had printed and given to counsel was

12    dated January 10th, 2025.  That is not the date that Brad

13    Avrit prepared his report.  It is actually dated

14    February 8th, 2024, so almost a year ago.

15          Now, what happened, and the reason that I say it's

16    my fault, I didn't catch this at the time -- and there is

17    the February time -- when Nazareth sent this to me, because

18    it was in his files, I looked at it, and I saw it, and I saw

19    it hadn't been signed.  So, this copy that's dated

20    February 8th, when it was penned, was not signed.  And I

21    contacted Brad Avrit's office and I said, hey, you need to

22    sign your report.  That's a requirement under the federal

23    rules.  So he did.  And when he signed it, it redated it for

24    January 10th of 2025.  So, this report was actually prepared

25    a year ago.  And when I got it, I turned it over again for

```
 1    the same reasons that I turned over the Filler report, which

 2    was because I felt like I had an obligation to do so.  And

 3    it's not entirely new matter.  There is -- I went through

 4    and, yes, there is some additional data but, again, it was

 5    considered back in 2024, and it's merely clarification of

 6    what he initially talked about, which is what he was

 7    recommended to do when other attorneys, other than myself,

 8    looked at the file in this case in contemplating whether

 9    they would take the case or not.

10              Thank you.

11              And I'll pass up that February copy.

12              THE COURT:  Thank you.

13              MS. MORGAN:  And you can see it's the date and it's

14    not signed.

15              THE COURT:  I am going to try to take these a

16    little bit separately.

17              Setting aside I think this issue with Mr. Haysbert,

18    there is some allegations made regarding his involvement,

19    I'm just going to put a pin in those for right now.

20              Let me just deal with the supplemental.  I think

21    Ms. Morgan is likely right about her duty to supplement.

22    The issue here is that we are at the final pretrial

23    conference.  These documents, the supplements themselves,

24    were drafted a year ago.  And they are, in my view,

25    especially more Mr. Avrit's than Dr. Filler's, not really
```

1   supplements to begin with, but shoring up of opinions in a

2   way that's very beneficial to plaintiff and detrimental to

3   defense, and the problem is, is that it just would be

4   fundamentally unfair to the defendants to have to suddenly

5   deal with these new opinions, the facts upon which they're

6   based, without an opportunity to have a new opportunity to

7   depose these witnesses, to investigate the claims that they

8   have made, to look behind the opinions themselves.

9          And so, I can recognize I think that, Ms. Morgan,

10  you may have been in a bit of a tight spot regarding what to

11  do with them.  I think, like I said, you likely probably did

12  have to supplement, but that's a separate issue from whether

13  or not those opinions reflected in the supplemental reports

14  should come into evidence at trial.

15         And based upon the failure to timely supplement and

16  the nature of the supplementation, I don't find that they're

17  appropriate, and it is not evidence that should come in at

18  trial.  And I think that that's just fairly clear.

19         Now, I think you're right in that supplementation

20  when there is changing, for example, medical circumstances

21  could be necessary or appropriate.  But the other side has

22  to have sufficient time and information to respond to those,

23  and they don't have that here.  And so, I think it's very

24  clear from a timing standpoint and fairness that those new

25  opinions and their opinions based on review of any new

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 292 of 384    Total Pages:(292 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 40 of 84 PageID# 663

40

```
 1   information is excluded from the trial.

 2          I know you have made other kind of -- you've asked

 3   for some other additional relief, but let me just first

 4   understand, is that clear?  Do you think that raises -- are

 5   there questions that either party has regarding

 6   implementation of that at trial?

 7          Defense?

 8          MR. McGAVIN:  I do, Your Honor.

 9          THE COURT:  Go ahead.

10          MR. McGAVIN:  I followed the court order.  I have

11   not gone to my experts and asked them to do supplemental

12   work, develop supplemental opinions, read supplemental

13   records.  I have done none of that.

14          The Court's order was very clear.  Your order, over

15   my objection, allowed a dismissal without prejudice and said

16   no new experts are coming, no supplementation, and that

17   order couldn't have been clearer.  I complied with it

18   100 percent.

19          Then Your Honor granted the motion to reconsider to

20   allow potentially all of the experts to come in, which

21   plaintiff's team knew, and they failed to comply with it.

22   And there should be a penalty because I would like to have

23   my experts doing supplemental reading, supplemental

24   research, supplemental literature to improve their opinions.

25   But now I'm in the position with both of these experts that
```

1    they're irreparably tainted.

2          Filler is definitely going to take the stand, and

3    when I say to him and say, you've never seen this lady and

4    treated her, what are we going to do?  How can he possibly

5    testify at that point?  He's going to say, well, at the time

6    that I wrote my report I hadn't seen her, but I have,

7    Mr. McGavin.  I mean, how are we going to possibly deal with

8    this?

9          And it's a deliberate -- this is what's so

10   frustrating in this case -- this is a deliberate ignorance

11   and a deliberate effort to go around Your Honor's orders.

12   And if Mr. Haysbert is actively assisting in this case and

13   working with Ms. Morgan, then he knows about the order.  I

14   would like to see the emails to these guys.  They should

15   have produced the emails so I could know what the

16   communication was and whether they were notified.

17         The Court has said you really can't do anything

18   further; the case is where it was when it was tried back in

19   August of 2023.  And we've abided by that.

20         And to get this a week before trial with no

21   explanation other than, I didn't have it available to me.

22   That's code for Mr. Haysbert had it.  He's working behind

23   the scenes.  And now Ms. Morgan is saying, I'm just reading

24   through the transcripts to learn about this.

25         This is not fair.  And it's more than fundamentally

```
 1    unfair to say these reports can't be used.  How are we going
 2    to have Dr. Filler on the stand and have him
 3    compartmentalize in his own brain what was in his opinion
 4    that he offered in August of 2023, compared to now he's a
 5    treating physician, prescribing medication?
 6            I'm going to have to ask -- I want to ask
 7    Dr. Haysbert, have you had any medication for these
 8    treatments?  Today is the first I've heard of that.  If
 9    she's had any medical care, seen a healthcare provider, seen
10    a family physician, physical therapy, cognitive therapy, I
11    have none of that.  And I am absolutely hamstrung now based
12    upon what else they may have done.
13            And so, to allow Dr. Filler to testify, I
14    strenuously object.  He's tainted.  They violated the court
15    order.  They didn't timely supplement.  And to say, I didn't
16    have it available, and it's a year later -- if I did that on
17    my side, there would be a penalty.  In the Federal Court,
18    U.S. District Court in the Eastern District, there would be
19    a penalty.  I would get penalized.  And it's more than you
20    just can't have the supplement.  Dr. Filler is irreparably
21    tainted.
22            Alternatively, Your Honor, I want a continuance.  I
23    want a continuance so I can take his deposition.  I want to
24    know the sequence of how this occurred.  I want to know who
25    was involved.  I want his emails about how this took place.
```

```
 1    I want to know what treatment has been done.

 2              This is absolutely outrageous, and it's not -- you

 3    can't just stand up in front of the Court and say, you know,

 4    I just didn't have it available, but I'm going to supplement

 5    it, and, you know, we'll just kind of separate it all out.

 6              There was a specific court order.  It was a

 7    draconian measure to grant a mistrial.  The Court then gave

 8    the plaintiff a break to allow her to dismiss without

 9    prejudice, then relented to allow all of the experts to

10    come.  And rather than put Mr. Haysbert up here to explain

11    what he was doing, Ms. Morgan is offering, you know, her

12    involvement and don't penalize me.

13              But this is irreparably unfair, and I should not

14    have to now confront and cross-examine Mr. Filler or

15    Dr. Filler about how he's going to separate all of this out.

16              I feel that I am extremely prejudiced, and I want

17    to be able to go to my experts and have them supplement

18    their reports and do additional preparation.  And then I'll

19    just say to them, look, all of the extra stuff you've

20    learned, keep that separate in your own brain, and that will

21    be good enough to comply with the court order.

22              As to Mr. Avrit, we have more foundational

23    objections to his opinions because they're irrelevant.

24    There is no evidence it was raining that day.  That's his

25    preliminary opinion.  So, we still have that out there to be
```

```
1    resolved.

2         But fundamentally, Your Honor, we feel that this

3    has tainted this case, that to take the key witness -- and I

4    don't know what Dr. Haider has been doing.  Is there any

5    supplement about her?  Has she been communicating with

6    Dr. Filler?  I don't know.

7         And I don't know what Mr. Haysbert has been up to.

8    Obviously, Ms. Morgan doesn't.

9         So, I'm very, very, concerned, Your Honor, and feel

10   that we are being severely prejudiced.

11        THE COURT:  So, Mr. McGavin, I want to talk through

12   this just a bit because -- and the reason I'm trying to

13   compartmentalize a bit is because I'm going to deal with at

14   the end any issues regarding Mr. Haysbert, and so I hear

15   your concerns about that.  I recognize you're saying, well,

16   look, there is some overlap.  But I'm also trying to move us

17   along.  So, let's just put that in a box for later.

18        Then there is this issue about Dr. Filler.  Now, it

19   is, of course, an issue a bit, and it would have been and

20   will be regardless, in that Dr. Haysbert has continued to

21   live her life.  If she, for example -- you know, I think

22   she's still working.

23        MR. McGAVIN:  She retired.

24        THE COURT:  Okay.  She's retired.

25        But the point is, is we can handle it in a couple
```

USCA4 Appeal: 25-1332     Doc: 28-2       Filed: 06/09/2025     Pg: 297 of 384   Total Pages:(297 of 384)
Case 4:24-cv-00087-EWH-RJK     Document 39     Filed 01/21/25     Page 45 of 84 PageID# 668

45

```
 1    of different ways, and this would happen in a normal trial,
 2    where you depose a plaintiff, and it may be that they get a
 3    job after you deposed them that might be relevant to
 4    whatever you want to cross-examine them on.  So, you're
 5    either drawing a line and saying, we're going to completely
 6    ignore anything that happened, and she herself couldn't
 7    testify about her current abilities right now, right?  But
 8    that does create some issues because you'd have to be very
 9    careful in your questioning about her, to her, about her
10    abilities, or if she's still working.  And so whereas at the
11    first trial you would have asked, "You're still working,
12    right?"  "Yes, I'm still working."  Well, if you ask that at
13    our trial, she's going to say, "No, I retired."  Right?  And
14    so, something has changed.  Something has changed, okay?
15    We'd have to figure out how to deal with that regardless.
16            MR. McGAVIN:  Yes.
17            THE COURT:  I think that consistent with how a
18    normal trial would work, that typically a plaintiff would be
19    permitted to testify to things that had changed after their
20    deposition; or if a trial gets moved, if something happened
21    in that interim period, they could testify about that, and
22    you could cross-examine on that.
23            Related to that is then this issue of whether
24    Dr. Filler is tainted.  The reason I bring the first issue
25    up is because your argument, to me, it kind of misses the
```

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 298 of 384  Total Pages:(298 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 46 of 84 PageID# 669

46

 1   point a bit in that when she testifies, she's not going to

 2   draw a line in the sand about her abilities and things like

 3   that.  Is that what you would expect if Dr. Haysbert

 4   testified, what to expect on cross-examination?  What would

 5   you expect her to testify about?

 6            MR. McGAVIN:  Let me answer that question this way.

 7   Yes, I would expect her to testify to her current status,

 8   but I would expect that I would be allowed to take her

 9   deposition, a supplemental deposition.  But --

10            THE COURT:  You didn't ask for that even before

11   this.  I mean --

12            MR. McGAVIN:  Well, let me just finish this

13   thought, Your Honor.  Because the Court granted this new

14   trial and allowed the plaintiff to come back, then I would

15   expect that if there is going to be anything supplemental or

16   changed, that we would have to come back to the Court and

17   get that.  So, we've stood by and not done anything

18   additional, but typically if --

19            So, you're saying it's on me, I should have asked

20   for a supplemental deposition and required the plaintiff to

21   supplement?

22            THE COURT:  No.  I'm trying to understand because

23   what you're saying to me seems inconsistent.  You're saying,

24   I would expect the plaintiff to testify to her current

25   abilities, current status.  "Are you taking medication?"

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 299 of 384  Total Pages:(299 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 47 of 84 PageID# 670

```
 1    "Yes, I'm taking medication now.  I'm taking" -- you know,

 2    if she's taking something -- "this is what I'm taking."

 3           So, I think what I understood you to say was that

 4    you would expect and find it to be appropriate that

 5    plaintiff in providing her testimony would testify to things

 6    like that.  And I'm not trying to trap you.  I'm literally

 7    -- I think this is a complicating thing to try to figure out

 8    given the timing problems.  And so, I think that's what

 9    you're saying, but I just want to confirm that that's what

10    you're saying.

11           MR. McGAVIN:  I would, Your Honor, but not in the

12    confines of this case, the way this developed.  We went to

13    trial in August of 2023.  The plaintiff then refiles, and

14    we're under this order.  I never expected to be getting

15    supplemental reports and an argument that she's now under

16    treatment.  So, that's why I say that, based upon these

17    revelations, I want to take her deposition again.  I want to

18    have my experts review all of this material so I'm

19    adequately prepared.  Because the Court in crafting this

20    standstill order, which I complied with 100 percent, it now

21    has left me, as I'm realizing what the plaintiff has been

22    doing, developing new experts, new reports, seeing new

23    doctors and continuing to treat -- and if they were going to

24    supplement from January of 2024, timely, then I would have

25    come in and said, okay, now I want to take his deposition.
```

USCA4 Appeal: 25-1332    Doc: 28-2      Filed: 06/09/2025    Pg: 300 of 384   Total Pages:(300 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 48 of 84 PageID# 671

48

```
 1    I want to get my experts to review this.  Because what's

 2    happened is by sandbagging me on this case, I'm sitting here

 3    expecting the rules are the same, and they're operating

 4    under different rules.

 5            THE COURT:  So, I think, then, your point is

 6    because she's sought additional treatment from these

 7    doctors, which is kind of a separate issue, but that the

 8    additional treatment should have been disclosed?  I mean,

 9    certainly would have been disclosed had the supplemental

10    reports been disclosed timely.  But you're put in a place

11    where if she's received additional treatment, you would

12    generally have anticipated that she was going to testify,

13    you know, she's not working anymore, I've had these issues.

14    But that treatment is such that it's more significant and it

15    alters the playing field.

16            MR. McGAVIN:  It's changed.

17            Excuse me.  May I consult with Ms. Blake?

18            THE COURT:  Go ahead.

19            MR. McGAVIN:  She wants to ask me or make a point

20    that I'm probably forgetting.

21            May I step aside for one second?

22            THE COURT:  You may.  Go ahead.

23            MR. McGAVIN:  Excuse me one second, Your Honor.

24            I think the point Ms. Blake -- I think the point is

25    that I'm getting wound up, perhaps, and I apologize for
```

USCA4 Appeal: 25-1332    Doc: 28-2      Filed: 06/09/2025    Pg: 301 of 384  Total Pages:(301 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 49 of 84 PageID# 672

49

```
 1    that, Your Honor, but I do feel -- nobody cares what I feel.
 2    I think I have demonstrated that, Your Honor.
 3          The point is, they do have a duty to supplement,
 4    and it's to timely supplement, whether it's Dr. Haysbert
 5    retired and is now on medication.  Even with the Court's
 6    order, that duty to supplement remains, and that would be on
 7    the plaintiff.
 8          And it's not adequate just to say, I didn't have it
 9    available to me.  You had the plaintiff as your client.  And
10    we'll talk about Mr. Haysbert at the end.  I know you want
11    to compartmentalize that, but you can't take him out of this
12    case because his fingerprints are all over this, and that's
13    what's so frustrating having sat -- okay.  I'm sorry.  I
14    know you don't want me to go there.  I apologize.
15          THE COURT:  Well, Mr. McGavin, I am a bit surprised
16    that you would ask for a continuance, in part because I
17    think I've been clear to say I've excluded any
18    information provided to Dr. Filler or any opinions that
19    could be interpreted as flowing from this new information
20    provided to him.
21          I will tell you just generally, that having seen a
22    lot of experts testify, that I think compartmentalizing
23    Dr. Filler and cabining his testimony is not the same hurdle
24    that you describe it as, in my mind.  For example, I think
25    you could say to him, you know, your opinions were made as
```

```
 1   of this date.  As of that date you had not reviewed her.
 2   You had not... you know.  And then it would be, I think it
 3   would be simple to avoid that issue.  That does not address
 4   or remedy this other problem of the additional treatment,
 5   and I am considering your request.  But I mean, frankly, my
 6   concern is you're really, then, just asking to open this can
 7   of worms which is, you know, and costs, depositions, new
 8   experts, this whole new round of, well, this is a new
 9   opinion, and this is not supplementation, and I mean just a
10   mess of things.  And frankly, I mean, I guess I'm then just
11   surprised that you think that that relief is a better relief
12   for you than the relief that I've given you, and --
13            MR. McGAVIN:  But I'm not done on the relief I'm
14   seeking, Your Honor.  What I'm seeking is, I don't think you
15   can compartmentalize Dr. Filler.  And I saw him testify.
16   He's a professional.  He's an advocate.  You ask him his
17   name, and ten minutes later he's spilling out quite a bit,
18   and it's going to be a challenge for the Court to
19   compartmentalize him, and that's what I worry about.
20            I don't want a continuance.  I just want a fair
21   playing field.  If I'm playing by the rules, I want the
22   other side to.  And I've suffered through this case,
23   seven-hour depositions, every one.
24            Mr. Haysbert, I don't want to go back over it, but
25   there is such a long history of this case, I'm extremely
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 303 of 384    Total Pages:(303 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 51 of 84 PageID# 674

51

1    distrustful, and these late disclosures are perfect evidence

2    of what we have been going through.  And the suggestion that

3    Mr. Haysbert is going to be here for trial, that's -- I

4    believe -- maybe that's his right, I don't know.  The fact

5    that he's negotiating with these experts.  This is tainted.

6    It continues to be tainted.

7            So, no, I really don't want a continuance.  I want

8    this case over.  I don't want to hear about Dr. Haysbert or

9    Mr. Haysbert ever again.  I would be very happy.  I have

10   come up for trial now, this is my fourth time coming up for

11   trial in this case.  And trying a case twice, I've done it a

12   couple of times, it's not much fun.  So, no, truly, I don't

13   want a continuance, Your Honor.  You're right.  But I want a

14   fair and level playing field for once.

15           THE COURT:  Let me ask you about Mr. Avrit.  In

16   addition to these timing issues, you talked about

17   foundational issues as well.  Why don't you articulate --

18           MR. McGAVIN:  The floor was dry.  The floor was

19   dry.  I don't know why we're talking about potential

20   condensation when the floor was dry.  There is no foundation

21   for any of this.  Plus, he's now testifying as a

22   meteorologist.  He's now going to tell us based upon review

23   of meteorological data whether or not there is condensation.

24   And Ms. Morgan contacted us previously, within the past

25   month, and said, would you consent that the meteorological

```
 1    data is true and accurate?  No.  We're not doing that.  It
 2    was not raining.  The floor was dry.  The witnesses say the
 3    floor was dry, independent witnesses, two store employees.
 4    Mrs. Haysbert says the floor was dry.  Her clothes weren't
 5    wet.  Condensation is moisture.  So, it's totally irrelevant
 6    to introduce this issue of condensation to this case, which
 7    is moisture, when the floor wasn't even wet.
 8            THE COURT:  Well, isn't part of the other problem
 9    that his initial report says that the floor was wet because
10    it rained, and his second supplemental report says the floor
11    is wet because of condensation?  I mean, they're
12    inconsistent with each other.
13            MR. McGAVIN:  They're both wrong.
14            But the point is, they saw our objection, and
15    Mr. Haysbert went out and went to Mr. Avrit and said, hey,
16    let's find a new opinion.  And that's what happened.
17    Obviously.  He didn't do this just because.  Ms. Morgan
18    didn't ask him to do it.  Somebody asked him to do it, and I
19    know who.  And I'd love to see the emails, how that all got
20    started.  This is just -- fundamentally, it should be
21    excluded.  He should be excluded for two reasons.  It wasn't
22    raining.  The floor wasn't wet.  And there is no
23    condensation.
24            And that work order that talks about condensation,
25    it's irrelevant.  We're on notice of a condition at the
```

```
 1    front of the house that didn't apply on the day in question.
 2            There would have to be evidence that the floor was
 3    wet.  It was not.  Every witness says the floor was dry.
 4    So, I strenuously object to Mr. Avrit's testimony.
 5            I strenuously object to Dr. Filler's testimony.  I
 6    think he's irreparably tainted.  And he's now tried to
 7    bolster everything.  He's going to have to come in.  It's
 8    going to be a complete nightmare trying to hold him to just
 9    what's in his report, his first report.  And we're going to
10    have so many objections, I'm going to be jumping up and down
11    like a jack in the box all over again, which I don't want to
12    do.  I just want to sit there quietly.  Ms. Blake won't be
13    there.  She's going out on maternity leave, so I'm going to
14    be all by myself.  It's going to be a disaster for me,
15    Judge.
16            THE COURT:  Ms. Morgan, let me hear from you.
17            MS. MORGAN:  Thank you.
18            THE COURT:  Let me start with Mr. Avrit because
19    separate from these issues related to Mr. Filler and timing,
20    and I think I've been clear about the timing issue, but to
21    me there has been this other kind of fundamental problem
22    with Mr. Avrit in that you have these second set of opinions
23    that are directly contrary to his first set of opinions and
24    it's a --
25            Do you want to be heard on how you want to proceed
```

```
 1    on him?

 2            MS. MORGAN:  Yes, Your Honor, thank you.

 3            I would like to just start talking about the case

 4    generally.  I have tried and I will continue to try to

 5    change the tenor of this case.  The way that Mr. Haysbert

 6    did things is not the way that I do things.  I have

 7    practiced in the Eastern District of Virginia for 25 years,

 8    and, frankly, I was appalled at some of the things that

 9    happened in this case on both sides, so that is not where I

10    am headed.

11            And I can tell this Court that nothing that has

12    been done, at least with respect to me, has been deliberate

13    in any way.  I have an obligation to tell the Court the

14    truth.  I have not been involved in this case for very long.

15    It has taken me a long time to get through the substance of

16    this case.  My involvement has only been on the sanctions

17    and the Bar complaint and related matters.  And it is taking

18    everything I have just to get through some of this data and

19    understand it.

20            And so, you know, I'm a little bit offended about

21    the deliberateness, because that was absolutely not my

22    intent, and I gave the reports as soon as I had them.  And I

23    believe it is appropriate to be penalized in the form of

24    those supplemental reports being excluded.  I think that's

25    fair.  I would expect no less as a defense attorney.
```

USCA4 Appeal: 25-1332   Doc: 28-2      Filed: 06/09/2025    Pg: 307 of 384  Total Pages:(307 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 55 of 84 PageID#
678

55

```
 1            In terms of a continuance, this is where we kind of
 2    have the same issue.  Now, Mr. McGavin got up here and said,
 3    we have complied, we have complied, we have complied.  I
 4    don't know that he hasn't complied.
 5            If I put Marcus Wilson or Nick Seifert or somebody
 6    from Outback or Bloomin' Brands on the stand, it's been a
 7    year and a half or a year and four months.  They might say,
 8    oh, I no longer work at Outback.  Things have changed
 9    because, as the Court commented, lives go on, and there is
10    nothing I can do about that.
11            I don't necessarily want a continuance.  I would
12    love to have more time.  But I think it just opens a can of
13    worms about where we go from here because everybody's lives
14    go on in the case.  So, I'm at a disadvantage from that
15    standpoint as well because I haven't taken supplemental
16    depositions.  I don't know if even the addresses that I have
17    for these witnesses are even correct, so we're all kind of
18    in the same boat, and so I could not advocate for a
19    continuance.  I think we just go forward.
20            So, in terms of Mr. Avrit, I did ask -- like, you
21    know I saw the comment about the floor in his original
22    report.  And I said, well, I don't know if that's enough.
23    Is there a supplemental report?  I thought maybe one had
24    been done, and lo and behold there had been.  I don't think
25    it's much better.  I think it's probably inconsistent, and
```

```
 1    maybe that's just his thing.  So, I do not intend to call
 2    him if the Court will not allow his supplemental report to
 3    come in.  I think there is no benefit to doing that.  I see
 4    most of his opinions -- and I told Ms. Blake this earlier --
 5    as treading on ground that wouldn't even be admissible in
 6    the first place.  So, if that's the Court's ruling on that,
 7    then I will strike him as an expert witness.
 8              I'm trying to streamline this case and make it as
 9    seamless as possible, Your Honor.  So, I think that
10    addresses your question about him.
11              I think that, you know, that's really all I have to
12    say.  I think the sanction of not bringing this stuff in is
13    appropriate.
14              I think we'll just have to deal with Dr. Filler.  I
15    mean, I wasn't there.  He did have long dialogues, but he's
16    an expert witness, and he's a very, very, smart man, but
17    we'll figure it out.
18              THE COURT:  What is your understanding of
19    Dr. Haysbert's -- how would you characterize the current
20    status of her treatment relating to the issues that she says
21    were caused by the fall?
22              MS. MORGAN:  I think that the medication Aricept --
23    I'm not sure how you pronounce.  It's referenced on the last
24    page of his report -- I think it's helping.  I don't know
25    that she's a hundred percent, but I do think that there is
```

```
 1   some indication that it's helping her.

 2           THE COURT:  So, just so I am understanding, she is

 3   currently on medication that Dr. Filler placed her on?

 4           MS. MORGAN:  Correct, yes.  And obviously we'd like

 5   to -- I mean, I think that's actually beneficial for the

 6   defendants to bring in, you know, but if we don't get to

 7   talk about that, then we don't get to talk about it.

 8           THE COURT:  I know that the report indicates that

 9   there was a Zoom treatment.

10           MS. MORGAN:  Telehealth.

11           THE COURT:  Telehealth appointment.

12           MS. MORGAN:  Yes.

13           THE COURT:  Has she subsequently been seen by

14   Dr. Filler?

15           MS. MORGAN:  Not that I'm aware of.

16           And I just thought about one other thing.  If you

17   remember from the trial transcripts, her physician that she

18   was dealing with, Dr. Chinnery, he passed away.  So, I mean,

19   she -- and she has a traumatic brain injury, and she needs

20   treatment, so, I mean...

21           THE COURT:  Is she seeing any other doctor?

22           MS. MORGAN:  I don't think so, but, again, part of

23   this is I don't know what I don't know on the plaintiff's

24   side, so.

25           THE COURT:  All right.  Do you want to say anything
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 310 of 384    Total Pages:(310 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 58 of 84 PageID# 681

58

```
 1   else?

 2            MS. MORGAN:  No, thank you.

 3            THE COURT:  I'm at some point going to take a brief

 4   recess, so I'm going to put a pin in this for just a moment.

 5   I think I can deal with the other motions fairly quickly, so

 6   I think we should just do that, and then I'm probably going

 7   to take just a brief recess.

 8            Okay.  So, let me, I know we have some associated

 9   exhibits, but I'm going to talk about those I think at the

10   end.

11            There is the defendant's motion regarding corporate

12   indifference.

13            MS. MORGAN:  That's not our trial theory.

14            THE COURT:  All right.  And I'm going to grant

15   their motion.  Frankly, you're not seeking punitive damages.

16   There is nothing you could point to which would indicate

17   that that speaks to any relevance or issue in the case, and

18   so it could only be admitted and used for an impermissible

19   purpose.

20            MS. MORGAN:  I think what I had explained to

21   Ms. Blake was, you know, I can't predict exactly what

22   questions I would ask.  And I told her I thought that if I

23   had somebody from Outback on the stand, I might ask a

24   question like, did anybody follow up with her?  I see that

25   as the very limit of -- you know, I think the answer to that
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 311 of 384 Total Pages:(311 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 59 of 84 PageID# 682

59

```
 1    question is no.  The jury can infer whatever they want to
 2    infer from that.
 3            THE COURT:  And that's their motion, and that's
 4    what I am ruling on.
 5            MS. MORGAN:  Okay.
 6            THE COURT:  I am granting their motion, and I'm
 7    excluding that.
 8            MS. MORGAN:  Okay.  So, you don't want me to ask
 9    that question?
10            THE COURT:  Correct.
11            MS. MORGAN:  Okay.
12            THE COURT:  There is a motion regarding internal
13    policies, I think that may be resolved.
14            Is that resolved?
15            MS. BLAKE:  It should be if Bloomin' Brands is
16    dismissed.
17            MS. MORGAN:  Yeah.  We're not trying to establish
18    ownership and control, so... and I think the case law is
19    correct that it doesn't come in.
20            THE COURT:  I agree.
21            All right.  There is the brain map demonstrative
22    and the PowerPoint demonstrative.  I just also want to be
23    clear.  I understand some of these would be implicated by
24    other rulings, but I think it's as helpful as possible for
25    me to clear up as many things and then deal with remaining
```

 1  issues, so that's why I am dealing with these two.

 2        My understanding is these are -- and there is now a

 3  new rule that talks about illustratives or an amendment to

 4  Rule 107, those things that help the jury understand the

 5  evidence, they are not evidence, they don't go back to the

 6  jury.  I don't think my scheduling order addresses things

 7  like an opening PowerPoint, a closing PowerPoint, or a

 8  PowerPoint that you might use with an expert.  I think in

 9  more complicated cases I have the parties disclose them a

10  couple of days in advance so that I can deal with any

11  objections in advance so that we don't have trial issues, so

12  like a couple of days before trial.

13        What's the issue with the brain map demonstrative

14  that currently exists?

15        MS. BLAKE:  The issue is that we have not been

16  provided with any foundation as to where -- I mean, so it's

17  -- I think it's been represented to the Court that these are

18  Dr. Filler's or whoever took the DTI imaging, it is the DTI

19  imaging that has been made into a 3d animation.  But by who?

20  The issue is at the last trial Dr. Filler testified that he

21  had never seen this brain map demonstrative, and all we now

22  have is plaintiff's counsel's representations that now

23  Dr. Filler has seen the demonstrative, and he intends to lay

24  the foundation, but I think that that does then go back to

25  the Court's order froze this case in time.  He's been

USCA4 Appeal: 25-1332    Doc: 28-2      Filed: 06/09/2025    Pg: 313 of 384  Total Pages:(313 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 61 of 84 PageID# 684

61

1    provided supplemental materials, and now he intends to move

2    things around, and we don't exactly know how.

3         I don't know who this third-party company is.  It's

4    not been disclosed.  I don't know how this was created, or

5    when it was created, and for what purpose it was created.

6    It was just kind of something that was provided to us mid

7    trial.

8         THE COURT:  I'll be frank.  That happens all of the

9    time.  I mean, you have images, they're put into some trial

10   prep by some third-party that deals with attorneys that does

11   this.  I mean, unless there is like an allegation that that

12   imaging or the demonstrative in some way changes the

13   imaging, I mean, that's why -- I mean, typically I would say

14   it needs to be provided slightly in advance of trial so that

15   if there are any issues like that, there is no prejudice, a

16   party can object in advance.  But they can create a

17   demonstrative with those exhibits.  She could do that today

18   for purposes of trial.  I mean, you could do that.  You know

19   you could take some exhibit and make a PowerPoint that you

20   want to walk through with your expert.  I think there is a

21   good reason in this case to have people disclose them early.

22   But it's not an exhibit, it's a demonstrative.  And I guess

23   what I'm saying is on the basis that you say, I'm going to

24   overrule your objection.

25        I am going to require that any demonstratives,

USCA4 Appeal: 25-1332   Doc: 28-2     Filed: 06/09/2025   Pg: 314 of 384   Total Pages:(314 of 384)
Case 4:24-cv-00087-EWH-RJK   Document 39   Filed 01/21/25   Page 62 of 84 PageID# 685

62

```
 1    PowerPoints that are going to be used, I think it would be
 2    helpful that they be provided in advance.  At least anything
 3    that is to be used with a party, like an expert, I'll have
 4    you produce those.  I was going to do the Wednesday before
 5    our current trial date.  I'll let you meet and confer if you
 6    want to make an agreement regarding PowerPoints for openings
 7    and closing.  Normally, parties don't, or if they do, it's
 8    literally like an hour or two before just so you can look
 9    and make sure there is nothing objectionable.  I have done
10    that in my patent cases.  A case like this, normally parties
11    wouldn't do it.  If you guys want to talk about it and agree
12    to something, that would be fine.
13          And if you think that there is an issue, I mean,
14    obviously I think there will have to be some testimony from
15    Dr. Filler to the demonstrative, that it's the images that
16    he's previously reviewed.  If that doesn't happen and you
17    want to object on that, then I will take that up at the
18    time.
19          The PowerPoint, I guess my question is, does that
20    guidance clarify your objection relating to the PowerPoint?
21          MS. BLAKE:  Unfortunately, no.
22          The PowerPoint contains -- I mean, it's many, many
23    pages long.  There is a lot of treatises in there that I
24    don't think the foundation for the hearsay exception has
25    been laid at any point.  I don't -- again, I understand the
```

 1    Court's decision, we can object at trial to maintain those

 2    objections if they're not, but those treatises were not

 3    disclosed in the initial report.  The copies of them,

 4    pursuant to the Rule, weren't provided.  So, that's the main

 5    objection to the PowerPoint as well as the inappropriate

 6    headers.

 7         This is the problem, and I don't want to rehash

 8    over our prior arguments, but with Dr. Filler's report, his

 9    opinion essentially is that Dr. Haysbert's brain imaging is

10    consistent with a number of things, and in his PowerPoint he

11    has that her brain injury is consistent with quite a few

12    symptoms or at least some symptoms -- I don't have them all

13    memorized -- that are not symptoms that she has ever

14    complained of.  And so, at that point we just find it

15    prejudicial to put it up on a screen in front of the jurors.

16         THE COURT:  All right.  So, I mean, I looked at it.

17    I did not look at it in-depth.  I will tell you that my view

18    is, it is not a PowerPoint that I would use for a jury.  I

19    think it's way too much, too much information.  But I'm

20    going to deal with it in the same way, which is that

21    PowerPoints, the brain map demonstratives, anything else

22    that falls into that type of category should be shared with

23    the other party no later than Wednesday before trial.

24         If there are remaining objections, then what I'll

25    have you do is just file a notice with the Court no later

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 316 of 384  Total Pages:(316 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 64 of 84 PageID# 687

64

 1    than close of business that Friday indicating, you know,
 2    what's at issue, and forwarding via email to my law clerk
 3    the PowerPoints at issue.  The notice should at least
 4    identify, you know, defendant objects to pages blah, blah,
 5    and blah because they contain whatever, so I can understand
 6    what I'm looking at.
 7            What I would like, if there are issues, what I
 8    would do is, we'd start court a bit early the morning of,
 9    and we would go through it, and I'm going to rule on them,
10    you know, that comes out, whatever.  You know, the way this
11    would typically work is if it's like one or two isolated
12    things, then I'm going to rule on those, and I am going to
13    expect you to change the PowerPoint.  If the PowerPoint is
14    infected to such a degree, I certainly might reach the point
15    that I'm like, look, I'm done, we're not using this, and
16    that's how we'll proceed.
17            So, I just wanted to put you on notice that I
18    recognize you've worked on these.  You should be meeting and
19    conferring on them before you file anything with me.  But to
20    me, that's the best way.  These are things that are kind of
21    produced as you get very close to trial, but this avoids
22    having issues that come up right in the middle of trial.
23    All right.
24            MS. MORGAN:  To the degree that it's already been
25    produced we don't need to reproduce it, though, correct,

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 317 of 384    Total Pages:(317 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 65 of 84 PageID# 688

65

```
 1    just if there is anything other?
 2            THE COURT:  Right.  I mean, if you've produced the
 3    brain map demonstrative and this PowerPoint demonstrative,
 4    if there are others that have been exchanged and those don't
 5    change, I don't think you need to provide them again to the
 6    other party.
 7            Okay.  That is all, other than this issue with now
 8    just Dr. Filler that I believe we need to address; is that
 9    right?
10            MS. BLAKE:  I would just, regarding the
11    demonstratives, I am only -- it's a little bit difficult
12    because I think we're all walking into this case -- well,
13    Mr. McGavin definitely has the most experience out of all of
14    us.  But I am aware of the brain map animation and the
15    PowerPoint.  I have those two things.  I am putting it on
16    the record that if there are any other things, I do not know
17    about them, and I would just appreciate that being
18    disclosed.
19            THE COURT:  All right, and I'll order it.  I mean,
20    everyone is at the same deficit I think.
21            Before I take a break, let me just address
22    Mr. Haysbert's involvement generally.  I think that
23    Mr. Haysbert is entitled to observe the trial in this matter
24    as an audience member.  It's an open court.  I don't think
25    it would be proper for me to exclude him.  Well, I think I
```

```
1    could exclude him, but I don't think I have done so yet.
2    And I'll just say at this point given the information that I
3    have, I'm not excluding him from trial.  I think he's, as a
4    member of the public, permitted to be present and to
5    observe.
6              I addressed this previously regarding his dual role
7    as a family member to his mother and previous counsel to
8    her.  And my recollection of what I said and what we talked
9    about was, he is, of course, is her, the plaintiff's son.
10   But he made the decision to be her counsel of record and to
11   appear in this case.  He was then subsequently removed from
12   the case, and his *pro hac vice* was revoked.  It is in my
13   view in no way appropriate for him to involve himself in
14   this case in a way in which an attorney would.  He can't
15   represent her related to this case in any way.  He made that
16   decision when he chose to represent her.  And so, he can't
17   now say, well, I'm her son, so I get to do some things as an
18   attorney, but I'm not appearing in court on her behalf.  No.
19   He appeared as counsel of record in this case, and his *pro
20   hac vice* was revoked, and the Court ordered him not to be
21   involved as counsel in this case.  That's my understanding
22   of the Court's order.  I could certainly be corrected if I
23   am wrong.
24             And so, I recognize that there could be a line
25   there.  So, for example, I think it's appropriate for a
```

JILL H. TRAIL, Official Court Reporter

```
 1    child to drive their parent to a medical appointment or even

 2    set up the appointment.  It would not be appropriate to

 3    communicate with witnesses or experts in the case regarding

 4    their testimony and their expert opinions.  That is legal

 5    representation.  I don't think there really could be a

 6    dispute about that.  I am very concerned that this may be an

 7    issue that the Court has to deal with, but I am endeavoring

 8    to because he is not currently counsel of record.  So,

 9    really the issue, if there were a violation, would be

10    whether or not he's in violation of the Court's order.

11          Now, I recognize Mr. McGavin's point, which is

12    true, that could be separate, but if they've suffered harm

13    as a result of an alleged violation of a court order, then

14    certainly that would be an issue that affects the case.

15    It's somewhat different.  Those are my thoughts on where

16    that stands at this point.

17          I think it would be helpful, I'm going to take a

18    brief recess.

19          Let me ask you all.  Defendants have asked for a

20    continuance.  Do you want an opportunity --

21          Mr. McGavin, Ms. Morgan has put some information on

22    the record regarding the changes, that she's aware of them,

23    although it sounds like there may be some information that

24    she's not aware of.  Would you want the opportunity, for

25    example, in a very short turnaround to have her file
```

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 320 of 384 Total Pages:(320 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 68 of 84 PageID# 691

68

 1    initially an update?  So, really this would be, you know, I

 2    think she's on medication, if she's obtained any additional

 3    treatment, anything that is materially different from her

 4    prior testimony, and then if you wanted to articulate your

 5    reasoning regarding a new trial?  Do you want that

 6    opportunity?  Would you like to see that before I rule on

 7    your request for a new trial or a new trial date?

 8              MR. McGAVIN:  I don't want a continuance, Your

 9    Honor.

10              THE COURT:  Okay.

11              MR. McGAVIN:  I'm just -- I don't know how to

12    comply with the Court's orders and then have Ms. Morgan in

13    the position to say, I don't know what's been going on with

14    Mr. Haysbert.

15              But he is tainting the case, and this is why I

16    think the remedy is -- as I've thought about it over these

17    proceedings -- Mr. Avrit is out.  And essentially, he's out

18    because his opinions were late designated and not supported.

19    But I think Dr. Filler should be out because what happened

20    is in violation of the court order, and that should be the

21    consequence.

22              And I'm left with trying to compartmentalize a key

23    witness who I know is going to be an advocate and he -- what

24    happened there, and Ms. Morgan knew nothing about it, it had

25    to be set up.  Mr. Haysbert was involved, obviously.  He had

```
 1    the report.  She didn't.  And he was running this.  And I
 2    think the penalty is he should be out.  I shouldn't have to
 3    be up here trying to do the gymnastics of trying to
 4    compartmentalize his testimony because what they did so
 5    obviously is, he recognized, Mr. Haysbert recognized the
 6    weaknesses in that opinion.  Ms. Morgan had nothing to do
 7    with it.  And she's being very clear, don't penalize me.
 8    You know, I don't know what's going on over there with
 9    Mr. Haysbert.  Well, Dr. Filler didn't do a new report
10    because Ms. Morgan asked for it.  And Dr. Haysbert has said
11    she's got a brain injury and can't represent her herself.
12    So, obviously Mr. Haysbert went and said, hey, you got to
13    work up a new report, Dr. Filler, so we can fix all of the
14    problems that Mr. McGavin raised.  And that's wrong.  That
15    violates the court order, and Dr. Filler should be out.
16    That's the penalty.
17              THE COURT:  All right.
18              Ms. Morgan, anything you want to add?  I mean,
19    we've developed a bit, and that's fine.  I appreciate that
20    you're both willing to think on your feet and then make
21    adjustments as we're going through, but I'll give you just a
22    chance if you want to add anything.
23              MS. MORGAN:  I don't really have anything.  I mean,
24    we're just covering the same ground, so...
25              THE COURT:  All right.  Anything else?  I'll take a
```

USCA4 Appeal: 25-1332    Doc: 28-2      Filed: 06/09/2025    Pg: 322 of 384  Total Pages:(322 of 384)

```
 1    brief recess.  Anything else you all think we need to
 2    address?
 3              MR. McGAVIN:  Pardon me, Your Honor.  I was just
 4    conferring with Ms. Blake.
 5              No, thank you.
 6              THE COURT:  Thank you all.  We'll take just a five,
 7    ten-minute recess.  Thank you.
 8              (Court stood in recess from 12:08 p.m. to
 9    12:23 p.m.)
10              THE COURT:  All right.  Thank you all for your
11    patience.
12              I can go ahead and rule on this issue with
13    Dr. Filler.  I am going to exclude Dr. Filler from the
14    trial.  You know, I think it is clear that there was not a
15    timely supplement made to his expert report, and I think I
16    have to consider that in the context of the case in its
17    entirety, as well as the fact that when I consider the
18    prejudice articulated by the defendants, I think that it's a
19    fair point that they're making.  I think they have or would
20    suffer prejudice that I can't entirely address by
21    limitation.  And so given those things, I think that that's
22    an appropriate sanction under Rule 37 is for his exclusion
23    from trial, and so that's the ruling that I will make
24    related to him.
25              I think, then, that deals with all of the motions
```

1  *in limine.*

2         Let me tell you how we'll deal with the Final

3  Pretrial Order.  There have been a number of, I think,

4  exhibits that have potentially been withdrawn or may be

5  withdrawn based upon my ruling.  Unfortunately, I have a

6  couple of criminal matters I have to take up, and so I don't

7  think I have the time to go through the remaining objections

8  outside of the motions *in limine*, and I think I likely would

9  have reserved on many of those anyway given that most of

10 them are, I think, on foundation or relevance.

11        So, what I'd ask the parties to do is, by the close

12 of business tomorrow, if you could send an email to my law

13 clerk just indicating if there are exhibits or witnesses

14 which you intend to withdraw given the rulings that I have

15 made; that will help us then early next week enter the Final

16 Pretrial Order reflecting those changes without having to go

17 through it right now, and have you all think about those

18 things right now.  And I'd also ask that when you do that,

19 obviously, you need to copy the other side, but if you could

20 also send her a Word version of the proposed Final Pretrial

21 Order.

22        Any questions about that or any --

23        MS. MORGAN:  Yes.

24        THE COURT:  -- exhibits or witnesses you think I

25 especially need to address?

```
 1              MS. MORGAN:  Your Honor, at least for me, for
 2    purposes of the record, may I be heard about Dr. Filler and
 3    Mr. Nazareth Haysbert?
 4              THE COURT:  Go ahead.
 5              MS. MORGAN:  Thank you.
 6              So, as I understand your ruling, you're excluding
 7    Dr. Filler entirely from this trial?
 8              THE COURT:  That's correct.
 9              MS. MORGAN:  Okay.  I'm just going to raise an
10    objection, respectfully, but he's already testified at this
11    trial, and I think at a minimum what he did was merely
12    follow-up with his patient within a period of four months,
13    which he had set up, not necessarily through Mr. Haysbert
14    but through Dr. Haysbert herself and saw her.  I understand
15    why that should not come in.  But his testimony in total,
16    that is, that is sanctioning the plaintiff for something
17    that she did to treat herself in this case, and now she
18    doesn't have the one person who is treating her at least
19    being able to come in and testify as to the images and
20    everything he did before, that he already testified to?  I
21    think the solution for that could be, Your Honor, is just
22    reading in his testimony from the prior trial, instead of
23    bringing him, and then you compartmentalize it altogether,
24    and you don't go into other areas that are off bounds or
25    anything.  But this, that sanction, perhaps it is within
```

```
 1    your power of Rule 37 -- I didn't look it up -- but I think
 2    that's a very, very, strong sanction for the plaintiff
 3    simply doing what she had intended to do from the time that
 4    he was engaged in the first place and that she did on her
 5    own without her involvement of her son, by simply following
 6    up.  So, I just would ask that you reconsider that position
 7    or even let me brief if it if possible.  Now, again, the
 8    remedy would just be, let's read in his testimony from
 9    before.  I thought about that earlier.  And I forgot to
10    mention it.
11            Now, in terms of Mr. Haysbert, you indicated that
12    it was in no way appropriate for him to be involved in any
13    way, and I would, again, respectfully disagree with that.  I
14    can brief it, if you wish.  But I understand he's no longer
15    pro hac vice counsel, and he should not do anything related
16    to the court, but he is the only individual who is alive --
17    because Mr. McKelvey passed away -- that I can consult with
18    on things that happened in the prior trial.  I did not try
19    that case.  I was not involved in the trial of that case.
20            So, if there is a witness on the stand -- and I
21    just raise this as way of an example -- and they say
22    something, and I wonder what they said before, and I want to
23    impeach him, he's going to be the fastest source for me to
24    go to and say, hey, do you remember what day or what this
25    person said, and point me to something in the trial
```

USCA4 Appeal: 25-1332    Doc: 28-2      Filed: 06/09/2025    Pg: 326 of 384    Total Pages:(326 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 74 of 84 PageID# 697

74

```
 1    transcript.  I mean, that's what his role needs to be as
 2    former trial counsel.  That is not him being counsel of
 3    record in this case.
 4            Which I went back and actually looked at the
 5    Court's ruling on it and her order, and it didn't say that
 6    he couldn't be an attorney for his mom.  It just simply said
 7    that she was revoking his pro hac vice.  It was very sort of
 8    bland in that way.  I don't think it was very specific, and
 9    I don't remember exactly what it said, but I did go back and
10    look at it before I even consulted with him, and I felt that
11    I was within the parameters.
12            And I also asked the Bar on this issue as well, and
13    they said, well, he can't, obviously, participate in any of
14    the court proceedings, but he can consult with you, and that
15    was the advice that I was given.
16            So, I just feel like that's too blanket of a
17    statement.
18            THE COURT:  Well, let me clarify my statement.
19            MS. MORGAN:  Okay.
20            THE COURT:  Because I did not intend my statement
21    to be that he could have no involvement with his mother.
22    You specifically talked about this idea of, you know, you
23    speaking with him about his representation, making sure you
24    get the documents, for example, what records does he have,
25    things like that.  I do think that's appropriate.
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 327 of 384   Total Pages:(327 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 75 of 84 PageID# 698

75

```
 1           MS. MORGAN:  Okay.

 2           THE COURT:  I think that would be necessary for

 3   effective representation for you to assume the file.  I do

 4   see some difference between that, you know, let me just make

 5   sure you have the file and ongoing participation such as you

 6   described now, and then separately during the trial.  So,

 7   there is kind of two issues which to me would be like an

 8   ongoing consultation regarding the development of the trial

 9   or the ongoing legal representation and then in court

10   consultation, which is obviously much closer to appearance

11   in this court.

12           MS. MORGAN:  And I'm not saying that I would

13   absolutely have to do that, it just might be the case.

14           THE COURT:  This is not something that I went back

15   and looked at either Judge Smith's rulings or my rulings

16   specifically regarding the limitations.  I mean, it sounds

17   like this may be an issue at trial, and I would rather have

18   it clearly delineated.  I think it's better to have it

19   delineated than not.

20           So, if you'd like to file, really, I think it could

21   be like a five-page brief regarding what you understood the

22   limitations to be and then whether or not there are any

23   rules that would come into play that I would need to

24   consider.

25           MS. MORGAN:  Okay.
```

JILL H. TRAIL, Official Court Reporter

```
 1              THE COURT:  But I guess to clarify, to me there is
 2    a difference from representing his mother in unrelated
 3    matters, legal matters.  Certainly, I don't think that was
 4    touched.  That's different from representing her interests
 5    as it relates to this case.  And there could be some overlap
 6    between what one could maybe imagine as like familial
 7    responsibilities and attorney responsibilities, and my point
 8    there was, you can't claim that things that an attorney
 9    could do are now your familial actions and not attorney
10    actions when, for example, you could do them as her attorney
11    on her behalf.  It was that distinction I was trying to
12    draw.
13              MS. MORGAN:  I understand.
14              THE COURT:  I don't think the defense would
15    need -- if you want to respond, you're welcome to.
16              MR. McGAVIN:  We will not respond, Your Honor.
17              THE COURT:  Very well.
18              I'll give you a week to do that.  Is that enough
19    time?
20              MS. MORGAN:  Yes.  I may not.
21              THE COURT:  Very well.
22              MS. MORGAN:  But if I do it, it will be within a
23    week.
24              THE COURT:  All right.  I suspect defense would,
25    regarding the motion to reconsider, you would object to that
```

USCA4 Appeal: 25-1332   Doc: 28-2   Filed: 06/09/2025   Pg: 329 of 384 Total Pages:(329 of 384)
Case 4:24-cv-00087-EWH-RJK   Document 39   Filed 01/21/25   Page 77 of 84 PageID# 700

77

```
 1   on the bases that you previously stated?

 2              MR. McGAVIN:  Yes, Your Honor.

 3              And there is no evidence that Dr. Haysbert set this

 4   up.  There is no evidence at all.  It's just a -- I don't

 5   know.  So, I strenuously object to reconsidering.

 6              THE COURT:  Ms. Morgan, your objection is noted.

 7              MS. MORGAN:  Thank you.

 8              THE COURT:  All right.  So, let me just go through

 9   a couple of minor things with you all so we know we're all

10   on the same page.  This will be tried in Newport News.

11   Obviously, we're starting on February 25th.  It's currently

12   set for five days.  If you don't think that it will be five

13   days, please let me know, because I might shift you back one

14   day because I have a criminal trial up until the Monday

15   before.  I anticipate we can keep your date.  It won't be an

16   issue, but I just --

17              MS. MORGAN:  Your Honor, can I address that real

18   quick?

19              THE COURT:  Go ahead.

20              MS. MORGAN:  I do have an issue.  So, if I am not

21   calling Filler and Avrit, I can't get Dr. Haider here until

22   the 27th.  She's coming in the evening of the 26th.  I don't

23   know that I can -- I'm trying to streamline this as much as

24   possible -- I don't know that I can fill two days and then

25   get to her, so...
```

JILL H. TRAIL, Official Court Reporter

329

1          THE COURT:  Do you anticipate, then, that your case

2     would be tried in two days, meaning if we moved it to

3     Wednesday, Wednesday and Thursday?

4          MS. MORGAN:  I think it would take no more than

5     three.

6          THE COURT:  All right.

7          And defense, you anticipate, I think you said

8     previously, a day?

9          MR. McGAVIN:  Yes, Your Honor.  I'm trying to think

10    of scheduling.

11         MS. MORGAN:  So, my point, Your Honor, was I would

12    prefer to start a day later, so like if we did wrap up, we

13    would have Haider here.  I don't want us sitting around with

14    nothing to do the afternoon of 26th.

15         MR. McGAVIN:  Your Honor, can I address that?

16         I'm happy to let her testify out of turn.  I would

17    like to keep the current schedule because wrapping over a

18    weekend to come back, it's just more travel for me.  It's

19    another hotel night that I would rather avoid, and I would

20    prefer to keep the current schedule and finish this case

21    within one contiguous week and also not have a jury leave

22    and spend that time.  So, if it means I take Dr. Haider out

23    of turn, I'll do that.  I want to get this done, but I don't

24    want to have to come back over another weekend.

25         THE COURT:  All right.  We'll proceed in that way.

```
 1    I do anticipate my other trial should be resolved by Monday.

 2    We will start on Tuesday.  With his concession, I think it

 3    is preferable to have it dealt with in one week.

 4              MS. MORGAN:  And I still have a sentencing on

 5    Friday that I had made the Court aware of.

 6              THE COURT:  That's not with me?

 7              MS. MORGAN:  No.  But it's here in Norfolk.

 8              THE COURT:  All right.  And which judge is that

 9    with?

10              MS. MORGAN:  It's either -- it's Judge Gibney.

11              THE COURT:  It's Judge Gibney, all right.

12              All right.  My plan is --

13              MS. MORGAN:  I'm sorry.  I misspoke.  It's Judge

14    Allen.  I have two right now.  It's Judge Allen.

15              THE COURT:  All right.  My plan right now would be

16    to generally start at 10:00 a.m. the first day, 9:30

17    thereafter.  If we have things that I think we need to deal

18    with, I may very well say I want you all here at 8:30 or

19    sometime earlier so that we can deal with those before the

20    jury.  My intention would be to have the jury coming in at

21    10:00 a.m.

22              I will tell you that I very often will ask the jury

23    if their preference is, for example, to start early, earlier

24    than, for example, 9:30, like 8:00 or 8:30, we'll start

25    earlier because my goal is to get it done.  I think it is
```

USCA4 Appeal: 25-1332    Doc: 28-2    Filed: 06/09/2025    Pg: 332 of 384 Total Pages:(332 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 80 of 84 PageID# 703

80

 1    preferable to have it done in one week rather than wrap

 2    around as well.

 3            I try to take one break in the morning, one in the

 4    afternoon, and a lunch break, though typically, I may delay

 5    the lunch a bit if we're right in the middle of a witness or

 6    something like that.  It's helpful for me if you guys just

 7    give me updates about timing so I can make those decisions.

 8            We'll seat eight jurors in total.  There will be no

 9    alternates.  What I'll do is select initially a panel of 14

10    individuals.  You each get three strikes, and we'll go back

11    and forth starting with plaintiff, meaning your board will

12    have 14 individuals on it.

13            The board will be handed to you, Ms. Morgan.  You

14    strike one, back and forth until you have each struck three,

15    leaving eight individuals.  That's your jury.

16            You've submitted *voir dire*.  I will review it.

17    I'll conduct the *voir dire*.  What I typically do is, if

18    there are sensitive issues, I'll typically let the panel

19    know that they can come forward, and I'll handle it at a

20    sidebar.  Here, occasionally I will ask during that sidebar

21    if the attorneys have additional questions so that if there

22    is some sensitive issue, we can deal with it all at once

23    rather than having that witness come back up.

24            I'll read the witness list for the jury so that

25    they'll know whether they know any of the individuals.

JILL H. TRAIL, Official Court Reporter

USCA4 Appeal: 25-1332   Doc: 28-2      Filed: 06/09/2025    Pg: 333 of 384  Total Pages:(333 of 384)
Case 4:24-cv-00087-EWH-RJK   Document 39   Filed 01/21/25   Page 81 of 84 PageID# 704

81

```
 1              I allow the jury to take notes.

 2              I will provide preliminary instructions.  I will do

 3    jury instructions after your closing arguments.

 4              I know you all know this because you have tried

 5    cases here, but both of these courthouses are fairly small,

 6    and there is a prohibition on any communications with

 7    jurors, but just please remind any of your staff, just be

 8    careful in the elevators and things like that.

 9              Regarding any exhibits, if you do anticipate

10    presenting exhibits in paper form or on an ELMO or through

11    your laptops, do you know?

12              MS. MORGAN:  I like to use the ELMO primarily.

13              THE COURT:  Okay, primarily.

14              Mr. McGavin.

15              MS. BLAKE:  I typically will use the ELMO, but I

16    will also have it on trial pad on my iPad, so I can do

17    either.

18              THE COURT:  All right.  If you're using something

19    other than the ELMO, you need to make sure with IT prior to

20    the day of trial that your equipment is working, and you

21    have the right connections and things that you need for

22    those to present.

23              Understand that my courtroom deputy, if you just

24    throw something up on the ELMO, she's not showing it to the

25    jury unless you have moved to admit it, and which I admit
```

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 334 of 384  Total Pages:(334 of 384)

```
 1    it, and then it will be shown, or it's clear because you're

 2    saying this has been previously admitted.  She is not going

 3    to know always that an exhibit has already been admitted,

 4    and so if it's previously been admitted, you need to say,

 5    this has previously been admitted as exhibit whatever, so

 6    that she can hit the button to ensure that the jury is

 7    seeing whatever you're trying to show.

 8            My order requires three paper sets of exhibits, so

 9    that's one for the courtroom deputy, the law clerk, and the

10    witness.  My courtroom deputy will essentially be keeping

11    track of what's been admitted so at the end of the trial,

12    after she consults with you, her version can go back to the

13    jury.  I think she would like you to send the exhibit list

14    in a Word document as well, so that she can make any

15    modifications as we're going along.

16            I think I said this before, but I will tell the

17    jury, but it is an area of confusion, that any of these like

18    PowerPoints or your opening statements, if you use a

19    PowerPoint, those things are not going to go back to the

20    jury.

21            I think you all had previously moved to exclude

22    witnesses, and that motion would still be the case.  I see

23    some nodding heads.

24            MS. MORGAN:  I wasn't here but, yes, that would be

25    a motion.
```

```
 1              THE COURT:  That motion will be granted, and the
 2    witnesses will be excluded.
 3              I take it from Ms. Morgan's statement that you
 4    understand that we will be moving along, and the expectation
 5    is unless prior arrangements are made with opposing counsel
 6    and the Court that you need to have all of your witnesses
 7    ready to go.  The goal is to efficiently try this case so
 8    we're not keeping the jury unnecessarily long.
 9              And it is my practice, I mean, I understand that
10    everyone would like to take more breaks, but I'm just trying
11    to get the case tried, and we're going to power through it.
12              Your phones are coming in with the pouches.  Those
13    will be opened if you request, but if you want anything
14    else, just submit your electronics form so that I can review
15    that.
16              I think that is everything you would need to know
17    that's a bit different regarding how we will conduct trial.
18              Do you have any questions, Ms. Morgan?
19              MS. MORGAN:  No, Your Honor.
20              THE COURT:  All right.
21              Mr. McGavin?
22              MR. McGAVIN:  No, thank you, Your Honor.
23              THE COURT:  All right.  Well, thank you all for
24    being here.  I appreciate it.  And I look forward to
25    receiving those couple of additional things we talked about.
```

USCA4 Appeal: 25-1332    Doc: 28-2       Filed: 06/09/2025    Pg: 336 of 384    Total Pages:(336 of 384)
Case 4:24-cv-00087-EWH-RJK    Document 39    Filed 01/21/25    Page 84 of 84 PageID# 707

84

```
 1              Thank you all.  We'll stand in recess.

 2              (Proceedings concluded at 12:44 p.m.)

 3

 4                          CERTIFICATION

 5

 6      I certify that the foregoing is a correct transcript

 7   from the record of proceedings in the above-entitled matter.

 8

 9

10              _____/s/_____

11                          Jill H. Trail

12                        January 21, 2025

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT X

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### *Newport News Division*

**JOANN WRIGHT HAYSBERT,**

       **Plaintiff,**

**v.**                            **Civil Action No.: 4:24-CV-87**

**OUTBACK STEAKHOUSE OF**
**FLORIDA, LLC, AND**
**BLOOMIN' BRANDS, INC. et al.,**

       **Defendants.**

### MOTION TO CLARIFY OR RESCIND

COMES NOW, Plaintiff, Joann Wright Haysbert ("Plaintiff") and her counsel, Mary T. Morgan ("Counsel" or the "undersigned") and in response to the Court's comments concerning the involvement of Nazareth Haysbert in the instant proceeding and the representation of Plaintiff, and states as follows:

### I.    INTRODUCTION AND PROCEDURAL HISTORY

This matter involves a contested personal injury case resulting from Plaintiff's slip and fall at an Outback Steakhouse restaurant on May 23, 2018 in Chesapeake, Virginia. The case was originally filed in the Circuit Court for the City of Hampton, Virginia in June 2020, shortly after the onset of the COVID-19 pandemic. Upon notice filed by Defendants Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC ("Defendant") the case was removed to the Federal Court for the Eastern District of Virginia and assigned case no. 4:20-cv-00121-RBS-RJK. Nazareth M. Haysbert ("Mr. Haysbert"), an attorney licensed in California was primary counsel for Plaintiff. Originally, Newport News attorney Stephen C. Teague ("Mr. Teague") was engaged to serve as local counsel. Mr. Haysbert filed an Application to Qualify as a Foreign

1

Attorney Under Local Civil Rule 83.1 ("Application") (pro hac vice) on September 8, 2020. (ECF No.: 13)[1]. Id. The Application was granted on or about September 10, 2020. (ECF No.: 14).

On November 24, 2020, D. Adam McKelvey ("Mr. McKelvey") noted his appearance as counsel for Plaintiff. (ECF No.: 21). On December 2, 2020, a Consent Order Granting Substitution of Mr. McKelvey as counsel of record for Mr. Teague was entered by the Court. (ECF No.: 27). Following several days of trial, on August 23, 2023, the Court issued a Memorandum Opinion granting Defendants' Motion to Quash, Motion to Revoke Pro Hac Vice Status of Mr. Haysbert, and Motion for Mistrial. (ECF No.: 315). Mr. McKelvey moved to withdraw as counsel for Plaintiff on September 18, 2023, and passed away on November 5, 2023.

In connection with the ongoing proceedings, the Court has stated on the record as follows:

> "It is in my view in no way appropriate for [Mr. Haysbert] him to involve himself in this case in a way in which an attorney would. He can't represent her related to this case in any way…[Mr. Haysbert] appeared as counsel of record in this case, and his *pro hac vice* was revoked, and the Court ordered him not to be involved as counsel in this case. That's my understanding of the Court's order."

Tr. Final Pretrial Conf. Jan. 16, 2025; 66:12-21.

## II.    PRO HAC VICE AND ITS REVOCATION

Latin "for this turn," pro hac vice enables "an out-of-state lawyer [to] be admitted to practice in a local jurisdiction for a particular case only." BLACKS LAW DICTIONARY Sixth Ed. at 1212. Pursuant to Local Civil Rule 83.1 (E), "[u]pon written motion by a member of this Court, a practitioner qualified to practice in the United States District Court of another state or the

---

[1] ECF citations reference initial case no. 4:20-cv-00121-RBS-RJK, unless specified.

District of Columbia may apply for *pro hac vice* admission in a specific case and to appear and sign pleadings and other filings…".  L. R. 83.1(E).  Subsection (G) of this same Rule provides that "[a]ny attorney appearing before, or signing pleadings or other filings with the Court, must be admitted or authorized to practice under subsections (C), (D), (E), or (F)."  L. R. 83.1(G).

"Federal courts have the inherent authority to control admission to their bars and to discipline attorneys who appear before them." <u>Bills v. United States</u>, 11 Fed Appx 342 (2001) (citing <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)).  However, it is also true that a party has a fundamental right to choose counsel.  <u>Audio MPEG, Inc. v. Dell, Inc.</u> 219 F. Supp. 3d 563, 569 (2016) (citing <u>Shaffer v. Farm Fresh, Inc.</u>, 966 F.2d 142, 146 (4th Cir. 1992).  While this right is secondary to the Court's duty to maintain the integrity of the bar, this duty applies in the context of considering disqualification of an attorney in a particular case.  <u>See</u> <u>id</u>.

According to the Court's Memorandum Opinion, it granted Defendants' Motion to Revoke Mr. Haysbert's Pro Hac Vice status based upon:

> ... the combined effect of Mr. Haysbert's misconduct, rules violations, and impact on judicial economy, which is clearly illustrated by the concerns listed in this Opinion, the record, and addressed from the bench on August 14, 2023.

(ECF No. 315).   The Court also stated that:

> ... the cumulative effect of Mr. Haysbert's unprofessional conduct, which included violations of the federal rules, local rules, and court rulings, and his impact on judicial economy, warranted the revocation of his pro hac vice status.

<u>Id</u>.  The effect of this ruling was to rescind Mr. Haysbert's right to appear and sign pleadings and other filings in the proceeding under Local Rule 83.1(E).

On Day 5 of the trial, the Court asked Mr. McKelvey if he was prepared to take over the case for the purpose of continuing the trial.  <u>Day 5 Tr.</u> 59:4-11.  The Court suggested that if Mr.

Haysbert's *pro hac vice* status was denied, he would not be able to "participate any further in this case." Id. 59:13-15. Recognizing that Mr. Haysbert's familiarity with the case was central to its overall success, Mr. McKelvey made a point of inquiring of the Court if he would be able to have Mr. Haysbert, not necessarily in the courtroom, but available to point him to certain information, including where it might be in the documents. Id. 59:ll16-24. The Court did not respond to this inquiry. Ultimately, the Court outlined the reasons supporting its decision to revoke Mr. Haysbert's *pro hac vice* status, and declared a mistrial. Except as outlined above, the Court did not indicate, either on the record, or in its Memorandum Opinion, that Mr. Haysbert could not be involved in Plaintiff's case.

### III.    ANALYSIS

The record is not clear as to the Court's precise expectations. While there have been discussions on the record of varying specificity, the Memorandum Opinion itself is relatively sparse in its discussion of the limitations specifically imposed on Mr. Haysbert. (ECF No.: 315).

Clearly Mr. Haysbert cannot file motions, question witnesses, present argument or take other action reserved for counsel of record. Conversely, Mr. Haysbert retained certain ethical obligations to assist Plaintiff upon his discharge from case, including providing her with copies of her file documents and otherwise "tak[ing] all reasonable steps to mitigate the consequences to the client." See Virginia Rules of Professional Conduct 1.16(d); Official Comment 9.

The Court cited numerous bases for its decision to revoke Mr. Haysbert's *pro hac vice*, all involving Mr. Haysbert's personal actions and manner in presenting matters to the Court and Jury. The Court did not articulate the revocation of the *pro hac vice* as a sanction against the Plaintiff. Indeed, the Court repeatedly noted the need weigh Plaintiff's rights to counsel against the Court's need to oversee its proceedings. Mr. Haysbert's privilege to practice before the Court

has been suspended, but the Plaintiff's fundamental right to proceed should not be impaired.

Mr. Haysbert – in addition to being the son of Plaintiff – was lead counsel in her case for over three years.  He was the primary point of contact for all of her experts, and was responsible for all aspects of her case, although with the assistance of local counsel once the case was filed. He is the individual most knowledgeable and familiar with the particulars of Plaintiff's slip and fall and resulting injuries, and all aspects of her case, including witness testimony and the previous trial of this case. That is particularly true in light of Mr. McKelvey's death.

Present counsel conducted appropriate diligence before accepting retention, and proceeded with a good faith belief that she was permitted to consult with Mr. Haysbert regarding the information he obtained during his time as counsel – both objective records in the file, but also his impressions and legal theories developed while serving as counsel.

The revocation of Mr. Haysbert's *pro hac vice* had the effect of removing him from the formal mechanics of trying a case (no small matter).  It cannot, and should, not be construed as a limitation on his right to interact with the Plaintiff, experts, or current counsel.  Any such injunctive effect would go beyond protecting the sanctity of the Court's proceedings, and would infringe upon Plaintiff's fundamental rights of due process and rights to choose counsel.

Mr. Haysbert recognizes that he must be mindful of the limitations on his involvement, including the unauthorized practice of law, and intends to adhere to all such requirements.

WHEREFORE, Plaintiff, Joann Wright Haysbert, by counsel, respectfully requests that this Court clarify or rescind its previous statement that it is in no way appropriate for [Mr. Haysbert] to involve himself in this case in a way in which an attorney would" including not "represent[ing] her related to this case in any way" and for such further relief as is necessary and proper.

Respectfully submitted,

Date: January 24, 2024          By:    _____/s/_____
                                       Mary T. Morgan, Esq.
                                       Virginia State Bar No. 44955
                                       *Counsel for Plaintiff*
                                       PARKER POLLARD WILTON & PEADEN
                                       4646 Princess Anne Road, Unit 104
                                       Virginia Beach, Virginia 23462
                                       Telephone: (757) 384-3166
                                       Facsimile: (866) 212-1310
                                       Email: mmorgan@parkerpollard.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January 2025, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

    John D. McGavin, Esq.
    MCGAVIN, BOYCE, BARDOT,
    THORSEN & KATZ, P.C.
    9990 Fairfax Boulevard, Suite 400
    Fairfax, Virginia 22030
    jmcgavin@mbbtklaw.com
    *Counsel for Defendants*

                                       _____/s/_____
                                       Mary T. Morgan, Esq.
                                       Virginia State Bar No. 44955
                                       *Counsel for Plaintiff*
                                       PARKER POLLARD WILTON & PEADEN
                                       4646 Princess Anne Road, Unit 104
                                       Virginia Beach, Virginia 23462
                                       Telephone: (757) 384-3166
                                       Facsimile: (866) 212-1310
                                       Email: mmorgan@parkerpollard.com

4919-6242-3826, v. 1

# EXHIBIT Y

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT,

     Plaintiff,

     v.                                    Civil Action No. 4:24-cv-87

OUTBACK STEAKHOUSE OF
FLORIDA, LLC,

     Defendant.

**<u>MEMORANDUM ORDER</u>**

This matter is pending before the Court on Plaintiff Joann Haysbert's Motion to Clarify or Rescind. Mot., ECF No. 40. Plaintiff requests that the Court clarify or rescind its previous statements relating to Attorney Nazareth Haysbert's involvement in the case following the revocation of his *pro hac vice* status. Mot. at 5 (quoting Final Pretrial Conference Tr. at 66:12–16). For the reasons stated below, Plaintiff's Motion to Clarify or Rescind, ECF No. 40, is GRANTED IN PART and DENIED IN PART.

**I.      BACKGROUND**

This case was originally before this Court beginning in July 2020. *See Haysbert v. Bloomin' Brands, Inc., et al.*, No. 4:20-cv-121. Plaintiff was represented by Nazareth Haysbert, admitted *pro hac vice*, as well as by local counsel. *Id.*, ECF No. 13. After several days of trial, the Court revoked Mr. Haysbert's *pro hac vice* status and granted a mistrial, finding that "the cumulative effect of Mr. Haysbert's unprofessional conduct . . . warranted the revocation of his pro hac vice status." *Id.*, Mem. Op. at 5, ECF No. 315. While revoking Mr. Haysbert's *pro hac vice* status, the Court stated: "[I]f his *pro hac vice* status is denied, he cannot participate any further

345

in this case." *Id.*, Trial Tr. Vol. 5, 892:13–15, ECF No. 321. The Court further clarified the scope of its Order during a May 15, 2024, hearing while discussing Mr. Haysbert's ongoing participation in this case, noting:

> It should be self-evident from the revocation of the *pro hac vice*, but even if it wasn't self-evident, Judge Smith at trial, after revoking Mr. Haysbert's *pro hac vice*, said . . . "but you know if his pro hac vice is denied, he cannot participate further in this case." So I think that's a very clear order of the Court.

*Id.* at May Hr'g Tr. 73:6–12, ECF No. 367. The Court again stated in a July 8, 2024, hearing that in the Court's view, "asking another party to agree to [the voluntary dismissal] request is quintessentially a task of an attorney," admonishing Mr. Haysbert that he "can't be involved in the litigation." *Id.* at July Hr'g Tr. 34:12–23, ECF No. 379. Immediately afterwards, the Court again warned Mr. Haysbert:

> I want to be very clear and to ensure that you understand that appearing on a meet and confer, advising your mother or engaging with the other attorneys, that's the practice of law as it relates to this case, and I do not think that that would be appropriate or permitted given the revocation of your *pro hac vice*.

*Id.* at 35:4–9. Mr. Haysbert's involvement in this matter arose again during the Final Pretrial Conference ("FPTC"). Specifically, it became apparent during the FPTC that Mr. Haysbert, following the revocation of his *pro hac vice* status, had communicated with at least one expert in the case regarding perceived deficiencies in his report, sought at least one amended expert opinion, and received amended expert reports. FPTC Tr. 31:21–38:14, ECF No. 39. The reports were not disclosed to Defendants until they were received by Plaintiff's current counsel nearly a year after they were completed. *Id.* Plaintiff's current counsel disclosed the reports. *Id.*

During the FPTC, the Court again reiterated that it is "in no way appropriate for [Mr. Haysbert] to involve himself in this case in a way in which an attorney would. He can't represent her related to this case in any way." *Id.* at 66:13–15. The Court further clarified: "It would not be appropriate to communicate with witnesses or experts in the case regarding their testimony and

their expert opinions. That is legal representation." *Id.* at 67:2–5. Following the FPTC, Plaintiff filed the instant motion seeking to clarify or rescind the Court's orders regarding Mr. Haysbert's participation in this matter. Mot. at 5.

## II. DISCUSSION

To the extent that further clarification is needed, Mr. Haysbert is prohibited from participating in this matter in the capacity of an attorney. The Court will not rescind its previous orders reiterating the same. Accordingly, the Court grants Plaintiff's request to clarify and denies her request to rescind the Court's order.

The Court has "the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). It did so here by revoking Mr. Haysbert's *pro hac vice* status. *See generally Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (noting that *pro hac vice* status "is not a right but a privilege"). Following the revocation of his *pro hac vice* status, Mr. Haysbert was no longer authorized to practice in this Court and could not "appear[] before, or sign[] pleadings or other filings with the Court." E.D. Va. Loc. Civ. R. 83.1(G).

Mr. Haysbert, as a lawyer who is not licensed to practice law in the Commonwealth of Virginia, is prohibited from the unauthorized practice of law. *See* Va. Sup. Ct. R. Part 6 § 1. Although Mr. Haysbert recognizes that he is bound by these rules, his Motion fails to discuss how these rules define and limit his ability to be involved in this case as, effectively, a layperson. In Virginia, an individual practices law when: (1) he "undertake[s] for compensation, direct or indirect, to give advice or counsel to an entity or person in any manner involving the application of legal principles to facts;" (2) "select[s], draft[s] or complete[s] legal documents or agreements which affect the legal rights of an entity or person;" (3) "represent[s] another entity or person

3

before a tribunal;" or (4) "negotiate[s] the legal rights or responsibilities on behalf of another entity or person." *See id.*; *see also Commonwealth v. Jones & Robins*, 41 S.E.2d 720, 722–23 (Va. 1947). Foreign lawyers, such as Mr. Haysbert, are permitted, however, to engage in certain actions, to include "working as a paralegal or providing other administrative support under the direct supervision of a licensed attorney." Va. Sup. Ct. R. Part 6 § 1 at 3(N).

Given the revocation of Mr. Haysbert's *pro hac vice*, Mr. Haysbert is prohibited from the following as it relates to this case:

- appearing before,[1] or signing pleadings or other filings with the Court;

- giving advice or counsel to an entity or person in any matter involving the application of legal principles to facts;

- selecting, drafting, or completing legal documents or agreements;

- negotiating the legal rights or responsibilities on behalf of another entity or person.

As such, the Court has previously admonished both Plaintiff and Mr. Haysbert that he was not allowed to participate in this case as an attorney. *See Haysbert v. Bloomin' Brands, Inc., et al.*, No. 4:20-cv-121, ECF Nos. 321, 367, 379; *see also* ECF No. 39. And although Mr. Haysbert asserts that he is "mindful" of these limitations, he previously appeared on a meet and confer with opposing counsel and requested, on behalf of Plaintiff, that Defendants consent to a voluntary

---

[1]    In other contexts, courts have clarified what type of conduct should be characterized as "appearing" before the court, thus requiring a *pro hac vice* admission. The courts in those cases distinguish between attorneys who merely consulted in a case and those who actively participated in litigation. *See e.g.*, *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F. Supp. 2d 452, 461–69 (D.N.J. 2012); *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 448–52 (E.D. Pa. 2014); *Clayton v. City of Oxford*, No. 3:21-cv-174, 2021 WL 4699182, at *1–3 (N.D. Miss. Oct. 7, 2021). Included among the factors that courts look to are whether the attorney had direct client contact, contact with opposing counsel, signed or drafted portions of pleadings, or acted outside of any supervision or management of an attorney admitted to appear. *See New Century Found. v. Robertson*, No. 3:18-cv-839, 2019 WL 6492901, at *5 (M.D. Tenn. Dec. 3, 2019).

dismissal. July Hr'g Tr. 35:4–9. In the Court's view, this conduct describes the negotiation of the legal rights of another person. Similarly, consulting with a retained expert to modify an expert report appears to involve providing "advice or counsel" to a "person in any matter involving the application of legal principles to facts." Va. Sup. Ct. R. Part 6 § 1. The Court reiterates its order that Mr. Haysbert may not participate in this matter *in the capacity of an attorney*. The Court interprets that guidance to be consistent with the guidance provided above but will also address some of Plaintiff's additional arguments.

Although not discussed or raised by Plaintiff, the Rules of the Supreme Court of Virginia provide that a foreign attorney may "[w]ork as a paralegal or provid[e] other administrative support *under the direct supervision of a licensed attorney*." *Id.* at 3(N) (emphasis added). Although other exceptions permit the practice of law, this exception (permitting paralegal and administrative work) does not. *Id.* The application of this exception also requires the direct supervision of the foreign attorney by a licensed attorney. The reason for such a rule is apparent—the supervision of a licensed attorney allows the Court and opposing counsel to easily identify the individual responsible not only for the case but also for ensuring that the case is litigated in accordance with the Court's rules. The Court has concerns over whether Mr. Haysbert will heed the parameters of this exception, however, the Court finds that Mr. Haysbert could assist current counsel under this exception by providing paralegal or other administrative support under the direct supervision of current counsel.

Plaintiff argues that revocation of Mr. Haysbert's *pro hac vice* "cannot, and should[] not be construed as a limitation on his right to interact with the Plaintiff, experts, or current counsel." Mot. at 5. This is a strawman. Mr. Haysbert is not prohibited from interacting with Plaintiff, experts, or current counsel in the manner that any layperson could do so. But his actions are limited

in this case as a result of the revocation of his *pro hac vice* status and the prohibition on the unauthorized practice of law. That is the distinguishing line.

### III. CONCLUSION

The Court expects Mr. Haysbert to heed its repeated orders that he may not participate in this matter as an attorney as participation in this litigation would amount to appearing before the Court in violation of the revocation of his *pro hac vice* status. As explained above, the Court cannot discern any inconsistencies between its prior comments and its Order here. Accordingly, the Court denies Plaintiff's motion to rescind prior orders. For the reasons stated above, Plaintiff's Motion to Clarify or Rescind, ECF No. 40, is GRANTED IN PART and DENIED IN PART. The Clerk is DIRECTED to send an electronic copy of this Order to all counsel of record.

IT IS SO ORDERED.

_____/s/_____
Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: February 19, 2025

# EXHIBIT Z

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JOANN WRIGHT HAYSBERT,**

        **Plaintiff,**

**v.**                                    **Civil Action No.: 4:24-CV-87**

**OUTBACK STEAKHOUSE OF**
**FLORIDA, LLC, AND**
**BLOOMIN' BRANDS, INC. et al.,**

        **Defendants.**

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER
ORDER EXCLUDING PLAINTIFF'S EXPERT WITNESS**

COMES NOW plaintiff Joann Wright Haysbert, by counsel, and for her Memorandum in

Support of its Motion to Reconsider the Court's sanctions excluding Plaintiff's designated expert

witness Aaron Filler, M.D. ("Dr. Filler"), states as follows:

**Standard of Review**

A motion to reconsider an interlocutory order is governed by Fed. R. Civ. P. 54(b). "[A]ny

order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and

all the parties' rights and liabilities." See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 12 (1983); *Nanendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *Carlson v. Boston*

*Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

The District Court's discretion to reconsider and modify interlocutory orders is "broad" but

"not limitless". *Carlson*, 856 F.3d at 325.   A court "may revise an interlocutory order under the

same circumstances in which it may depart from the law of the case", including to avoid "manifest

injustice". *Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *see also Steele v. Goodman*, 2023 U.S. Dist. LEXIS 101353, *5 (E.D. Va. 2023)).

## Plaintiff Seeks Limited Reconsideration

Plaintiff files this Motion to Reconsider the Court's decision to wholly exclude Dr. Filler as a sanction under Fed. R. Civ. P. 37(c)(1) for failure to timely supplement discovery and expert disclosures. The instant motion does not seek reconsideration of the other rulings made by the Court, and specifically does not seek reconsideration of the sanction striking Dr. Fillers 2024 Evaluation Report.

## Relevant Procedural History

The procedural history is extensive, covering the present case ("Present Case") and prior case of *Haysbert v. Outback Steakhouse of Florida, LLC*, 4:20-cv-00121-RBS-RJK ("Prior Case"). For present purposes, the most critical procedural waypoints may be summarized as follows:[1]

1.     On June 21, 2021, Plaintiff timely served an expert disclosure in the Prior Case pursuant to Fed. R. Civ. P. 26(a)(2) designating (among other expert witnesses) Dr. Filler (the "Initial Expert Designation").

2.     On August 8, 2023, the parties commenced a jury trial in the Prior Case. Dr. Filler testified before the jury on August 10, 2023. On August 14, 2023, the Court considered and orally granted Defendants'[2] motion for a mistrial and thereafter confirmed the same by written memorandum order (Prior ECF 315).

3.     The Court further granted Defendants' motion to revoke the *pro hac vice* admission

---

[1] Citations to the Present Case will appear as (ECF __ ); citations to the Prior Case will appear as (Prior ECF ___).

[2] Defendant Bloomin' Brands, Inc. was dismissed as a party defendant effective January 24, 2025. However, most of the references in this Memorandum relate to past events during which such party was joined and participating in the action. As such, for convenience Plaintiff uses the capitalized plural term "Defendants" to refer collectively to former party defendant Bloomin' Brands, Inc., and remaining defendant Outback Steakhouse of Florida, LLC, except where context requires otherwise.

of Plaintiff's lead trial counsel Nazareth Haysbert, Esq., and entered a written memorandum order regarding the same (Prior ECF 315). On October 12, 2023, the Court granted leave for Plaintiff's local counsel Adam McKelvey, Esq., to withdraw as counsel from the Prior Case (Prior ECF 333). Thereafter, Plaintiff proceeded *pro se* from October 12, 2023, through September 9, 2024, when Mary M. Morgan, Esq., of the law firm of Parker, Pollard, Wilton & Peaden, P.C. ("Current Counsel"), noted her appearance. (ECF 16).

    4.    The following occurred during Plaintiff's time as a *pro se* litigant:

    a.    On January 3, 2024 Plaintiff sought medical treatment from Dr. Filler.[3]  On such date, Dr. Filler conducted a telemedicine examination of Plaintiff and prepared a written "New Patient Evaluation" report (hereafter the "2024 Evaluation Report").

    b.    On January 11, 2024, the Court entered a voluntary dismissal of the Prior Case with conditions, terminating the Prior Case ("Voluntary Dismissal").  (Prior ECF 357).

    c.    On June 11, 2024, Plaintiff filed her Complaint initiating the Present Case (ECF 1).

    5.    On January 10, 2025, Current Counsel e-mailed Defendants' counsel a copy of the 2024 Evaluation Report.  As previously represented to the Court, Current Counsel did not review or obtain a copy of the 2024 Evaluation Report until five (5) business days prior to providing the same to Defendants' counsel.  Transcript of 1/16/2025 Final Pretrial Conference [hereinafter "Tr."] 32:8-14.

---

[3] Plaintiff's previous treating physician, Dr. Lind Chinnery, died during the pendency of the Prior Case.

**Defense Objections and Motion in Limine**

On December 16, 2024 (after being notified of Dr. Filler's additional treatment of Plaintiff, but before receiving the 2024 Evaluation Report), Defendants filed an omnibus Motion in Limine which included an "Eighth Motion in Limine" seeking to exclude Dr. Filler from testifying at trial (the "Motion in Limine") (ECF 32).

On January 14, 2025 (after receiving the 2024 Evaluation Report), Defendants filed their "Objections to Plaintiff's Supplemental Expert Disclosures and Request for Relief, Including Striking Plaintiffs' Experts", seeking to exclude both the 2024 Evaluation Report and Dr. Filler. (the "Defense Objections") (ECF 36).

**Court's Rulings Excluding Dr. Filler**

On January 16, 2025, the Court made an oral ruling granting Defendants' request to strike Dr. Filler as a trial witness. The Court indicated that Dr. Filler was excluded from trial as a sanction under Fed. R. Civ. P. 37. Tr. 70:12-15. The Court confirmed its oral ruling in its Final Pretrial Order by noting that: "Dr. Filler is excluded from trial under Fed. R. Civ. P. 37(c)(1) for Plaintiff's failure to timely supplement." Final Pretrial Order sec. A(12) (ECF 41). Finally, the Court entered an Order granting in part and denying in part the Motions in Limine, but expressly granting Defendants' eighth Motion in Limine and striking Dr. Filler as a trial witness. Order of 1/24/2025, sec. 6 and n.3 (ECF 42).

**Argument**

A.    The "Automatic Sanction" of Fed. R. Civ. P. 37(c) is Most Appropriate in this Context and the "Alternative Sanctions" are Inappropriate

Fed. R. Civ. P. 37(c)(1) authorizes the Court to issue sanctions if a party fails to meet its obligations to supplement expert reports under Fed. R. Civ. P. 26(e). Rule 37(c)(1) provides in relevant part that:

> If a party fails to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a hearing,
> or at a trial, unless the failure was substantially justified or is
> harmless.

The Fourth Circuit has referred to such limited exclusion of non-disclosed evidence as the "automatic sanction" of Fed. R. Civ. P. 37(c)(1).  *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003).

The "automatic sanction" is commonly awarded by this Court as a matter of course. *See, e.g., Disney Enterprises, Inc. v. Kappos*, 923 F. Supp. 2d 788, 796 (E.D. Va. 2013); *East West, LLC v. Rahman*, 2012 WL 4105129, at *7 (E.D. Va. Sept. 17, 2012); *Rambus, Inc. v. Infineon Technologies AG*, 145 F. Supp. 2d 721, 735 (E.D. Va. 2001.  See also *SSS Enters., Inc. v. Nova Petroleum Realty, LLC*, 533 F. App'x 321, 324 (4th Cir. 2013) (unpublished) (upholding the district court's exclusion of untimely filed expert reports); *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (unpublished) (same).

Fed. R. Civ. P. 37(c)(1) further provides that the Court may award other forms of sanctions. However, such "alternative sanctions" are not granted as a simple matter of course, and in the seminal *Southern States* case, the Fourth Circuit cautioned that:

> The Rule 37(c) advisory committee notes emphasize that the
> automatic sanction of exclusion provides a strong inducement for
> disclosure of material that the disclosing party would expect to use
> as evidence.  The alternative sanctions referenced in the rule are
> primarily intended to apply when a party fails to disclose evidence
> helpful to an opposing party.  This is because preclusion of evidence
> is not an effective incentive to compel disclosure of information
> that, being supportive of the position of the opposing party, might
> advantageously be concealed by the disclosing party.

*Southern States*, 318 F.3d at 595 n.2 (4th Cir. 2003) (internal quotations and citations omitted) (citing *Moore's Federal Practice* §§ 37.69[2][b], 37.61 (3d ed. 2002); Fed. R. Civ. P.37(c) advisory committee note (1993)).

5

356

In the present case, there has been no suggestion that 2024 Evaluation Report contains information "helpful" to the Defendants.  The Court characterized the 2024 Evaluation Report as "very beneficial to plaintiff and detrimental to defense...".  Tr. 39:2-3.  As such, the general rule enunciated in *Southern States* suggests that the "automatic sanction" of excluding the 2024 Evaluation Report is sufficient, and that the broader "alternative sanction" of striking Dr. Filler entirely is unwarranted.

B.  <u>The Discovery Issues in Question are Unique and Complex, and Plaintiff's Actions were Understandable and Taken in Good Faith.</u>

In the Motion in Limine, filed in December of 2024, the Defendants complained that:

> ... counsel for Plaintiff indicated that Dr. Filler has even treated Plaintiff since last year's trial, however, Plaintiff has never sought to amend her designation, provide any treatment records, or provide literally any information other than a brief mention in a phone call. Therefore, Defendants' [sic] object to any facts or opinions not properly designated by Plaintiff.

Motion in Limine ¶ 6 (ECF 32).  Defendants' initial argument is a textbook objection to a failure to supplement and accompanying request to exclude as an automatic sanction under Fed. R. Civ. P. 37(c)(1).  Defendants complained that Plaintiff failed to make a timely supplementation of the Initial Expert Designation as required by Fed. R. Civ. P. 26(e) and argued the Court should exclude Plaintiff from introducing or relying on any facts or opinions "not properly designated" under the Initial Expert Designations submitted in June of 2021.

However, by January 14, 2025 (following Plaintiffs' production of the 2024 Evaluation Report), the Defendants' argument had effectively reversed.  Rather than argue that the Court should sanction the Plaintiff for <u>failing to supplement</u>, Defendants argued precisely the opposite – asserting instead that Plaintiff's very <u>act of supplementing</u> violated the Court's Voluntary Dismissal Order (Prior ECF 357).  Specifically, Defendants asserted that:

6

> Plaintiff's counsel has represented that these new opinions of Dr. Filler and Mr. Avrit are intended to "supplement" their prior opinions. However, supplementation is only required when a party "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Here, Plaintiff has not articulated how Dr. Filler's and Mr. Avrit's reports were "incomplete" or "incorrect." Rather, she is clearly bolstering their opinions with information that they easily could have had access to in 2021.

> &ast;   &ast;   &ast;

> Plaintiff is inappropriately characterizing these new reports as "supplemental" in hopes to bring it within Rule 26(e), however, it is clear that these are, in fact, new opinions.

> &ast;   &ast;   &ast;

> Thus, as demonstrated above, this late-attempt to "supplement" is clearly as a result of Plaintiff's gamesmanship.

Defense Objections at 6-7 (ECF 36).

Defendants' Motion in Limine and Defense Objections are logically inconsistent. Both legal contentions cannot be simultaneously valid. If the Voluntary Dismissal Order prohibited all supplementation of expert reports and designations, as Defendants contended in their written Defense Objections and at oral argument, then the mere fact that Plaintiff sought to supplement by producing the 2024 Evaluation Report would be a violation of that Order, and sanctionable as a violation of the Voluntary Dismissal Order. However, if that was the case, Plaintiff could not possibly be in violation of Fed. R. Civ. P. 26(e), since the Voluntary Dismissal Order's prohibitions would have overridden the Rule 26(e) obligation to supplement, and accordingly Plaintiff could not be subject to sanctions under Fed. R. Civ. P. 27(c)(1), for failing to supplement the Initial Expert Report in a timely fashion.

That inherent tension is even more pronounced given that the 2024 Evaluation Report is not, by any reasonable stretch of imagination, composed on a form that suggests it was intended

as a formal expert witness designation (supplemental or otherwise).  It purports on its face to be a

new patient evaluation form and bears few of the benchmark requirements contemplated by Fed.

R. Civ. P. 26(a)(2).[4]  It is precisely what it appears to be – a new patient evaluation report prepared

by a treating physician upon his initial examination of a new patient.

The Court and counsel for both parties grappled extensively with this conundrum at the

Pretrial Conference with the Court ultimately concluding:

> I think Ms. Morgan is likely right about her duty to supplement. The
> issue here is that we are at the final pretrial conference. These
> documents, the supplements themselves, were drafted a year ago.
> And they are, in my view, especially more Mr. Avrit's than Dr.
> Filler's, not really supplements to begin with, but shoring up of
> opinions in a way that's very beneficial to plaintiff and detrimental
> to defense, and the problem is, is that it just would be fundamentally
> unfair to the defendants to have to suddenly deal with these new
> opinions, the facts upon which they're based, without an opportunity
> to have a new opportunity to depose these witnesses, to investigate
> the claims that they have made, to look behind the opinions
> themselves.
>
> And so, I can recognize I think that, Ms. Morgan, you may have
> been in a bit of a tight spot regarding what to do with them. I think,
> like I said, you likely probably did have to supplement, but that's a
> separate issue from whether or not those opinions reflected in the
> supplemental reports should come into evidence at trial.

Tr. 38:20 – 39:14.

The Court's statements above are consistent with its written rulings.  The Court ultimately

concluded that while the 2024 Evaluation Report defies easy categorization as a supplement expert

designation, Plaintiff had an obligation to supplement by producing the report to Defendants'

counsel.  Accordingly, the Court sanctioned Plaintiff under Fed. R. Civ. P. 37(c)(1) for failing to

promptly supplement the Initial Expert Designation under Fed. R. Civ. P. 26(e).  However, the

---

[4] *E.g.*, a description of expert opinions to be offered, excerpts of the expert's curriculum vitae, a catalog and description
of the tests, data and treatises upon which the opinions are based, etc.

Court's rulings necessarily stand as an unequivocal rejection of Defendants' interpretation that the Voluntary Dismissal Order prohibited supplementation of any kind.

The above point may be esoteric on its own stead and is not directly at issue in this Motion to Reconsider.  However, counsel describes the technical complexity above to advance a very simple proposition.  The procedural issues in this case are extremely complicated.

Teams of experienced counsel on both sides, all well-versed in the day-to-day practical operation of the Federal Rules of Civil Procedure, engaged in good faith in lengthy, detailed briefing, exposition and argument to the Court regarding the appropriate procedural framework to apply to these unique circumstances.  At the end of such arguments, the Court explicitly noted the inherent uncertainty faced by Plaintiff's Current Counsel, and then reached a conclusion which did not fully accord with the view of counsel for either party. Nothing about the circumstance or procedure surrounding the 2024 Evaluation Report was straightforward or legally certain.

Beginning in January of 2024, the Plaintiff faced a personal situation only tangentially related to her status as a litigant in the Eastern District of Virginia. Her prior neurologist, Dr. Chinnery, had unexpectedly died, and she required further medical treatment. It was natural, and not in any way improper, for Plaintiff to seek treatment from Dr. Filler, a renowned neurosurgeon who already possessed detailed information regarding her injuries and condition. There was nothing improper or underhanded in Plaintiff seeking medical treatment from Dr. Filler.

There is absolutely no evidence in the record as to when Plaintiff actually received a copy of the 2024 Evaluation Report prepared by Dr. Filler. However, even if the Court presumes that Dr. Filler provided his new patient intake report to his patient on the very day of the examination (January 3, 2024), Plaintiff would have been in possession of such report for less than a week

before the Court granted the Voluntary Dismissal Order (Prior ECF 357).[5] The Voluntary Dismissal Order ended the Prior Case and necessarily ended any ongoing obligation of either party to supplement discovery and expert designations.

Once Plaintiff filed the present case on June 11, 2024, her obligation to supplement was presumably revived.[6] However, that technical point was far from clear, and Plaintiff, as a *pro se* litigant, should be afforded some grace in not immediately recognizing the renewed obligation (which was not explicitly reflected in any written order of the Court in the present case). Plaintiff continued in her *pro se* capacity for an additional three (3) months, until Current Counsel noted her appearance on September 9, 2024.

Once Current Counsel took over management of the case, she faced a daunting task of working through thousands of pages of documents, pleadings, witness designations, trial transcripts and deposition transcripts.[7] In December of 2024, Current Counsel learned that Dr. Filler examined and medically treated Plaintiff subsequent to the June 2021 expert designation. Current Counsel promptly notified Defendants' counsel by telephone (as Defendants have

---

[5] Oral argument on the motion for voluntary dismissal was conducted January 8, 2024, at which time the Court made an oral ruling. The accompanying Voluntary Dismissal Order was entered on January 11, 2024.

[6] The Court has concluded that the obligation to supplement discovery and designations from the Prior Case was re-invigorated when the present case was filed. However, that conclusion is not inevitable, and Defendants' arguments appear to assert precisely the opposite—that the close of discovery required by the Voluntary Dismissal Order functioned as a "standstill" Order—freezing all discovery and supplementation. *See, e.g.* Tr. 47:11-23.

[7] As the Court is aware, Current Counsel noted an appearance in the Prior Case on October 10, 2023, as counsel for interested party Nazareth M. Haysbert, Esq., former counsel for plaintiff. Current Counsel's representation at that time regarded a defense of Mr. Haysbert in connection with motions for sanctions filed by Defendants. (Prior ECF 326). During such representation, Current Counsel obtained background information about the Prior Case and gained familiarity with prior procedural history. As timely disclosed pursuant to Local Rule 83, Current Counsel also consulted with Plaintiff in connection with the filing of Plaintiff's Complaint in this present case on June of 2024.

However, the subject of Current Counsel's representation at the earlier referenced times focused on defense of Mr. Haysbert and his personal actions/omissions in the Prior Case, primarily the specific trial conduct referenced in the Motion for Sanctions. Current Counsel was not responsible for and did not undertake to review and familiarize herself with the underlying evidence, Rule 26 disclosures and prior discovery production in this case until accepting retention as counsel for Plaintiff in September of 2024.

acknowledged in the Motion in Limine filed December 16, 2024). (ECF 36). In early January of 2025 Current Counsel first obtained a copy of the 2024 Evaluation Report and produced the same to Defendants within five (5) business days.  Notably, this is not a situation where Defendants identified or inferred the existence of missing discovery materials, and compelled production or obtained information via other means.  Plaintiff ultimately produced the information in question voluntarily and on her, and her counsel's, own initiative.  Nothing in the above timeline suggests intentional delay or "gamesmanship" by Plaintiff or her counsel.

The Defendants are absolutely correct that under the Fourth Circuit's prevailing interpretation of Fed. R. Civ. P. 37(c)(1), bad faith, callous disregard and/or other egregious conduct is not a prerequisite for sanctions.  *Southern States*, 318 F.3d at 595.  However, the footnotes in that seminal case are equally clear that in general, the appropriate sanction for failure to supplement is the "automatic sanction" of excluding the material that was not produced in a timely fashion. The "alternative sanctions" (including the sanctions more generally prescribed by Fed. R. Civ. P. 37(b)(2)(A)) are generally reserved for situations where the non-disclosing party has attempted to conceal materials helpful to the opposing side. Since that factor is not present in this case, it follows that this Court should have some other grounds on which to choose to issue the "alternative sanctions" in a deviation from the general guidance provided in *Southern States* (and by the advisory committee notes cited in such decision).

In contexts other than the specific sub-provisions of Fed. R. Civ. P. 37(c)(1)(A), the Fourth Circuit has articulated a familiar standard governing discovery sanctions under Rule 37.  Given that the "alternative sanctions" awarded by this Court under Fed. R. Civ. P. 37(c)(1)(A) are authorized via the statutory incorporation of the sanctions otherwise outlined in Fed. R. Civ. P. 37(b)(2)(A)(ii), it is appropriate to consider the Fourth Circuit's more generalized Rule 37

sanctions standards as well.

     *Anderson v. Foundation for Advancement, Education and Employment of American Indians*, sets out the prevailing, four-part test for general Rule 37 sanctions. That test considers:

> (1)    whether the non-complying party acted in bad faith;
>
> (2)    the amount of prejudice that noncompliance caused the adversary;
>
> (3)    the need for deterrence of the particular sort of non-compliance; and
>
> (4)    whether less drastic sanctions would have been effective.

155 F.3d 500, 504 (4th Cir. 1998). *See also Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 779-780 (E.D. Va. 2017); *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 200 (E.D. Va. 2016). The present case fails to meet any of the four *Anderson* factors.

     As detailed above, Plaintiff did not remotely act in bad faith. There was nothing improper in Plaintiff seeking medical treatment from the most qualified physician available to her. As revealed by the detailed timeline discussed above, it is impossible to conclude that Plaintiff acted in subjective bad faith by not promptly producing the 2024 Evaluation Report, in light of the unusual circumstances and byzantine procedural complexity surrounding the issue.

     Despite their somewhat hyperbolic protestations, Defendants have not suffered any prejudice. The Court's award of the automatic sanctions of Fed. R. Civ. P. 27(c)(1) mean that Defendants do not need to expend energy and resources evaluating and rebutting any "new opinions" which may be enmeshed in Dr. Filler's new patient evaluation report. To the contrary, as matters stand Defendants have been the beneficiaries of a tremendous windfall. Plaintiff's principal expert witness, who Defendants fought unsuccessfully to prevent from testifying in the Prior Case, has been summarily stricken less than 30 days before trial. The fact that Plaintiff sought medical treatment in January of 2024 has not disadvantaged the Defendants in the slightest, and in

12

fact represents the greatest stroke of luck afforded them in this long and contentious litigation.

The circumstances of this case are utterly unique. As a practical matter any deterrent effect on similarly-situated parties before this Court in the future is negligible, at best—due to the fact that it is unlikely that there will be very many "similarly-situated" parties who find themselves plagued by the same unique challenges posed by this specific case.

Finally, and most importantly, there are plainly less drastic alternatives which do not fundamentally deprive Plaintiff of her ability to proceed to trial. The first, and obvious, alternative is to simply issue the "automatic sanction" provided for in Fed. R. Civ. P. 37(c)(1) and to allow that sanction to stand alone. Such remedy is more than sufficient to protect Defendants against the prejudice of being forced to address "new" evidence and opinions at a late stage of litigation. The 2024 Evaluation Report is only helpful to Plaintiff, and its exclusion is a pure sanction against Plaintiff which flows to Defendants' benefit. Secondly, and as offered by Plaintiff at the pretrial conference, since Dr. Filler has already testified on direct and cross examination in the Prior Case, the Court could permit Plaintiff to admit that prior testimony (complete with Defendants' preserved objections) and otherwise exclude Dr. Filler from testifying further. To the extent that Defendants' argument on "taint" has any merit (discussed hereafter), such sanction would fully and decisively remedy the issue.

Under the standards articulated in *Southern States*, Plaintiff's indisputable good faith does not absolutely shield her from sanctions under Fed. R. Civ. P. 37(c)(1). However, even if subjective good faith is not an absolute procedural safe harbor, it is still relevant. It is manifestly unjust for this Court to not fully consider Plaintiff's subjective good faith and/or lack of subjective culpability in the context of awarding "alternative sanctions" under Fed. R. Civ. P. 37(c)(1)(A).

C.   <u>Defendants' Argument Regarding "Taint" is Completely Without Precedent or Support;
Any Actual "Taint" is Easily Remedied</u>

Defendants argued in both the Defense Objections (ECF 36) and at oral argument that Dr. Filler was "tainted" by the fact that he examined Plaintiff as a treating physician in January of 2024, several years after the Initial Expert Designation, and more than thirteen (13) months before the trial date in this current case. *See, e.g.*, Defense Objections at 2, 10 (ECF 36); Tr. 40:19-41:1; 42:13-21; 44:2-6; 53:5-15; 68:11-21. Defendants' argument is essentially that Dr. Filler will be simply unable to compartmentalize his knowledge and will inevitably offer opinions based upon the excluded 2024 Evaluation Report. The "taint" argument is, arguably, the central pillar of Defendants' request to exclude Dr. Filler and received the bulk of counsel's attention at the January 16, 2025, oral argument. However, Defendants have failed to identify any case law or other authority in support of this argument. Plaintiff's counsel has likewise been unable to find any precedent which would support the idea that a designated expert is irrevocably "tainted" if the expert comes into possession of additional information following formal designation.

Lack of precedent aside, the proposition is logically unsustainable. The entire point of early expert deadlines is to allow the opposition reasonable time to consider the opinions proffered and to develop defenses and counter-expert testimony. There is necessarily a significant time lapse between the designation deadline and trial. True experts, leaders in their field who remain at the top of their professions by constant study and consideration of new developments their respective industry, will invariably come into contact with new information, new concepts and new methods which may apply to their prior analysis. Specific to this case, treating physicians are definitively not barred from serving as expert witnesses, and treating physicians routinely continue to examine and treat their patients through the date of trial. The "taint" the Defendants complain about so vociferously is not unique to this case; it is necessarily endemic.

14

365

The "automatic sanctions" of Fed. R. Civ. P. 37(c)(1) would exclude the substance of the 2024 Evaluation Report and would limit Dr. Filler's testimony to the opinions and evidence disclosed in June of 2021. If his trial testimony is supported by the data properly disclosed in 2021, it can be admitted without any prejudice to Defendants (as it was properly admitted at trial in the Prior Case). If Dr. Filler attempts to introduce an opinion that was not disclosed in 2021, and/or is unsupported by the facts and reports provided in the initial designation, it will be a simple matter for Defendants' counsel to make the appropriate objections, and for the Court to make the appropriate rulings, at the time of trial.

Any expert witness, no matter how experienced or well-prepped, is inherently capable of straying outside of the sharply delineated (and inherently artificial) lines of the expert designation crafted by their client's counsel. Any lay witness, no matter how carefully they are questioned, is capable of blurting out information which they "know to be true", but which is inadmissible as hearsay or for some other reason. It is human nature to respond to questions based on the totality of one's knowledge, and compartmentalization is inherently artificial. However, that is an artificiality that judges, juries, lawyers, expert witnesses, and lay witnesses alike grapple with at every point in trial. Of all people, expert witnesses are in the best position to compartmentalize. They are the one class of people in the litigation process who are explicitly permitted to speculate and testify regarding scenarios created and altered by artificially constructed hypotheticals. Whatever additional insight Dr. Filler may have obtained (and personally retained in his memory) by undertaking a telemedicine consultation with the Plaintiff thirteen (13) months before trial; it is hardly likely to be the kind of revelation which would obliterate his ability to properly restrain his expert testimony to the precise data properly disclosed in his initial reports.

15

366

## Conclusion

The ultimate question is whether the sanctions issued against Joann Haysbert are commensurate with the violations she was found to have committed; and whether those sanctions comport with the due process that both Plaintiff and Defendants are entitled to. Stated otherwise, do the sanctions reflect a manifest justice, or does the harshness of the sanctions outweigh the nature of the offense and the prejudice inflicted on the Defendants?

Plaintiff respectfully contends that the Court's decision to entirely exclude Dr. Filler is not an appropriate or proportional sanction. Plaintiff's initial failure to provide a copy of the 2024 Evaluation Report was subjectively innocent. Moreover, assuming that the automatic sanctions are retained, and that the 2024 Evaluation Report is not admitted into evidence or otherwise proffered as part of Dr. Fillers testimony, the omission is objectively inconsequential to the Defendants' preparation of this case and they will have suffered no prejudice as a result of the matter.

Plaintiff respectfully requests that this Court grant reconsideration of its issuance of sanctions, and that the Court modify the same to exclude only the substance of the January 3, 2024, Evaluation Report itself, and that the Court otherwise permit Dr. Filler to testify and/or to admit his previous testimony into evidence.

Respectfully submitted,

Date: January 29, 2025

  /s/ Trevor B. Reid
Mary T. Morgan, Esq. (VSB #44955)
Trevor B. Reid, Esq. (VSB #77233)
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
Email: treid@parkerpollard.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January 2025, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

> John D. McGavin, Esq.
> McGavin, Boyce, Bardot, Thorsen & Katz, P.C.
> 9990 Fairfax Boulevard, Suite 400
> Fairfax, Virginia 22030
> jmcgavin@mbbtklaw.com
> *Counsel for Defendants*

    /s/ Trevor B. Reid
Mary T. Morgan, Esq. (VSB #44955)
Trevor B. Reid, Esq. (VSB #77233)
Parker Pollard Wilton & Peaden
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
Email: treid@parkerpollard.com

4918-8983-4260, v. 3

# EXHIBIT AA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT,

     Plaintiff,

     v.                              Civil Action No. 4:24-cv-87

OUTBACK STEAKHOUSE OF
FLORIDA, LLC,

     Defendant.

**<u>MEMORANDUM ORDER</u>**

This matter is before the Court on Plaintiff, Joann Haysbert's Motion to Reconsider Order Excluding Plaintiff's Expert Witness. Mot., ECF No. 43. For the reasons stated below, Haysbert's Motion, ECF No. 43, is DENIED.

**I. BACKGROUND**

During the previous iteration of this case, Haysbert disclosed Dr. Aaron Filler as an expert witness. Mem. Supp. at 2, ECF No. 44. Dr. Filler subsequently testified at trial on August 10, 2023. *See Haysbert v. Bloomin' Brands, et al.*, 4:20-cv-121, ECF No. 319 at 408. Ultimately, that trial ended in a mistrial on August 14, 2023, and Haysbert's previous counsel's *pro hac vice* admission was revoked. *Id.* at ECF No. 315. Haysbert filed a Motion for Voluntary Dismissal on December 18, 2023. *Id.* at ECF No. 349. The Court granted Haysbert's Motion for Voluntary Dismissal in January 2024 on the condition that if Haysbert re-filed her Complaint the case would be procedurally in the same posture as the previous case. *Id.* at ECF No. 357. The Court's Order explicitly stated that "[i]f Plaintiff chooses to refile this case, the parties may not engage in

370

additional discovery. . . [t]he parties are therefore limited, for example, to the expert designations

. . . and exhibits disclosed." *Id.* Haysbert re-filed her Complaint on June 11, 2024. ECF No. 1.[1]

The Court conducted an Initial Pretrial Conference in September 2024 and set trial to begin

on February 25, 2025. ECF No. 19. In the Court's Scheduling Order, it again noted that additional

discovery was not permitted and that the matter was "procedurally in the same position" as the

previous case. ECF No. 22. On December 16, 2024, the parties filed various updated and renewed

motions *in limine* and trial briefs, *see* ECF Nos. 27–33, and on January 9, 2025, a proposed final

pretrial order containing witness and exhibit lists. ECF No. 34. On January 10, 2025, Haysbert

emailed a supplemental expert designation ("2024 Evaluation Report") for Dr. Filler to Defendant

Outback Steakhouse of Florida, LLC ("Outback") and the Court. *See* ECF No. 36-2 at 2–3. This

supplemental report, dated January 3, 2024, disclosed that Haysbert was evaluated in a

telemedicine examination by Dr. Filler over one year prior to the disclosure. *Id.*; *see also* Mem.

Supp. at 3.[2] The report, titled New Patient Evaluation, contains a summary of historical

information provided by Haysbert, reports on Haysbert's completion of questionnaires or testing,

summarizes Dr. Filler's review of newly received records, and ends with Dr. Filler's impression

and medical plan.[3] In addition, the report concludes with the opinion, among others, that "[i]t is

my impression to a reasonable degree of medical certainty that the fall that she suffered on May

23, 2028, was due to extrinsic factors such as she described a slipperiness on the floor and that it

---

[1]     Haysbert proceeded *pro se* until September 9, 2024. *See Haysbert v. Bloomin' Brands, et al.*, 4:20-cv-121 at ECF No. 333; *see also* ECF No. 16 (noting the appearance of current counsel).

[2]     Haysbert also provided a supplemental expert report for a second expert witness, Mr. Avrit, that was dated January 10, 2025, but prepared on February 8, 2024. FPTC Tr. 37: 3–38:9, ECF No. 39.

[3]     The report was not filed in the docket, however, the Court received a copy of it via e-mail and has reviewed it in its entirety.

did cause sufficient impact to have produced post concussive symptoms." Haysbert's counsel represents that she received a copy of the 2024 Evaluation Report only five (5) days before providing it to the Court and Outback. Mem. Supp. at 3; *see* FPTC Tr. 32:8–14, ECF No. 39.

Following this supplementation, Outback sought to exclude Dr. Filler's testimony, initially pursuant to a motion *in limine* and then in a Notice filed after receipt of the 2024 Evaluation Report. ECF Nos. 32, 36. At the Final Pretrial Conference, the Court orally excluded Dr. Filler as a trial witness under Federal Rule of Civil Procedure 37. FPTC Tr. 70:12–24; *see also* ECF Nos. 41, 42. Haysbert has now filed a Motion to reconsider under Federal Rule of Civil Procedure 54(b). Mot. at 2. Outback has responded to Haysbert's Motion, Resp., ECF No. 45, and Haysbert replied. Reply, ECF No. 46. For the reasons stated below, Haysbert's Motion, ECF No. 43, is DENIED.

## II. LEGAL STANDARD

Haysbert moves under Federal Rule of Civil Procedure 54(b) in requesting that the Court reconsider its Order excluding Dr. Filler. Federal Rule of Civil Procedure 54(b) provides that:

> [A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). A "court may revise an interlocutory order" where there has been: "(1) a subsequent trial producing substantially different evidence, (2) a change in applicable law, or (3) clear error causing manifest injustice." *U.S. Tobacco Cooperative Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (citation omitted). Here, Haysbert argues that the Court's order will cause manifest injustice—arguing that "if such sanctions are not modified, they will work a manifest injustice and will functionally deprive Plaintiff of fundamental due process and her right to bring her claims to the Court and jury for adjudication on the merits." Mot. at 2. "A prior decision does not qualify [as clear error causing manifest injustice] by being just maybe or

3

probably wrong; it must" be wrong "with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (cleaned up).

### III. DISCUSSION

The Court excluded Dr. Filler under Federal Rule of Civil Procedure 37(c)(1) for Haysbert's failure to timely supplement Dr. Filler's expert report.[4] Under Rule 26(e), a party that has disclosed an expert "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e). Rule 37 provides that "[i]f a party fails to" supplement under Rule 26(e), "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)(C). In addition, the Court "may impose other appropriate sanctions" or an alternative sanction. Fed. R. Civ. P. 37(c)(1)(C). Rule 37 grants the Court vast discretion in selecting an appropriate sanction in a particular case. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In determining the appropriate sanctions under Rule 37, the Fourth Circuit has directed that a district court should consider: (1) whether the potentially sanctionable party engaged in bad faith; (2) "the amount of prejudice that noncompliance caused the adversary"; (3) the need for deterrence from noncompliance; and (4) whether less drastic sanctions would have been effective. *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998).

Here, the Court found that the exclusion of Dr. Filler was warranted given the egregiously untimely supplementation, particularly in light of the history of the case. As outlined above, the supplemental report was provided to the Court and Outback on the eve of the Final Pretrial

---

[4]    Defendant argues that Haysbert's supplementation violated the Court's Voluntary Dismissal Order. Although this point was argued extensively in the briefing, the Court does not address it here as the Court ultimately sanctioned Haysbert for failure to timely supplement.

Conference—nearly a year after the report was completed. FPTC Tr. 31:21–38:14, ECF No. 39. Haysbert argues that the complexity of this case's procedural history as well as her previous *pro se* status should mitigate any sanction for the failure to timely supplement. Mem. Supp. at 6–10. The Court is unconvinced. Haysbert surely was aware of the additional report given her attendance at the evaluation. And importantly, contrary to Haysbert's argument that the report was simply a new patient report wholly unrelated to the pending litigation, *see id.* at 7–8, the report reflects Dr. Filler's consideration of new records, new testing, and the drawing of new opinions related to causation. Haysbert, who ably represented herself for a period of months and was present at the first trial and numerous hearings thereafter, surely must have recognized the importance of this additional information. She was also aware of her obligation to comply with this Court's local rules as well as the federal rules of civil procedure and her *pro se* status did not excuse her from compliance. *See Spanos v. Vick*, 576 F. Supp. 3d 361, 366 (E.D. Va. 2021); *see Haysbert v. Bloomin' Brands, et al.*, No. 4:20-cv-121 at ECF Nos. 338, 339 at 5. And yet, many months and numerous events passed—including the re-filing of the Complaint (June 2024); Initial Pretrial Conference (September 2024); filing of updated motions *in limine*, including several related to Dr. Filler (December 2024); and filing of a proposed final pretrial order (January 2025)—without Haysbert advising Outback or the Court of the supplement. *See* ECF Nos. 1, 19, 30, 32, 34. Such conduct requires the sanction imposed here.

The Court also relied on the history of the case. This most recent failure to comply with discovery obligations followed a string of previous issues concerning discovery by Haysbert. *See, e.g.*, *Haysbert v. Bloomin' Brands et al.*, No. 4:20-cv-121 at ECF No. 168 (noting Haysbert's repeated motions for unwarranted discovery extensions); ECF No. 315 at 8 (discussing the failure to issue subpoenas to multiple witnesses); ECF No. 379 at 28–29 (same); FPTC Tr. 37: 3–38:9

(discussing a second untimely supplement submitted for Mr. Avrit). Under these circumstances, simply excluding the improperly obtained evidence would be unlikely to disincentivize future noncompliance. Rather, factors three and four of the *Anderson* test compelled the exclusion of Dr. Filler. Haysbert offers the alternatives of excluding only the supplemental report or allowing Haysbert to read in Dr. Filler's previous testimony—the Court finds that neither of these alternatives would effectively deter Haysbert or others from future noncompliance. Mem. Supp. at 13; *see Anderson*, 155 F.3d at 505 (finding that the sanction was warranted "both as a deterrent and as a last-resort sanction following [the sanctioned party's] continued disregard of prior warnings").

Although Haysbert acknowledges that the *Anderson* test applies here, she nevertheless argues that exclusion of Dr. Filler was not permitted under Rule 37 and that the Court erred in applying the *Anderson* factors. Mem. Supp. at 4–6, 12–13. Haysbert, citing *Southern States Rack and Fixture, Inc. v. Sherwin Williams Co*., argues that a sanction beyond exclusion of the supplemental report is prohibited as the Fourth Circuit has limited additional sanctions to situations where a party failed to disclose information "helpful" to the other party. 318 F.3d 592, 595 n.2 (4th Cir. 2003); *see* Mem. Supp. at 6. This argument is unavailing.

The language that Haysbert references does not establish that the Court is without discretion to impose sanctions beyond exclusion of the noncompliant supplement. As the Fourth Circuit has made clear, the Court retains vast discretion to impose sanctions of its choice under Rule 37. *Id.* at 595 ("We give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).") (citation omitted). The language relied on by Haysbert in *Southern States* merely noted that additional sanctions may be especially appropriate (i.e. "primarily intended") in scenarios where information not disclosed was "helpful to an *opposing*

party." *S. States Rack & Fixture, Inc.*, 318 F.3d at 595 n.2. The Fourth Circuit further noted that the policy driving additional sanctions for nondisclosure of evidence was the need to ensure ongoing compliance with the rules. *Id.* at 595 n.2. Such was the case here as the exclusion of Dr. Filler was warranted to properly incentivize future compliance with the rules.

Additionally, Haysbert's arguments concerning the application of the *Anderson* test fail to necessitate reconsideration. The Court sees no error in its application of the test or of Rule 37— accordingly, as there has been no clear error causing manifest injustice, the Court declines to reconsider its Order excluding Dr. Filler as a witness in the upcoming trial. *U.S. Tobacco Cooperative Inc*, 899 F.3d at 257 (citation omitted).

### III. CONCLUSION

For the reasons stated above, the Court declines to reconsider its Order excluding Dr. Filler as a witness in the upcoming trial, finding that such a sanction was warranted and that no clear error causing manifest injustice existed. Accordingly, Haysbert's Motion for Reconsideration, ECF No. 43, is DENIED.

The Clerk is DIRECTED to send an electronic copy of this Order to all counsel of record.

IT IS SO ORDERED.

_____
/s/
Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: February 19, 2025

# EXHIBIT BB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT,

        Plaintiff,

    v.                                     Civil Action No. 4:24cv87

OUTBACK STEAKHOUSE OF
FLORIDA, LLC, AND
BLOOMIN' BRANDS, INC.,

        Defendants.

**<u>ORDER</u>**

Several motions are pending before the Court: Defendant Bloomin' Brands, Inc.'s Motion to Dismiss, Mot. to Dismiss, ECF No. 7, and Plaintiff's Motion for Leave to File an Amended Complaint, Mot., ECF No. 11. Plaintiff has also filed an Opposition to Defendant Bloomin' Brands, Inc.'s Motion to Dismiss. Resp., ECF No. 10.

On July 24, 2024, Defendant Bloomin' Brands, Inc. filed a Motion to Dismiss. ECF No. 7. Previously, in a prior iteration of this case, the Court granted Plaintiff's Motion for Voluntary Dismissal and dismissed the action without prejudice subject to a number of conditions. *Haysbert v. Bloomin' Brands, Inc., et al.*, No. 4:20-cv-121, Order at 1-2, ECF No. 357 (Jan. 11, 2024). One of these conditions specified that if the case was refiled, "all existing pretrial determinations will be maintained. In other words, if the case is refiled, it will be procedurally in the same position as the instant case." *Id.* at 2. Defendant Bloomin' Brands, Inc. was not dismissed from the original case prior to Plaintiff's voluntary dismissal[1] and its Motion to Dismiss, if granted, would place the

---

[1]    In fact, Defendant Bloomin' Brands, Inc. never moved to be dismissed from the original case, even though the Complaint in the instant case is substantially the same as the one previously

case in a different procedural posture than the previous case. *See id.* Thus, Defendant is ORDERED to SHOW CAUSE as to why its Motion to Dismiss, ECF No.7, should not be struck.[2]

In response to Defendant's Motion to Dismiss, *pro se* Plaintiff filed two documents with the Court: Plaintiff's Opposition to Defendant Bloomin' Brands, Inc.'s Motion to Dismiss, Resp., ECF No. 10, and a Motion for Leave to File an Amended Complaint, Mot., ECF No. 11. Pursuant to Rule 83.1(N) of the Local Civil Rules for the United States District Court for the Eastern District of Virginia, Plaintiff certified that both the Response and the Motion were prepared with the assistance of attorney Mary T. Morgan. *See* Resp. at 3; *see also* Mot. at 5. The Local Rule provides:

> Any attorney who prepares any document that is to be filed in this Court by a person who is known by the attorney . . . to be proceeding *pro se* shall be considered to have entered an appearance in the proceeding in which such document is filed and shall be subject to all rules that govern attorneys who have formally appeared in the proceeding.

E.D. Va. Loc. Civ. R. 83.1(N)(1).

The Court previously advised Plaintiff, and the attorney assisting her, of the requirements of Rule 83.1(N) and noted that "Plaintiff has twice submitted documents to the Court without the attorney entering an appearance, and Plaintiff and the assisting attorney are cautioned that future compliance with the rule is expected." *Haysbert v. Bloomin' Brands, Inc., et al.*, No. 4:20-cv-121, Order at 5 n.2, ECF No. 365 (Apr. 19, 2024). Despite this admonishment, Plaintiff has continued

---

filed. *Compare* Compl., ECF No. 1, *with Haysbert v. Bloomin' Brands, Inc., et al.*, No. 4:20-cv-121, Compl., ECF No. 1-1 (July 31, 2020).

[2]    "[A] district court has inherent power, in appropriate circumstances, 'to strike items from the docket'" for failure to follow the local rules or a court order. *See Thomas v. Meyer*, No. 1:21cv1428, 2023 WL 2088416, at *6 (E.D. Va. Feb. 17, 2023) (quoting *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010)); *see also Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009) (holding that where a local rule did not specify a particular sanction for a party's noncompliance, "the court was entitled to rely on its inherent authority to fashion an appropriate sanction").

to file documents with the assistance of attorney Morgan, who has not entered an appearance in this matter. *See* Resp. at 3; *see also* Mot. at 5. The Court "considers it improper for lawyers to draft or assist in drafting complaints . . . on behalf of litigants designated as *pro se*." *Chaplin v. Du Pont Advance Fiber Sys.*, 303 F. Supp. 2d 766, 773 (E.D. Va. 2004) (citation omitted). Plaintiff and assisting attorney Morgan are ORDERED to SHOW CAUSE as to why Plaintiff's filings, ECF Nos. 10 and 11, should not be struck.

Responses to this Order shall be filed **no later than September 11, 2024.** The Clerk is directed to send a copy of this Order to all counsel of record, to mail a copy of this Order to *pro se* Plaintiff Joan Wright Haysbert at her address of record, and to forward a copy of this Order to Mary T. Morgan at her CM/ECF registered email address.

IT IS SO ORDERED**.**

_____
/s/
Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: <u>August 28, 2024</u>

3

380

# EXHIBIT CC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT )
    Plaintiff, )
v. )
     )
BLOOMIN' BRANDS, INC., et al. )    Case No.: 4:24cv87
     )
    Defendants. )

## DEFENDANT BLOOMIN' BRANDS, INC.'S MOTION TO DISMISS

COMES NOW, the Defendant, Bloomin' Brands, Inc., by counsel, and hereby moves this Court to dismiss this cause of action against it, and in support thereof relies upon its Memorandum of Law.

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and assert that this cause of action fails to state a claim for which relief can be granted. Bloomin' Brands, Inc., is not a proper party to these proceedings as demonstrated in the previous litigation. Bloomin' Brands is not responsible for any act or omission at the subject location. Accordingly, Bloomin' Brands, Inc., moves this Court to sustain this Motion to Dismiss and dismiss it as a party from these proceedings.

                                        **BLOOMIN' BRANDS, INC**
                                        By Counsel

**McGavin, Boyce, Bardot, Thorsen & Katz, PC**
9990 Fairfax Boulevard, Suite 400 | Fairfax, VA 22030 | Tel: 703.385.1000 | Fax: 703.385.1555

382

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555


  _/s/ John D. McGavin_____
John D. McGavin (VSB 21794)
jmcgavin@mbbtklaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2024, a true and accurate copy of the foregoing

was sent via the CM/ECF system and served by email and mail, postage paid to:

Joann Wright Haysbert
244 William R. Harvey Way
Hampton, VA 23669
joannhaysbert@yahoo.com
*Pro Se Plaintiff*

                                        _/s/ John D. McGavin___
                                        John D. McGavin (VSB 21794)

**McGavin, Boyce, Bardot, Thorsen & Katz, PC**
9990 Fairfax Boulevard, Suite 400 | Fairfax, VA 22030 | Tel: 703.385.1000 | Fax: 703.385.1555

383

## ROSEBORO NOTICE

Pursuant to Local Civil Rule 7(K) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), undersigned counsel advises Plaintiff of the following:

1.    Plaintiff is entitled to file a response opposing the motion; any such response must be Filed within twenty-one (21) days of the date on which this Motion to Dismiss was filed;

2.    The Court could dismiss the action on the basis of Defendant's moving papers if Plaintiff does not file a response;

3.    Plaintiff must identify all facts stated by Defendants with which the Plaintiff Disagrees and must set forth the Plaintiff's version of the facts by offering affidavits (written Statements signed before a Notary Public and under oath) or by filing sworn statements (bearing a certificate that is signed under penalty of perjury); and

4.    Plaintiff is also entitled to file a legal brief in opposition to the one filed by Defendants.